UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

LIBERTY MUTUAL INSURANCE )
COMPANY AND SUBSIDIARIES, )
)
                Plaintiff, )
)
            v. )        Cnsl. Cv. No. 1:05-cv-11048-RCL
)
UNITED STATES OF AMERICA, )
)
                Defendant. )

---

LIBERTY MUTUAL FIRE INSURANCE )
COMPANY AND SUBSIDIARIES, )
)
                Plaintiff, )
)
            v. )        Former Cv. No. 1:05-cv-11049-RCL
)
UNITED STATES OF AMERICA, )
)
                Defendant. )

PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

Peter H. Winslow
Gregory K. Oyler
Samuel A. Mitchell
Scribner, Hall & Thompson, LLP
1875 Eye Street, N.W., Suite 1050
Washington, DC 20006
Telephone: (202) 331-8585
Fax: (202) 331-2032
Attorneys for Plaintiff

September 29, 2006

# TABLE OF CONTENTS

ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

I.      SUMMARY STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        Governing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        Losses Incurred . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        Role of Annual Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        Salvage before 1990 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        1990 Act required estimated method . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        Change in method . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        Fresh Start . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        Special Deduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        Proof and double-counting issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        IRS Exclusive Rule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        Further IRS guidance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        Rev. Proc. 92-77 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.     FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III.    SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IV.     ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        A.      Salvage on Gross Lines - Liberty is entitled to summary judgment on the
                basis of the plain language of the transition rule in section 11305(c)(2) of
                the 1990 Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        B.      Salvage on Net Lines - Liberty is entitled to summary judgment on the basis of
                Rev. Proc. 92-77 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

1.    Liberty Companies complied with all requirements of Rev. Proc. 92-77 for the gross-up . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

2.    The IRS's denial of Rev. Proc. 92-77 treatment is based on an erroneous and irrational reading of section 4.04 of the Revenue Procedure . . . . . . 18

3.    The IRS has consented to Liberty Companies' change in method of accounting for Gross Lines . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

## Federal Cases

American Family Mut. Ins. Co. v. United States, 376 F.Supp.2d 909
  (W.D.Wis.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## Federal Statutes

Revenue Reconciliation Act of 1990, Pub. L. No. 101-508,
  § 11305 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

26 U.S.C. § 446 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

26 U.S.C. § 481 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5, 13

26 U.S.C. § 831 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

26 U.S.C. § 832 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

26 U.S.C. § 833 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

26 U.S.C. § 834 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

26 U.S.C. § 835 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## Treasury Regulations

Treas. Reg. § 1.446-1(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Temp. Treas. Reg. § 1.446-1T(e)(3)-(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Treas. Reg. § 1.832-4(c) (in effect prior to 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Treas. Reg. § 1.832-4(c) - (g) (in effect for years after 1989) . . . . . . . . . . . . . . . . passim

## Proposed Treasury Regulations

Prop. Treas. Reg. § 1.832-4(c) - (e) (proposed March 15, 1991) . . . . . . . . . . . . . . . . . . . 6

**Internal Revenue Procedures**

Rev. Proc. 91-48, 1991-2 C.B. 749 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Rev. Proc. 92-77, 1992-2 C.B. 454 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

**Miscellaneous**

Omnibus Budget Reconciliation Act of 1990, Conf. Rep. to accompany H.R. 5835, H.
    Rep. 101-964 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

*Issues*

1.    Whether the IRS is permitted to ignore the special transition rule of section 11305(c)(2) of the 1990 Act for salvage with respect to Gross Lines of plaintiffs' insurance business and require a full adjustment under 26 U.S.C. § 481 to be included in income in 1990, thereby denying plaintiffs a smaller income adjustment equal to one-fourth of 13 percent of the amount that otherwise would be the adjustment under 26 U.S.C. § 481; and

2.    Whether plaintiffs have complied with all requirements of Rev. Proc. 92-77, 1992-2 C.B. 454 with respect to salvage on Net Lines for tax year 1990 so that they are entitled to the relief it provides.[1]

**I.    *Summary Statement of the Case***

This is a federal income tax refund suit filed by plaintiffs Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company (collectively "Liberty Companies"), which are two affiliated mutual insurance company groups that file separate tax returns but nevertheless pool their accounting for Annual Statement and financial reporting purposes.  The two companies filed separate complaints, but this Court has consolidated the cases because the facts and issues are common.  The refunds are attributable to erroneous increases in taxable income on Liberty Companies' 1990 tax returns arising from the Internal Revenue Service's ("IRS's") misapplication of the transition rule for salvage[2] under section 11305(c) of the Revenue

---

[1]  This summary judgment motion does not include an issue as to the amount of damages (i.e., tax and interest to be refunded) in the event plaintiffs prevail on this motion.  The amount of damages in federal income tax cases usually is addressed after the basic tax issues are resolved.

[2]  "Salvage" technically is property which the insurance company becomes entitled to when it pays a loss, e.g., a "totaled" automobile.  As used herein, it also includes subrogation, which is the right an insurer obtains on paying a claimant's loss to pursue the claimant's

Reconciliation Act of 1990, Pub. L. No. 101-508, 104 Stat. 1388 ("1990 Act")  (Appendix A ["App."] A-1) and of its own Rev. Proc. 92-77 (App. A-50).

