UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY AND SUBSIDIARIES, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Cnsl. Cv. No. 1:05-cv-11048-RCL |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY AND SUBSIDIARIES, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Former Cv. No. 1:05-cv-11049-RCL |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant. | ) | |

PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS OF RECORD

Plaintiffs hereby submit their statement of undisputed material facts of record in support of their motion for summary judgment.

**INTRODUCTION**

1. This is a tax suit arising under the Internal Revenue Code of 1986 (Title 26, U.S. Code) in which the plaintiffs Liberty Mutual Insurance Company and Subsidiaries ("Liberty

Mutual") and Liberty Mutual Fire Insurance Company and Subsidiaries ("Liberty Fire") seek the recovery of federal income taxes and related interest assessed against and collected from them for their taxable years ending December 31, 1990.  Answer in Case No. 05-11048-RCL ("Liberty Mutual Ans.") ¶ 1, Answer in Case No. 05-11049-RCL ("Liberty Fire Ans.") ¶ 2.  (Liberty Mutual and Liberty Fire are referred to herein as "Liberty Companies" unless individually identified.)

2. Liberty Mutual and Liberty Fire filed separate complaints on May 18, 2005 (Complaint in Case 1:05-cv-11048-RCL ("Liberty Mutual Comp."); Complaint in Case 1:05-cv-11049-RCL ("Liberty Fire Comp."), and the defendant United States filed separate answers on November 17, 2005.  Liberty Mutual Ans., Liberty Fire Ans.

3. On January 5, 2006, Liberty Mutual and the defendant filed a joint statement reflecting agreed facts in Case No. 05-11048-RCL.  Liberty Mutual Jt. Stmt.

4. On January 5, 2006, Liberty Fire and defendant filed a similar joint statement reflecting agreed facts in Case No. 05-11049-RCL.  Liberty Fire Jt. Stmt.

5. On January 17, 2006, the Court consolidated Liberty Companies' separate actions into Case No. 1:05-cv-11048.  Un-numbered Pacer docket entry 1:05-cv-11049 Terminated Case (Jan. 17, 2006).

6. Liberty Mutual and Liberty Fire are corporations organized under the laws of the State of Massachusetts, with their principal offices located at 175 Berkeley Street, Boston, Massachusetts 02117.  Liberty Mutual Ans. ¶ 1; Liberty Fire Ans. ¶ 1.

7. On or before September 15, 1991, Liberty Mutual filed a consolidated federal income tax return for the taxable year ended December 31, 1990, reporting a fully paid tax liability of $46,400,348. Declaration of James W. Kress ("Kress Decl.") ¶ 3.

8. The following property and casualty insurance companies, among other companies, were included as members in Liberty Mutual's taxable year 1990 consolidated return: Liberty Mutual; Liberty Insurance Corporation; and Liberty Northwest Insurance Corporation. Kress Decl. ¶ 4.

9. Liberty Mutual, Liberty Insurance Corporation, Liberty Northwest Insurance Corporation and Liberty Fire are nonlife insurance companies subject to tax under Part II of Subchapter L of the Internal Revenue Code of 1986 (26 U.S.C §§ 831-835). Liberty Mutual Jt. Stmt. p. 1, Liberty Fire Jt. Stmt. p. 1.

10. On or before September 15, 1991, Liberty Fire filed a consolidated federal income tax return for the taxable year ended December 31, 1990, reporting a paid tax liability of $3,787,359. Kress Decl. ¶ 5.

11. Liberty Mutual, Liberty Insurance Corporation and Liberty Fire were subject to a reinsurance pooling agreement under which their premiums and losses incurred, including such components as salvage and subrogation, were accounted on a pooling percentage basis. During the relevant years, the respective percentages under the pooling agreement were as follows:

| | |
|---|---|
| Liberty Mutual | 84% |
| Liberty Fire | 10% |
| Liberty Insurance Corporation | 6% |

Kress Decl. ¶ 6.

12. The Internal Revenue Service ("IRS") conducted an extensive examination of Liberty Mutual's and Liberty Fire's consolidated tax returns for the taxable year 1990 and proposed adjustments to premiums, losses incurred and other items to be distributed between the two returns according to the companies's pooling percentages.  Kress Decl. ¶ 7.

