IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY AND SUBSIDIARIES, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 1:05-11048-RCL |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY AND SUBSIDIARIES, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 1:05-11049-RCL |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

### MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

### *Request for Oral Argument*

Plaintiffs Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company ("Liberty Companies") respectfully request a hearing regarding the matters addressed in this memorandum.

### *Introduction*

This is a motion to compel production of documents that defendant has wrongfully withheld on the erroneous bases that the documents are not relevant to the litigation and that a blanket governmental deliberative process privilege applies. The document requests are for the background files concerning Rev. Proc. 92-77 and an

earlier revenue procedure and treasury regulation that Rev. Proc. 92-77 interprets.  The document production is necessary for Liberty Companies to explore defenses concerning the purpose and application of Rev. Proc. 92-77 and the application of Treas. Reg. § 1.832-4(d) that defendant raised, for the first time, on October 18, 2006, in supplemental discovery responses, and on October 19, 2006, during a Rule 37.1 telephone conference to discuss the adequacy of the supplemental responses.  As explained more fully below, the requested documents are relevant to the new defenses defendant has raised, the deliberative process privilege does not apply, and even if it does, defendant has not properly asserted the privilege.

## I.    *Local Rule 37.1 Statements*

### A.    *Nature of the Case*

This is a federal income tax refund suit that pertains to the requirement in the Revenue Reconciliation Act of 1990 ("the 1990 Act"), Pub. L. No. 101-508, § 11305, that property and casualty insurance companies such as the Liberty Companies take estimated salvage into account in the calculation of their taxable income.  As explained in the Joint Statement the parties filed on January 5, 2006, and in the motion for summary judgment Liberty Companies filed September 29, 2006, the 1990 Act requires property and casualty insurance companies to reflect estimated salvage in their losses incurred deduction for tax purposes under 26 U.S.C. § 832, starting in taxable year 1990.  The Act provides a transition rule for salvage on gross lines of business (i.e., estimated salvage that a taxpayer did not take into account before tax year 1990), and another transition rule for salvage on net lines (i.e., estimated salvage that a taxpayer already took into account before required to do so by the 1990 Act).  Liberty Companies had salvage on both gross

lines and net lines.  The two transition rules, and the revenue procedures and treasury regulations that are based on the rules, give rise to the two issues in this case.

*Gross Lines* – The first issue in the case involves the transition rule for Liberty Companies' salvage on gross lines.  As stated above, the 1990 Act requires salvage on gross lines to be taken into account for tax purposes the same as salvage on net lines starting in the tax year 1990.  In other words, the 1990 Act requires companies to estimate the uncollected salvage and account for it in their calculation of the losses incurred deduction.  Normally in such circumstances, 26 U.S.C. § 481 would require an adjustment increasing taxable income equal to the balance of the estimated salvage as of December 31, 1989.  The December 31, 1989 balance serves as the beginning balance in the transition year – i.e., the year ending December 31, 1990.  The 26 U.S.C. § 481 adjustment to taxable income equal to the beginning balance would be necessary in order to avoid the permanent omission of that balance from income.  Section 11305(c)(2)(B) of the 1990 Act, however, provides a fresh start that forgives 87 percent of the adjustment under 26 U.S.C. § 481 that the companies otherwise would have to report for tax purposes in 1990.  Furthermore, the transition rule provides that the remaining 13 percent is to be accounted for over a four-year period starting in 1990.  In the examination in this case, the IRS imposed an adjustment under 26 U.S.C. § 481 equal to entire December 31, 1989 balance, thus depriving Liberty Companies of the fresh start and four-year spread that are required by the plain language of the statutory transition rule.

With regard to salvage on gross lines, Liberty Companies were under the impression that defendant had conceded the issue of the application of the 1990 Act's transition rule.  On October 19, 2006, however, in the last of the Rule 37.1

teleconferences that preceded this motion, defendant's counsel stated that she intends to argue that a "mutually exclusive" rule in Treas. Reg. § 1.832-4(d) preempts the transition provisions in the 1990 Act. This argument is based on an interpretation that Treas. Reg. § 1.832-4(d) requires a company that at any time reports the special deduction discussed below for salvage on net lines (even if it reverses the special deduction based on subsequent IRS guidance) to take a full adjustment under 26 U.S.C. § 481 for the beginning balance of salvage on gross lines in 1990. The regulation says no such thing and, if it did, it would be invalid because it would contravene the plain language of the transition rule for salvage on gross lines in the 1990 Act. Defendant's new argument, in other words, directly implicates the validity of the regulation. In this motion to compel, Liberty Companies seek the background file of the final regulation and the background file of the proposed regulation that preceded it, both of which would shed light on the scope and intent of the regulation.

