**Page 1**

[ 1]  - 70
[ 2]          IN THE UNITED STATES DISTRICT COURT
[ 3]                      FOR THE
[ 4]              DISTRICT OF MASSACHUSETTS
[ 5]  LIBERTY MUTUAL INSURANCE   )
      COMPANY AND SUBSIDIARIES.  )
[ 6]                             )
                                 )
              Plaintiff.         )
[ 7]                             )
      v.                         )
[ 8]                             ) Civil No. 05-11048-RCL
                                 )
      UNITED STATED OF AMERICA.  )
[ 9]                             )
              Defendant.         )
[10]  ---------------------------
      LIBERTY MUTUAL FIRE INSURANCE )
[11]  COMPANY AND SUBSIDIARIES.  )
                                 )
[12]          Plaintiff.         )
                                 )
[13]  v.                         ) Civil No. 05-11049-RCL
                                 )
[14]  UNITED STATES OF AMERICA.  )
                                 )
[15]          Defendant.         )
[16]          THE ORAL DEPOSITION OF JAMES W. KRESS. held
[17]  pursuant to Notice. and the applicable provisions of the
[18]  Federal Rules of Civil Procedure. before Marguerite Summers.
[19]  a Court Reporter and Notary Public. within and for the
[20]  Commonwealth of Massachusetts. at the offices of the United
[21]  States Attorney. 1 Courthouse Way. Boston. Massachusetts. on
[22]  Friday. September 29. 2006. commencing at 12:25 p.m.
[23]
[24]
[25]

**Page 2**

[ 1]  APPEARANCES:
[ 2]  For the Plaintiff:
[ 3]     SAMUEL A. MITCHELL. ESQ.
         Scribner Hall & Thompson. LLP
[ 4]     1875 Eye Street. N.W.
         Suite 1050
[ 5]     Washington.D.C.  20006-2032
         (202) 331-8585
[ 6]
      For the Defendant:
[ 7]
         KAREN E. WOZNIAK. ESQ.
[ 8]     Trial Attorney
         U.S. Department of Justice. Tax Division
[ 9]     P.O. Box 55
         Washington.D.C.  20044
[10]     (202) 307-1927
[11]     CHARLES MAURER. ESQ.
         Associate Area Counsel
[12]     IRS Division. LMSB
         10 Causeway St. Room 401
[13]     Boston. MA  02222
         (617) 565-7838
[14]
         KATHERINE A. HOSSOFSKY. ESQ.
[15]     Office of Chief Counsel
         Internal Revenue Service
[16]     1111 Constitution Ave.. N.W.
         Washington.D.C.  20224
[17]     (202) 622-8435
[18]     TIMOTHY K. COLLINS. Technical Advisor
         Internal Revenue Service
[19]     1 Montvale Avenue
         Stoneham. MA  02180
[20]     (781) 835-4029
[21]     WENDY GEORGE. Internal Revenue Agent
         IRS Division. LMSB
[22]     Brockton. MA
         (508) 897-5012
[23]
[24]
[25]

**Page 3**

[ 1]                     I N D E X
[ 2]  WITNESPAGE
[ 3]  James W. Kress
[ 4]     (by Ms.Wozniak)
5
[ 5]
[ 6]
[ 7]
[ 8]
[ 9]
[10]
[11]
[12]
[13]
[14]
[15]
[16]
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]
[25]

**Page 4**

[ 1]              S T I P U L A T I O N S
[ 2]  IT IS HEREBY STIPULATED AND AGREED TO
[ 3]  by and between the parties and their
[ 4]  respective attorneys. that all
[ 5]  objections. except as to the form of the
[ 6]  questions. shall be reserved until the
[ 7]  time of trial; that the filing of the
[ 8]  deposition be waived; and. that the
[ 9]  witness may read and sign the deposition
[10]  without any Notary Public being present.
[11]
[12]
[13]
[14]
[15]
[16]
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]
[25]

PENGAD 800-631-6989

GOVERNMENT
EXHIBIT

A part 1

## Page 5

[1] P R O C E E D I N G S
[2]    (12:25 p.m.)
[3] J A M E S W. K R E S S, having been sworn by a [4] Notary Public to tell the truth, the whole truth and [5] nothing but the truth, testified upon his oath as [6] follows: [7] EXAMINATION BY MS. WOZNIAK:
[8]    Q This deposition is being taken by the United States and [9] Liberty Mutual Insurance Company and Subsidiaries v. [10] the United States and Liberty Mutual Fire Insurance [11] Company and Subsidiaries v. the United States [12] Consolidated, Case No. 05-11048, in the United States [13] District Court for the District of Massachusetts. The [14] deposition is being taken pursuant to the Federal Rules [15] of Civil Procedure.
[16] Could you please state your name for the record?
[17]    MR. MITCHELL: One more thing, Karen. Jim told me
[18] before we came in the room, he's a diabetic. So if he
[19] needs a break to get a candy bar, I would assume that
[20] you will permit that.
[21]    MS. WOZNIAK: Just let me know.
[22]    MR. MITCHELL: Okay.
[23]    MS. WOZNIAK: Okay.
[24]    MR. MITCHELL: Thank you.
[25]    MS. WOZNIAK: Okay.

## Page 6

[1]    Q BY MS. WOZNIAK: Would you state your name for the
[2] record?
[3]    A It's James Kress.
[4]    Q Okay. You understand that you are under oath?
[5]    A Yes.
[6]    Q If you don't understand a question, will you let me
[7] know?
[8]    A Yes.
[9]    Q Are you on any medication today that would affect your
[10] ability to understand, remember or communicate?
[11]    A Not as otherwise just discussed. So, no.
[12]    Q You're not on any medication that would affect your
[13] ability to understand or remember?
[14]    A That is correct.
[15]    Q Okay. Have you spoken to anyone about the testimony
[16] that you will be giving today?
[17]    A Sam.
[18]    Q Okay. And that's Sam Mitchell?
[19]    A Sam Mitchell.
[20]    Q Okay. Before we begin, we have some stipulations.
[21] We're going to be discussing the income tax years 1985
[22] through 1993. During that time Liberty Mutual [23] Insurance Company and subsidiaries filed a consolidated [24] return, it was Form 1120, and during that time Liberty [25] Mutual Fire Insurance Company filed its own return,

## Page 7

[1] 1120-PC.
[2] And, also – oh, that's all.
[3]    Q Okay. Could you tell us what your position is [4] with Liberty Mutual Insurance Company?
[5]    A Yes. I am Senior Tax Manager in the Corporate Taxation
[6] Department.
[7]    Q For the entire Liberty Mutual Group?
[8]    A For the entire group.
[9]    Q Within the Liberty Mutual Insurance Company and
[10] its subsidiaries that filed a consolidated return, what [11] were the property and casualty companies included [12] within that group of companies?
[13]    A There were Liberty Mutual Insurance Company, Liberty
[14] Insurance Corporation, Liberty Northwest Insurance
[15] Company. I believe there were two others, First [16] Insurance Company, and I don't recall the name of the [17] other insurance company. Those – that's what I [18] recall. There may be more, but the ones that I've [19] mentioned here, Liberty Mutual Insurance Company, [20] Liberty Insurance Corporation and Liberty Northwest are [21] the only ones that had insurance sort of reserves and [22] business.
[23]    Q And Liberty Insurance Corporation, is that Liberty
[24] Insurance Company?
[25]    A LIC, if that's how we're referring to it.

## Page 8

[1]    Q Okay. From 1985 through 1993, was there any difference
[2] between the way Liberty Mutual Insurance Company and
[3] its subsidiaries calculated or computed losses incurred
[4] under 832(b)(5), is there any difference between how [5] they did it and how Liberty Mutual Fire Insurance [6] Company computed losses incurred under 832(b)(5), for [7] the tax years '85 through '93?
[8]    A For the tax years that I have specifically reviewed,
[9] which is '93 through 1990 – actually focused on those
[10] returns, I did not notice any differences. From my [11] review of other documents, such as the 870s and the RAR [12] related to prior years, I did not see any differences [13] in the methodology.
[14]    Q Okay. So my questions will be, will cover the
[15] consolidated return for Liberty Mutual Insurance
[16] Company, as well as the return for Liberty Mutual Fire
[17] Insurance Company for all of my questions, unless I
[18] otherwise distinguish, and if the answer would be
[19] different for Liberty Mutual Insurance Company versus
[20] Liberty Mutual Fire Insurance Company, will you let me
[21] know?
[22]    A Yes.
[23]    Q Okay. Prior to 1990, how did the Liberty Mutual Group
[24] compute undiscounted, unpaid losses for tax reporting
[25] purposes?

---

**Page 9**

[1] A They would have based the undiscounted, unpaid losses
[2] on whatever was filed in the annual statements, as [3] required
under the statutory accounting rules.
[4] Q So they used the unpaid loss figure from the annual
[5] statements?
[6] A As their starting point. That is correct.
[7] Q And how did they compute losses incurred under
[8] 832(b)(5)A?
[9] A They would have computed – they would have computed
[10] losses incurred as was required by Section 832 of the
[11] Code.
[12] Q Did they take estimated salvage recoverable into
[13] account separately in computing losses incurred prior [14] to
1990?
[15] A What do you mean by separately?
[16] Q That they would take their losses paid, deduct their
[17] salvage and reinsurance recoverable from that number,
[18] then add all of their discounted, unpaid losses
[19] outstanding at the end of the tax year, subtract from [20] that
the discounted, unpaid losses outstanding at the [21] end of the
preceding year, is that where they stopped [22] or did they
continue and add estimated salvage and [23] reinsurance
recoverable as of the end of the preceding [24] taxable year and
deduct estimated salvage and [25] reinsurance recoverable loss at
the end of the taxable

---

**Page 10**

[1] year?
[2] A I apologize, but can you repeat? I mean, can you
[3] repeat that, just because I want to make sure I [4] understand
what you're asking.
[5] Q The question I'm asking is: When they computed the
[6] losses incurred prior to 1990, did they have, within [7] that
computation, take into account estimated salvage [8] recoverable
separately?
[9] A And by – and I guess I'm still confused, what you mean
[10] by separately?
[11] Q It would have been where they would have added
[12] estimated salvage and reinsurance recoverable as of the
[13] end of the – well, how about this: Did they [15] separately
discount estimated salvage recoverable prior [15] to 1989 – sorry,
1990?
[16] A The anticipated salvage was discounted prior to 1990;
[17] however, it was not separately disclosed.
[18] Q And how was it discounted?
[19] A It was discounted by applying the – well, actually, it
[20] was discounted while – by applying the factors that [21] are
required to be used to discount reserves under [22] Section 846.
[23] Q Was it discounted separately or was the unpaid losses
[24] that were used in computing the incurred losses prior [25] to
1990 ---

---

**Page 11**

[1] A Mm-hm.
[2] Q --- were those figures net of estimated salvage
[3] recoverable to any extent?
[4] A Yes.
[5] Q Okay. To what extent were they net of estimated
[6] salvage recoverable?
[7] A To the extent that was, I guess, reported on the annual
[8] statement. I don't have the exact dollar amount ---
[9] Q Right.
[10] A --- in my head.
[11] Q Okay. Can you take me through the calculation or the
[12] computation of estimated salvage recov – I'm sorry.
[13] Can you take me through the computation of losses
[14] incurred prior to 1990?
[15] A I can take you through how losses incurred would be
[16] calculated prior to 1990, yes.
[17] Q Okay. Can you do that?
[18] A Sure. What we would have done or what Liberty would
[19] have done is they would have taken losses paid, as
[20] reported on the annual statement, then they would have
[21] added to that the amount of unpaid losses at the end [22] of
that year, discounted under the rule of 846 to a [23] present value
number. They would have subtracted from [24] that the beginning
unpaid losses as shown on the [25] annualstatement, discounting
present value number

---

**Page 12**

[1] under Section 846, to get losses incurred. That
[2] excludesother adjustments with respect to proration
[3] ofpercent interest in dividend. I don't know if [4] that's – if you
want to include that at this analysis [5] or not?
[6] Q No. Now you didn't mention salvage recovered.
[7] A Salvage? What do you mean by – what do you mean by
[8] salvage recovered?
[9] Q Any salvage that was recovered during the taxable year?
[10] A That would have been included or net against the amount
[11] of losses paid ---
[12] Q Okay.
[13] A --- that would have been shown in the annual – the
[14] annual statement losses paid number reflects the losses
[15] paid net of salvage received.
[16] Q Okay. Okay, now the 1990 income tax period.
[17] A Mm-hm.
[18] Q Did Liberty – did Liberty – by that I mean Liberty
[19] Mutual Insurance Company and subsidiaries, as well as
[20] Liberty Mutual Fire Insurance Company, claim this
[21] special deduction provided for in the Revenue
[22] Reconciliation Act of 1990?
[23] A Yes.
[24] Q Okay. And they claimed it with respect to the
[25] discounted amount of estimated salvage recoverable that

---

## Page 13

[1] the company had taken into account and computing losses
[2] incurred under Section 832(b)(5) in 1989; is that [3] right?
[4]     A They used those numbers to calculate the amount of the
[5] special deduction.
[6]     Q Okay. And then for the 1990 tax year, what was the
[7] amount of the special deduction? And you can – I [8] don't
mean a number, but why don't I just say that? [9] The special
deduction claimed for the – on the 1990 [10] return, was that equal
to one-fourth of 87 percent of [11] the discounted amount of
estimated salvage recoverable [12] that the company had taken
into account in computing [13] losses incurred in 1989?
[14]     A I would say – well, I will say, yes. And as we will
[15] discuss later, that number was adjusted. Well, I'll [16] say,
yes.
[17]     Q Okay. So the number was later adjusted because the –
[18] you adjusted your – why don't you explain the
[19] adjustment?
[20]     A To the extent that Liberty Mutual assumed business
[21] fromoutside insurance companies or insurance
[22] companiesthat weren't part of the consolidated
[23] return,those reserves that assumed were often
[24] reportednet of salvage and subrogation. So we
[25] laterincluded the amount of sub – salvage and

## Page 14

[1] subrogation that was net into those reserves that we [2] had
assumed in 1990. That was something that we [3] couldnot
compute ourselves and was provided to us [4] later by the pools.
[5]     Q You mean for 1989, right?
[6]     A Oh, for 19 – actually, yeah, I got them confused. For
[7] '89. I apologize.
[8]     Q Okay. Now on the – your unpaid loss figure is – your
[9] discounted unpaid loss figure is from the annual
[10] statement, and was the annual – to what extent was the
[11] unpaid loss shown on the annual statement net of
[12] estimated salvage recoverable?
[13]     A Well, I guess I would take issue with the first one. [14] We
didn't take a discounted unpaid loss from the annual
[15] statement.
[16]     Q The unpaid loss that you took from – I'm sorry, the
[17] unpaid loss?
[18]     A Yes.
[19]     Q On the – to what extent was that net of estimated
[20] salvage recoverable?
[21]     A It was net of – and, again, I don't have the specific
[22] number in my head, but it was net of the amount of
[23] salvage and subrogation that we have provided. In some
[24] of the documentation, I think it was somewhere around
[25] $300 million.