Liberty Companies' complaints raise two discrete issues regarding treatment of salvage under the transition rules of the 1990 Act, which changed the timing for tax purposes of income attributable to salvage.  The first issue, with respect to Liberty Companies' estimated uncollected salvage at December 31, 1989, on certain lines of Liberty Companies' business referred to as "Gross Lines," involves application of the "Fresh Start" transition rule of section 11305(c).  The second issue, with respect to estimated salvage on other lines of Liberty Companies' business referred to as "Net Lines," is whether Liberty Companies complied with the requirements of Rev. Proc. 92-77 for treatment of salvage in tax year 1990.  The Government effectively has conceded the first issue regarding the Fresh Start transition rule on Gross Lines and has raised only one argument on the second issue regarding Rev. Proc. 92-77 for Net Lines.

### *Governing Law*

**Losses incurred.**  Liberty Companies are property and casualty insurance companies subject to tax under Part II of Subchapter L of the Internal Revenue Code of 1986.  26 U.S.C. §§ 831-835.  App. A-6 - A-24.  Under 26 U.S.C. § 832(b) (App. A-7), an insurance company's gross income includes its "underwriting income."  "Underwriting income" is defined in 26 U.S.C. § 832(b)(3) to mean premium income "earned on insurance contracts during the taxable year less losses incurred and expenses incurred."  The deduction for "losses incurred" includes, under 26 U.S.C. § 832(b)(5), losses paid during the year and the increase in discounted unpaid

---

remedies against third parties, e.g., a claim against the insurance company of the driver who was at fault in an accident.

losses for the year.  As a result of this losses incurred formulation, an insurer's liability for incurred insurance losses is taken into account under a reserve method of accounting.  In other words, the insurer deducts losses for which the loss-triggering event has occurred on an estimated basis, before the liability is paid (cash basis) and before all events which fix the liability have occurred (accrual basis).

**Role of Annual Statement.**  Under state insurance regulations, an insurance company must file an annual financial statement ("Annual Statement") with the state insurance department for each state in which the company is licensed to do business.  The format of the Annual Statement, and the rules and accounting principles to be followed in its preparation, are established by the National Association of Insurance Commissioners ("NAIC").  The insurance income definitions of 26 U.S.C. § 832 are based upon NAIC Annual Statement accounting principles (with certain specified qualifications).  26 U.S.C. § 832(b).

**Salvage before 1990.**  Before amendments made by the 1990 Act, salvage was taken into account under 26 U.S.C. § 832(b)(5)(A)(ii) as a reduction of paid losses in determining losses incurred.  Since 1947, Treasury regulations had contained an exception that salvage recoverable did not include any amount which was not permitted to be treated as an asset for Annual Statement reporting purposes in any state in which the company transacted business.  Treas. Reg. § 1.832-4(c), as promulgated by T.D. 6681 (Oct. 16, 1963).  App. A-27.  See Omnibus Budget Reconciliation Act of 1990, Conf. Rep. to accompany H.R. 5835, H. Rep. 101-964, 101st Cong., 2d Sess. 1070-1071, Oct. 27, 1990 ("Conference Report").  App. A-2.  As a result of this provision of the pre-1990 regulations, insurance companies were permitted to treat salvage in losses incurred under 26 U.S.C. § 832 in the same manner in which they reported the salvage on

their Annual Statements.  Reporting practices for uncollected salvage varied.  Some companies took estimated salvage into account in estimating the amount of unpaid losses, and as a result they reported losses incurred reduced by, or net of, estimated salvage.  Other companies did not take estimated salvage into account and reported losses incurred gross, unreduced by estimated salvage.  Still others, such as Liberty Companies, reported losses in a combination of net or gross of salvage, depending on the line of business involved (Net Lines and Gross Lines).

**1990 Act required estimated method.**  In section 11305(c) of the 1990 Act, Congress amended the definition of losses incurred under 26 U.S.C. § 832(b)(5) to require estimated salvage to be taken into account as a reduction to losses incurred, effective for tax years beginning after December 31, 1989.  The amendment also provided that, just as unpaid losses are discounted for tax purposes, estimated salvage must be discounted.  Thus, the 1990 Act effectively required all lines of business to be Net Lines for tax purposes, separately from the taxpayer's Annual Statement treatment.

**Change in method.**  Section 11305(c)(2) of the 1990 Act specifies that the amendment is to be treated as a change in method of accounting for tax purposes for which the IRS has consented.  For taxpayers that previously reported gross loss reserves without reduction for estimated salvage, the amendment resulted in a change in accounting for salvage from a cash method (report when received) to a reserve method (report estimates of amounts to which the company has a current right but has not yet collected).  Ordinarily, such a change in method of accounting would require an adjustment to taxable income under 26 U.S.C. § 481 (App. A-4) to prevent a permanent exclusion from income of the estimated salvage as of the end of the preceding year.  For example, an expected $5,000 salvage amount to which a company had a

-4-

current right at December 31, 1989, but had not yet collected, would not be taken into account in 1989 under the cash method, but would have been taken into account in 1989 under the estimated method for salvage. However, with the change to the estimated method in 1990 under the 1990 Act, that $5,000 would already be included in the opening estimated salvage reserve.[3] As a result, due to the change in method of accounting, that $5,000 of salvage would never be included in taxable income in 1990 or any later year. 26 U.S.C. § 481 generally prevents this result by requiring an increase in taxable income by the amount of the omitted income resulting from the change.[4]

**Fresh Start.** Congress recognized that the application of 26 U.S.C. § 481 to a legislatively-imposed change in accounting would result in an inappropriate one-time increase in taxable income for taxpayers previously on a cash method for salvage (Gross Lines). To provide relief, Congress provided in section 11305(c)(2) of the 1990 Act a special transition rule to reduce the 26 U.S.C. § 481 adjustment to 13 percent of what it otherwise would have been and to allow the 13 percent to be spread ratably over four tax years beginning in 1990. As explained by the Conference Report: "The conference agreement provides that 87 percent of the amount of the adjustment that otherwise is included in income over a period not to exceed 4 years is forgiven under the bill" (a partial "Fresh Start"). Conference Report at 1071.