13.  At the conclusion of the examination, the IRS issued separate thirty-day letters with an accompanying Revenue Agent's Report in which it proposed adjustments to taxable income based on a number of issues.  Kress Decl. ¶ 8.

14.  On June 15, 1995, Liberty Companies protested the thirty-day letters and accompanying Revenue Agent's Reports to the Appeals Office of the IRS.  Kress Decl. ¶ 9.

15.  At the conclusion of the appeal, Liberty Mutual paid an additional $80,515,174 tax and interest for taxable year 1990 under a settlement.  Liberty Mutual Ans. ¶ 13.

16.  All issues for Liberty Mutual were settled except the issues reserved on the Form 870-AD executed at the close of the appeal.  Kress Decl. ¶ 10.

17.   At the conclusion of the appeal, Liberty Fire paid an additional $4,433,536 tax and interest for taxable year 1990 under a settlement.  Liberty Fire Ans. ¶ 12.

18.  All issues for Liberty Fire were settled except the issues reserved on the Form 870-AD executed at the close of the appeal.  Kress Decl. ¶ 11.

19.  On October 6, 2004, Liberty Companies filed claims for refund for taxable year 1990, seeking the refunds or tax and interest that are at issue in this litigation.  Liberty Mutual Ans. ¶ 13; Liberty Fire Ans. ¶ 13.

## SALVAGE AND SUBROGATION– GROSS LINES AND NET LINES

20.  This action pertains to the tax treatment of Liberty Companies' salvage and subrogation related to claims on insurance policies.  Liberty Mutual Comp. ¶¶ 34-44; Liberty Fire Comp. ¶¶ 34-44.

21.  Salvage is property that an insurance company becomes entitled to when it pays a claimant's loss.   An example of salvage is a totaled automobile.  Declaration of Roy K. Morell ("Morell Decl.") ¶ 2.

22.  Subrogation is the right an insurance company obtains on payment of a claimant's loss to pursue the claimant's remedies against third parties.  An example of subrogation is an insurance company's claim against the insurance company of the driver who was at fault in an automobile accident.  Morell Decl. ¶ 3.  (Hereinafter, salvage and subrogation are referred to as "salvage.")

23. Liberty Companies are property and casualty insurance companies that file Annual Statements with the insurance commissioners of the states in which they do business on forms prescribed by the National Association of Insurance Commissioners (NAIC).  Liberty Mutual Jt. Stmt. p. 2, Liberty Fire Jt. Stmt. p. 2.

24.  The 1989 and 1990 Annual Statements of Liberty Companies reflected some estimated salvage, but not all, depending on the line of business and the type of unpaid loss reserve.  Morell Decl. ¶ 4.

25. Lines of business and loss reserves for which Liberty Companies reflected estimated salvage on their Annual Statements collectively are referred to herein as Net Lines because the estimated salvage reduced their unpaid loss reserves and thus their losses incurred reported on

the Annual Statements. At year-end 1989 and 1990, Liberty Companies had certain estimated salvage which had reduced its unpaid loss reserves and losses incurred on Net Lines on their Annual Statements. Morell Decl. ¶ 5.

26. Lines of business and reserves for which Liberty Companies did not reflect estimated salvage on their Annual Statements collectively are referred to herein as Gross Lines because the unpaid loss reserves were reported gross of estimated salvage. At year-end 1989 and 1990, Liberty Companies had additional estimated salvage on Gross Lines which had not reduced losses incurred or otherwise been taken into account on their Annual Statements. Morell Decl. ¶ 6.

27. The relevant year-end 1989 and 1990 undiscounted estimated salvage amounts of Liberty Companies were as follows:

| UNDISCOUNTED SALVAGE | 12/31/89 | | 12/31/90 |
|---|---|---|---|
| | Net Lines | Gross Lines | Net Lines |
| Liberty Mutual Ins. Co. | 231,389,202 | 65,179,800 | 245,157,226 |
| Liberty Mutual Fire Ins. Co. | 25,126,347 | 7,242,200 | 26,646,000 |
| Liberty Companies total | 256,515,549 | 72,422,000 | 271,803,226 |

Morell Decl. ¶ 7.