*Net Lines* – The second issue in the case involves Liberty Companies' salvage on net lines. Net lines are those for which a company already took estimated salvage into account and thus was in compliance with the new requirement in the 1990 Act before the Act's effective date. For such net lines, section 11305(c)(3) of the 1990 Act provides for a special deduction equal to 87 percent of the balance of estimated salvage the company had recognized as of December 31, 1989, to be reported over a four-year period starting in 1990. In Rev. Proc. 92-77, however, the IRS effectively allowed a company to convert its net lines to gross lines (by grossing-up the losses on net lines in the taxable year 1990) and take the fresh start for all estimated salvage. As explained in the pending motion for summary judgment, Rev. Proc. 92-77 was published in the Internal Revenue Bulletin on

September 22, 1992, after Liberty Companies had filed their tax returns for years 1990 and 1991.  On those returns, Liberty Companies reported the special deduction on their net lines but reserved the right to change that treatment on amended tax returns pursuant to any guidance that the government might subsequently issue.  After Rev. Proc. 92-77 was published, and consistent with the reservations on their original returns, Liberty Companies sought affirmative adjustments on their 1990 returns from IRS examiners to change the treatment of net lines to the Rev. Proc. 92-77 gross-up.  The IRS examiners disallowed the affirmative adjustments.

With regard to the net lines transition, which Liberty Companies until last week thought was the only disputed issue in the case, the government in its answer denied that Rev. Proc. 92-77 was available.  In the Joint Statement, the government repeated this defense but provided no explanation.  As explained further below, Liberty Companies served discovery requests (Appendix A ("App. A") 1-18) designed to flush out the basis of the government's assertion that the revenue procedure does not apply so that Liberty Companies could address the defenses in its motion for summary judgment, which was due September 29, 2006.  On September 25, 2006, defendant filed responses (App. A 19-33) in which it interposed unfounded objections and refused to state its position.  After a Rule 37.1 conference on September 27, 2006, in which Liberty Companies' counsel informed defendant's counsel of his intent to file a motion to compel responses to the discovery requests, defendant served a supplemental response in which it gave one reason why it asserted Liberty Companies were not entitled to Rev. Proc. 92-77 treatment.  App. A 34-35.  Defendant's counsel served the supplemental response on September 28, 2006.  Given this supplemental response, Liberty Companies agreed to defer filing a motion to

compel and for sanctions, and defendant agreed not to object to a motion to compel on the basis that the motion was filed after the discovery period ended.  The parties agreed to continue efforts to resolve the discovery dispute and have an additional Rule 37.1 conference on October 4, 2006, after the filing of the motion for summary judgment.

In their motion for summary judgment filed September 29, 2006, Liberty Companies addressed the argument defendant identified in its September 28, 2006 supplemental response.  During the Rule 37.1 teleconference that took place on October 4, 2006, however, defendant's counsel notified Liberty Companies' counsel that the supplemental response provided on September 28, 2006, was not correct and would be amended.  She also stated that as of the time Liberty Companies filed their motion for summary judgment, the government had not yet developed any defenses other than the defense set forth in discovery responses, as supplemented.  Defendant's counsel suggested that she, with the help of the IRS, might develop further defenses and agreed to supplement the responses to discovery no later than October 18, 2006.  On that day, defendant supplemented the responses (App. A 36-56), abandoned the defense provided in the September 28, 2006 supplement (on which plaintiffs' summary judgment motion was based), and replaced it with six additional reasons, each of which lacks merit and each of which is based on the agreed facts that were stated in the parties' Joint Statement filed with the court on January 5, 2006.  In other words, defendant did not develop its position in this case until after Liberty Companies filed their motion for summary judgment, and, in fact, defendant has changed its position.  Although defendant's new defenses lack merit, they call into question the purpose, intent and scope of Rev. Proc. 92-77 and an earlier revenue procedure, Rev. Proc. 91-48, which Rev. Proc. 92-77

interprets.  For example, defendant asserts that Rev. Proc. 92-77 is limited to companies

that "double-counted" salvage (App. A 52), even though the plain language of the

document contains no such restriction.  As another example, defendant contends that

Liberty Companies changed their method of accounting under section 4.04 of Rev. Proc.