## Page 15

[1]     Q Okay. More generally, just to establish this so that [2] we
can – makes our questions make sense going forward. [3] The
unpaid losses shown on the 1989 annual statement [4] were net of
all estimated salvage recoverable with the [5] exception of
estimated salvage recoverable with respect [6] to the case
reserves for the auto physical damage line [7] for Liberty Mutual
Insurance Company and its [8] subsidiaries with the exception of
Northwest Mutual; is [9] that right?
[10]     A I'm sorry, could you ask that again?
[11]     Q Can you tell me, in general terms, the unpaid loss,
[12] what lines of business did it reflect?
[13]     MR. MITCHELL: Karen, can we just shorthand to – [14] can
you just tell him, could you just ask him which [15] lines were net?
[16]     MS. WOZNIAK: Okay.
[17]     MR. MITCHELL: Which lines were gross ---
[18]     MS. WOZNIAK: Okay.
[19]     MR. MITCHELL: --- and he'll understand what [20] you're
asking.
[21]     MS. WOZNIAK: Okay.
[22]     MR. MITCHELL: Okay.
[23]     MS. WOZNIAK: All right.
[24]     Q BY MS. WOZNIAK: For the purpose of computing the
[25] unpaid loss shown on the annual statement, which lines

## Page 16

[1] of business were net?
[2]     A I would – I'll answer that by saying that all lines [3] were
net, with the exception of a piece of the auto [4] physical damage
line of business.
[5]     Q Okay. And as a further clarification, would you say
[6] Northwest, Liberty Northwest Insurance Company – oh,
[7] okay. No, we have, we have what we need. The piece,
[8] apiece of the auto physical damage line.
[9] So with respect to the – that piece of the [10] autophysical
damage line that was not reflected in [11] theunpaid loss shown
on the annual statement, did [12] thecompany – sorry, did the
companies elect the [13] freshstart provided by the 1990 Revenue
[14] ReconciliationAct?
[15]     A Yes.
[16]     Q In – sorry, on the 1990 return?
[17]     A Yes.
[18]     Q Okay. And what they included as a 481 adjustment was
[19] one-fourth of 13 percent of the amount of estimated
[20] salvage recoverable with respect to the auto physical
[21] damage line that was not net?
[22]     A They reflected one-fourth of 13 percent of the
[23] discount.
[24]     Q Okay.
[25]     A Non net salvage – salvage operation.

## Page 17

[1]   Q Now in computing its losses incurred, how did the
[2] company do that for 1990? And first I want to ask, how [3] did it
calculate it with respect to the 1990 accident [4] year?

[5]   A What do you mean by ---

[6]   MR. MITCHELL: Don't use the word accident year. [7] Just
of 1990.

[8]   MS. WOZNIAK: It makes a difference.

[9]   MR. MITCHELL: Okay. I'll be quiet. I was just [10] trying to –
just make sure, Jim, that you understand [11] what she's saying
before you answer the question.

[12]   A Would you please repeat the question?

[13]   Q BY MS. WOZNIAK: Well, why don't, why don't you tell me
[14] then the method of computing losses incurred on the
[15] 1990 – for the 1990 taxable year?

[16]   A It was the same as in prior years, with the exception
[17] of the, I guess, the adjustments that got us to the [18] April
netter, if you would call it that, to include all [19] salvage and
subrogation, whether gross or net, for the [20] year.

[21]   Q Now Liberty, Liberty companies took this special
[22] deduction provided under the Revenue Act ---

[23]   A Correct.

[24]   Q --- is that for 1990?

[25] So did the company change its method of accounting

## Page 18

[1] with respect to inclusion in taxable income of [2] estimated
salvage recoverable for all lines of business [3] attributable to
1990?

[4]   MR. MITCHELL: I'm going to object to the – any [5] question
that requires Jim to make a legal [6] interpretation of what change
in method of accounting [7] means for purposes of this case.

[8]   MS. WOZNIAK: Okay.

[9]   MR. MITCHELL: He can tell you what they did, what
[10] they reported on the tax return, but he's not going to [11] give
you a legal opinion on what a change in method of
[12] accounting is for purposes of Internal Revenue Code or
[13] its regulations.

[14]   Q BY MS. WOZNIAK: Please continue.

[15]   A Okay. So when you say 1990, are you talking about
[16] 1990 tax year?

[17]   Q This question is about the 1990 tax year, but specific
[18] – specifically, how was estimated salvage recoverable,
[19] with respect to 1990 accident years, treated in [20] computing
the losses incurred for 1990 taxable year?

[21]   A There was a component of the 1990 accident year,
[22] anticipated salvage that was net in the reserves and [23] there
was a component that was gross for that year.

[24]   Q For 1990. So when – so can you go through, like
[25] you did before, can you go through the computation

## Page 19

[1]   oflosses incurred with respect to 1990 accident [2] years?

[3]   A There would be losses paid, which would have included
[4] the salvage and subrogation received related to all [5] accident
year. You would have added to that, and this [6] is how it was
done on the return, you added to that [7] thediscounted or the
unpaid losses as shown in the [8] annual statement, discounted
under Section 846, that [9] included anticipated salvage netted for
all accident [10] years, and you subtracted the unpaid losses as
shown [11] onthe annual statement beginning of the year,
[12] discounted, whichagain would have included all of the
[13] anticipatedsalvage for accident years prior to 1990. [14] And
in addition to that, there was an adjustment to [15] subtract from
losses incurred the ending anticipated [16] salvage that had not
been net. Then you would have [17] added to losses incurred the
– subtract the ending – [18] add the beginning anticipated unpaid
salvage that had [19] not been net, and those numbers were
adjusted or [20] reduced and increased by the amount of special
[21] deduction, as well as the adjustment to include [22] 13percent
of – or one-quarter of 13 percent of the [23] non net salvage at
12/31/89.

[24]   Q Why did they subtract only the non net ending
[25] anticipated salvage?

## Page 20

[1]   A On that specific line?

[2]   Q Oh, what – I guess that the non net is with respect to [3] a
portion of the auto physical damage line, but I'm [4] asking, why
was only the non net anticipated salvage [5] subtracted and why
was only the non – wait, did you [6] say non – I got confused.
[7] Can you take ---

[8]   MR. MITCHELL: It was different gross – Jim, it's [9] different
net gross?

[10]   THE WITNESS: Yes, that would be helpful.

[11]   MR. MITCHELL: That might be helpful. Double
[12] negatives are not good.

[13]   MS. WOZNIAK: Okay.

[14]   Q BY MS. WOZNIAK: So take me from unpaid losses
[15] discounted.

[16]   A Okay.

[17]   Q Okay. From there, you're going to?

[18]   A Subtract out the anticipated salvage that was gross,
[19] and then add – and that was as of the end of the year,
[20] and then add the beginning gross salvage as of the
[21] beginning of the year.

[22]   Q Okay. And just so that we're clear, when you're
[23] talking about the gross salvage, you're talking about [24] that
portion of the auto physical damage line that was [25] not net into
the unpaid loss shown on the annual

## Page 21

[1] statement?

[2]    A That is correct.

[3]    Q Why did the company only -- when, when, I guess
[4] calculating this, subtracting the end year salvage [5] and
adding the beginning salvage, estimated [6] salvage, why was it
using just the gross estimated [7] salvage?

[8]    A It wasn't.

[9]    Q Okay. I thought we just went through this.

[10]    A In calculating losses incurred ---

[11]    Q Mm-hm.

[12]    A --- all components of salvage and subrogation are in
[13] that calculation.

[14]    Q Right. Okay. Why did it - for where it's separately
[15] stated, why -- or why is it just the gross that was
[16] separately taken into account?

[17]    A Because the net is already included in my statutory
[18] unpaid loss reserves.

[19]    Q Okay. With respect to – I'm sorry.

[20] So that we -- we just went over the -- with [21] respect to 1990
accident year?

[22]    A Mm-hm.

[23]    Q Now let's -- I'd like you to go through that same
[24] computation for the pre 1990 accident year for net [25] lines,
including the portion of the auto physical

## Page 22

[1] damage line that was net.

[2]    A There's no difference.

[3]    Q Okay. Was the calculat -- was the computation for pre
[4] 1990 accident years, was there a single computation for
[5] lines that were net and the line that was not, the [6] gross line?

[7]    A I guess I don't understand your question.

[8]    Q I'd like you to go through the computation for losses
[9] incurred with respect to the 1990 taxable period for [10] pre
accident years – for pre – sorry, for pre 1990 [11] accident years.

[12]    A Okay. You start with losses paid as shown on the
[13] annual statement, which would be net of salvage
[14] received, related to pre 1990 accidents. And then you
[15] add to that the discounted unpaid losses on the annual
[16] statement, net of anticipated salvage for pre 1990
[17] accident years, or which includes, I should say, the [18] net
anticipated salvage for pre 1990 accident years. [19] And then you
subtract from that the discounted [20] statutory unpaid loss, which
again includes the net [21] anti – or the anticipated salvage from
pre 1990 [22] accident years. You subtract next the anticipated
[23] salvage for the gross line or the component, the gross
[24] component of that line that relates to pre 1990 [25] accident
years. You add to that the beginning

## Page 23

[1] anticipated salvage for the gross component of that [2] line
related to pre 1990 accident years to get losses [3] incurred. Then
you have the – again, to the – the [4] inclusion of the special
deduction and 13 percent of [5] the 7 percent of the discounted
gross net.

[6]    Q Well, that would have been included in your overall
[7] calculation as opposed to each year, accident year, [8] your
different accident year calculations, right?

[9]    A The adjustments are in the overall losses in your
[10] calculation.

[11]    Q So for pre 1990 accident years, was losses incurred
[12] calculated separate, computed separately for the net
[13] lines as opposed to that one portion of a line that was
[14] gross, over all of the pre 1990 accident years, all the
[15] losses with respect to those calculated together?

[16]    A Well, I guess I don't understand, again, what you mean
[17] by separately, and I'm not sure of the distinction [18] you're
trying to make between calculations.

[19]    Q Because Liberty took the special deduction ---

[20]    A Mm-hm.

[21]    Q --- didn't they have to calculate their pre 1990 – [22] their
– sorry.

[23] For the pre – for the – because they took the [24] special
deduction, for the pre – for – they had to – [25] is it correct that
they had to discount estimated

## Page 24

[1] salvage recoverable attributable to – because they [2] took the
special deduction, didn't they have to compute [3] their unpaid
losses with respect to the 1990 year and [4] pre 1990 year
differently?

[5]    A Could you – could you ask that, again? I just want to
[6] be clear on the years you're looking at.

[7]    MS. WOZNIAK: Let's – can we take just ---

[8]    MR. MITCHELL: That's fine, Karen.

[9]    (Off the record from 1:04 p.m. to 1:15 p.m.)

[10]    Q BY MS. WOZNIAK: Are you familiar with the cutoff
[11] method that was required by the regulations under 832
[12] and Rev. Proc. 91-48?

[13]    A I am familiar, yes, that that exists.

[14]    Q Okay. Can you tell me how Liberty applied the cutoff
[15] method for the 1990 taxable year, distinguishing how it
[16] treated the 1990 accident years and the pre – I'm [17] sorry,
the 1990 accident year and the pre 1990 accident [18] years?

[19]    A Liberty did not apply the cutoff method.

[20]    Q Why?

[21]    A Because the law, the 1990 Act, did not require it.

[22]    MR. MITCHELL: I'm going to object to any kind of [23] a
legal – I mean, you can tell her what the [24] affirmative adjustment
said on its face, if you'd like, [25] but don't make any legal
interpretations.

[1]    Q BY MS. WOZNIAK: Okay. So for the 1990 taxable year
[2] Liberty did not employ the cutoff method with respect [3] to its
change in method of accounting required by the [4] Revenue Act?
[5]    MR. MITCHELL: I'm going to object, again, to [6] anything
that makes him interpret a change in method of [7] accounting. I
mean, we can stipulate what was said in [8] the disclosure on the
tax return. If you want to do [9] that, that's fine.
[10]    MS. WOZNIAK: Let's take a moment off the record. [11] A
moment, we'll take a moment off the record.
[12]    (Off the record from 1:17 p.m. to 1:19 p.m.)
[13]    Q BY MS. WOZNIAK: All right. So then for the 1990
[14] taxable year, did it calculate – did it compute – did [15] Liberty
compute losses incurred for all accident years [16] in one
computation?
[17]    A Yes.
[18]    Q Okay. Why don't we go through that computation?
[19]    A Sure.
[20]    Q Okay.
[21]    A But I'll just tell you, it's the same one we've gone
[22] through twice already.
[23]    Q Right. But we – let's just go through it with how [24] they
did it on the return, because I had you do it [25] separately, and
that's not how it was done. So let's

[1]    – let's go through how losses incurred was computed [2] for
the 1990 taxable year.
[3]    A Okay.
[4]    Q And when you go through, if you could specify that it
[5] was all accident years, you know, when you say unpaid
[6] losses, that it was for all accident years.
[7]    A Okay.
[8]    Q Okay. So let's go through the computation.
[9]    A Starting point is losses paid.
[10]    Q For all accident years?
[11]    A For all accident years. For accident years 1990 and
[12] prior.
[13]    Q Okay.
[14]    A Which the statutory loss is paid on that, which is net
[15] of salvage and subrogation received for all acci – for
[16] accident year 1990 and prior. Added to that, the [17] statutory
unpaid loss reserves, which were also net of [18] anticipated
salvage and subrogation for 1990 and prior [19] accident years.
And when I say statutory losses, I [20] mean ending or 12/31/90
statutory unpaid loss reserves.
[21]    Q And let me stop you there. You say it was net?
[22]    A Anticipated salvage.
[23]    Q And net anticipated salvage for?
[24]    A Accident years 1990 and all prior.
[25]    Q Okay. Is this a shortcut? This is the unpaid loss

[1] figure from the annual statement?
[2]    A Correct.
[3]    Q Okay. All right.
[4]    A And discounted under Section 846 rules?
[5]    Q Mm-hm.
[6]    A Subtract from that the annual statement statutory
[7] unpaid losses as of the beginning of the year, which [8] again
has anticipated salvage net in there. And, [9] again, all discounted
under Section 846. And then we [10] subtracted, again, the gross,
let's call it, amount of [11] anticipated salvage that related to the
gross piece of [12] the auto physical damage line, and then we
added the [13] gross – and add the subtraction at the end of your
[14] balance, and then we're going to add in the beginning [15] of
your balance of the anticipated salvage on the gross [16] – the
gross anticipated salvage on the auto physical [17] damage line
that had not been included or had been not [18] in that against the
reserves. And then we also [19] included in this calculation, as
shown on the tax [20] return, the special deduction as well as the
income [21] inclusion for the 13 percent of the – 25 percent of
[22] 13percent of the gross salvage.
[23]    Q Did Liberty seek approval for this method of computing
[24] its losses incurred?
[25]    A No.

[1]    Q Okay. For the – okay. So for the gross anticipated
[2] salvage at the beginning of the year, you just took the
[3] figure for the end of 1989 that you had for – not for [4] tax
purposes, because you hadn't included that for tax [5] purposes
before 1990. You took the estimated salvage [6] recoverable that
was not taken into account in the auto [7] physical damage line at
the end of 1989?
[8]    A I'm sorry, could you ask ---
[9]    Q Yes, sorry.
[10]    A --- it again?
[11]    Q Your opening balance for gross estimated salvage
[12] recoverable was the estimated salvage recoverable that
[13] wasn't taken into account in the auto physical damage
[14] line?
[15]    A If in the beginning as the 1/1/1990, yes.
[16]    Q Yes. Okay. So that was just your figure for 1980 – [17] the
end of 1989, was what you used for the start?
[18]    A Yes.
[19]    Q Okay. All right. Now, was the special deduction that
[20] you took in 1990, was that allowed?
[21]    A Allowed by?
[22]    Q The IRS?
[23]    A There is a special deduction that is in effect as
[24] agreed to in the 870(a)(d) that was signed subsequent [25] to
the audit.