---

[3] It is a rule of reserve accounting that the opening reserve for a tax year is equal to the closing reserve at the end of the prior year.

[4] When a change is made from a cash method to a reserve method, the amount of the 26 U.S.C. § 481 adjustment usually is equal to the opening balance of the reserve in the year of the change ($5,000 in the example).

**Special Deduction.** Taxpayers that reduced their losses incurred by estimated salvage before the 1990 Act (i.e., those with Net Lines) were not required to change their method of accounting because they already complied with the requirements of the Act. However, in view of the 87-percent Fresh Start forgiveness for taxpayers with Gross Lines, Congress decided to level the playing field and permit taxpayers with Net Lines to obtain the same economic benefit of a permanent omission of 87 percent of estimated salvage as of year-end 1989 to be forgiven and omitted from income. Congress allowed in section 11305(c)(3) of the 1990 Act a "Special Deduction" to be spread ratably over the four-year period starting in tax year 1990, equal to 87 percent of the discounted amount of estimated salvage as of year-end 1989 which already had been taken into account under such taxpayers' estimated method for salvage.

**Proof and double-counting issues.** The Special Deduction provision of the 1990 Act posed a number of implementation issues. One issue of concern to the IRS was proof of the amount of estimated salvage that the taxpayer had taken into account as a reduction of unpaid losses at December 31, 1989, and which thereby was reflected in losses incurred. On March 15, 1991, Prop. Treas. Reg. § 1.832-4(e) (App. A-31) was published in the Federal Register (56 Fed. Reg. 11,127) which resolved this proof problem by providing taxpayers the option of establishing the amount of estimated salvage taken into account in 1989 by making a disclosure of that amount to the relevant state insurance department. A second implementation issue for taxpayers who had netted estimated salvage in losses incurred before 1990 was to ensure that salvage not be included in taxable income more than once. There was concern that the statute could be misread to require Net Lines to be reduced by salvage a second time – the so-called double-counting problem. Although this possible interpretation would have contravened Congressional

-6-

intent, discussions among the IRS, Treasury and insurance industry groups concerning the double-counting problem continued, unresolved, into 1992.

**IRS Exclusive Rule.** The IRS posed another implementation issue when it took the position in Rev. Proc. 91-48, published in 1991-34 I.R.B. 1 (Aug. 26, 1991) (App. A-33), that a taxpayer that claims the Special Deduction with respect to salvage it took into account before 1990 on Net Lines would not also be allowed a Fresh Start with respect to any December 31, 1989, estimated salvage on Gross Lines (the "Exclusive Rule"). That is, the Revenue Procedure provided that, if the Special Deduction were to be claimed, it was the exclusive benefit that could be obtained by the taxpayer under the 1990 Act transition rules. Instead, under the Revenue Procedure, such a taxpayer would be required to ignore Congress' mandate in the 1990 Act and continue on the cash method with respect to pre-1990 estimated salvage on Gross Lines. (The Revenue Procedure referred to this as a "cutoff method".) Needless to say, the IRS position, as expressed in Rev. Proc. 91-48 is invalid because it is flatly contrary to section 11305 of the 1990 Act which requires, without exception, that estimated salvage be taken into account beginning in taxable years after 1990. Knowing that this position is contrary to the statute and would result in a refund in this case, the Government has asserted that the position cannot be applied in this case. See Liberty Mutual Answer ¶¶ 43, 50, Liberty Fire Answer ¶¶ 43, 50, in which the Government denies that the cut-off method of Rev. Proc. 91-48 and subsequent regulations applies to Liberty Companies.

**Further IRS guidance.** Recognizing that its Proposed Regulations contravened the statute and that the potential double-counting issue required a solution, the IRS on January 28, 1992, published T.D. 8390 amending Treas. Reg. § 1.832-4(d) (App. A-27) to clarify that an

insurance company that took estimated salvage into account in determining loss reserves (Net Lines) may reverse that reduction of loss reserves for tax purposes and gross up the loss reserves for the amount of salvage, provided the company discloses the amount of salvage to the appropriate state regulatory authority. The effect of this amendment was to permit taxpayers to avoid the problems with Net Lines and convert them to Gross Lines for tax purposes (i.e., there would be no requirement to ignore the 1990 Act for salvage for pre-1990 accident years[5] and there would be no potential double counting). Under the regulations, a taxpayer is allowed, for any tax year, to adjust the amount of unpaid losses by estimated salvage if the taxpayer discloses on its Annual Statement, by line of business and accident year, the extent to which estimated salvage was taken into account in determining the amount of year-end unpaid losses. Treas. Reg. § 1.832-4(d)(2)(i)(a). This provision of the regulations is effective for tax years beginning after 1989. Treas. Reg. § 1.832-4(g) (App. A-31). Under a transition rule for tax years ending before December 31, 1991, a taxpayer is deemed to satisfy the disclosure requirement if the statement for those years is filed before March 17, 1992. Treas. Reg. § 1.832-4(d)(2)(ii).