**LIBERTY COMPANIES' TAX TREATMENT OF SALVAGE AND IRS ADJUSTMENTS**

28. On their originally-filed tax returns for the taxable year 1990, Liberty Companies changed their method of accounting to reflect discounted estimated salvage on all lines as required by the 1990 Act. Kress Decl. ¶ 12.

29. The Liberty Companies applied the transition rules of the 1990 Act with respect to December 31, 1989 discounted estimated salvage. Kress Decl. ¶ 13.

30. For Gross Lines on which Liberty Companies had not taken any estimated salvage into account on the 1989 Annual Statements, they included in income $2,234,800 as the partial 26 U.S.C. § 481 adjustment. This amount is equal to one-quarter of 13 percent of $68,763,074, the discounted estimated salvage on Gross Lines. Kress Decl. ¶ 14.

31. For Net Lines on which Liberty Companies had taken estimated salvage into account on the 1989 returns as a reduction of losses incurred, Liberty Companies claimed a Special Deduction on their originally-filed 1990 returns pursuant to section 11305(c)(3) of the 1990 Act in the amount of $41,583,257. This amount is equal to one-quarter of 87 percent of $191,187,388 of discounted estimated salvage on Net Lines. Kress Decl. ¶ 15.

32. On audit, the IRS subsequently changed this amount and the change was agreed to by Liberty Companies. Kress Decl. ¶ 16.

33. At the September 15, 1991, extended due date for the Liberty Companies' 1990 tax returns, insurance industry discussions with the IRS and Treasury concerning the double-counting problem and the IRS's position that the Special Deduction was an exclusive transition rule were still underway, and many expected future guidance from the IRS to result. Kress Decl. ¶ 17.

34. Accordingly, Liberty Companies included a statement with their 1990 tax returns stating that they could not then determine the full amount of estimated salvage and that they disagreed with the position of Rev. Proc. 91-48 that the 1990 Act could be ignored. Because future IRS guidance was expected, Liberty Companies specifically reserved the right to change

the position taken on the tax returns, stating "Further clarification resulting from industry discussion with the Internal Revenue Service on these items may result in the taxpayer filing an amended return."  Kress Decl. ¶ 18.

35.  On or before September 15, 1992, Liberty Companies filed their tax returns for tax year 1991.  Kress Decl. ¶ 19.

36.  On their 1991 Annual Statements, filed on or before March 17, 1992, Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, and Liberty Insurance Company disclosed the amounts of year-end 1990 and 1991 estimated salvage on Net Lines.  Morell Decl. ¶ 8.

37.  In September 1993, during the course of the examination of their 1990 income tax returns, Liberty Companies filed with the IRS a request to convert their Net Lines into Gross Lines, effective for tax year 1990 as permitted by the regulations.  Liberty Mutual Ans. ¶ 10, Liberty Fire Ans. ¶ 9,  Kress Decl. ¶ 20.

38.  In the request for affirmative adjustment Liberty Companies specifically stated that it did not claim the Special Deduction because, for tax purposes, they no longer had any Net Lines.  In the request, Liberty Companies' asked that loss reserves be grossed up for estimated salvage on Net Lines.  Under the terms of Rev. Proc. 92-77 as it applied to the change required by the 1990 Act, the grossed-up estimated salvage was subject to the Fresh Start applied to salvage as of December 31, 1989.  Kress Decl. ¶ 21.

39.  The affirmative adjustment also claimed revised amounts of discounted estimated salvage on Net Lines, corrected (consistent with the disclosure on the 1991 Annual Statement) to reflect information that was not available at the time the original returns for 1990 were filed.  As

corrected, the relevant year-end 1989 and 1990 discounted estimated salvage amounts of Liberty Companies' were as follows:

| **DISCOUNTED SALVAGE** | 12/31/89 | | 12/31/90 |
|---|---|---|---|
| | Net Lines | Gross Lines | Net Lines |
| Liberty Mutual Ins. Co. | 180,819,158 | 61,886,767 | 190,901,955 |
| Liberty Mutual Fire Ins. Co. | 19,650,028 | 6,876,307 | 20,767,361 |
| Liberty Companies total | 200,469,186 | 68,763,074 | 211,669,316 |

Kress Decl. ¶ 22.