92-77 by "removing" salvage from unpaid losses.  App. A 47-48.  This reference in Rev.

Proc. 92-77 to "removal" of salvage is taken directly from Rev. Proc. 91-48.  In this

motion to compel, Liberty Companies seek the background files that would shed light on

the purpose, intent and meaning of the two revenue procedures.

      **B.**     *Description of discovery requests, supplements and conferences.*

    *August 25, 2006 Discovery Requests* – On August 25, 2006, Liberty Companies

served requests for admissions, interrogatories and document requests that were narrowly

focused in order to obtain an explanation of the basis for the government's defense that

Rev. Proc. 92-77 does not apply to Liberty Companies' 1990 tax year.  The discovery

was necessary because defendant failed to identify the nature of its defenses as required

by Fed. R. Civ. 26(f) in the planning phase of the case.  Liberty Companies served this

limited discovery in order to force the government to identify its defenses so that they

could address the defenses in their motion for summary judgment that was due

September 29, 2006.  The discovery requests included six contention interrogatories,

seven admissions and six document requests.  The four document requests at issue in this

motion are numbered six through nine.  (There were no requests numbered three, four, or

five.)  App. A 4-5.  The four requests are for the background files concerning Rev. Proc.

91-48, Rev. Proc. 92-77, Treasury Decision 8390 (i.e., final revised Treas. Reg. § 1.832-

4), and earlier proposed revisions to Treas. Reg. § 1.832-4.

*Defendant's September 25, 2006 Responses* – On September 25, 2006, defendant served responses to the discovery in which it refused to answer most of the admissions and interrogatories, provided no explanation of the basis of its conclusion that Rev. Proc. 92-77 does not apply, and asserted objections to all document requests.  App. A 19-33. With respect to document requests 6 through 9, defendant asserted that the background documents, which explain the revenue procedures and regulations that are at the heart of the case, are not relevant to the litigation, that the files include documents covered by the governmental deliberative process privilege, and that the documents are in the IRS headquarters building, which defendant's counsel claims cannot be entered at this time because of flood damage that took place in June 2006.  App. A 21-22.  The response does not identify any documents and contains no explanation why the governmental deliberative process purportedly applies.  With regard to the interrogatories and admission requests that required an explanation of defendant's defenses, defendant responded with an objection that it was premature to answer the interrogatories and admissions and sought to delay responses on the basis that it may discover its defenses in ongoing discovery.  App. A 26-27, 29-30. The discovery defendant's response referred to consisted of interrogatories and document requests (App. A 57-80) defendant served on Liberty Companies at such a time so that the responses were due October 2, 2006, the Monday after the close of discovery (discovery closed on Saturday, September 30, 2006), and a Rule 30(b)(6) deposition defendant's counsel scheduled to take place on Thursday, September 29, 2006, and Friday, September 29, 2006, the date Liberty Companies were required under court order to file their motion for summary judgment.  Defendant's counsel gave Liberty Companies notice of the Rule 30(b)(6) deposition by fax at 8:00

p.m. on September 21, 2006, only four business days before the depositions were scheduled to take place.  App. A 81-82.

*September 27, 2006 Rule 37.1 Conference* – On September 27, 2006, in the offices of Scribner, Hall & Thompson LLP, in Washington, D.C., Liberty Companies' counsel Peter H. Winslow conferred in person for approximately one-half hour with defendant's counsel Karen Wozniak regarding the deficient responses and informed Ms. Wozniak that Liberty Companies intended to file a motion to compel and for sanctions limiting the positions the government could take with respect to Rev. Proc. 92-77 unless defendant provided supplemental responses to the admissions and interrogatories in which Liberty Companies sought an explanation of defendant's position that Rev. Proc. 92-77 did not apply.

*September 28, 2006 Supplemental Response* – On September 28, 2006, defendant supplemented its answer to admission number 7 (App. A 34-35) and provided some documents from the IRS' administrative file of the examination of Liberty Companies (document requests that are not subject to this motion).  In the supplement to admission number 7, defendant provided a short explanation of the reason it asserted that Rev. Proc. 92-77 did not apply.