## Page 29

[1]   Q So the income tax assessment with respect to the 1980
[2] (sic) taxable year reflects the inclusion of the [3] special
deduction ---
[4]   A Which ---
[5]   Q --- claimed on the re ---
[6]   MR. MITCHELL: You said 1980, Karen, I think you [7] meant
1990.
[8]   MS. WOZNIAK: Oh, sorry, 1990.
[9]   MR. MITCHELL: Okay, I'm sorry.
[10]   MS. WOZNIAK: Okay.
[11]   Q BY MS. WOZNIAK: So the 1990 income tax assessment
[12] reflects allowance of the special deduction claimed on
[13] the return?
[14]   A Correct.
[15]   Q Okay.
[16]   A Among other things, yes.
[17]   Q Right. And was the fresh start election allowed by the
[18] government?
[19]   A Well, I guess what – no. No. I guess, what do you
[20] mean by election?
[21]   Q Oh. That you had an income adjustment equal to
[22] one-quarter of 13 percent of the gross salvage
[23] recoverable as of the end of 1989.
[24]   A What was agreed to on reserve was the government's
[25] inclusion of 100 percent of the beginning or the 1989

## Page 30

[1] ending salvage and subrogation.
[2]   Q Okay. All right. For 19 ---
[3]   A The gross number, I'm sorry. The gross salvage and
[4] subrogation.
[5]   Q Right. For 19 – okay, 19 ---
[6]   MR. MITCHELL: Karen.
[7]   MS. WOZNIAK: Yes.
[8]   MR. MITCHELL: I think – could we – can you [9] leave for
just one second?
[10]   (Off the record from 1:30 p.m. to 1:32 p.m.)
[11]   MR. MITCHELL: The last – the answer regarding [12] the
adjustment on the gross ---
[13]   MS. WOZNIAK: I forget the question.
[14]   MR. MITCHELL: Sorry.
[15]   MS. WOZNIAK: Right.
[16]   Q BY MS. WOZNIAK: We're going to strike your answer
with [17] respect to the inclusion of the full amount of
[18] estimated salvage recoverable, with respect to the [19] portion
of the auto physical damage line that was [20] grossed. We're
going to strike your answer that [21] inclusion was agreed to
and reserved by the company.
[22] I'd like to ask you a different question. Did the [23] income tax
assessment against Liberty reflect, for the [24] 1990 taxable year,
reflect the inclusion of the entire [25] balance of estimated salvage
recoverable at the end of

## Page 31

[1]   1989 with respect to the portion of the auto physical
[2] damage line that was grossed?
[3]   A Yes.
[4]   Q Inclusion as an income figure?
[5]   A That is correct.
[6]   Q Okay. For 1991, did – why don't we go through the
[7] income tax computation – sorry, no.
[8] For 1991, let's go through the computation for [9] losses
incurred or is it identical to 1990?
[10]   A It is identical to 1990 with the exception of, for [11] Liberty
Mutual Insurance Company, the Fire Insurance [12] Company and
Liberty Insurance Company, there was an [13] adjustment to the
losses paid number that differed from [14] statutory reporting that
reflected a write-off of a [15] bad, basically an uncollectible agent
balance that has [16] nothing to do with salvage and subrogation.
[17]   Q Okay.
[18]   A But the same general methodology was applied, where
[19] they would take losses paid, take the change in the
[20] discounted tax reserves that were net on salvage, and
[21] then add in the change in the gross salvage, again,
[22] including the impact of the special deduction and the [23] 25
percent of 13 percent income inclusion.
[24]   Q Okay.
[25]   A As originally filed.

## Page 32

[1]   Q Okay. And was this special deduction allowed by the
[2] IRS?
[3]   A There is a special deduction reflected in the payment.
[4]   Q Okay.
[5]   A If you want to say it that way.
[6]   Q The special deduction is reflected in the IRS's income
[7] tax assessment with respect to the 1991 taxable year; [8] is that
right?
[9]   A That is correct.
[10]   Q Okay. And does the income tax assessment for the 1991
[11] taxable year reflect an inclusion of income of [12] one-fourth
of 13 percent of the gross salvage [13] recoverable at the end of
1989?
[14]   A Yes.
[15]   Q Now, in answer to the question about what was reflected
[16] in the 1990 income tax assessment, what was reflected
[17] you said was 100 percent of the – so maybe you want to
[18] make sure your answer for '91 is right, or if you need [19] to
correct it?
[20]   A To my under – it's not – I apologize. It is not [21] reflected
in the liability.
[22]   Q Okay. Now ---
[23]   A I would – can I like double-check that, anyhow, or –
[24] and I think if that's the case, I'm not 100-percent [25] certain,
but we have that figure.

Page 33

[1] MR. MITCHELL: It's in your ---

[2] A I've got a document that would show ---

[3] Q BY MS. WOZNIAK: Okay.

[4] A --- what's in ---

[5] MR. MITCHELL: It's in your – well, just hang on [6] a second.

[7] It's in your revenue agent reports.

[8] MS. WOZNIAK: Right.

[9] MR. MITCHELL: I am sure you ---

[10] MS. WOZNIAK: Right.

[11] MR. MITCHELL: It's all reflected in your [12] documents that you have, all these questions are, as [13] far as what's included in what year.

[14] MS. WOZNIAK: Just off the record. I understand [15] that.

[16] MR. MITCHELL: I just don't want Jim to have to go [17] back to his office and look up an answer that ---

[18] MS. WOZNIAK: Right.

[19] MR. MITCHELL: --- you already know. That's all. [20] And that's what he was referring to, I think, as [21] an RAR.

[22] MS. WOZNIAK: Okay.

[23] Q BY MS. WOZNIAK: Did Liberty seek approval for the [24] method of accounting for losses incurred that it used [25] in 1991? Did it seek approval with respect to the 1991

Page 34

[1] tax period?

[2] A Not to my knowledge.

[3] Q And who would know definitely?

[4] A No. They did not.

[5] Q Okay. Why didn't they seek approval of the method of [6] accounting that they used with respect to their 1991 [7] tax rule period?

[8] MR. MITCHELL: I'm going to object to any kind of [9] a request for a legal answer as to, again, what's the [10] method of accounting or why they did or didn't do it. [11] It's a legal issues.

[12] You still have to answer, Jim.

[13] THE WITNESS: That's fine.

[14] A I – my answer to that is I don't think at the time or [15] I don't think that anyone thought it wa required.

[16] Q BY MS. WOZNIAK: That what was required?

[17] A Permission.

[18] Q Okay. And that – is that the same answer that you [19] would have with respect to why they didn't seek [20] permission with respect to the method they used for the [21] 1990 taxable year?

[22] A That's correct.

[23] Q Okay. In 1992, did Liberty claim the special [24] deduction?

[25] A No.

Page 35

[1] Q Does the income tax assessment against Liberty with [2] respect to the 1992 taxable period reflect inclusion of [3] the special deduction?

[4] A Yes.

[5] Q Did the – did Liberty include one-fourth of 13 percent [6] of the gross estimated salvage recoverable at the end [7] of 1989 as in – as income in its 1992 return?

[8] A Karen, I'm sorry, could you ask that again?

[9] Q Did it include the one-fourth of 13 percent of the [10] gross estimated salvage recoverable as income on its [11] 1992 return?

[12] A No. Originally filed?

[13] Q As originally filed.

[14] A It did not claim that amount, no.

[15] Q Are the answers that you just gave for 1992 the same [16] for 1993?

[17] A Yes.

[18] Q Okay. How did – for the – for the 1992 taxable year, [19] how did Liberty compute its losses incurred?

[20] A It was no different than in the prior years, with the [21] exception of the fact that there was no adjustment for [22] the special deduction. However, there was an [23] adjustment, I believe, to take an amount, 13 percent of [24] the entire salvage and subrogation, discount in salvage [25] and subrogation amount, not the net, not the gross

Page 36

[1] lines, only, for those two years.

[2] Q Wait, I didn't understand that. Maybe we just better [3] go through ---

[4] A Okay.

[5] Q --- the computation.

[6] A The losses paid, plus or minus the change in, plus the [7] ending reserve in salvage and subrogation, discount in [8] Section 846, ending statutory reserve as shown in the [9] annual statement. And discount under Section 846 and [10] then subtracted from that the beginning statutory [11] annual statement loss reserve, which was net of [12] anticipated salvage and subrogation. Added to that or [13] subtracted again from that, the ending anticipated [14] salvage ---

[15] Q And ---

[16] A --- gross amount.

[17] Q Okay.

[18] A And then added – the beginning of anticipated salvage, [19] and then it was also, I believe, an adjustment.

[20] Q The beginning was also gross? The beginning estimated [21] salvage was also gross?

[22] A I believe that is the case in 1992. And this was [23] adjusted by a revised – I want to say it was adjusted [24] by 13 percent of the total of net and gross discounted [25] salvage at 25 percent – or 25 percent of the 13

**Page 37**

[1] percent of the total discount salvage. I believe [2] that's what happened on that return.
[3] Q And the total estimated salvage recoverable with
[4] respect to which calendar year?
[5] A With respect to the 12/31/89 balance.
[6] Q With respect to the 12/31?
[7] A Well, if you're talking about ---
[8] Q Oh, okay, wait. Sorry. With respect to the – you
[9] included income, 25 percent of the 13 percent of the [10] total estimated salvage recoverable, both net and [11] gross, as of the end of 1989?
[12] A On a discounted basis, yes. Again, I believe [13] that's
[14] Q And you included that ---
[15] A --- how that was originally filed.
[16] Q You included that in your 1992 return?
[17] A Correct.
[18] Q Okay. With the exception of that piece, the income
[19] piece, did the – did Liberty seek approval for the [20] method of accounting losses incurred with respect to [21] the 1992 taxable year, seek approval of the [22] commissioner?
[23] A No.
[24] Q Okay. Now why did it – why did it include this
[25] adjustment for 25 percent of 13 percent of the total

**Page 38**

[1] estimated salvage recoverable as of the end of 1989?
[2] A Why? It didn't.
[3] Q What?
[4] A It didn't from 1992.
[5] Q It didn't do that in 19 ---
[6] A Which – which did that? Which – what are you – [7] could you – I mean, just could you ask that question [8] again, please?
[9] Q Oh, okay. So we just went through how the 1992 taxable
[10] year was calculated.
[11] A Mm-hm.
[12] Q And you said that an adjustment was made, equal to
[13] 25 percent of 13 of the total estimated salvage
[14] recoverable with respect to – for, sorry, as of the [15] end of 1989?
[16] A Correct.
[17] Q That was included in the 1992 taxable year?
[18] A Taxable income for the 1992 originally filed return,
[19] yes.
[20] Q Oh, okay. Why?
[21] A Because at that point in time we had also filed an
[22] affirmative adjustment.
[23] Q Okay.
[24] A To adjust the amounts as filed in 1989 and 1990.
[25] Q Okay. So when was the affirmative, request for

**Page 39**

[1] affirmative adjustment filed?
[2] A When?
[3] Q When.
[4] A I don't know the exact date. It was in 1993. I'm
[5] assuming prior to the filing of the 1992 return.
[6] MR. MITCHELL: Karen, I ---
[7] A I mean, I think that ---
[8] MR. MITCHELL: Yeah, I can give you the date ---
[9] A And I'm not sure.
[10] MR. MITCHELL: --- if you want it.
[11] MS. WOZNIAK: Right.
[12] MR. MITCHELL: I can give it to you. So we'll [13] stipulate to the date.
[14] MS. WOZNIAK: Okay.
[15] Q BY MS. WOZNIAK: Okay. Was the calculation of the 1993
[16] losses incurred – sorry, losses incurred with respect [17] to the 19 – sorry. For purposes of the 1993 taxable [18] year, were – was the computation of losses incurred [19] the same as it was, the same method as 1992?
[20] A That is correct.
[21] Q Including this adjustment for 25 percent of 13 percent
[22] of the total estimated salvage recoverable?
[23] A On the return as originally filed, yes.
[24] Q Okay. And does the income tax assessment, with respect
[25] to the 1992 taxable period, reflect inclusion of the

**Page 40**

[1] income adjustment for 25 percent of 13 percent of the [2] total estimated salvage recoverable?
[3] A I do not – I do not believe so, and it's effectively [4] the same inclusion as was in '91.
[5] Q And the same – is that the same answer for 1993?
[6] A That is correct.
[7] Q Okay. Did Liberty seek approval of the method of, the
[8] method of computing losses incurred that it used for [9] the 1993 taxable period?
[10] A No.
[11] MR. MITCHELL: Can we clarify, Karen, what you [12] mean by seek approval? Do you mean, did they file a [13] 3115? Is that what you mean?
[14] MS. WOZNIAK: I'm sorry to say that I don't know [15] what – oh, can this be off the record?
[16] (Off the record from 1:30 p.m. to 1:32 p.m.)
[17] MR. MITCHELL: We're just going to – this is – [18] we're just going to clarify the record.
[19] Ms. Wozniak asked several questions about whether [20] the company sought approval, and she's agreed that what [21] she meant was whether the company filed a Form 3115, [22] seeking approval for a change in method of accounting. [23] And all of Jim's answers were, which were, no, [24] pertained to that question, did the company file a [25] Form 3115, seeking approval for a change in method of


GOVERNMENT EXHIBIT
A part 2
PENGAD 800-831-6989

## Page 41

[1] accounting with regard to salvage and subrogation.

[2] Thank you.

[3] Q BY MS. WOZNIAK: Okay. Why don't you tell me about the
[4] 1993 request for affirmative action, what did the – [5] what was
Liberty seeking?

[6] A The request for affirmative sought to retract the
[7] amounts claimed as a special reduction and to avail [8] itself of
the provisions in the Revenue [9] Procedure 92-77.

[10] Q And what taxable year did it want to first avail itself [11] of
– oh, could you repeat your answer? Say you [12] wanted to retract
the special deduction, claimed in [13] 1991 and – in 1990 and
1991, and, and what was the [14] rest of it?

[15] A And avail itself of the provisions of Revenue
[16] Procedure 92-77.

[17] Q And by that do you mean the gross up provision?

[18] A I mean to – yes.

[19] Q Okay. And what year did they want to first gross up or
[20] take advantage of the gross up provision?

[21] A The 1990 tax year.

[22] Q And that was – request was not granted, right?

[23] A It is not reflected in the – I don't know how you said [24] it
before, but not effectively not.

[25] Q The income tax assess ---

## Page 42

[1] A It was not. At least in full. I think there was a [2] pool
correction component to that, I believe, that may [3] have been
granted.

[4] Q But did that have something to do with the gross up?

[5] A Just to the numbers that it may have applied to. It
[6] would have changed the net salvage, the discounted net
[7] salvage ---

[8] Q Okay.

[9] A --- that would have been at issue.

[10] Q Okay. But we're not talking about any sort of gross up
[11] with respect to the pool.

[12] A It would have impacted the amount of salvage that was
[13] net against the reserves, as of 12/31/89.

[14] Q Well, I'm sorry, I'm not following you.

[15] A Back to when we originally sort of started this
[16] discussion, we talked a little bit about the amount of
[17] anticipated salvage.

[18] Q Mm-hm.

[19] A That was net into or net against the unpaid loss
[20] reserves. We talked about how the companies were
[21] members of some unrelated pools and that the, those
[22] pools, we would assume reserves from those pools that
[23] were net of anticipated salvage and may not have been
[24] able to distinguish at that point in time what that net
[25] amount was. Part of – I believe this affirmative

## Page 43

[1] adjustment or was later adjusted through the audit [2] process
and there was – we were able or Liberty was [3] able to identify the
amount of netted salvage that was [4] coming through that pool
and increased the amount of [5] netted salvage that it was
reporting as of 12/31/89 for [6] purposes of all this transition.

[7] Q Okay. So it was correcting, seeking to correct its net
[8] salvage recoverable figure?

[9] A The net anticipated salvage at 12/31/89.

[10] Q You were seeking to correct?

[11] A Correct the dollar amount of that.

[12] Q Okay. When Liberty Mutual elected this special
[13] deduction in 1990, did it follow the safe harbor [14] provisions
of the regulation?

[15] MR. MITCHELL: I'm going to object to any attempt [16] to
require Jim to interpret the regulation. He can [17] tell you what
they did, but he's not going – well, if [18] you make him, I guess he
will interpret it, but I'm [19] objecting to it on the ground it's legal.