**Rev. Proc. 92-77.** On September 21, 1992, the IRS published Rev. Proc. 92-77 in 1992-38 I.R.B. 29, which provides guidance about the loss reserve gross-up option provided by the regulations. Rev. Proc. 92-77 allows a taxpayer that took estimated salvage into account as a reduction of unpaid losses on its Annual Statement to reverse that netting and gross up the year-end unpaid losses for tax purposes by the amount of that salvage. The gross-up of only the year-end amount under the Revenue Procedure has the effect of increasing the taxpayer's deduction for losses incurred for the year of the gross-up selected by the taxpayer under the regulations. If

---

[5] An accident year is generally the year of the insured event which triggers loss coverage.

the first year the taxpayer uses this gross-up treatment is 1990, Rev. Proc. 92-77 allows the entire

deduction effect of the gross-up to be taken into account in tax year 1990.  Thus, the gross-up

approach, as explained in section 2 of the Revenue Procedure, provides a solution to the double-

counting problem which had been of concern to insurance companies.  In addition, the Revenue

Procedure made it clear that, by reversing the reduction of losses incurred on Net Lines in tax

year 1990, a taxpayer could become, in effect, a company with only Gross Lines for tax purposes

and be allowed a Fresh Start applied to all of its estimated salvage, including the portion

attributable to the gross-up.  In this way, Rev. Proc. 92-77 also provided the IRS's solution to the

problem that taxpayers were likely to be successful in challenging the validity of the regulations'

Exclusive Rule for taxpayers with both Net and Gross Lines.  In issuing the Revenue Procedure,

the IRS provided a mechanism for a taxpayer with both Net Lines and Gross Lines, such as

Liberty Companies, to obtain the full transition relief provided by the 1990 Act to taxpayers that

had only Gross Lines.

## II.    *Facts*

The 1989 and 1990 Annual Statements of Liberty Companies reflected some estimated

salvage, but not all.  At years-end 1989 and 1990, Liberty Companies had certain estimated

salvage which had reduced their unpaid loss reserves and losses incurred on Net Lines on their

Annual Statements.  At the same dates, Liberty Companies had additional estimated salvage on

Gross Lines which had not reduced losses incurred or otherwise been taken into account on their

Annual Statements.

On their tax returns for 1989, Liberty Companies followed their Annual Statement

method of accounting for salvage for Net Lines and used the cash method for Gross Lines.  On

their tax returns for 1990, Liberty Companies changed their method of accounting to reflect discounted estimated salvage on all lines as required by the 1990 Act, and applied the transition rules of the 1990 Act with respect to December 31, 1989 discounted estimated salvage.  For Net Lines on which Liberty Companies had taken estimated salvage into account on the 1989 returns as a reduction of losses incurred, Liberty Companies reported a Special Deduction on their originally-filed 1990 returns pursuant to section 11305(c)(3) of the 1990 Act.  For Gross Lines on which Liberty Companies had not taken any estimated salvage into account on the 1989 Annual Statements, they included the partial 26 U.S.C. § 481 adjustment.  Importantly, Liberty Companies did not follow the invalid provisions of Rev. Proc. 91-48 on Gross Lines, and, thereby, they took into account estimated salvage for tax purposes separately from the Annual Statement treatment in accordance with 26 U.S.C. § 832(b)(5)(A)(iii).  App. A-9.

When Liberty Companies were required to file 1990 tax returns, insurance industry discussions with the IRS and Treasury concerning the double-counting problem and the IRS's position that the Special Deduction was an exclusive transition rule were still underway, and many expected future guidance from the IRS to result.  Accordingly, Liberty Companies included a statement with their 1990 tax returns stating: "Further clarification resulting from industry discussion with the Internal Revenue Service on these items may result in the taxpayer filing an amended return."  After further guidance was issued by Treasury and the IRS, Liberty Companies complied with the requirements to obtain the proper relief for 1990 provided by the transition rules in the 1990 Act.  On their 1991 Annual Statements, filed on or before March 17, 1992, Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, and Liberty Insurance Company disclosed the amounts of year-end 1990 and 1991 estimated salvage on Net

Lines, as required by Treas. Reg. § 1.832-4(d)(2). In addition, after Rev. Proc. 92-77 was published, Liberty Companies filed with the IRS an election to convert their Net Lines into Gross Lines, effective for tax year 1990 as permitted by the regulations (the "92-77 Election"). Liberty Companies went further to confirm their compliance with the regulations and Revenue Procedure by specifically eliminating the Special Deduction because, for tax purposes, they no longer had any Net Lines after the gross-up for 1990 allowed by the regulations.

The IRS examined the 1990 returns and the 92-77 Election of Liberty Companies. As a result of the audit, the IRS agreed to the amounts of discounted estimated salvage, but the IRS made an audit adjustment with respect to the transition treatment of December 31, 1989 discounted estimated salvage on Gross Lines which Liberty Companies had not taken into account before tax year 1990. The IRS adjusted Liberty Companies' income to require them to include in income the full amount of that salvage as a 26 U.S.C. § 481 adjustment in 1990, without permitting either the 87-percent exclusion or the four-year spread under the Fresh Start transition rule in section 11305(c)(2) of the 1990 Act. Further, the IRS audit did not allow the 92-77 Election and denied the gross-up of loss reserves under the regulations for discounted estimated salvage on Net Lines.