40. The IRS examined the 1990 returns and affirmative adjustments of Liberty Companies. As a result of the audit, the IRS agrees to the amounts of discounted estimated salvage, including the corrected amounts of December 31, 1989 discounted estimated salvage on Net Lines. Kress Decl. ¶ 23.

41. The following amounts of salvage at December 31, 1989 are those agreed with the IRS agent:

| **12/31/89 SALVAGE** | Undiscounted | | Discounted | |
|---|---|---|---|---|
| | Net Lines | Gross Lines | Net Lines | Gross Lines |
| Liberty Mutual Ins. Co. | 231,389,202 | 65,179,800 | 180,819,158 | 61,886,767 |
| Liberty Mutual Fire Ins. Co. | 25,126,347 | 7,242,200 | 19,650,028 | 6,876,307 |
| Liberty Companies total | 256,515,549 | 72,422,000 | 200,469,186 | 68,763,074 |

Kress Decl. ¶ 24.

42. The IRS made an audit adjustment with respect to the transition treatment of December 31, 1989 discounted estimated salvage on Gross Lines which Liberty Companies had not taken into account before tax year 1990. The IRS adjusted Liberty Companies' income to

require them to include in income the full amount of that salvage as a 26 U.S.C. § 481 adjustment in 1990, without permitting either the 87 percent exclusion or the four-year spread under the of the Fresh Start transition rule in section 11305(c)(2) of the 1990 Act. Kress Decl. ¶ 25.

43. Further, the IRS audit did not allow the gross-up of loss reserves under Rev. Proc. 92-77 and the regulations for discounted estimated salvage on Net Lines, as requested in the affirmative adjustment. Liberty Mutual Ans. ¶ 11, Liberty Fire Ans. ¶ 10, Kress Decl. ¶ 26.

44. Instead, for the Net Lines, the IRS allowed a Special Deduction equal to 87 percent of the December 31, 1989 corrected discounted estimated salvage balance, spread ratably over four years beginning in 1990. Kress Decl. ¶ 27.

45. Because it was based on the corrected amount, the IRS audit allowed a Special Deduction for tax year 1990 that was $2,882,028 more than the amount claimed on Liberty Companies' original 1990 tax returns. Kress Decl. ¶ 28.

46. These audit adjustments resulted in an increase in tax for 1990, which Liberty Companies paid in full. Kress Decl. ¶ 29.

47. Liberty Companies neither made, nor sought to make, any change in method to "remove estimated salvage recoverable" with respect to any accident year from unpaid losses. Liberty Companies made no change of accounting with respect to salvage in 1990 except to report estimated salvage on Gross Lines as required by the 1990 Act. Beginning in 1990 and consistently in all later years, in filing their original tax returns, amended returns, requests for adjustment and refund claims, Liberty Companies have never deviated from reporting losses incurred which reflected estimated salvage on both Net and Gross Lines. Kress Decl. ¶ 30.

48. On page 60 of the Revenue Agent's Report dated March 15, 1995, the Internal Revenue Service explained its basis for denying Liberty Companies a gross-up of their estimated salvage under Rev. Proc. 92-77 for the taxable year 1990, as follows:

> "The government contends, pursuant to Treas. Reg. 1.832-4(f)(3)(iii), that any taxpayer that 'claims the special deduction is precluded from also claiming the section 481 adjustment . . .' The government also maintains that once a company has taken the special deduction any change in method of computing unpaid losses can only be done so with the consent of the Commissioner. This position is based on section 4.04 of Rev. Proc. 92-77."

Kress Decl. ¶ 31.

Respectfully submitted:

/s/ *Peter H. Winslow*                                   Dated: September 29, 2006
PETER H. WINSLOW
Scribner, Hall & Thompson LLP
1875 Eye Street, N.W., Ste. 1050
Washington, D.C. 20006
Telephone: (202) 331-8585
E-mail: pwinslow@scribnerhall.com
Counsel for the plaintiff
Admitted pro hac vice