*September 28, 2006 Rule 37.1 Conference* – On September 28, 2006, as a result of defendant's supplemental response, Liberty Companies' counsel Peter H. Winslow and defendant's counsel Karen Wozniak held another Rule 37.1 conference, this time by telephone.  The teleconference lasted approximately fifteen minutes.  In the conference, Liberty Companies' counsel agreed that, in consideration of the supplement in which defendant explained its position, the companies would not immediately file a motion to

compel on the remaining interrogatories, admissions and document requests, including the requests for background documents that are the subject of this motion. Liberty Companies' counsel reserved the right to file a motion to compel the remaining answers and documents and to move for sanctions, and defendant's counsel agreed not to defend against such a motion on the basis that the motion was filed outside the discovery period, which was scheduled to end on Saturday, September 30, 2006. Counsel also agreed to have another Rule 37.1 conference on Wednesday October 4, 2006, to discuss the remaining deficiencies in defendant's responses.

*October 4, 2006 Rule 37.1 Conference* – On October 4, 2006, Liberty Companies' counsel Peter H. Winslow, Gregory K. Oyler and Samuel A. Mitchell held a Rule 37.1 conference with defendant's counsel Karen Wozniak, by telephone, for approximately one hour. In this conference, Ms. Wozniak agreed to supplement her responses to discovery in order to state the positions on which the government intended to defend with regard to Rev. Proc. 92-77 no later than October 18, 2006. In consideration of Ms. Wozniak's agreement to supplement the deficient responses no later than October 18, 2006, Liberty Companies' counsel agreed not to immediately file a motion to compel or for sanctions until after the receipt and consideration of the supplemental responses. The parties agreed to hold another Rule 37.1 teleconference on October 19, 2006.

*October 18, 2006 Supplemental Responses* – On October 18, 2006, defendant supplemented its responses to Liberty Companies' interrogatories and document requests. App. A 36-56. In the supplements, defendant abandoned the explanation it earlier provided regarding Rev. Proc. 92-77. In the supplements, which are somewhat vague,

defendant states at least six different reasons why it contends that Rev. Proc. 92-77 does not apply.

*October 19, 2006 Rule 37.1 Conference* – On October 19, 2006, Liberty Companies' counsel Peter H. Winslow, Gregory K. Oyler and Samuel A. Mitchell held a Rule 37.1 conference with defendant's counsel, Karen Wozniak, by telephone, for approximately one hour, to discuss the responses defendant provided on October 18, 2006. In this conference, Ms. Wozniak clarified that she did not intend to produce any of the documents from the background files underlying the Revenue Procedures and Treasury Regulation on which the defendant bases its defenses. Furthermore, she stated, for the first time in the litigation, that defendant will assert in its motion for summary judgment that Treas. Reg. § 1.832-4(d) contains what she referred to as a "mutually exclusive rule" that requires a company that reported a special deduction for salvage on net lines to report a full adjustment for gross lines under 26 U.S.C. § 481, despite the fresh start provided by section 11305(c)(2)(B) of the 1990 Act. Ms. Wozniak also reiterated the newly-stated defenses stated in the supplements regarding defendant's interpretation of the requirements in Rev. Proc. 92-77 and Rev. Proc. 91-48. Liberty Companies' counsel informed Ms. Wozniak of their intent to file this motion and reserved the right to file an additional motion for sanctions.

## II.    *Defendant's Objections are Unfounded.*

### A.    *Document Requests 8 & 9*

In document request 8 (App. A 5), Liberty Companies seek the background files for the final version of revised Treas. Reg. § 1.832-4. The regulations form the basis of defendant's defenses on both issues. In document request 9 (App. A 5), Liberty

Companies seek the background files for the earlier proposed revisions to Treas. Reg. § 1.832-4, published in March 1991.