[20] Q Which safe harbor are you referring to?

[21] Q BY MS. WOZNIAK: Under the Regulations 1.8932-4,
[22] special deduction, safe harbor.

[23] Let me – let me ask this, then.

[24] MR. MITCHELL: Karen, can we just stop?

[25] MS. WOZNIAK: Yes.

## Page 44

[1] MR. MITCHELL: Why don't you do that?

[2] (Off the record from 1:50 p.m. to 1:50 p.m.)

[3] Q BY MS. WOZNIAK: On or before September 16th, 1991,
did [4] Liberty submit a statement to each company's state of
[5] domicile, disclosing the extent to which losses [6] incurred for
each line of business reported on its 1989 [7] annual statement
were reduced by estimated salvage [8] recoverable?

[9] A To my knowledge, no.

[10] Q Did it attach a statement – did Liberty attach a
[11] statement to its federal income tax return filed in – [12] filed
with respect to the 1990 taxable year, agreeing [13] to apply the
special rule for overestimates under the [14] Revenue Act of 1990,
to the amount of estimated salvage [15] recoverable for which it
had taken the special [16] deduction?

[17] A I actu – I don't know the answer to that, but there
[18] were disclosures in the return related to this issue.

[19] Q And was that with respect to each property and casualty
[20] company included on the consolidated return and with
[21] respect to Mutual – I'm sorry, Liberty Mutual Fire
[22] Insurance Company?

[23] A Again, I'm not, I'm not sure about which disclosure
[24] you're ---

[25] Q Oh, sorry. The – the – not the disclosure, but the

Case 1:05-cv-11048-RCL Document 32-2 Filed 10/30/2006 Page 3 of 8

## Page 45

[1] agreement that it will apply the special rule for
[2] overestimates under the Revenue Act, to the amount of
[3] estimated salvage recoverable for which it had taken [4] the
special deduction?
[5]    A And, again, I, I would have to read the statement. I
[6] know there were statements that related to salvage made [7] in
those returns, but I'm not -- I don't know whether [8] that specific
language was in those statements.
[9]    Q Okay. Liberty's request for affirmative action to take
[10] advantage of the provisions of -- to gross up [11] provisions of
Rev. Proc. 92-77, was Liberty only [12] seeking to gross up or to
get into the gross up with [13] respect to the 1990 taxable year?
[14]    A Could you please repeat that?
[15]    Q The affirmative adjustment that Liberty was seeking
[16] with respect to Rev. Proc. 92-77 ---
[17]    A Mm-hm.
[18]    Q --- was it only seeking to take advantage of the gross
[19] up provisions for the 1990 taxable year or did it want [20] to
gross up, with respect to the 1991 taxable year, as [21] well?
[22]    A I would say, yes, it wanted to take advantage of the
[23] gross up in 1990. I don't understand the 19 -- I don't
[24] understand your question about 1991.
[25]    Q Did it want -- did -- was it seeking to gross up, with

## Page 46

[1] respect to 1991, as well?
[2]    A I guess I'm not sure how -- I'm not sure how the
[3] revenue procedure would do that. And I guess I just [4] don't
understand how that could occur if you do it in [5] 1990, how you
would do it again later.
[6]    Q You would be grossing up both sides.
[7]    A What ---
[8]    Q Or, no, actually, you wouldn't, because it's before
[9] 1993. Never mind.
[10] Okay. So my question is, was Liberty seeking to [11] proceed
under Rev. Proc. 92-77 with respect to the 1991 [12] taxable year?
[13]    A Yes. Well, can I clarify that a little bit?
[14]    Q Yes.
[15]    MR. MITCHELL: Do you understand what she's trying
[16] to ask her? Just make sure you understand what she's
[17] trying to ask you.
[18]    THE WITNESS: Well, that's why I want to clarify [19] this.
[20]    A By taking advantage of this revenue procedure for 1990,
[21] the impact would flow forward, and that's what I'm
[22] saying. I'm not saying that they would try to apply [23] this to
1991. Maybe I should get clarification, [24] because I'm not sure.
I'm not sure how you're -- what [25] you're asking with respect to
1990 and 1991.

## Page 47

[1]    Q BY MS. WOZNIAK: With respect to 1991, was it seeking
[2] to gross up the unpaid loss shown on the annual [3] statement,
was it seeking to gross that up with the [4] amount of estimated
salvage recoverable included in [5] that unpaid loss figure for the
unpaid loss numbers [6] that it -- for the 1991 taxable year, had it,
from how [7] you described how losses were, losses incurred were
[8] computed, you're taking the increase of losses, of [9] unpaid
losses from the beginning of the year to the end [10] of the year.
Was Liberty seeking to gross up the [11] losses unpaid for the
beginning of the year and for the [12] end of the year for 19 -- for
the 1991 taxable year?
[13]    A I'd say, no, because that would have already been done
[14] in 1990 by following this revenue procedure.
[15]    Q Now following the revenue procedure for 1990 ---
[16]    A Mm-hm.
[17]    Q --- wouldn't it only be seeking -- wouldn't it only --
[18] you know what, I apologize, I strike my last question
[19] because it's incorrect. You would only be grossing up [20] at
the end of the year for 1992, under the revenue [21] proc. But --
why don't we just hold that? Maybe I'll [22] ask you more about it
and maybe I won't.
[23]    A Okay.
[24]    Q I'll ask you about the disclosure requirements. Did
[25] Liberty file a statement by March 17th, 1992, did it

## Page 48

[1] file a statement with the appropriate state regulatory
[2] authority of each state to which the companies were
[3] required to submit an annual statement that disclosed [4] by
line of business and accident year the extent to [5] which
estimated salvage recoverable was taken into [6] account in
computing the unpaid losses shown on the [7] annual statement
filed by the company for the 1990 [8] calendar year?
[9]    A Liberty Mutual Insurance Company, Liberty Insurance
[10] Company and Liberty Mutual Fire Insurance Company
[11] included a footnote in their 1991 annual statements [12] that
were filed that disclosed all information. They [13] were filed prior
to the March 17th date that you [14] mentioned.
[15]    Q Okay.
[16]    MS. WOZNIAK: I'd like to take a short break.
[17]    MR. MITCHELL: Sure.
[18]    (Whereupon, a recess was taken from 2:08 p.m. to
[19] 2:36 p.m.)
[20]    Q BY MS. WOZNIAK: We went over the computation of
losses [21] incurred for the 1990 taxable year, was also the same
[22] for the subsequent years, and that computation, just to
[23] review it, was that you take the paid losses, which was [24] a
figure net of salvage and subrogation received. To [25] that you
add the discounted unpaid losses as of the end

## Page 49

[1] of the taxable year and that unpaid loss figure is – [2] the unpaid loss figure is from the annual statement, it [3] is net of estimated salvage recoverable, with respect [4] to all of the lines of business with the exception of [5] the auto physical damage line, in which case it's a [6] portion of the estimated salvage recoverable is net in [7] that unpaid loss figure. And then you subtract from [8] that the discounted unpaid loss at the beginning of the [9] taxable year, which again is a figure net of estimated [10] salvage recoverable, with the exception of the portion [11] of estimated salvage recoverable associated with the [12] unpaid loss for the auto [13] physical damage – I'm sorry, auto physical damage [14] line. And then from that you add – to that, you add [15] the gross estimated salvage recoverable as of the [16] beginning year, and you subtract the gross estimated [17] salvage recoverable as of the end of the taxable year.

[18] And by gross estimated salvage recoverable, what we [19] were talking about is the estimated salvage recoverable [20] with respect to the unpaid loss, portion of the unpaid [21] loss for the auto physical damage line that was not [22] net. So did I get that right?

[23]    A Yes.

[24]    Q Okay. So in this computation the net estimated salvage [25] recoverable is only taken into account once; is that

## Page 50

[1] right?

[2]    A Correct.

[3]    Q Okay. So when Liberty sought the affirmative [4] adjustment so that it could take advantage of the gross [5] up provisions of Rev. Proc. 92-78, it was not seeking [6] relief from a double inclusion of net estimated salvage [7] recoverable; is that right?

[8]    A It's 92-77, not 78.

[9]    Q Sorry, 92-77.

[10]    A And I got mixed up. All right. That stuck in my head. [11] Could you ask that question ---

[12]    Q Oh, sure.

[13]    A --- again, please?

[14]    Q When Liberty requested an affirmative adjustment ---

[15]    A Mm-hm.

[16]    Q --- so that it could proceed, take advantage of the [17] gross up provision in Rev. Proc. 92-77 ---

[18]    A Yeah.

[19]    Q --- with respect to the 1990 taxable year, in seeking [20] that affirmative adjustment to proceed under Rev. [21] Proc.92-77, it was not seeking relief from a double [22] inclusion of net estimated salvage recoverable?

[23]    A And could you define double inclusion for me?

[24]    Q Well, we just went through the computation and you [25] agreed that the net estimated salvage recoverable was

## Page 51

[1] only taken into account once ---

[2]    MR. MITCHELL: I'm going to object.

[3]    Q BY MS. WOZNIAK: --- for 1990?

[4]    A Okay, and I agreed to that. And let me just clarify [5] what I meant by that, which made the change in the net [6] salvage and subrogation anticipated, discounted, [7] whatever, was the amount that was taken into income, in [8] addition to the change in the gross. If that helps you [9] at all, I'm not sure it does.

[10]    Q Okay. Could you repeat that?

[11]    A That in 1990, what is included as taxable income is the [12] increase in the net anticipated salvage during the year [13] on a discounted basis.

[14]    Q Well, for gross salvage, isn't it a decrease is taken [15] into account, the decrease over the year?

[16]    A Well, the change in the gross salvage would also be a [17] component ---

[18]    Q Right.

[19]    A --- of my losses incurred.

[20]    Q Right. But your unpaid loss figure is a net figure.

[21]    A Which unpaid – yes.

[22]    Q Your unpaid loss for the beginning and end of the year [23] is a net figure, and it takes into account estimated [24] salvage recoverable to the extent that the unpaid loss [25] was net by that estimated salvage recoverable. Let me

## Page 52

[1] ---

[2]    A That's right.

[3]    Q Within your unpaid loss figure, it's a net figure.

[4]    A Mm-hm.

[5]    Q Net of estimated salvage recoverable, except for the [6] salvage recoverable associated with the portion of the [7] auto physical damage line that was not the – where the [8] unpaid loss was not net, where the loss reserve was not [9] net.

[10]    A What we've referred to as the gross and up?

[11]    Q Right.

[12]    A Yes.

[13]    Q So that net amount, the net estimated salvage [14] recoverable, is only taken into account once when you [15] compute the losses incurred. It's taken into account [16] when you add your discounted unpaid loss at the end of [17] the year to your losses paid and subtract the [18] discounted unpaid losses at the beginning of the year. [19] When you ---

[20]    A Which?

[21]    Q When you do that, you take into account your net [22] estimated salvage recoverable?

[23]    A The change in the net?

[24]    Q Right.

[25]    A Correct.

Page 53

[1]    Q And then when you add the gross estimated salvage
[2] recoverable as of the beginning of the year and [3] subtract the
gross estimated salvage recoverable as of [4] the end of the year,
you take into account the change [5] in the gross estimated
salvage?
[6]    A Correct.
[7]    Q So you only take into account the change in the net
[8] estimated salvage recoverable once in this computation [9] of
the losses incurred, right?
[10]    A With how you've explained it, yes. Before any
[11] transition adjustments. Just let me say it that way.
[12]    Q And what, what do you mean by transition adjustments?
[13]    A The transition adjustments specified by the 1990 Act,
[14] the special deduction and the fresh start, all that.
[15]    Q Okay. Okay.
[16]    A Absent that, what you're saying is absolutely correct.
[17]    Q Absent that. Okay. So you have included in here a
[18] change in the net estimated salvage recoverable over [19] the
year, and you only have that included in your [20] computation of
losses incurred once?
[21]    A For 19 – correct.
[22]    Q Okay. So when you are seeking to proceed under Rev.
[23] Proc. 92-77 in order to gross up, you weren't seeking
[24] relief for double inclusion of net estimated salvage
[25] recoverable in your computation of losses incurred?

Page 54

[1]    MR. MITCHELL: I'm objecting. The question is
[2] compound. It has a number of different premises that [3] the
witness doesn't understand, and I'm objecting to [4] it.
[5]    Q BY MS. WOZNIAK: When Liberty sought the affirmative
[6] adjustment to proceed under Rev. Proc. 92-77 ---
[7]    A Mm-hm.
[8]    Q --- was it seeking relief from a double inclusion of [9] net
estimated salvage recoverable?
[10]    A And, again, I guess I'm not – I'm not sure what you
[11] mean by double inclusion. Relief from double [12] inclusion,
that I don't – that could mean a lot of [13] things, I guess. It's very
---
[14]    Q Okay. If you look at the way that losses incurred was
[15] computed in 1990 ---
[16]    A Mm-hm.
[17]    Q --- why would you need to gross up the amount of your
[18] unpaid loss by the amount of estimated salvage
[19] recoverable that was net in that loss?
[20]    A Are you talking about the beginning or the ending or
[21] what are you talking about?
[22]    Q Well, under the Rev. Proc., if it's prior to 1993 tax
[23] year, you only gross up at the end, but let me see if I [24] can.
[25]    (Pause.)

Page 55

[1]    Q Okay. Under the gross up provision as it – as it's
[2] described in the regulations it says: An insurance [3] company
that takes estimated salvage recoverable into [4] account in
determining the amount of its unpaid losses [5] shown on its
annual statement is allowed to increase [6] its unpaid losses by the
amount of estimated salvage [7] recoverable taken into account.
[8] So the unpaid loss for the beginning of the year [9] and for the
end of the year in your computation for [10] losses incurred in
1990 ---
[11]    A Mm-hm.
[12]    Q --- is what they described is an unpaid loss figure
[13] that has estimated salvage recoverable taken into
[14] account.
[15]    A Yes.
[16]    Q If you increase your unpaid losses by the amount of
[17] estimated salvage recoverable taken into account in
[18] determining those unpaid losses, and then proceeded
[19] with your 1990 losses incurred computation, would you
[20] still have the change in net estimated salvage
[21] recoverable taken into account?
[22]    A If you simply did a gross up of your ending reserve,
[23] you would not have – well, you would have a change in
[24] anticipated salvage, but it wouldn't be part of the [25] gross
up. And I guess I'm getting confused, because

Page 56

[1] you're looking at one piece instead of the whole.
[2]    Q Okay. Let's look at 1990.
[3]    A Mm-hm.
[4]    Q And let's increase our unpaid loss figure for the
[5] beginning of the year and for the end of the year.
[6]    A By?
[7]    Q By the amount of estimated salvage recoverable that's
[8] taken into account in computing the unpaid loss.
[9]    A Okay.
[10]    Q Okay. So let's do that. Now, when you do your
[11] computation for your losses incurred, you have entirely
[12] wiped out the change in the net estimated salvage
[13] recoverable from year end to the beginning of the year; [14] is
that right?
[15]    A I would agree with that.
[16]    Q Okay. And that's because the only place in this
[17] computation of losses incurred that net estimated [18] salvage
recoverable is taken into account in within the [19] unpaid loss
amount; is that correct?
[20]    A That is correct.
[21]    Q So that's what I mean when I say the change in net
[22] estimated salvage recoverable – sorry. That's what I
[23] mean when I say net estimated salvage recoverable is
[24] not taken into account twice in this computation.
[25]    A Oh, and I agree with that.

## Page 57

[1] Q Okay.

[2] A Assuming there's no gross up involved.

[3] Q Right. With the gross up, we've seen there's no net [4] estimated salvage – isn't taken into account at all.

[5] A The gross up as you described it, I'll agree with that.

[6] Q Okay. But without the gross up, we're only taking into [7] account net estimated salvage once?