### III.    _Summary of Argument_

Liberty Companies are entitled to the full benefit of the transition rules in section 11305 of the 1990 Act and the relief provided by Rev. Proc. 92-77. For their Gross Lines, Liberty Companies are entitled to limit the 26 U.S.C. § 481 adjustment resulting from the change in accounting imposed by the 1990 Act to one-fourth of 13 percent of the adjustment that otherwise would be required for the tax year 1990. There is no authority for the Government to ignore the

statute's mandate.  For their Net Lines, Liberty Companies are entitled to the gross-up treatment

allowed by Treas. Reg. § 1.832-4(d) and implemented by Rev. Proc. 92-77.  The Government's

assertion that Liberty Companies cannot obtain a gross-up for 1990 because a change in

accounting has occurred without the IRS's consent is both legally and factually incorrect.

**IV.**     <u>**Argument**</u>

      **A.**     ***Salvage on Gross Lines – Liberty is entitled to summary judgment on the basis of the plain language of the transition rule in section 11305(c)(2) of the 1990 Act.***

      The first issue pertains to estimated salvage on Gross Lines – salvage that Liberty

Companies had not taken into account before 1990.  As required by the 1990 Act, in tax year

1990 Liberty Companies changed their method of accounting with respect to salvage on Gross

Lines and began to take estimated salvage on Gross Lines into account for tax purposes.  The

Government agrees that this change in method of accounting is proper and the IRS consented to

it on audit.  Further, Liberty Companies determined that an adjustment under 26 U.S.C. § 481

would be required, and that the amount of the adjustment, before application of the transition rule

of section 11305(c)(2) of the 1990 Act, would have been $68,763,074.  Again, the Government

agrees that an adjustment under 26 U.S.C. § 481 was required and the IRS on audit agreed with

the amount.  The only dispute for Gross Lines is whether the IRS has the right to override the

specific transition rule of section 11305(c)(2) of the 1990 Act.  The IRS on audit required the full

26 U.S.C. § 481 adjustment to be included in 1990 taxable income even though section

11305(c)(2) of the 1990 Act expressly provides that only one-fourth of 13 percent of the 26

U.S.C. § 481 adjustment should be included in taxable income in 1990.

The Government itself has successfully argued in a recent case that, where a statute provides a specific transition rule for a change in method of accounting, the general provisions of 26 U.S.C. § 481 do not apply.  <u>American Family Mut. Ins. Co. v. United States</u>, 376 F.Supp.2d 909 (W.D. Wis. 2005).  The case involved a 1986 amendment of 26 U.S.C. § 832 which mandated a change in the method of accounting for unearned premiums by property casualty insurance companies and prescribed specific treatment for the adjustment necessitated by that change.  The taxpayer in that case contended that it was entitled to take a regular adjustment under 26 U.S.C. § 481 and receive a larger benefit than provided by Congress' specific statutory transition rule.  The Government argued that the specific rule controlled, and the court agreed, stating:

> When Congress amended §832(b)(4) to reduce the amounts for unearned premiums, it prescribed the procedure for making the transition from the deduction of 100% to 80% of unearned premiums in one year; that procedure leaves no room for application of §481, which is a statute of general application to be used in situations in which a taxpayer changes its method of accounting voluntarily or by direction of the IRS and the change results in a duplication or omission of income.

[376 F.Supp.2d at 910]

Section 11305(c)(2)(B) of the 1990 Act specifically provides that in implementing the change for Liberty Companies' salvage on Gross Lines, "only 13 percent of the net amount of adjustments (otherwise required by such section 481 to be taken into account by the taxpayer) shall be taken into account," and that 13 percent "shall be taken into account over a period not to exceed 4 taxable years."  This is the treatment Liberty Companies seeks in this case.  There is no authority that would permit the Government to ignore these clear statutory requirements.

-13-

**B.** **Salvage on Net Lines – Liberty is entitled to summary judgment on the basis of Rev. Proc. 92-77.**

The second issue pertains to estimated salvage on Net Lines of business – salvage that Liberty Companies had taken into account before 1990 as a reduction in unpaid losses. Treas. Reg. § 1.832-4(d) permits a taxpayer to covert its Net Lines into Gross Lines for tax purposes and thereby obtain the tax treatment for Gross Lines provided in the 1990 Act. Although Treas. Reg. § 1.832-4(d) was promulgated on January 28, 1992, it was given retroactive effect so that it applies to all years subject to the 1990 Act, including 1990. Treas. Reg. § 1.832-4(g). Rev. Proc. 92-77 provides the details of how this conversion is to be accomplished. Specifically, the Revenue Procedure also applies to tax year 1990 and provides that the conversion of Net Lines to Gross Lines will result in a one-time deduction resulting from the increase of year-end unpaid losses by the amount of salvage.

**1.** **Liberty Companies complied with all requirements of Rev. Proc. 92-77 for the gross-up.**

On their original tax returns for 1990, Liberty Companies, consistent with section 11305(c)(3) of the 1990 Act, reported a Special Deduction equal to one-fourth of 87 percent of estimated salvage on Net Lines as of December 31, 1989. Because Treasury and insurance industry representatives were still discussing unresolved transition issues under the salvage provisions of the 1990 Act, Liberty Companies specifically reserved the right to change the position taken on the tax returns based on future clarification from the IRS.