### 1.    The Regulation Background Files are Relevant.

Defendant, without any explanation, asserts that the background files regarding the Treasury Regulation (and its earlier proposed version) on which it relies for its untimely raised defenses are not relevant to those defenses. This argument is specious. The Federal Rules of Civil Procedure provide that a party "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). The standard for relevance is not the same standard for admissibility at trial. Rather, the standard encompasses any material that is reasonably calculated to lead to admissible evidence. Id. In this case, the "mutually exclusive" requirement that defendant sees in Treas. Reg. § 1.832-4(d) would directly contradict the fresh start provision in the 1990 Act for gross salvage lines. The interpretation, therefore, jeopardizes the validity of the regulation. To argue that the background files that shed light on the Treasury Regulation are not relevant, even though the validity of the regulation is in question, simply is not credible. See National Muffler Dealers Assn., Inc. v. United States, 440 U.S. 472, 477 (1979) (regulatory process is relevant when the validity of the regulation is in question). Moreover, depending on what defendant asserts in its motion for summary judgment, its compliance with the notice and comment procedures in the Administrative Procedures Act may become an issue in the case. The background files are relevant.

2.    *The Governmental Deliberative Process Privilege does not apply.*

Defendant asserts that the background files are protected by the governmental deliberative process privilege. But the privilege is narrow, and the government has done nothing to show that it actually applies here. See United States v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, 119 F.3d 210, 214 (2d Cir. 1997) (The deliberative process privilege is to be "strictly confined within the narrowest possible limits consistent with the logic of its principle"). The privilege protects only the portions of documents that reflect policy deliberations that occur prior to the policy decision. In other words, the privilege covers only materials that are "pre-decisional" and "deliberative." To qualify as "pre-decisional," the documents must address matters "antecedent to the adoption of agency policy." Jordan v. United States Dep't of Justice, 591 F.2d 753, 774 (D.C. Cir. 1978) (overruled on other grounds). To qualify as "deliberative," the documents must reflect "the give-and-take of the decisionmaking." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866-67 (D.C. Cir. 1980). Even if a document is "pre-decisional" and "deliberative," the privilege is a qualified one that applies only if the government's need to protect the deliberations outweighs the requester's need for the document. See United States v. Board of Educ. of City of Chicago, 610 F. Supp. 695, 698 (N.D. Ill. 1985); Pierson v. United States, 428 F. Supp. 384, 395 (D. Del. 1977). The government has the burden to prove that the strictly confined privilege applies, and it must do so by filing an affidavit that addresses each individual document, explaining why the document is pre-decisional, why it is deliberative, and why the government needs to protect the document. United States v. Board of Educ., supra; Pierson, supra. To ensure that the privilege is applied only where

truly merited, courts require either the head of the agency, or in other circuits a

responsible delegate of the head of the agency, to personally review the documents and

assert the privilege.  See United States v. O'Neill, 619 F.2d 222, 225 (3d Cir. 1980)

(agency head must personally assert the privilege); Marriott Int'l Resorts, L.P. v. United

States, 437 F.3d 1302, 1306-07 (Fed. Cir. 2006) (surveying split in the circuits over

whether the agency head must assert the privilege and holding that a senior-level delegate

of agency head permitted to assert the privilege, but only pursuant to a formal delegation

order).

　　　　*Defendant has not met its burden of proof.*   In refusing to supply any of the

requested documents, defendant asserts that documents in the background files of the

proposed and final regulations are protected by the governmental deliberative process

privilege – this, despite the fact that the background files are supposed to be open for

public inspection and accessible pursuant to the Freedom of Information Act.  Even

though portions of some of the requested documents could possibly be pre-decisional and

deliberative, all documents certainly do not meet these strict requirements.  Moreover,

even if some of the documents are pre-decisional and deliberative, defendant has done

nothing to establish the need to protect the documents.

　　　　Defendant is not permitted to assert the governmental deliberative process

privilege on a blanket basis, without informing plaintiffs and the court of what specific

documents are being withheld and the justification of each withholding or redaction.  In

fact, there have been no redactions.  Defendant has not produced anything from the

requested background files and has not even made an attempt to sort through those files

and log the purportedly privileged documents.  Defendant's stated excuse for not

reviewing the documents is that they are stored in the IRS National Headquarters

building, which was damaged by a flood in June 2006, and closed for repairs.  Defendant

claims that the building does not have a fire alarm and that entry is unsafe.  However,

soon after the building was damaged and shut down, an IRS official assured Congress

that "the service provided to taxpayers . . . has continued unabated" and that "the public

should not notice any significant change in their interactions with the agency based on

temporary closure of [the] main office."  See Telecommuting: A 21st Century Solution to

Traffic Jams and Terrorism: Hearing Before the House Comm. on Gov't Reform's

Subcomm. on Fed. Workforce & Agency Org., 109th Cong. (2006) (statement of Carl T.