[8] A And, again, I – you need to define gross up. Do you [9] mean it by the way – well, you need to define ---

[10] Q Right.

[11] A --- gross up for me.

[12] Q Right. Right now I'm not talking about the gross up. [13] Let's just talk about how losses incurred were computed [14] for 1990.

[15] A Okay.

[16] Q In that computation, you only take estimated salvage [17] recoverable into account once?

[18] A The change in estimated salvage recoverable is taken [19] into account once. I agree. As filed, as originally [20] filed, or in the way that this has been described, yes, [21] I agree with that.

[22] Q Okay. If you subtract your undiscounted, unpaid losses [23] – take your paid losses and you add to that your [24] unpaid losses at the end of the taxable year, and you [25] subtract your discounted unpaid losses at the beginning

## Page 58

[1] of the year, and again these unpaid losses are net [2] figures, then instead of adding gross estimated [3] salvage, you added your total estimated salvage [4] recoverable as of the beginning of the year and [5] subtracted your total estimated salvage recoverable as [6] of the end of the 1990 tax year, you would have taken [7] estimated, net estimated salvage recoverable into [8] account twice, right?

[9] A Assuming the pluses and minuses for reserve changes and [10] salvage changes are going in the right direction, which [11] I think you got them right, I would agree with that.

[12] Q Oh, assuming that I added and subtracted the same way [13] that you did when ---

[14] A Yes.

[15] Q Okay. So would there be a problem with the number you [16] get if you calculated, if you computed your losses [17] incurred for 1990 in that manner, would you have the [18] right number for losses incurred?

[19] A Problem, what do you mean by if I – what do you mean [20] by problem and what to you mean right number?

[21] Q Okay. Do you see – with this computation that I just [22] explained, do you see any problems with that?

[23] A It depends on what you want to calculate. I mean, I'm [24] not trying to be flip, I'm ---

[25] Q Okay.

## Page 59

[1] A I don't know what you're trying – I don't know what [2] number you're trying to get to.

[3] Q Okay. In the way that I've just described it, where [4] you're not just adding your gross estimated salvage [5] recoverable as of the beginning of the year and [6] subtracting the gross estimated salvage recoverable at [7] the end of the year, but you're using your total [8] estimated salvage recoverable for both figures, don't [9] you have a problem of double accounting with respect to [10] the net estimated salvage recoverable?

[11] A If you have included the net estimated salvage as an [12] offset to your unpaid loss reserves and then you [13] include it again, and taking the change in anticipated [14] salvage by taking the full amount ---

[15] Q Right.

[16] A --- you have double accounted.

[17] Q Okay.

[18] A The net anticipated salvage.

[19] Q But the way that Liberty calculated its 1990 – sorry, [20] its losses incurred for the 1990 taxable year, you [21] don't have that double accounting of net estimated [22] salvage recoverable; is that right?

[23] A If you take out all of the transition rule pieces and [24] what the 1990 Act was doing, I would agree with you, [25] that – minus all that, just a standard – if the 1990

## Page 60

[1] Act didn't exist and we're talking about a losses [2] incurred calculation today, yesterday, three years ago, [3] five years from now, I would agree with that statement.

[4] Q Okay. So, yes, just talking about this computation of [5] losses incurred, not taking into account fresh start, [6] special deduction, you don't have any problem with a [7] double accounting of estimated salvage recoverable?

[8] A As originally filed, correct.

[9] Q Okay. So the relief for double accounting provided by [10] Rev. Proc. 92-77 – oh, wait. The relief from double [11] accounting that's provided by the gross up provision in [12] Rev. Proc. 92-77 is not needed; is that correct?

[13] MR. MITCHELL: I'm going to object. I don't see [14] there's any kind of interpretation of the purposes [15] that---

[16] MS. WOZNIAK: Okay.

[17] MR. MITCHELL: --- IRS had behind Revenue [18] Procedures 92-77, whether it's double accounting or the [19] other many purposes that were behind that revenue [20] procedure.

[21] MS. WOZNIAK: Okay.

[22] Q BY MS. WOZNIAK: Do you – well, first of all, you can [23] answer that question.

[24] A Well, that's fine, but I still – in order to answer [25] that question, I need to understand what you mean by

### Page 61

[1] relief from double accounting, because it's not, it's [2] not clear, when you're using it in context with ---

[3]    Q Okay.

[4]    A --- 92-77 ---

[5]    Q Okay.

[6]    A --- what you mean by that.

[7]    Q Okay. What I mean – we just ---

[8]    A And ---

[9]    Q We just ---

[10]    A --- further, I'm not convinced that that's the only [11] thing that Rev. Proc. 92-77 says.

[12]    Q Okay.

[13]    A And so I just need to know where you're going.

[14]    Q Okay. What I want – we've established that the way [15] losses incurred were computed for the 1990 taxable [16] year---

[17]    A Mm-hm.

[18]    Q --- there were no – there was no issue of double, of a [19] double accounting for estimated salvage recoverable. [20] Setting aside the special deduction in fresh start, [21] we're not talking about that. We're just talking about [22] this loss computation that starts with the paid losses [23] and ends with your change in the gross estimated [24] salvage recoverable. With that method of computing the [25] losses incurred, there's no double accounting for the

### Page 62

[1] estimated salvage recoverable?

[2]    A That is correct.

[3]    Q So if you were to gross up the unpaid losses, rather [4] than getting relief from a double accounting of net [5] estimated salvage recoverable, you'd be wiping out the [6] accounting of net estimated salvage recoverable; is [7] that correct?

[8]    MR. MITCHELL: I object. The question is, I [9] guess, vague.

[10]    Q BY MS. WOZNIAK: Did you understand the question?

[11]    A It's unclear as to what you mean by wipe out and in [12] what context, because you're taking pieces of the [13] provisions of revenue procedure, and I'm not sure what [14] you mean when you say wipe out. You mean wiping out [15] other piece as they would appear or wiping out just [16] that ---

[17]    Q No, no. You just ---

[18]    A --- or wiping out ---

[19]    Q If you gross ---

[20]    A What does wipe out mean?

[21]    Q If you grossed up your unpaid losses ---

[22]    A Mm-hm.

[23]    Q --- then this computation of losses incurred would not [24] take into account net estimated salvage recoverable; is [25] that right?

### Page 63

[1]    A At the end of the year, yes.

[2]    Q Okay.

[3]    A That computation, without regard to any other stuff.

[4]    Q Okay. For the regulations providing for grossing up [5] unpaid losses, would doing so, would grossing up unpaid [6] losses correct a double accounting for a company – or [7] for – correct a double accounting for a computation [8] of losses incurred that, in addition to using unpaid [9] losses, net unpaid losses, is it a change in the total [10] estimated salvage recoverable over the year?

[11]    A Can you – I'm sorry, I didn't, I don't understand that [12] question.

[13]    Q Okay. If losses incurred were computed, where you're [14] taking into account the change over the year of net [15] unpaid losses and also taking into account the change [16] over the year in the total estimated salvage [17] recoverable, would grossing up the unpaid losses before [18] you made your computation correct a double accounting [19] of estimated salvage recoverable?

[20]    A Yes. Yes. Assuming when you say net unpaid losses, [21] that is net of salvage.

[22]    Q I'm sorry? When I say – yes, net unpaid losses are [23] losses that are net, to a certain extent, net of [24] estimated salvage recoverable. Okay.

[25] But Liberty Mutual – or, I'm sorry, Liberty, the

### Page 64

[1] Liberty Group companies didn't need to make any [2] correction for a double accounting?

[3]    MR. MITCHELL: And, again, I'd object to the legal [4] nature of the question.

[5]    MS. WOZNIAK: I'm saying ---

[6]    MR. MITCHELL: What happened with the revenue [7] procedure.

[8]    Q BY MS. WOZNIAK: No, I'm saying, the way that Liberty [9] Mutual – the Liberty Group companies calculated their [10] unpaid – sorry, calculated their – computed, sorry. [11] The way that the Liberty Group companies computed [12] their losses incurred for 1990 does not need any [13] correction ---

[14]    MR. MITCHELL: I object to the question.

[15]    Q BY MS. WOZNIAK: --- for ---

[16]    MR. MITCHELL: I'm sorry. I spoke over you.

[17]    Q BY MS. WOZNIAK: --- for a double accounting of net [18] estimated salvage recoverable?

[19]    MR. MITCHELL: Objection, again.

[20] You have to answer it, Jim.

[21]    THE WITNESS: No, that's fine.

[22]    A And I guess – I mean, I can answer that, but, you [23] know, you need to get to what answer. And when I'm [24] talking about this specific example that really has [25] nothing to do with the 1990 Act, I would say, yes,

## Page 65

[1] because they did not need to have a gross up to get to [2] the right losses incurred amount on that piece of paper [3] the way you've described it.

[4] Q Because the correct amount is already there?

[5] A Because the correct amount, excluding any provisions of [6] the 1990 Act, assuming that the company is a full – [7] they have always included and will always include [8] anticipated salvage, whether it's net or gross in their [9] income, yes, you would get to the right answer in that [10] example.

[11] Q Okay.

[12] MS. WOZNIAK: If we can take a break and then ---

[13] MR. MITCHELL: Sure.

[14] MS. WOZNIAK: --- we'll be done. I mean, you'll [15] come back and then maybe a question or two or – we're [16] finishing up.

[17] THE WITNESS: Oh, really?

[18] MS. WOZNIAK: We're going to be finishing up.

[19] (Whereupon, a recess was taken from 3:09 p.m. to [20] 3:23 p.m.)

[21] Q BY MS. WOZNIAK: Did you participate in the preparation [22] of the 1990 income tax return for Liberty Mutual [23] Insurance Company and subsidiaries or Liberty Mutual [24] Fire Insurance Company?

[25] A Not the original filings.

## Page 66

[1] Q What filings did you participate in?

[2] A The claim for refund.

[3] Q Okay. Is that the same for the 1991 taxable year?

[4] A I did not participate in any original filings until [5] 2002, if that answers your question.

[6] Q Oh, okay. And you participate – did you participate [7] in preparing the claim for refund with respect to the [8] 1991 taxable year?

[9] A There were protective claims that were filed for 1991.

[10] Q Okay. Did you participate in the preparation of the [11] request for affirmative adjustment under Rev. [12] Proc.92-77?

[13] A No.

[14] Q Did you say you were the senior tax manager for the ---

[15] A A senior tax manager.

[16] Q Oh, a senior tax manager for the Liberty Group. Okay. [17] And how long have you held that position?

[18] A A year and a half now.

[19] Q And ---

[20] A A little more. A year and nine months, datewise.

[21] Q Okay. And prior to that – oh, how long have you been [22] with the, with the Liberty Group?

[23] A Almost three and a half years.

[24] Q So prior to being a, one of the senior tax managers, [25] what was your position?

## Page 67

[1] A I was a tax manager, too, which is a tax manager.

[2] Q Okay.

[3] MS. WOZNIAK: Okay. I don't have any other [4] questions.

[5] MR. MITCHELL: Good. Okay.

[6] (Whereupon, the deposition was concluded at [7]    (3:25p)

## Page 68

[1] C E R T I F I C A T E [2] COMMONWEALTH OF MASSACHUSETTS )

) SS. [3] COUNTY OF SUFFOLK )

[4] I, Marguerite Summers, a Court Reporter and Notary [5] Public, within and for the Commonwealth of Massachusetts, do [6] hereby certify that there came before me on this 29th day of [7] September, 2006, the person hereinbefore named, who was by [8] me duly sworn to tell the truth, the whole truth, and [9] nothing but the truth, concerning and touching the matter in [10] controversy in this cause; that he was thereupon examined [11] upon his oath, and his examination reduced to typewriting, [12] under my direction, and that this deposition transcript is a [13] true and accurate record of the testimony given by the [14] witness.

[15] I further certify that I am not related to any of [16] the parties hereto or their counsel, and that I am in no way [17] interested in the outcome of said cause.

[18] Dated at Boston, Massachusetts, this 5th day of [19] October, 2006.

[21]
Marguerite Summers

[22] NOTARY PUBLIC
My Commission Expires:

[23] November 10, 2011

---

**Page 1**

[ 1]   - 50
[ 2]               IN THE UNITED STATES DISTRICT COURT
[ 3]                          FOR THE
[ 4]                   DISTRICT OF MASSACHUSETTS
[ 5]   LIBERTY MUTUAL INSURANCE    )
       COMPANY AND SUBSIDIARIES.   )
[ 6]                               )
                                   )
               Plaintiff.          )
[ 7]                               )
          v.                       )
                                   ) Civil No. 05-11048-RCL
[ 8]                               )
       UNITED STATED OF AMERICA.   )
[ 9]                               )
               Defendant.          )
[10]   ------------------------    )
       LIBERTY MUTUAL FIRE INSURANCE )
[11]   COMPANY AND SUBSIDIARIES.   )
                                   )
[12]                               )
               Plaintiff.          )
                                   )
[13]                               )
          v.                       ) Civil No. 05-11049-RCL
                                   )
[14]   UNITED STATES OF AMERICA.   )
                                   )
[15]           Defendant.          )
[16]           THE ORAL DEPOSITION OF ROY K. MORELL. held
[17]   pursuant to Notice. and the applicable provisions of the
[18]   Federal Rules of Civil Procedure. before Marguerite Summers.
[19]   a Court Reporter and Notary Public. within and for the
[20]   Commonwealth of Massachusetts. at the offices of the United
[21]   States Attorney. 1 Courthouse Way. Boston. Massachusetts. on
[22]   Friday. September 29. 2006. commencing at 9:40 a.m.
[23]
[24]
[25]

---

**Page 2**

[ 1]   APPEARANCES:
[ 2]   For the Plaintiff:
[ 3]        SAMUEL A. MITCHELL. ESQ.
             Scribner Hall & Thompson, LLP
[ 4]        1875 Eye Street. N.W.
             Suite 1050
[ 5]        Washington.D.C.  20006-2032
             (202) 331-8585
[ 6]
       For the Defendant:
[ 7]
[ 8]        KAREN E. WOZNIAK. ESQ.
             Trial Attorney
[ 9]        U.S. Department of Justice. Tax Division
             P.O. Box 55
[10]        Washington.D.C.  20044
[11]        (202) 307-1927
             CHARLES MAURER. ESQ.
[12]        Associate Area Counsel
             IRS Division. LMSB
[13]        10 Causeway St. Room 401
             Boston. MA  02222
[14]        (617) 565-7838

[15]        KATHERINE A. HOSSOFSKY. ESQ.
             Office of Chief Counsel
             Internal Revenue Service
[16]        1111 Constitution Ave.. N.W.
             Washington.D.C.  20224
[17]        (202) 622-8435
[18]        TIMOTHY K. COLLINS. Technical Advisor
             Internal Revenue Service
[19]        1 Montvale Avenue
             Stoneham. MA  02180
[20]        (781) 835-4029
[21]        WENDY GEORGE. Internal Revenue Agent
             IRS Division. LMSB
[22]        Brockton. MA
             (508) 897-5012
[23]
[24]
[25]

---

**Page 3**

[ 1]                                     I N D E X
[ 2]   WITNESPAGE
[ 3]   Roy K. Morell
[ 4]      (by Ms.Wozniak)
[ 5]
[ 6]
[ 7]
[ 8]
[ 9]
[10]
[11]
[12]
[13]
[14]
[15]
[16]
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]
[25]

---

**Page 4**

[ 1]                    S T I P U L A T I O N S
[ 2]        IT IS HEREBY STIPULATED AND AGREED TO
[ 3]   by and between the parties and their
[ 4]   respective attorneys. that all
[.5]   objections. except as to the form of the
[ 6]   questions. shall be reserved until the
[ 7]   time of trial; that the filing of the
[ 8]   deposition be waived: and. that the
[ 9]   witness may read and sign the deposition
[10]   without any Notary Public being present.
[11]
[12]
[13]
[14]
[15]
[16]
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]
[25]

PENGAD 800-631-6989
GOVERNMENT
EXHIBIT
B part 1

## Page 5

[1] P R O C E E D I N G S
[2]   (9:40 a.m.)
[3] R O Y K. M O R E L L, having been sworn by a Notary
[4] Public to tell the truth, the whole truth and nothing [5] but the
truth, testified upon his oath as follows: [6] EXAMINATION BY MS.
WOZNIAK:
[7]   Q Could you please state your name for the record?
[8]   A My name is Roy K. Morell, M-o-r-e-l-l.
[9]   Q This deposition is being taken by the United States and
[10] Liberty Mutual Insurance Company and Subsidiaries v.
[11] the United States and Liberty Mutual Fire Insurance
[12] Company and Subsidiaries v. the United States
[13] Consolidated Case No. 05-11048, in the United States
[14] District Court for the District of Massachusetts.
[15] The deposition is being taken pursuant to the Federal
[16] Rules of Civil Procedure.
[17] Do you understand, Mr.Morell, that you're under [18] oath?
[19]   A Yes, I do.
[20]   Q If you don't understand a question, will you let me
[21] know?
[22]   A We'll let you know.
[23]   Q Are you on any medication today that would affect your
[24] ability to understand, remember or communicate?
[25]   A No, I'm not.