Clarification began to come in the form of Treas. Reg. § 1.832-4(d), which permits taxpayers to gross up their Net Lines for salvage, thereby converting them to Gross Lines for tax purposes. Implementation of the gross-up came in the form of Rev. Proc. 92-77, which provides

-14-

administrative guidance on how companies could comply with the regulations effective for tax year 1990.  Section 6 of the Revenue Procedure specifies that its provisions, including the gross-up, apply to all tax years beginning after 1989.  Examples in section 4.06 of the Revenue Procedure further illustrate the application of these provisions to taxpayers who first seek to apply the gross-up to tax year 1990 and to other taxpayers first grossing up in later years.  Thus, as in the case of the regulations, the gross-up provisions of Rev. Proc. 92-77 have retroactive effect to tax year 1990.

There are only two requirements to obtain the benefit of Rev. Proc. 92-77 which appear in section 4.01 as follows:

.01 A taxpayer described in section 3 of this revenue procedure may increase unpaid losses for tax purposes by the amount of estimated salvage recoverable taken into account as a reduction to unpaid losses shown on its annual statement if the following conditions are met:

(1) Except as provided in other guidance published in the Internal Revenue Bulletin, the taxpayer complies with the disclosure requirement set forth in section 1.832-4(d)(2) of the regulations; and

(2) The estimated salvage recoverable that reduced unpaid losses is separately taken into account in accordance with section 832(b)(5)(A)(iii) of the Code. See Rev. Proc. 91-48, 1991-2 C.B. 760.

Liberty Companies meet the two conditions of section 4.01 for grossing up loss reserves. The first condition relates to Net Lines and requires a disclosure of the amount of estimated salvage implicitly reflected in losses incurred on the Annual Statement.  Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, and Liberty Insurance Company complied with the disclosure requirements of Treas. Reg. § 1.832-4(d)(2)[6] when they filed their

---

[6]  Treas. Reg. § 1.832-4(d)(2) provides in relevant part –
(2)  Disclosure requirement.

1991 Annual Statements on or before March 17, 1992, which disclosed, by line of business and accident year, the amount of year-end 1990 estimated salvage recoverable taken into account in computing unpaid losses (i.e., salvage on Net Lines). (Under Treas. Reg. § 1.832-4(g), this disclosure requirement of the regulations was effective for tax years beginning after 1989.)

The second requirement relates to Gross Lines and requires some explanation. In the Proposed Regulations and Rev. Proc. 91-48, the IRS adopted the Exclusive Rule for taxpayers with both Gross and Net Lines. In effect, the IRS adopted the position that such taxpayers were required to choose between claiming the benefit of the Special Deduction on Net Lines or the Fresh Start forgiveness on Gross Lines, but not both. Thus, the Rev. Proc. 91-48 provided that a taxpayer could make an election not to claim the Special Deduction. Rev. Proc. 91-48, § 9.02. Similarly, ignoring the mandate of 26 U.S.C. § 832(b)(5)(A)(iii), Rev. Proc. 91-48 provides that a taxpayer that elects to claim the Special Deduction cannot "take into account" estimated salvage on Gross Lines on pre-1990 claims, i.e., the taxpayer is required to ignore the statute and continue to report incurred losses gross of salvage for pre-1990 accident years. This also has the practical effect of denying the Fresh Start forgiveness for salvage on pre-1990 claims provided in

---

(i) In general. A company described in paragraph (d)(1) of this section is allowed to increase the unpaid losses shown on its annual statement only if the company either –
(A) Discloses on its annual statement, by line of business and accident year, the extent to which estimated salvage recoverable is taken into account in computing the unpaid losses shown on the annual statement filed by the company for the calendar year ending with or within the taxable year of the company; or * * *
(ii) Transitional rule. For a taxable year ending before December 31, 1991, a taxpayer is deemed to satisfy the disclosure requirement of paragraph (d)(2)(i)(B) of this section if the taxpayer files the statement described in paragraph (d)(2)(i)(B) of this section before March 17, 1992.

-16-

section 11305(c) of the 1990 Act.  For these Gross Lines, Rev. Proc. 91-48 went further in its

contravention of the statute.  It provided that for a taxpayer that claimed the Special Deduction,

any change to take into account salvage for pre-1990 accident years is not a change required by

the 1990 Act and, therefore, requires the consent of the IRS.  Rev. Proc. 91-48, § 9.03.  Of

course, this provision violates section 11305(c) of the 1990 Act which expressly provides that a

change in method of accounting for estimated salvage on all Gross Lines must be made and the

consent of the IRS is deemed to have occurred.

      With this background, the second condition of Rev. Proc. 92-77 – that "estimated salvage

recoverable that reduced unpaid losses is separately taken into account in accordance with

section 832(b)(5)(A)(iii)" – becomes clear.  The condition means that the gross-up only applies

to a taxpayer that "takes into account" salvage for Gross Lines in accordance with 26 U.S.C.

§ 832(b)(5)(A)(iii), thus converting them to Net Lines for tax purposes as required by the statute.

The reference to "separately" accounting simply means that the tax treatment is done on a net

basis separately from the Annual Statement which is on a gross basis.

      Liberty Companies have complied with this second requirement of Rev. Proc. 92-77.  For

its Gross Lines, they took into account salvage as required by 26 U.S.C. § 832(b)(5)(A)(iii)

separately from their Annual Statement treatment.  Thus, Liberty Companies satisfied both

conditions of Rev. Proc. 92-77.