Froehich, Chief, Agency Wide Shared Services, Internal Revenue Service) available at

http://reform.house.gov/UploadedFiles/FINAL%20%20Froehlich%20Testimony.pdf.  It

is not necessary for the agency head or his senior-level delegate to sit in the IRS building

to review the requested documents to determine if the deliberative process privilege

applies.  Defendant's personnel simply need to enter the building for a short time and

retrieve the files.  It strains credulity for defendant to contend that no IRS personnel have

been permitted to enter the IRS building since June 2006, in order to retrieve files.[1]

Additionally, the United States Treasury building was not affected by the IRS building

closure, and defendant apparently has made no effort to search that building to retrieve

---

[1] Moreover, it appears that IRS personnel indeed have been permitted to enter the
National Headquarters building to retrieve files.  In September, a member of this law firm
was in a meeting with IRS personnel on an unrelated matter in which an IRS official
stated that he intended to enter the IRS headquarters building in order to retrieve
legislative history files that bear on a recent case in which the Court of Appeals for the
District of Columbia held that a section of the Internal Revenue Code is unconstitutional.
Thus, it appears that the IRS can enter its building to retrieve exactly these same types of
files to support its own litigation needs.

files.  The building closure excuse appears to be nothing more than a pretext for an unlawful, blanket privilege assertion.

Courts do not permit the government to make blanket assertions of the deliberative process privilege.  See Pacific Gas & Elec. Co. v. United States, 70 Fed. Cl. 128, 135 (Fed. Cl. 2006) (surveying cases).  Moreover, such "[a] blanket approach to asserting the privilege is unacceptable and is grounds itself for denying invocation of the privilege."  Kaufman  v. City of New York, No. 98 Civ. 2648 (MJL)(KNF) 1999 WL 239698 (S.D.N.Y. 1999).

*Defendant failed to involve the agency head or a responsible delegate*.  Not only did defendant fail to meet its burden of proof by making a blanket privilege assertion, it also apparently failed to have the agency head or a responsible senior-level delegate review the documents or assert the privilege.  The cases cited above establish that defendant is not permitted to assert the governmental deliberative process privilege unless the agency head (in some circuits) or at least an authorized delegate of the agency head (in those circuits that do not require agency head assertion) asserts the privilege.  O'Neill, supra; Marriott, supra.  Defendant provides no evidence that the head of the IRS or any authorized delegate had any participation in the decision to assert the privilege here.  Courts require an agency-head (or an authorized delegate in circuits that do not require agency head participation) to assert the governmental deliberative process privilege in order to ensure that the government takes the privilege seriously and asserts it only in cases where it is important to protect agency policy deliberations.  This is not one of those cases.

*Liberty Companies' need for the documents outweighs defendant's need to protect the documents.*  As stated above, the documents in the background files are relevant because defendant has placed the validity of the regulations directly in issue.  Moreover, Liberty Companies have a pressing need to review the documents.  Defendant, at the last minute, completely surprised Liberty Companies by raising the argument, for the first time on October 19, 2006, in a Rule 37.1 discovery conference, that it intends to argue that Treas. Reg. § 1.832-4(d) contains a "mutually exclusive" requirement that would preclude the relief plaintiffs seek on salvage on gross lines.  As indicated in their motion for summary judgment filed on September 29, 2006, Liberty Companies were under the impression, based on defendant's complete silence regarding the issue in the joint statement of the issues in the case and at the hearing on January 12, 2006, that the government had conceded the issue as it pertains to gross lines.  Defendant has placed Liberty Companies in the position of having to challenge the validity of the regulations in its reply memorandum (which is due November 15, 2006), without having any access to the files that shed light on the regulations.  Given the circumstances here, where defendant waited until the last minute to raise its arguments, after Liberty Companies had already filed its motion for summary judgment, and failed to properly assert the privilege, an order requiring immediate production of all documents is warranted.

**B.    *Document Requests 6 & 7***

In document requests 6 and 7 (App. A 4), Liberty Companies seek the background files for Rev. Proc. 91-48 and Rev. Proc. 92-77.  In its supplemental responses served October 18, 2006, defendant provided at least six reasons why it asserts

that Liberty Companies did not comply with Rev. Proc. 92-77, which interprets Rev.