## Page 6

[1]   Q Have you spoken with anyone about the testimony that
[2] you are going to be giving to today?
[3]   A I prepared for this presentation with the help of Sam
[4] Mitchell.
[5]   Q Why don't you tell us what your position is, what your
[6] affiliation is with the plaintiff?
[7]   A My title is Vice-President & Chief Actuary. I'm in the
[8] corporate actuarial department of Liberty Mutual, and [9] my
current responsibilities are a variety of things, [10] including loss
reserve oversight and assisting a number [11] of clients within the
Liberty Mutual Group.
[12]   Q When you say Liberty Mutual, you're referring to – is
[13] that the name used for both of the – sort of both of [14] the
plaintiffs together and all their subsidiaries?
[15]   A Yes.
[16]   Q Okay.
[17]   A Yes.
[18]   Q And how long have you been in that position?
[19]   A I've been vice-president and chief actuary, well, I
[20] don't know exact date, about five years ago. I've been
[21] with the company since 1972.
[22]   Q What were you doing prior to holding your current
[23] position?
[24]   A A typical variety of actuarial jobs through my career.
[25] My first year was in underwriting and after that I went

## Page 7

[1] into the actuarial department in 1973 and did a [2] combination
of personal lines and commercial lines [3] pricing and reserving
type jobs. And the corporate [4] actuarial department was formed
in 1992.
[5]   Q I wanted to just start with sort of a corporate
[6] background. Could you just explain what Liberty Mutual
[7] Insurance Company and subsidiaries consists of?
[8]   A Okay. Today the organization is much more complex ---
[9]   Q Okay.
[10]   A --- than in 1990.
[11]   Q Let's take it then ---
[12]   A So I presume you're asking about 1990.
[13]   Q Let's start with 1989.
[14]   A Okay
[15]   Q And then we can talk about ---
[16]   A In 1989 and 1990 ---
[17]   Q --- the difference.
[18]   A --- there's no difference. No difference.
[19]   Q Okay.
[20]   MR. MITCHELL: Hang on just a second.
[21]   THE COURT REPORTER: You can't talk at the same
[22] time.
[23]   MS. WOZNIAK: I'm sorry.
[24]   MR. MITCHELL: Yeah, have to just ---
[25]   THE WITNESS: Yes.

## Page 8

[1]   MR. MITCHELL: You just let her finish.
[2]   THE WITNESS: Absolutely. Yes.
[3]   MR. MITCHELL: Okay.
[4]   A There are no differences between 1989 and 1990 in the
[5] structure and components of the Liberty Mutual Group. [6] So
in those years, there were six property, casualty [7] insurance
companies that made up the Liberty Mutual [8] Group. Those six
companies were Liberty Mutual [9] Insurance Company, Liberty
Mutual Fire Insurance [10] Company, Liberty Insurance
Corporation, LM Insurance [11] Corporation, The First Liberty
Insurance Corporation [12] and Liberty Northwest Insurance
Corporation. Those [13] were the six companies that when I use
the term Liberty [14] Mutual Group, as respects the period '89, '90,
those [15] are the six organizations I'm talking about.
[16] In terms of the term that you asked about, Liberty [17] Mutual
Insurance Company and subsidiaries, as that [18] refers to the
filing of tax returns, five of the [19] companies filed together and
one company filed on their [20] own. Liberty Mutual Fire Insurance
Company has no [21] subsidiaries and it filed on its own. The other
five [22] companies filed together.
[23]   Q BY MS. WOZNIAK: And I didn't quite catch all the
[24] names. LM Insurance Comp ---
[25]   A Corp.

| Page 9 | Page 11 |
|---|---|

**Page 9**

[1] Q Corp.? And first, The First Liberty ---

[2] A Insurance Corp.

[3] Q First Liberty Insurance Corp. And Liberty Northwest

[4] Insurance Corp.?

[5] A That's correct.

[6] Q And Liberty Insurance Corporation, LM Insurance

[7] Corporation, The First Liberty Insurance Corporation [8] and Liberty Northwest Insurance Corporation were [9] subsidiaries of Liberty Mutual Insurance Corporation?

[10] A Company.

[11] Q Company?

[12] A That is correct.

[13] Q Okay. And how long were -- and if we need to break it

[14] down by each company we can. How long were each of

[15] these subsidiaries of Liberty Mutual Insurance Company?

[16] A I know that Liberty Northwest joined the organization

[17] in 1983. The precise dates of the other three, I don't [18] recall precisely, but I would say all three of them [19] were created in the 1980s. Liberty Insurance [20] Corporation may have been in the Seventies.

[21] Q Okay. And the other three, LM Insurance Corp, The

[22] First Liberty Insurance Corp. and Liberty Northwest

[23] Insurance Corp. were sometime in the Eighties?

[24] A Yes.

[25] Q Would you say prior to 1985?

**Page 10**

[1] A Yes.

[2] Q Okay. And they have all -- have they all been property

[3] and casualty companies since their affiliation with one

[4] another?

[5] A Yes.

[6] Q I wanted to talk about annual statements prior to 1990,

[7] so I guess between '85 and '89 is the period that I'll [8] be talking about, covering the '85 calendar year [9] through the '89 calendar year, and if there were [10] differences between those years, we can break those [11] down.

[12] During those years, where was Liberty Mutual [13] Insurance Company required to submit -- to which state [14] was it required to submit annual statements?

[15] A Liberty Mutual Insurance Company, during that period,

[16] was licensed in all 50 states, and so they must submit

[17] annual statements in all states.

[18] Q Okay. I should back up. What states were -- Liberty

[19] Mutual Insurance Company was doing business in all

[20] 50states?

[21] A Yes.

[22] Q Liberty Insurance Corporation, what states was it doing

[23] business in?

[24] A Well, all 50.

[25] Q Okay. What about LM Insurance Corporation?

**Page 11**

[1] A I believe it had a shorter list of states, but I don't [2] recall exactly which ones they were.

[3] Q Okay. Do you recall what any of them were?

[4] A Well, LM Insurance Corp. was domiciled in Iowa, so I'm [5] sure that was one.

[6] Q What about The First Liberty Insurance Corp.?

[7] A Also domiciled in Iowa, but I do not recall there [8] exactly how extensive their state licensing was.

[9] Q So you have -- do you have an estimate of how many

[10] states they were doing business in?

[11] A I'm sure for LM Insurance Corp. and The First Liberty

[12] Insurance Corp., their operations were extremely [13] limited. I'm quite confident the premium was under [14] $100,000. So in the context of the entire Liberty [15] Mutual Group, these were two extremely small [16] subsidiaries.

[17] Q Where was Liberty Northwest Insurance Corp. doing

[18] business in those years?

[19] A Liberty Northwest Insurance Corp. was domiciled in

[20] Oregon and did business in the northwestern states,

[21] Oregon, Washington, Idaho, Montana. I believe they [22] also had business in California, but that was the -- [23] that was their region of concentration.

[24] Q Was Liberty Mutual Insurance Company domiciled in

[25] Massachusetts?

**Page 12**

[1] A Yes.

[2] Q What about Liberty Insurance Corporation?

[3] A Domiciled in Vermont.

[4] Q What about Liberty Mutual Fire Insurance Company,

[5] where were they domiciled and where were they doing business?

[6] A Domiciled in Massachusetts, doing business in all [7] 50states.

[8] Q Did all of these companies -- is there a difference in

[9] how their annual statements were prepared during this [10] period?

[11] A Yes, as respects how their business was shared. The

[12] LMInsurance Corp. and The First Liberty Insurance [13] Corp. had what's referred to as a 100-percent quota [14] share agreement with the parent, Liberty Mutual [15] Insurance Company. That means that they seeded all of [16] their premiums, all their losses and expenses to the [17] parent and retained nothing. So they would have had no [18] net premium losses or expenses.

[19] Q That was LM Insurance Corp. and The First Liberty ---

[20] A The First, yes.

[21] Q I don't have any kind of a background in insurance, so

[22] could you explain that to me, again, what LM Insurance

[23] Corp. and The First Liberty Insurance Corp. did?

[24] A They had a 100-percent quota share reinsurance

[25] agreement. And what that means is, any premiums,

BSA
Liberty Mutual v. USA, 05-11049 RCL/05-11049-RCL Depo of Roy Morell
Case 1:05-cv-11049-RCL   Document 33-2   Filed 10/20/2006   Page 4 of 6
XMAX(3/4)

## Page 13

[1] losses or underwriting expenses that they incurred [2] would be seeded to the parent, Liberty Mutual Insurance [3] Company.

[4]   Q Okay. So for purposes of their annual statements, they [5] wouldn't have any unpaid losses at the end of the year?

[6]   A That is correct.

[7]   Q Did any of the states, since there were a couple of the [8] companies were operating in all 50 states, did any of [9] the states allow the companies, allow property and [10] casualty companies to treat estimated salvage [11] recoverable as an asset, for state statutory accounting [12] purposes?

[13]   A To my knowledge, not as an asset. No.

[14]   Q And when you – are you – what do you mean when you [15] say, not as an asset? Was it allowed to be treated in [16] some other way for state statutory accounting purposes?

[17]   A It was permitted as a contra liability.

[18]   Q Why wasn't it permitted to be treated as an [19] asset?

[20]   A I don't know the answer to that question.

[21]   Q And what do you mean that it was permitted to be – it [22] was allowed to be treated as a contra liability? Are [23] you saying that it was allowed to be – it was [24] permitted to be taken into account in computing the [25] unpaid losses?

## Page 14

[1]   A Yes.

[2]   Q Would there be any difference to treating it as an [3] asset or treating it as – what is the difference [4] between treating it as an asset as opposed to treating [5] it as a contra liability?

[6]   A Very little difference. It seems like a technicality [7] to me about – in terms of it would not affect the [8] surplus of the companies, for example, whether you [9] recorded it as an asset or a contra liability would not [10] affect the surplus of the organization.

[11]   Q So why was it prohibited to be treated as an asset, but [12] permitted – but allowed to be treated as a contra [13] liability?

[14]   A I think I said I don't know the answer to that [15] question.

[16]   Q Now states that allowed – what states – we [17] established that none of the states allowed it to be – [18] allowed salvage recoverable to be treated as an asset. [19] What states permitted it to be treated as a contra [20] liability?

[21]   A I cannot cite all the state laws that were in place in [22] '89 or '90. We do know that the state of domicile for [23] the parent did permit it.

[24]   Q Massachusetts allowed salvage recoverable to be taken [25] into account in computing the unpaid loss?

## Page 15

[1]   A Yes.

[2]   Q You don't know whether Vermont, Iowa or Oregon [3] permitted it?

[4]   A What I know is that those companies were all subject to [5] financial examination by those states and that those [6] insurance departments never opposed the approach taken [7] by the Liberty Mutual Group in recording its unpaid [8] losses. So implicitly they permitted it. And I said I [9] didn't know what their state laws actually said.

[10]   Q You said that those – the states of domicile, there [11] was a financial examination of the annual statements?

[12]   A Yes.

[13]   Q Okay. I guess we'll break this down by company and [14] then if it's the same answer for all of them, we can [15] just say that. For Liberty Mutual Insurance Company in [16] 1989 – for 1985 through 1989, how was it computing its [17] unpaid loss for purposes of the annual statement?

[18]   A It was computing its unpaid losses using standard [19] actuarial methods, which involve analyzing historical [20] data and projecting future activity.

[21]   Q And did the unpaid loss reported on the annual [22] statement take into account estimated salvage [23] recoverable?

[24]   A The answer is yes and no.

[25]   Q Okay.

## Page 16

[1]   A Yes ---

[2]   Q To what extent did it take estimated salvage into [3] account – estimated salvage recoverable?

[4]   A As respects all lines, other than auto physical damage, [5] the loss, unpaid loss amounts were established net of [6] estimated future salvage. For the auto physical damage [7] line of business, it was partially reflected and [8] partially not reflected.

[9]   Q Could you explain why it was partially reflected and [10] partially not reflected?

[11]   A The answer has to do with the two major components of [12] unpaid loss, which are case reserves and incurred but [13] not reported reserves, also known as IBNR. And for the [14] auto physical damage line of business, the case reserves were [15] gross of salvage, meaning it was not reflected in those [16] reserves. The IBNR reserve, on the other hand, did [17] reflect it.

[18]   Q And why was that?

[19]   A It was just a matter of convention, I would say, and [20] company policy.

[21]   Q Why was that the company policy?

[22]   A Well, I'm not sure that I know the answer to that [23] question.

[24]   Q Who in the company would know the answer to that [25] question?

## Page 17

[1]    A I don't know the answer to that question either.

[2]    Q For the auto physical damage loss reserve, did the

[3] company – and we're talking about Liberty Mutual

[4] Insurance Company – do a projection to ultimate [5] losses?

[6]    A Yes.

[7]    Q Was the data used in the ultimate projection net of

[8] salvage received?

[9]    A For lines other than auto physical damage, yes.

[10]   Q So did it do separate projections? Did it do a

[11] projection for the case reserves and a separate [12] projection

for the IBNR?

[13]   A Yes.

[14]   Q Okay. And for the projection for the IBNR, the data

[15] used was not net of salvage received?

[16]   A It was net.

[17]   Q It wasn't? Oh, right. The – for the case reserves [18] it

was not net?

[19]   A That's correct.

[20]   Q Okay. Was the reporting of unpaid loss on the annual

[21] statements for '89 through '85 for Liberty Mutual Fire

[22] Insurance Company, was that amount net of estimated

[23] salvage recoverable?

[24]   A The answer for Liberty Mutual Fire Insurance Company is

[25] the same as the answer for Liberty Mutual Insurance

## Page 18

[1] Company.

[2]    Q For everything that we just went over?

[3]    A Yes.

[4]    Q Okay. What about for Liberty Insurance Company?

[5]    A The answer is the same for that company, as well. It

[6] may save some time if we talk about the pooling [7] agreement

between those three companies.

[8]    Q Okay.

[9]    A That they shared results proportionately and so,

[10] therefore, their reserves were all calculated in the [11] same

way and shared proportionately.

[12]   Q And which companies were in the pool?

[13]   A Liberty Mutual Insurance Company, Liberty Mutual Fire

[14] Insurance Company and Liberty Insurance Corp. took

[15] 84percent, 10 percent and 6 percent respectively.

[16]   Q And Liberty Mutual Fire Insurance Corporation was in

[17] the pool, as well?

[18]   A Yes.

[19]   Q Okay. So Liberty Mutual Insurance Company, Liberty

[20] Mutual Fire Insurance Company, Liberty Insurance

[21] Company and LM Insurance Corp. were all in the pool and

[22] all calculated their unpaid loss, for purposes of the

[23] annual statement, the same way?