      Having met these two conditions, Liberty Companies are entitled to increase their 1990

loss reserves by the amounts of estimated salvage.  Under section 4.02 of the Revenue Procedure,

because the year 1990 is involved, only year-end 1990 loss reserves are adjusted and no

adjustment is required for loss reserves at the end of 1989.  This treatment has the effect of

increasing Liberty Companies' 1990 deduction for losses incurred by the year-end 1990 amount

of discounted estimated salvage on Net Lines.  This deduction, in lieu of the Special Deduction,

solves the double-counting problem presented by the regulations and Rev. Proc. 91-48.  See Rev.

Proc. 92-77, § 2.  In addition, by reversing the reduction of losses incurred on Net Lines in tax

year 1990 in this fashion, Liberty Companies became, in effect, companies with only Gross Lines

which are allowed a Fresh Start applied to all of their estimated salvage, including the portion for

which unpaid losses were grossed up.  Rev. Proc. 91-48, § 8.  Accordingly, in addition to the

gross-up of loss reserves for estimated salvage, Liberty Companies' affirmative adjustment

properly reflected, under section 11305(c)(2) of the 1990 Act, inclusion of one-fourth of 13

percent of December 31, 1989 discounted estimated salvage that had reduced loss reserves.

**2.      *The IRS's denial of Rev. Proc. 92-77 treatment is based on an erroneous and irrational reading of section 4.04 of the Revenue Procedure.***

In the audit phase of this case, the IRS agent suggested that gross-up treatment could not

apply to Liberty Companies in 1990 without specific approval by the Commissioner.  The IRS

agent relied exclusively on section 4.04 of the Revenue Procedure.  However, the IRS agent's

contention betrays a fundamental misunderstanding of this section and the Revenue Procedure as

a whole.

Section 4.04 of Rev. Proc. 92-77 provides as follows:

.04 If a taxpayer claims the Special Deduction under section 11305(c) of the
Revenue Reconciliation Act of 1990, any change in the method of computing
undiscounted unpaid losses to remove estimated salvage recoverable for accident
years in which estimated salvage recoverable was not separately taken into
account is a change in method of accounting for which taxpayer must receive
approval by the Commissioner.

This provision merely restates the IRS's position reflected in section 9.03 of Rev. Proc. 91-48, which provided, contrary to the statute, that, if a taxpayer elected to claim the Special Deduction for Net Lines, any change to take into account salvage separately from the Annual Statement for Gross Lines to comply with 26 U.S.C. § 832(b)(5)(A)(iii) was a change in accounting which requires the consent of the IRS. This intent is reflected in the Rev. Proc. 92-77's reference to Gross Lines for which "estimated salvage recoverable was not separately taken into account" (i.e., the taxpayer continued to report unpaid losses attributable to pre-1990 accident years in the same manner as the Annual Statement – gross of salvage) and to a change to "remove" from those unpaid losses (i.e., reduce them by) estimated salvage recoverable and make them, in effect, Net Lines.

Thus, to repeat, section 4.04 simply reiterates section 9.03 of Rev. Proc. 91-48, which states the same requirement, after noting that a taxpayer taking the Special Deduction should use a "cut off method" for Gross Lines, as follows:

> .03  For taxpayers claiming the Special Deduction, any change in the method of computing undiscounted unpaid losses attributable to pre-1990 accident years to exclude estimated salvage recoverable is a change in method of accounting within the meaning of section 446 of the Code, but is not a change required by the 1990 Act. Accordingly, the 87 percent forgiveness provided by section 11305(c)(2)(B) of the 1990 Act does not apply to any section 481(a) adjustment resulting from this change.

Section 4.04 does not apply to Liberty Companies for a fundamental reason. By its terms, section 4.04 only applies to taxpayers that elect to claim the Special Deduction. Liberty Companies have not elected to claim the Special Deduction. In filing the 92-77 Election for 1990, Liberty Companies eliminated all four years of the Special Deduction. If the IRS agent was construing section 4.04 to prevent a taxpayer which reported a Special Deduction on its

-19-

original return for 1990 from later, once Rev. Proc. 92-77 was issued, abandoning that Special Deduction and taking the benefit of the Revenue Procedure, such a construction would be absurd and make Rev. Proc. 92-77 a nullity.  In September 1991, when tax year 1990 returns were due, the IRS had provided no procedure for taxpayers with salvage on Net Lines to add salvage back to those unpaid losses and make them into Gross Lines.  Instead, section 11305(c)(3) of the 1990 Act directed companies with Net Lines to take a Special Deduction for pre-1990 salvage on those lines.  However, there were problems with the IRS's approach (the double-counting and Exclusive Rule described above).  The IRS did not publish its solution to these problems – Rev. Proc. 92-77 – until more than a year later.  To read that solution as inapplicable in 1990 to taxpayers such as Liberty Companies, that originally reported a Special Deduction but now seek to eliminate it and gross up unpaid losses under the Rev. Proc. 92-77, would deny the Revenue Procedure's solution to every company with Net Lines that followed the statute.  Such a reading would prevent taxpayers from rectifying the very problems the Revenue Procedure was designed to solve.  And, it is not the reading the Government has applied in other cases in which it has accorded the treatment of the Revenue Procedure for tax year 1990 to other taxpayers with Net Lines.