Proc. 91-48.  App. A 39-43.

> 1.    *The Revenue Procedure Background Files are Relevant.*

Defendant directly placed in issue the purpose of Rev. Proc. 92-77 by providing,

after Liberty Companies filed their motion for summary judgment, a number of highly

technical reasons why the revenue procedure does not apply.  For example and as

explained above, defendant now takes the position that the revenue procedure is limited

to insurers who "double counted" salvage and subrogation on their 1990 tax returns.  The

revenue procedure contains some commentary regarding the double counting issue, but it

does not purport to limit its scope to insurers who double counted.  As taxpayers adapted

to the new requirement to estimate salvage, they encountered other issues in addition to

double-counting, including proof of the amount of salvage on net lines, and the

requirement in the regulations to use the cut-off method for salvage on gross lines if they

also reported a special deduction.  These issues are explained in Liberty Companies'

motion for summary judgment.  For the government to argue that the revenue procedure

was issued for the sole purpose of solving a double-counting problem and is limited in

scope to taxpayers that double-counted is disingenuous and will be proven so if the

background files are produced.  The background files will shed light on this argument

and other technical defenses that defendant belatedly disclosed in its last supplement.

Another technical defense that defendant raised implicates both Rev. Proc. 92-77

and Rev. Proc. 91-48.  Section 4.04 of Rev. Proc. 92-77 provides that if a taxpayer claims

the special deduction for net lines, "any change in the method of computing undiscounted

unpaid losses to remove estimated salvage recoverable . . . is a change in the method of

accounting for which taxpayer must receive approval by the Commissioner." This rule

regarding the removal of salvage was taken directly from Rev. Proc. 91-48, which

characterizes the removal of salvage as an "exclusion" of estimated salvage from losses.

As Liberty Companies explained in their motion for summary judgment, the only

reasonable interpretation of this provision is that "removal" or "exclusion" of salvage

refers to a taxpayer's attempt to change treatment of gross lines, not net lines. Defendant,

however, in its most recent supplement now reverses its position and contends without

elaboration that Liberty Companies changed their method of accounting with respect to

net lines because they

> claimed the special deduction (claimed it for 1990 and 1991) and
> subsequently sought, with their request for "Affirmative
> Adjustment under Rev. Proc. 92-77," to increase their unpaid loss
> for 1990 for accident years in which estimated salvage was not
> separately taken into account (increasing the unpaid loss by the
> estimated salvage recoverable that reduced the unpaid loss is the
> same as removing from the unpaid loss the estimated salvage
> recoverable that reduced the unpaid loss.) [App. A 37-38.]

The background files to the revenue procedures should confirm that this obtuse

position has no merit.

2.    *The governmental deliberation process privilege does not apply.*

As with the regulation background files, defendant has made an unlawful blanket

assertion of the governmental deliberative process privilege, without specifying why the

documents are privileged and without involving the agency head or a delegate.

Moreover, Liberty Companies' need to review the documents is pressing. As it did with

the gross-line issue, defendant chose to delay the identification of its defenses until after

Liberty Companies filed their motion for summary judgment, leaving Liberty Companies

to respond to the arguments by the November 15, 2006 summary judgment reply deadline. An order requiring immediate production is warranted in these circumstances.

### *Conclusion*

For the reasons discussed above, Liberty Companies request an order compelling production of the background files of Rev. Proc. 91-48, Rev. Proc. 92-77, proposed Treas. Reg. § 1.832-4(d) and T.D. 8390. Defendant ignored its obligations to identify defenses under Rule 26(f) and then ignored discovery intended to force compliance with the Rule 26(f) until after Liberty Companies had filed their motion for summary judgment. These circumstances warrant an order for immediate production.

**Rule 37.1 Certification**

**I, Peter H. Winslow, hereby certify that I complied with the requirements of Local Rule 37.1 before filing this motion.**

Respectfully submitted:

_____s/  Peter H. Winslow_____          Dated: October 27, 2006
PETER H. WINSLOW
Scribner, Hall & Thompson LLP
1875 Eye Street, N.W., Ste. 1050
Washington, D.C.  20006
Telephone: (202) 331-8585
E-mail: pwinslow@scribnerhall.com
Counsel for the plaintiff
Admitted pro hac vice