[24]   A No. LM Insurance Corp. was not in the pool.

[25]   Q Okay.

## Page 19

[1]    A They had the 100-percent quota share, the other three

[2] companies were in the pool.

[3]    Q Okay. Sorry. The three in pool are Liberty Mutual

[4] Insurance Company, Liberty Mutual Fire Insurance

[5] Company and Liberty Insurance Company?

[6]    A That's correct.

[7]    Q Okay. So for Liberty Mutual – sorry. For [8] LMInsurance

Corp. and The First Liberty Insurance [9] Corp., they had no

unpaid losses shown on their annual [10] statements for '85

through '89?

[11]   A That is correct. They had no unpaid losses.

[12]   Q How did Liberty Northwest Insurance Corporation

compute [13] its unpaid loss for – that was shown on the annual

[14] statements for '85 through '89?

[15]   A Essentially in the same manner that I've described for

[16] the three pooled companies. That company was primarily

[17] Workers Comp writer and didn't – wrote extremely small

[18] amounts for all other lines of business.

[19]   Q Did Liberty Northwest Insurance Corporation have any

[20] auto physical damage line of business?

[21]   A I know they had a loss unpaid that was less than

[22] $100,000.

[23]   Q For auto physical damage?

[24]   A Yes.

[25]   Q And they, like the depo companies, their unpaid loss

## Page 20

[1] reflected salvage, estimated salvage recoverable with

[2] respect to their IBNR?

[3]    A My understanding is that Liberty Northwest Insurance

[4] Corp. netted all lines.

[5]    Q Including its auto physical damage line?

[6]    A Yes.

[7]    Q You previously stated you didn't remember what the –

[8] whether it was allowed to – whether Vermont, Iowa and

[9] Oregon in '85 through '89 allowed property and casualty

[10] companies to report – show an unpaid loss figure that

[11] was net of estimated salvage recoverable.

[12]   MR. MITCHELL: Objection. I think you're [13] misstating

what he said.

[14]   MS. WOZNIAK: Oh.

[15]   Q BY MS. WOZNIAK: What did you say about that?

[16]   A I said I didn't know what their statute said.

[17]   Q Mm-hm.

[18]   A But I did say that through financial examination they

[19] did permit the treatment and approaches used by the

[20] Liberty Mutual Group without objection.

[21]   MR. MITCHELL: I'm also going to object to [22] questions

about state laws. You can look those up as [23] easily as we can.

[24]   Q BY MS. WOZNIAK: Were the companies aware of the

state [25] requirements with respect to how estimated salvage

BSA

Case 1:05-cv-11048-RCL   Document 32-3   Filed 10/30/2006   Page 6 of 6
Liberty Mutual v. USA, 05-11048-RCL/05-11049-RCL   Depo of Roy Morell   XMAX(6/6)

## Page 21

[1] recoverable could be treated for purposes of the state
[2] statutory accounting requirements at the time that they [3] were
filing the annual statements in '85 through '89?
[4]    A   Yes, we were aware of state requirements.
[5]    Q   And did you follow the state requirements in all
[6] 50states – in all the states, some of them, some of [7] the
companies had 50 states. In all the states that [8] these companies
were submitting annual statements, were [9] they following the
requirements, the states' [10] requirements for accounting?
[11]    A   Yes. We adhered to state requirements.
[12]    Q   So in states where it was not permitted to take
[13] estimated salvage recoverable into account as a contra
[14] liability to net your unpaid loss, these companies did [15] not
net their unpaid loss for estimated salvage [16] recoverable?
[17]    MR. MITCHELL: Object to the premise of the [18] question.
[19]    MS. WOZNIAK: What is the problem with the premise
[20] of the question?
[21]    MR. MITCHELL: You're assuming that states didn't
[22] allow the treatment as contra liability and he didn't [23] say
that.
[24]    Q BY MS. WOZNIAK: Were there any states from '85
through [25] '89 that did not permit the treatment of estimated

## Page 22

[1] salvage recoverable as a contra liability?
[2]    A   They did permit it through financial examination
[3] process.
[4]    Q   Did they permit it by statute?
[5]    A   And I said I was not familiar with all the state [6] statutes.
[7]    Q   But at the time that these companies were filing their
[8] annual statements, the companies were aware of the
[9] statutory requirements in all of the states where they [10] were
submitting annual statements?
[11]    A   I think I already answered that question, that we were
[12] aware of state requirements.
[13]    Q   Can you tell me about the financial examination of the
[14] annual statements? Who does that?
[15]    A   A Financial examination is normally led by the state of
[16] domicile and other states representing other regions of
[17] the country participate in those financial [18] examinations.
[19]    Q   So are all of the annual statements reviewed every year
[20] by the state of domicile?
[21]    A   In general, it's a triennial process, every three [22] years.
[23]    Q   And by every three years, are we talking about a
[24] particular company every three years, that company's
[25] annual statement would be examined?

## Page 23

[1]    A   In general, they would do a financial examination of [2] all
companies in the group at the same time, and for [3] the Liberty
Mutual Group that included the year-end [4] 1989 was one of the
triennial examination years.
[5]    Q   And how in this – did the companies disclose on their
[6] annual statements for '85 through '89, that their [7] unpaid loss
figure was net, to a certain extent or to [8] the – let me start over.
[9] On the annual statements for '85 through '89, did [10] the
annual statements disclose the extent to which [11] estimated
salvage recoverable was taken into account in [12] computing the
unpaid loss shown on this, the annual [13] statements?
[14]    A   Such disclosure was not required and the companies did
[15] not disclose that amount.
[16]    Q   In the process of the financial examination, was that
[17] disclosed?
[18]    A   Not to my knowledge. The – I – the financial
[19] examination that I read was silent on the topic.
[20]    Q   This financial, and is that the financial examination
[21] for 1989?
[22]    A   Yes.
[23]    Q   How would the individuals conducting the financial
[24] examination be aware that the unpaid loss shown on the
[25] annual statement was, to a certain extent, net of

## Page 24

[1] estimated salvage recoverable?
[2]    A   I'm not a financial examiner, but they could – if they
[3] had questions or concerns about it, they could ask the
[4] company.
[5]    Q   What did the examiners look at when they were doing the
[6] financial examination?
[7]    A   They examined all financial records of the [8] organization.
[9]    Q   And how did they go about doing that?
[10]    A   They were provided with all of our information. They
[11] had full access to our people and our documents.
[12]    Q   From 1989 to 19 – from 1985 through 1989, were all of
[13] the states that the group was submitting annual
[14] statements to aware that the unpaid loss figure was net [15] of
estimated salvage recoverable?
[16]    A   I think I said earlier that there was no disclosure in
[17] the annual statement because no such disclosure was
[18] required. So beyond that, what they knew or didn't [19] know,
I don't know.
[20]    MS. WOZNIAK: I'd like to take five minutes.
[21]    (Off the record from 10:22 a.m. to 10:50 a.m.)
[22]    Q BY MS. WOZNIAK: Okay. So we're going to begin with a
[23] clarification of the response to why the auto physical
[24] damage line was net with respect to the IBNR, but not
[25] with respect to the case reserves. So you were going

## Page 25

[1] to tell us why you thought that it was done that way.

[2]  A That is correct. I am – my belief is, and I think [3] that the reason why the company treated for auto [4] physical damage, the case reserves differently than the [5] IBNR reserve was, first, a matter of industry [6] convention; that that's the way other companies did it.

[7]  And, also, the significance of salvage, relative [8] to losses paid, is very different for the auto physical [9] damage line of business relative to other lines of [10] business. Whereas in most other lines of business, [11] salvage or recoveries of losses paid is around [12] 2percent, in the auto physical damage line of [13] business, it's around 20 percent. And so that's why [14] that line of business was done differently, and why [15] they chose to have a different treatment for IBNR for [16] case.

[17]  Q Okay. Can you go over the 2 percent and 20 percent?

[18]  A Mm-hm.

[19]  Q Again, I want to make sure I understand that.

[20]  A What I said was that when you think about the [21] relationship of salvage relative to the losses that [22] youpay, I said it's roughly 2 percent for other lines [23] of – lines of business, other than auto physical [24] damage, but roughly 20 percent for that line of [25] business.

## Page 26

[1]  Q And how does that affect why you would take the – with [2] the case reserves, have the unpaid losses gross of [3] estimated salvage recoverable?

[4]  A The recovery of salvage is difficult to predict at an [5] individual case level. And when we talk about the case [6] reserves, those reserves are specific to individual [7] cases. They are set by the claims adjuster, whereas, [8] the IBNR are often known as the bulk reserve, is not [9] claim specific. And so it's easier to estimate in the [10] aggregate how much salvage you may recover, without [11] being certain which claims are going to resolve in [12] recoveries. So it's the claim specific nature of the [13] case reserve versus the aggregate nature of the IBNR [14] reserve.

[15]  Q Did that make it easier to estimate your salvage [16] recoverable for the IBNR?

[17]  A That's correct.

[18]  Q Okay. But what was it about the other lines, your [19] salvage, with respect to your losses paid is about [20] 2percent, salvage is about 2 percent of your losses [21] paid, and in the auto physical damage your salvage is [22] about 20 percent of your losses paid? What about this, [23] this greater salvage recovery with respect to losses is [24] – why is – how does that relate to grossing versus [25] netting?

## Page 27

[1]  MR. MITCHELL: Do you understand the question, [2] Roy?

[3]  THE WITNESS: I think I do.

[4]  MR. MITCHELL: Okay. Go ahead.

[5]  A The information about salvage is a percentage of losses [6] paid distinguishes the lines of business, really, and I [7] believe helps understand why the company shows a [8] different approach for one line of business versus the [9] other. Then I talked about why, within that one line [10] of business, different approaches were taken with [11] respect to a piece, one component of the reserve versus [12] another component of the reserve, and I said I think [13] that really deals more with the claim specific [14] estimates versus the aggregate estimates.

[15]  Q BY MS. WOZNIAK: Okay. But the piece I'm missing is [16] why you would treat auto physical damage differently [17] than other lines of business as far as taking into [18] account or not taking into account salvage recoverable, [19] because of the percentage differences of the salvage [20] that's recovered?

[21]  A I think the different percentages reflect just how [22] significant salvage is in one line of business relative [23] to the other lines of business. I've also answered [24] that I believe that part of the reason why was industry [25] convention.

## Page 28

[1]  Q Can you explain in more detail how the auto physical [2] damage, how the unpaid losses were projected for the [3] IBNR portion of the lines?

[4]  A Yes. The IBNR loss amount unpaid was estimated as the [5] product of an estimate of the future number of claims [6] times an average cost per case, where that average cost [7] per case was after, net after recoveries, salvage [8] recoveries.

[9]  Q And by cost, that includes the losses that have to be [10] paid?

[11]  A Yes.

[12]  Q And that whole cost figure was reduced by an estimate [13] of the salvage that would be recovered?

[14]  A Yes.

[15]  Q Okay. And with respect to the case reserves, how was [16] that projection done?

[17]  A The case reserves for each individual claim, known [18] claim, were estimated by the claim adjuster as the [19] estimate of future payments to be made without [20] subtraction of any potential salvage recoverable.

[21]  Q Okay.

[22]  A Again, because I said that, it's very difficult to [23] predict or estimate salvage at the individual claim [24] level.

[25]  Q I need to clarify a question I asked you and your

GOVERNMENT EXHIBIT

B part 2

PENGAD 800-631-6989

## Page 29

[1] answer. I had asked, during 1985 through 1989, whether
[2] any states permitted or allowed estimated salvage
[3] recoverable to be taken into account as a contra [4] liability,
and I want to clarify now that, because I [5] don't know what you
had in mind by my using the term [6] permit or allow and not
specify that I meant that it [7] was allowed by statute. So I'm going
to ask the [8] question again, so that the answer is clear.
[9] From 1985 through 1989, were there any states [10] which
statutorily allowed property and casualty [11] companies to take
estimated salvage recoverable into [12] account as a contra
liability?
[13]     MR. MITCHELL: I'm going to object to the [14] question. It's
a legal question.
[15]     MS. WOZNIAK: If you will ---
[16]     MR. MITCHELL: 50 sets of books that you can look [17] at.
[18]     MS. WOZNIAK: I am – he is the representative for
[19] Liberty Mutual and ---
[20]     MR. MITCHELL: You're asking a legal question. [21] You're
asking whether a state, by law, prescribed A or [22] B. That's a
legal question.
[23]     MS. WOZNIAK: Okay. That's my question, he can
[24] answer it.
[25]     A It's an interesting question. Did – I want to make

## Page 30

[1] sure I understand your question, so if I may try to [2] repeat it.
You question was: Did any states permit by [3] statute recognition
of anticipated or estimated [4] salvage? And it seems to me, that if
they don't [5] prohibit it, does that mean they permit it? I guess my
[6] interpretation, not as an attorney, but my [7] interpretation
might be if they don't prohibit it, then [8] they permit it.
[9]     Q BY MS. WOZNIAK: You already answered earlier that all
[10] of the states prohibited by statute the insurance
[11] companies take – property and casualty insurance
[12] companies treating estimated salvage recoverable as an
[13] asset for state statutory accounting purposes. So I [14] want
to ask you, is there any difference between [15] treating estimated
salvage recoverable as an asset as [16] opposed to treating it as a
contra liability? For [17] purpose – sorry, for purposes of state
accounting?
[18]     MR. MITCHELL: I'm also going to object, again, to [19] the
line of questioning about what state laws ---
[20]     MS. WOZNIAK: Okay. Then ---
[21]     MR. MITCHELL: --- said.
[22]     MS. WOZNIAK: --- let me remove ---
[23]     MR. MITCHELL: If you'd like to have a caucus out [24] in
the hallway, I can – we can discuss it.
[25]     MS. WOZNIAK: Okay. Let me remove from that the

## Page 31

[1] state part.
[2]     Q BY MS. WOZNIAK: I just want to know, for purposes of
[3] accounting, whether there's any difference between [4] treating
estimated salvage recoverable as an asset as [5] opposed to
treating estimated salvage recoverable as a [6] contra liability?
[7]     A Yes, there are differences. Obviously, if you record [8] it as
an asset, your assets go up. If you, instead, [9] record it as a
contra liability, your assets stay the [10] same and your otherwise
stated liabilities would go [11] down. In either event, the surplus of
the company, [12] which is the difference between assets and
liabilities [13] would be unaffected by that treatment.
[14] There may be other issues within either financial [15] reporting
or other areas where the difference might be [16] – where financial
records might be used, that that [17] difference might be material.
But as respect to [18] financial reporting alone, it has no impact on
the [19] surplus of the organization, but it does change the
[20] relationship between the stated assets and liabilities.
[21]     Q And did – reporting it as a contra liability decreases
[22] the losses; is that correct?
[23]     MR. MITCHELL: Object to the use of the word [24] losses.
[25]     Q BY MS. WOZNIAK: Decreases liability and I think you've

## Page 32

[1] said – you said which – how it affected either way. [2] If you
report it as an asset, how does it affect the [3] assets?
[4]     A If you report it as an asset, it would increase the
[5] otherwise reported assets.
[6]     Q Okay. And then if you report it as a contra liability,
[7] what does it do?
[8]     A It's no impact on the assets and it reduces your [9] liability.
[10]     Q Okay. And the surplus stays the same?
[11]     A In either event.
[12]     Q Is the volume of premiums that a property and casualty
[13] insurance company is permitted to write related to its
[14] surplus as reported on the annual statement?
[15]     A I believe there are vague guidelines that, yes,
[16] premium, the premium-to-surplus ratio would be
[17] monitored by say insurance departments. It's not the [18] sole
basis for determining how much premium a company [19] would
be allowed to write, but – yeah, it's an [20] element.
[21]     Q All right. And you're talking about the state
[22] insurance departments?
[23]     A Yes.
[24]     Q Okay. And what do you mean by vague guidelines?
[25]     A I don't know whether in the statutes themselves you