In fact, Rev. Proc. 92-77, by its own terms, is applicable to tax year 1990.  Section 6 specifically provides: "This revenue procedure applies to taxable years beginning after December 31, 1989."  Example 1 in section 6 reconfirms this and provides just the treatment that Liberty Companies seek in this case, allowing a gross-up in 1990 of loss reserves for salvage on Net Lines.  Such a taxpayer also is accorded a Fresh Start on all December 31, 1989 estimated salvage recoverable under section 8 of Rev. Proc. 91-48.  Thus, the IRS agent's possible

argument that Rev. Proc. 92-77 does not apply to tax year 1990 is directly contrary not only to the purpose of the Revenue Procedure, but also to its explicit provisions.

> **3.**      ***The IRS has consented to Liberty Companies' change in method of accounting for Gross Lines.***

The Government appears to contend that Liberty Companies are precluded from obtaining the gross-up permitted by Treas. Reg. § 1.832-4(d) because the companies have not obtained permission to a change in method of accounting "to remove estimated salvage recoverable for accident years in which estimated salvage recoverable was not separately taken into account" as required by section 4.04 of Rev. Proc. 92-77.  This contention is contrary to the agreed facts.  Section 4.04 merely provides that a taxpayer that seeks a change in method of accounting to take into account salvage on Gross Lines must obtain the IRS's consent as provided in section 9.03 of Rev. Proc. 91-48.  In this case, Liberty Companies already have obtained the IRS's consent to the change.  Liberty Companies reported losses on Gross Lines reduced by salvage on their original 1990 tax return, thus making the change contemplated by section 4.04, and on audit the IRS agreed to that change.  In fact, in its Answers in this case, the Government reiterated that consent.[7]

Contrary to the Government's apparent assumption, once having made the change required by section 11305(c)(2) of the 1990 Act on their original 1990 return, Liberty Companies neither made, nor seek to make, any change in method to "remove estimated salvage recoverable" with respect to any accident year from unpaid losses.  Beginning in tax year 1990, Liberty Companies reported all of their losses incurred reduced by discounted estimated salvage

---

[7]By denying that the cutoff method applied, the Government necessarily concedes that the change was proper.  Answers ¶¶ 43, 50.

as mandated by the 1990 Act. This is true for both its Net and Gross Lines. The IRS consented

to the change on audit and, in any event, the 1990 Act specifically provides that the IRS is

deemed to have consented to the change. The companies have never deviated from that

treatment in filing their original tax returns, their amended returns, or their claims for refund.

The only change that was made to comply with Rev. Proc. 92-77 was to claim the gross-up for

1990 permitted by Treas. Reg. § 1.832-4(d). This is not the change in accounting referred to in

section 4.04 of Rev. Proc. 92-77 and is not a change in method of accounting at all.

26 U.S.C. § 446 (App. A-4), which governs methods of accounting, does not define what

a change in the method of accounting is. However, Treas. Reg. § 1.446-1(e)(2)(ii)(a)[8] provides

this explanation:

> A change in the method of accounting includes a change in the overall plan of
> accounting for gross income or deductions or a change in the treatment of any
> material item used in such overall plan.

[App. A-25]

Treas. Reg. § 1.446-1(e)(2)(ii)(b) further provides:

> [A] change in method of accounting does not include adjustment of any item of
> income or deduction which does not involve the proper time for the inclusion of
> the item of income or the taking of a deduction.

[App. A-25]

Thus, the accounting change rules focus on whether the new treatment involves the

proper time for the inclusion of the item of income or the taking of a deduction. As a result, for

example, if a taxpayer shifted from deducting an item when paid to deducting it when accrued,

---

[8] This version of Treas. Reg. § 1.446-1(e) is applicable to tax year 1990. Treas. Reg.
§ 1.446-1T(e)(4). App. A-26.

the shift would be a change in method of accounting.  On the other hand, if the change for an item does not affect the year in which the taxpayer reports the item is taxable income, it is not a change in method of accounting.

Liberty Companies' election to claim the gross-up under Treas. Reg. § 1.832-4(d) and Rev. Proc. 92-77 was not a change in method of accounting because the gross-up did not affect the method of reporting losses incurred for tax purposes which, since 1990, have always been computed as the discounted losses incurred reduced by estimated salvage.  The gross-up merely allowed a one-time deduction authorized by section 4.02 of Rev. Proc. 92-77.  These consequences of the gross-up do not result from a change in accounting because there has been no change in the timing (i.e., the tax year of income inclusion or deduction) of a material item. That is, there has never been a change in the year in which Liberties Companies have claimed the gross-up – it has always been claimed for 1990.

Moreover, even if Liberty Companies' claim to the gross-up could be construed to be a change in accounting requiring the IRS's consent, that consent was granted by Treas. Reg. § 1.832-4(d) and Rev. Proc. 92-77, which are both effective for tax year 1990.  In short, there has never been a change in method of accounting for losses incurred and salvage that has not been consented to by the IRS.

-23-

*V.*     **<u>*Conclusion*</u>**

For all of the foregoing reasons, Liberty Companies are entitled to summary judgment.


Respectfully submitted:


<u>/s/ *Peter H. Winslow*          </u>                              Dated: <u>September 29, 2006   </u>

PETER H. WINSLOW
Scribner, Hall & Thompson LLP
1875 Eye Street, N.W., Ste. 1050
Washington, D.C.  20006
Telephone: (202) 331-8585
E-mail: pwinslow@scribnerhall.com
Counsel for the plaintiff
Admitted pro hac vice