Case 1:05-cv-11049-RCL v. USA, U05-11049-RCL/05-11049-RCL Depo of Roe Morris
Liberty Mutual v. USA, 05-11049-RCL/05-11049 Depo of Roe Morris
XMAX(39/9)

**Page 33**

[1] would find a reference to a hard and fast
[2] premium-to-surplus relationship that was – above which
[3] premium could not be written.
[4]     Q Where would you find this guidance?
[5]     A I don't believe you'd find it in the statutes. I think [6] you
would find it, if there – if an insurance [7] department had
concerns about a company's [8] premium-to-surplus ratio, it would
be found out through [9] discussion between the company and
the insurance [10] division.
[11]     Q So when you talk about vague guidelines, is this
[12] written anywhere? Is there – no.
[13]     MR. MITCHELL: He just answered your question.
[14]     MS. WOZNIAK: Oh, I'm sorry. I missed it. Would [15] you
mind if he repeated the answer?
[16]     A I said, I don't think you would find it in the [17] statutes.
[18]     Q BY MS. WOZNIAK: Right. Okay. But would it be
[19] otherwise written?
[20]     A Not to my knowledge.
[21]     Q If accounting practice prohibited the treatment of
[22] something as an asset, would it make any sense to
[23] permit the treatment of that same thing as a contra
[24] liability?
[25]     MR. MITCHELL: I just object to the vagueness,

**Page 34**

[1] ambiguity of the question. Makes sense to whom?
[2]     MS. WOZNIAK: To an – to somebody that is doing
[3] accounting.
[4]     Q BY MS. WOZNIAK: As an accounting principle, does it
[5] make sense for an accounting practice to – or a method [6] of
accounting to prohibit the treatment of – well, use [7] this, prohibit
the treatment of estimated salvage [8] recoverable as an asset, but
allow the treatment of [9] estimated salvage recoverable as a
contra liability?
[10]     MR. MITCHELL: Object, again. You're asking for [11] an
opinion. The company has given what its knowledge [12] is so far.
You're asking for an opinion now.
[13]     MS. WOZNIAK: I'd like to know his opinion.
[14]     MR. MITCHELL: It's a deposition. You have to [15] answer.
[16]     A Yes, there may be situations where you want to prohibit
[17] the recording of an asset, but you may permit the
[18] recording of a contra liability. If an asset stands [19] alone and
doesn't have, as an offset to something else, [20] then it might be,
might make sense to not allow it as [21] an asset; but to the extent
that you are recording a [22] liability, it's that you're recording a
lower [23] liability. It might make sense to someone in that
[24] situation that that's okay.
[25]     Q BY MS. WOZNIAK: When the groups, all the property,

**Page 35**

[1] casualty, property and casualty in companies that we're
[2] talking about, when they were preparing their annual
[3] statements for 1985 through 1989, did they ever seek
[4] clarification from any of the states as to whether it [5] was
permissible to treat estimated salvage recoverable [6] as a contra
liability?
[7]     A Not to my knowledge. It doesn't mean it didn't happen
[8] though.
[9]     Q Who would know if it did happen?
[10]     A I don't know.
[11]     Q If it – if that information was sought from a state,
[12] would it have been sought in writing?
[13]     A Not necessarily.
[14]     Q But you don't know whether it was ever?
[15]     A What I already told you about and talked was the
[16] financial examination process where there is [17] interaction
between the insurance companies and [18] insurance departments
with respect to all facets of [19] financial reporting.
[20]     Q Okay.
[21]     A And so that would be the occasion when any such
[22] discussion may have taken place.
[23]     Q And during those financial examinations did any of
[24] these, the Liberty Mutual companies, ask the financial
[25] examiners whether it was permissible to treat estimated

**Page 36**

[1] salvage recoverable as a contra liability?
[2]     A Not in my presence and not to my knowledge, but that
[3] doesn't mean it didn't happen.
[4]     Q Now the financial examination, it would be my
[5] understanding that the state examiners are looking to [6] the
companies to see if, in their examination process, [7] rather is it
being a venue for the companies to be [8] asking questions of the
state examiners. Is that [9] accurate?
[10]     A I don't consider that to be the primary purpose of the
[11] financial – financials.
[12]     Q What – for the companies to be asking questions of the
[13] examiner, it's the other way around, right?
[14]     A Yes.
[15]     Q Okay. So when the – during the financial examination
[16] did the – do the companies provide the examiners with [17] a
development of the reserves?
[18]     A Yes, the annual statement contains a development of
[19] reserves.
[20]     Q And how long is the development contained in the
[21] annual [21] statement?
[22]     A That's a ten-year development period.
[23]     Q Could you explain that to me, the ten-year development
[24] period? I don't have any insurance background, so I
[25] need you to explain what a ten-year development would

## Page 37

[1] be.

[2]    A Well, I think I'd like to begin by maybe asking you to
[3] clarify your question when you asked, you know, do the
[4] companies provide a loss – a development information [5] to
the states? I guess I presumed that you, by your [6] question, that
you need more development?

[7]    Q Well, I mean in the standard way that you would
[8] understand it.

[9]    A A development of reserves, which I believe was your
[10] term, to me refers to an organization established a
[11] reserve at a point in time, at a given accounting date
[12] Subsequent information can be used to determine how
[13] accurate that initial reserve was, and as time passes
[14] beyond that initial accounting date, more and more
[15] information, more and more claims are settled, becomes
[16] available to better estimate what I should have carried [17] at
that point in time. And that is what I would use [18] the term,
development of a reserve means, and that's [19] the way I
interpreted your question.

[20]    Q Okay. That's what I meant. And so the ten-year period
[21] is ten years going forward from the date that that [22] reserve
was established?

[23]    A Yes.

[24]    Q Okay. So is there anything on that development that
[25] would show that the reserve was net of estimated

## Page 38

[1] salvage recoverable?

[2]    A No, not in the period '85 to '89.

[3]    Q You're talking about the development of reserves that
[4] was submitted with the annual statements in those [5] years?

[6]    A Yes.

[7]    Q Okay. During the 1989 financial exam, did the state
[8] examiners ever request any records from the company [9] that
would have shown that the – shown or revealed [10] that the
unpaid losses shown on the annual statement [11] were, to a
certain extent, net of estimated salvage [12] recoverable?

[13]    A Again, I don't know everything that they requested, but
[14] the – my presumption would be that they examined all
[15] material aspects of the financial statement.

[16]    Q Was estimated salvage recoverable ever shown on the
[17] annual statements for '85 through '89 separately,
[18] separately from – as opposed to it being within the [19] net
unpaid loss on the amount?

[20]    A No, it was not shown separately.

[21]    Q Okay. When the state statutes prohibited estimated
[22] salvage recoverable from being treated as an asset, why
[23] would – why did – sorry, why did the Liberty Mutual
[24] Group treat it as a contra liability on its annual [25] statement?

## Page 39

[1]    MR. MITCHELL: I object, again, to the legal [2] nature of the
question and to the premise of the [3] question about state
statutes.

[4]    MS. WOZNIAK: This is about what the company ---

[5]    MR. MITCHELL: It's just an objection. He can – [6] he can
answer.

[7]    MS. WOZNIAK: Right. But ---

[8]    MR. MITCHELL: It's an objection in a deposition.

[9]    MS. WOZNIAK: Right.

[10]    MR. MITCHELL: I object.

[11]    MS. WOZNIAK: Okay. But this is about why the
[12] company – okay, never mind.

[13]    MR. MITCHELL: You're asking him – you're asking [14] him
to agree with you that all 50 states prohibited – [15] would you like
to talk about this in the hall?

[16]    MS. WOZNIAK: He – no, he already ---

[17]    MR. MITCHELL: So he doesn't hear what we're
[18] saying?

[19]    MS. WOZNIAK: Okay.

[20]    MR. MITCHELL: You're asking – you're asking – [21] you're
asking him to agree. Would you like to go out [22] in the hall, so he
doesn't – so it's not a speaking [23] objection?

[24]    MS. WOZNIAK: Wait just a moment.

[25] We can go off the record for a second.

## Page 40

[1]    (Off the record from 11:27 a.m. to 11:29 a.m.)

[2]    MS. WOZNIAK: Okay. Whatever question I just [3] asked, we
can forget.

[4]    Q BY MS. WOZNIAK: But for states that prohibited the
[5] treatment of estimated salvage recoverable as an asset,
[6] why would the Liberty Mutual Group report – show on [7] their
annual statement an unpaid loss net of estimated [8] salvage
recoverable?

[9]    MR. MITCHELL: I'm objecting, again, but go ahead [10] and
answer it.

[11]    A I would say we recorded it as such because we – our
[12] interpretation was that such treatment was not [13] prohibited
and, in fact, was in adherence with the [14] state requirements.

[15]    Q BY MS. WOZNIAK: And who made that interpretation?

[16]    A The ultimate responsibility for the financial
[17] statements rests with the chief financial officer.

[18]    Q Who was the chief financial officer from 1980 – during
[19] 1985 through 1989?

[20]    A I would have to look that up.

[21]    Q Okay.

[22]    MS. WOZNIAK: So, Sam, if we could be provided [23] with
that answer?

[24]    MR. MITCHELL: No process.

[25]    Q BY MS. WOZNIAK: All right. Now I'm going to talk

Case 1:05-cv-11049-RCL v. USA, Document 28-RCL/05/04/2006 Depo of Roy Morell
Liberty Mutual v. USA, 05-11049-RCL 05/04/2006 Depo of Roy Morell
XMAX(41/11)

## Page 41

[1] about annual statements in the period of 1990 through [2] '93.
My first question is: '90 through '93, would [3] there be any
differences within this time frame between [4] '90 and '93, was the
practice the same?

[5]     A The practice of what?

[6]     Q Oh, sorry. Sorry. I just need to know whether we'll
[7] need to ask these questions about the annual statements
[8] year by year or was the practice with respect to the
[9] treatment of estimated salvage recoverable the same,
[10] 1990 through 1993, on the annual statements?

[11]     A I would say it was the same for 1990 through 1992.

[12]     Q Okay. For 1990 through 1992, how did the Liberty
[13] Mutual Group compute unpaid losses for – that were
[14] shown on the annual statements?

[15]     A As previously described.

[16]     Q Okay. And to clarify for the record, the unpaid losses
[17] took estimated salvage recoverable into account with [18] the
exception of the estimated salvage recoverable with [19] respect to
the case reserves for the auto physical [20] damage line?

[21]     A That's correct.

[22]     Q Okay. And this is for all accident years?

[23]     A Yes.

[24]     Q Okay. Were there any disclosures on 1990 through 1992
[25] – sorry. Were there any disclosures during this time

## Page 42

[1] period to the – either on the state – sorry, the [2] annual
statement or otherwise disclosures with respect [3] to the treatment
of estimated salvage recoverable on [4] the annual statements?

[5]     A Could you repeat the question?

[6]     Q Oh, sure. Was there any disclosure that the unpaid
[7] loss reported on the annual statements from 1990 [8] through
1992 were, to a certain extent, net of [9] estimated salvage
recoverable?

[10]     A Yes, starting in 1991, there was a footnote disclosure.

[11]     Q Okay. Can you tell me about the foot – there's a
[12] footnote to the annual statement that – okay. So what [13] in
1991 was the disclosure?

[14]     A The footnote in a 1991 annual statement provided the
[15] amount of estimated salvage that had been netted
[16] against losses unpaid.

[17]     Q With respect to all of the accident years?

[18]     A The note is provided by line by accident, yes.

[19]     Q Okay. Okay. What happened in 1992, you had a change
[20] in '93, how was your unpaid loss computed for purposes
[21] of the annual statement for '93?

[22]     A In 1993, there was a new disclosure with respect to
[23] anticipated salvage and subrogation and at that time [24] the
companies changed to a netter for all lines of [25] business.

## Page 43

[1]     Q There was a new disclosure ---

[2]     MS. WOZNIAK: Could you read back his answer? Oh,
[3] no, could you play back his answer?

[4]     (Whereupon, the pending question was played back [5] by
the Court Reporter.)

[6]     Q BY MS. WOZNIAK: So the disclosure, was this – where
[7] was – was this disclosure because the – was the form [8] for
the annual statement changed?

[9]     A Yes, it was.

[10]     Q By the National Association of Insurance Commissioners?

[11]     A Yes, it was.

[12]     Q Okay. And that provided a place to report estimated
[13] salvage recoverable?

[14]     A That's correct.

[15]     Q Okay. And where was that – where was that placed on
[16] the report? Was that line within the liabilities or [17] within the
assets?

[18]     A Could you repeat your question?

[19]     Q Oh. Where, where would that have been, where did,
[20] where was it reported on the annual statement?

[21]     A It was reported in Schedule P of the annual statement.

[22]     Q Oh, okay. All right. What is Schedule P?

[23]     A What is Schedule P?

[24]     Q Yes.

[25]     A Schedule P is a component of the annual statement in

## Page 44

[1] which the companies provide premium and loss [2] information
by accident year, both with respect to [3] current evaluation and
historical evaluation.

[4]     Q And you also said that at that point you – sorry, the
[5] Liberty Mutual Group became a netter for all lines?

[6]     A Yes.

[7]     Q Okay. So that auto physical damage case report,
[8] reserves were now computed net of estimated salvage
[9] recoverable?

[10]     A Yes. I should clarify to say the total reserve was net
[11] of salvage and subrogation.

[12]     Q The total loss reserve was net?

[13]     A Yes.

[14]     Q So did the total loss reserve make adjustments for the
[15] auto physical damage case reserves or were they also
[16] net?

[17]     A The IBNR component of the total loss reserve would have
[18] a provision for netting or reflecting anticipated [19] salvage
and subrogation for all claims.

[20]     Q Oh, including the case reserves?

[21]     A Yes.

[22]     Q Okay. So it was a different method of computing – was
[23] it a different method of computing the IBNR loss
[24] reserves?

[25]     A Yes, it would be a different method.

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

LIBERTY MUTUAL INSURANCE
COMPANY AND SUBSIDIARIES,          )
                                   )
          Plaintiff,               )
                                   )
     v.                            )      Civil No. 1:05-11048-RCL
                                   )
UNITED STATES OF AMERICA,          )
                                   )
          Defendant.               )

LIBERTY MUTUAL FIRE INSURANCE
COMPANY AND SUBSIDIARIES,          )
                                   )
          Plaintiff,               )
                                   )
     v.                            )      Civil No. 1:05-11049-RCL
                                   )
UNITED STATES OF AMERICA,          )
                                   )
          Defendant.               )

## DECLARATION OF TIMOTHY K. COLLINS

I, Timothy K. Collins, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.    I am employed by the Internal Revenue Service as a Technical Advisor, Captive and
Offshore Insurance Transactions, in Stoneham, Massachusetts.

2.    In my official capacity with the Internal Revenue Service, I have access to the files and
records of the Internal Revenue Service with respect to Liberty Mutual Insurance
Company and Subsidiaries and to the files and records of Liberty Mutual Fire Insurance
Company.



GOVERNMENT
EXHIBIT

_C_

3.  The files and records of the Internal Revenue Service with respect Liberty Mutual Insurance Company and Subsidiaries indicate that the normal period of limitations on assessment closed in December 2002 for each of the following income tax periods: 1991; 1992; and 1993.

4.  The files and records of the Internal Revenue Service with respect Liberty Mutual Fire Insurance Company indicate that the normal period of limitations on assessment closed in December 2002 for each of the following income tax periods: 1991; 1992; and 1993.

I, Timothy K. Collins, declare under penalty of perjury that the foregoing is true and correct.

Executed on October 30, 2006.

TIMOTHY K. COLLINS
Technical Advisor