UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

LIBERTY MUTUAL INSURANCE COMPANY AND SUBSIDIARIES,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

Cnsl. Cv. No. 1:05-cv-11048-RCL

---

LIBERTY MUTUAL FIRE INSURANCE COMPANY AND SUBSIDIARIES,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

Former Cv. No. 1:05-cv-11049-RCL

PLAINTIFFS' 13-PAGE REPLY MEMORANDUM
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
ITS OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Peter H. Winslow
Gregory K. Oyler
Samuel A. Mitchell
Scribner, Hall & Thompson, LLP
1875 Eye Street, N.W., Suite 1050
Washington, DC 20006
Telephone: (202) 331-8585
Fax: (202) 331-2032
Attorneys for Plaintiff

November 15, 2006

# TABLE OF CONTENTS

I. Liberty Companies are entitled to a Fresh Start on gross salvage. .... 1

II. Liberty Companies are entitled to gross-up their net salvage. .... 7

III. Conclusion. .... 13

# TABLE OF AUTHORITIES

**Cases**

Commissioner v. Standard Life & Accident Ins. Co., 433 U.S. 148 (1977) .... 4
Continental Ins. Co. v. United States, 474 F.2d 661 (Cl. Ct. 1973) .... 4
Hallmark Cards, Inc. v. Commissioner, 90 T.C. 26 (1988) .... 4
United States v. Charles George Trucking Co., 823 F.2d 685 (1st Cir. 1987) .... 3
West Virginia Univ. Hosp. Inc. v. Casey, 499 U.S. 83 (1991) .... 3

**Statutes & Administrative Codes**

26 U.S.C. § 446 .... 5, 12
26 U.S.C. § 446(c)(4) .... 4
26 U.S.C. § 481 .... 1, 6
26 U.S.C. § 832(b) .... 4
26 U.S.C. § 832(b)(1)(A) .... 4
26 U.S.C. § 832(b)(5)(A)(ii) .... 9
26 U.S.C. § 832(b)(5)(A)(iii) .... 9, 11
26 U.S.C. § 846 .... 9

**Other**

Rev. Proc. 91-48, .... 5, 12
Rev. Proc. 92-77 .... ***passim***

Declaration of Dennis Van Meighem .... 3, 4

Revenue Reconciliation Act of 1990, Pub. L. No. 101-508, 104 Stat. 1388 .... ***passim***

**I. Liberty Companies are entitled to a Fresh Start on gross salvage.**

Application to Liberty Companies of the transition statute for Gross Lines is clear and unambiguous. Section 11305 of the 1990 Act provides a specific transition rule for any taxpayer who was required to change its method of computing salvage, (i.e., any taxpayer who was required to convert Gross Lines to Net Lines for tax purposes beginning in 1990). First, the gross salvage transition statute treats the required change as a change in method of accounting that the taxpayer initiates and to which the IRS consents. 1990 Act § 11305(c)(2)(A). It then provides, without restriction, that "***any taxpayer*** who is required by reason of the amendments made by this section to change his method of computing losses incurred" is entitled to the Fresh Start forgiveness equal to 87 percent the 26 U.S.C. § 481 adjustment that otherwise would apply to a change in method of accounting (emphasis added). Liberty Companies qualify as "***any taxpayer***," and they were required by the terms of the 1990 Act to convert their gross salvage to net salvage as if the conversion were a change in their method of computing losses incurred.

Defendant does not dispute that the plain language of the transition rule for gross salvage provides the Fresh Start claimed by Liberty Companies. Instead, defendant invents an ambiguity in the separate transition statute for net salvage in an attempt to create an overlap between the two statutes and suggest that Congress could not really have meant what it plainly provided for gross salvage. The rule for net salvage provides as follows:

> [I]n the case of any insurance company which ***took into account salvage recoverable in determining losses incurred*** for its last taxable year beginning before January 1, 1990, 87 percent of ***the discounted amount of estimated salvage recoverable*** as of the close of such last taxable year shall be allowed as a deduction ratably over its 1st 4 taxable years beginning after December 31, 1989. [Emphasis added; 1990 Act § 11305 (c)(3).]

Defendant argues that a possible literal reading of this rule would result in a windfall if applied to a company that also had gross salvage. Defendant reads the net salvage transition rule to

allow a Special Deduction for 87 percent of the entire 1989 year-end salvage balance, including any amount attributable to Gross Lines. The windfall would occur because a taxpayer with Gross and Net Lines would get a double benefit on Gross Lines (under defendant's nonsensical interpretation) from both the Special Deduction and the Fresh Start forgiveness. This reading of the rule for net salvage is illogical and contrary to the statute itself. The opening phrase applies the rule to "any insurance company which ***took into account salvage recoverable*** in determining losses incurred" and the following clause limits the Special Deduction to 87 percent of the discounted "***salvage recoverable***" (emphasis added). Thus, the "salvage recoverable" on which the Special Deduction is based is the same "salvage recoverable" in the first phrase which was taken into account in losses incurred; salvage on Gross Lines (which was not taken into account) is not considered. There is no illogic or ambiguity in the statute. Moreover, the transition rule for net salvage, like the gross salvage rule, applies to "***any insurance company.***" It does not exclude a company that also had gross salvage. The net-salvage transition rule has no impact on any change in accounting applicable to gross salvage because for Net Lines the timing of salvage remained the same before and after the 1990 Act. The transition rules do not require a company to elect the net rule in lieu of the gross rule, or *vice versa*, and by their terms, both rules apply to "any" taxpayer. In short, nothing in the transition rule for net salvage suggests that Congress did not intend the plain meaning of the transition rule for gross salvage to apply.

Defendant has not argued that there is ambiguity in the part of the statute that relates to gross salvage, and it is a fundamental rule of statutory construction that legislative history cannot be used to create ambiguity in a statute. *West Virginia Univ. Hosp. Inc. v. Casey*, 499 U.S. 83, 98-99 (1991); *United States v. Charles George Trucking Co.*, 823 F.2d 685, 688 (1st Cir. 1987). Nevertheless, defendant turns to the legislative history of the 1990 Act to try to create ambiguity, reading the legislative history to imply that Congress did not intend to specify any transition rule

whatsoever for taxpayers with both Gross and Net Lines. However, the legislative history contains no reference, or even hint, that Congress intended to limit the scope of its transition rules. In 1990, most large insurance companies had both gross and net salvage, and Congress certainly was aware of this when it enacted the salvage transition rules. The IRS and Treasury also knew this, which is why, in Treas. Reg. § 1.832-4(d)(2)(ii), they allowed companies to identify net salvage for purposes of the transition rule as late as March 17, 1992. Defendant's interpretation, therefore, cannot be correct because it would exclude most companies from the gross salvage transition rule. Van Mieghem Decl. ¶¶ 5-6. There is nothing in the legislative history that suggests that both transition rules do not apply to this large class of taxpayers. Why would Congress have wanted to leave a gaping hole in the statute without providing any guidance? Certainly, had defendant's interpretation been intended, the legislative history would have explained what alternative, non-statutory transition rule applies to partial netters.

*Defendant's argument that Congress did not intend the gross-salvage transition rule to apply to a taxpayer with both gross and net salvage is based on the false premise that it was improper for an insurance company to be such a "partial netter" for tax purposes.* According to defendant, "partial netting" violated a general rule under Treas. Reg. § 1.446-1 that a taxpayer cannot adopt a hybrid method of accounting and Congress could not have intended to grant transition relief to a company that previously used an impermissible method. Defendant misunderstands basic principles of tax accounting and insurance company taxation. Section 446 (26 U.S.C.) does not require an insurance company to use a uniform method of estimating loss reserves for each line of business and type of insurance claim. To the contrary, 26 U.S.C. § 446(c)(4) and Treas. Reg. § 1.446-1(c)(1)(iv) permit hybrid methods of accounting as long as they clearly reflect income. *See Hallmark Cards, Inc. v. Commissioner*, 90 T.C. 26 (1988); *Hospital Corporation of America v. Commissioner*, T.C. Memo. 1996-105. Within the overall

accounting method for reserves there are many "material items" for which individualized accounting methods can be adopted and applied consistently. Prior to 1990, it was permissible, and common, for salvage to be treated differently depending on the nature and type of the claim. Van Mieghem Decl. ¶ 7. Moreover, insurance companies are required to compute their underwriting income on the basis of Annual Statement accounting approved by the National Association of Insurance Commissioners. *See* 26 U.S.C. § 832(b)(1)(A); *Commissioner v. Standard Life & Accident Ins. Co.*, 433 U.S. 148, fn. 24 (1977); *Continental Ins. Co. v. United States*, 474 F.2d 661 (Cl. Ct. 1973). Treas. Reg. § 1.832-4(c), as in effect prior to 1990, specifically deferred to Annual Statement treatment of salvage. Pl. Br. 3. Defendant does not cite a single authority for the proposition that partial netters were required to depart from the Annual Statement method of accounting mandated by 26 U.S.C. § 832(b).

*Defendant's own regulation and revenue procedure expose the error of its premise that partial netting is impermissible*. Defendant boldly states that applying both transition rules to a "partial netter" would have "constituted a congressional endorsement of an improper method of accounting." Df. Br. 14. This is a remarkable statement, given the fact that the regulation on which defendant relies endorses that very method. Treas. Reg. § 1.832-4(e)(2)(iii). The regulation imposes a so-called "cut-off method" under which a partial netter must continue its old method on Gross Lines for pre-1990 accident years (i.e., account for salvage on a cash basis as it is recovered) and use the new, required estimated method for the very same Gross Lines in all future accident years. Rev. Proc. 91-48 also requires the cut-off approach for partial netters for pre-1990 accident years. In other words, defendant's own regulation and Rev. Proc. 91-48 perpetuate – and, in fact, endorse – the "hybrid" treatment that defendant contends here is impermissible. Moreover, in citing *Continental,* defendant fails to mention that in that case defendant argued that insurance companies were required to treat estimated salvage on a net

basis in some states and on a gross basis in others. In other words, defendant affirmatively argued in that case what it now characterizes as impermissible. The court rejected the argument, not on the basis of 26 U.S.C. § 446, but because it was inconsistent with the company's Annual Statement accounting.

*Defendant's argument proves too much*. According to defendant, "[i]t is clear from the language of the [net salvage transition rule] that the transitional relief was directed at companies following permissible 'pure gross' or 'pure net' methods of accounting prior to 1990." Df. Br.14. Yet, defendant ignores its own argument and, in fact, requires Liberty Companies to follow the net salvage transition rule in this case, even though Liberty Companies sought affirmative adjustments and filed tax returns disavowing the Special Deduction in favor of Rev. Proc. 92-77. Moreover, the amount of the Special Deduction defendant imposed on Liberty Companies is 87 percent of the actual net salvage, not the entire salvage including the Gross Lines. Thus, defendant not only has applied the transition rule to a partial netter in this case, but it has done so in accordance with the only logical way to read statute, and not in accordance with its own strained reading that would double count transition relief for gross salvage.[1]

Defendant also ignores the consequences of its argument. It is the gross salvage transition rule in the 1990 Act that deems the required conversion of Gross Lines to Net Lines to be a change in method of accounting, and it is for this reason that an adjustment under 26 U.S.C. § 481 is necessary in the first place. If defendant is correct that the transition rule for gross salvage does not apply, there would be no change in method of accounting or section 481 adjustment at all. Defendant cannot have it both ways. Either the transition rules apply or they do not. In either case, defendant's imposition of a full section 481 adjustment is improper.

---

[1] Of course, if defendant had applied the transition rule in accordance with its own strained reading of the statute for net salvage, Liberty Companies would obtain a larger refund for 1990.

*Defendant's reliance on Treas. Reg. § 1.832-4(f)(3)(iii) is misplaced.* As explained above, defendant offers an illogical interpretation of the transition rule for net salvage, which it does not even follow, to support the false notion that Congress did not intend the plain language of the transition rule for gross salvage to apply to partial netters. This argument appears designed to support defendant's reliance on Treas. Reg. § 1.832-4(f)(3)(iii), which, defendant asserts, fills an illusory "gap" defendant reads into the statute. Df. Br. 20. However, as explained in our initial brief, the regulation merely states the consequence of the rule that, if the cut-off method was adopted for pre-1990 accident years for gross salvage, there is no section 481 adjustment.

Treas. Reg. § 1.832-4(f)(3)(iii) is irrelevant in this case. The subsection provides: "A company that claims the special deduction is precluded from also claiming the section 481 adjustment provided in paragraph (e)(2)(ii) of this section for pre-1990 accident years." The first prerequisite in subsection (f)(3)(iii) does not apply because Liberty Companies do not claim a Special Deduction on Net Lines, but rather claim a gross-up under Rev. Proc. 92-77. More importantly, subsection (f)(3)(iii) makes sense if it is read to apply only to a taxpayer that used the cut-off method for Gross Lines. The literal language of subsection (f)(3)(iii) precludes a company from "claiming the section 481 adjustment provided in paragraph (e)(2)(ii)." Subsection (e)(2)(ii), in turn, requires a company that does not claim the special deduction to include in taxable income "13 percent of the adjustment that would otherwise be required under section 481 for pre-1990 accident years as a result of the change in method of accounting …." Accordingly, by its reference to subsection (e)(2)(ii) and the full section 481 adjustment, the regulation merely makes clear that a section 481 adjustment does not apply at all to a taxpayer that used the cut-off method for pre-1990 accident years. Subsection (f)(3)(iii) does not authorize the 100 percent section 481 adjustment defendant seeks to impose here. The plain

language of subsection (f)(3)(iii), which provides that there is no section 481 adjustment at all, is reconfirmed in the very next subparagraph of subsection (e)(2) – subparagraph (iii), which provides that a taxpayer that takes a special deduction for net salvage must implement the change in method of accounting pursuant to a "cut-off method" for post-1989 accident years. In short, defendant has no authority under the statute or the regulation to impose a full section 481 adjustment. If the regulation is read out of context to apply here, where a cut-off method was not used, there would be no section 481 adjustment at all, giving Liberty Companies a windfall.

**II. Liberty Companies are entitled to gross-up their net salvage.**

Treas. Reg. § 1.832-4(d) provides that a taxpayer that has reported its unpaid losses net of estimated salvage on its Annual Statement (i.e., a taxpayer with Net Lines) is permitted to gross-up its unpaid losses for tax purposes and thereby convert Net Lines to Gross Lines for tax purposes. The gross-up applies to all years beginning in 1990 if the required disclosure is made. Treas. Reg. § 1.832-4(d)(3) specifically provides that the gross-up requires IRS consent only where the taxpayer, after first qualifying for the gross-up, fails to satisfy the disclosure requirement in a subsequent year. Except for this limited situation, no IRS consent is required.

Rev. Proc. 92-77 describes the procedure for the gross-up permitted by the regulation. It merely implements the regulation; it does not, and cannot, narrow the scope of the regulation. Like the regulation, it permits a gross-up of all Net Lines for tax purposes for all years beginning in 1990 without the IRS' prior consent as long as the disclosure rule is satisfied. In this case, Liberty Companies made the proper disclosure. Therefore, Liberty Companies are entitled to the gross-up treatment provided by Treas. Reg. § 1.832-4(d)(3).

*The gross-up is not limited to amended tax returns to eliminate double counting of salvage*. Defendant correctly points out that a purpose of the gross-up provided in the regulation and Rev. Proc. 92-77 is to avoid potential double-counting of salvage for Net Lines. Having

identified this purpose (but ignoring the other reasons for Rev. Proc. 92-77), defendant leaps to the conclusion that Rev. Proc. 92-77 cannot apply unless the taxpayer filed an original tax return on which it double-counted estimated salvage and now seeks to file an amended return to claim the gross-up. Thus, even though there is no dispute that Liberty Companies satisfied all the prerequisites for the gross-up in the regulation, defendant asserts that they do not qualify for the gross-up because they failed to satisfy an additional, but unstated, requirement of Rev. Proc. 92-77 – namely, to have double-counted salvage for Net Lines on their original tax return for 1990.

Defendant's position is obviously incorrect. It is Treas. Reg. § 1.832-4(d) that gives Liberty Companies the right to gross-up their losses incurred on Net Lines for 1990 without the consent of the IRS, not the Revenue Procedure. Rev. Proc. 92-77 merely describes how the gross-up is to be accomplished. There is no provision in the regulation or in Rev. Proc. 92-77 that suggests that the gross-up is limited to taxpayers that previously filed returns on which they double-counted salvage for Net Lines. Such a reading of the regulations and Rev. Proc. 92-77 would be irrational. In essence, defendant is saying that the regulation applies only to taxpayers who file amended returns claiming refunds after previously filing a return for the year the gross-up is claimed reporting a double-counting of salvage. According to defendant's reading, the regulation does not apply on a prospective basis to any taxpayer which has yet to file a return reporting double-counting, or which seeks the gross-up to avoid the risk that the IRS on audit will require a double-counting of salvage for Net Lines.[2] In other words, although defendant

---

[2] Taxpayers were concerned that IRS agents would require the amount of "unpaid losses" in 26 U.S.C. § 832(b)(5)(A)(ii) to be taken directly off the Annual Statement (prior to discounting under 26 U.S.C. § 846) and thus to be net of (i.e., reduced by) estimated salvage on Net Lines, and then to be taken into account a second time in accordance with the new requirement in 26 U.S.C. § 832(b)(5)(A)(iii) to reduce unpaid losses by discounted estimated salvage. As explained by Dennis Van Mieghem in his declaration, although taxpayers were concerned about this as a potential audit adjustment by the IRS, no company he is aware of actually double counted salvage on is original tax return. Thus, under the IRS' new-found interpretation of Rev.

goes to great lengths to argue that the regulation and Rev. Proc. 92-77 were intended to prevent double-counting of Net Lines by allowing a conversion of the Net Lines to Gross Lines, defendant argues that the IRS wanted to solve the double-counting problem exclusively for a narrow (and perhaps non-existent) class of taxpayers that previously interpreted the statute to require double-counting and seek to file amended returns. This is not a rational interpretation of the regulation or Rev. Proc. 92-77. The plain language of the regulation applies to all taxpayers without limitation who would potentially have a double-counting issue for Net Lines.

*Liberty Companies separately took into account all salvage as required by Rev. Proc. 92-77*. To support its position, defendant completely ignores the regulation and focuses on the second condition in section 4.01 of the Revenue Procedure that "the estimated salvage recoverable that reduced unpaid losses is separately taken into account in accordance with section 832(b)(5)(A)(iii)." As explained in Liberty Companies' initial brief, this condition means that a taxpayer cannot gross-up its Net Lines unless it also takes into account the salvage income that had reduced unpaid losses in those lines on its Annual Statement. Pl. Br. 15-18. That is, the second condition of section 4.01 merely ensures that the requirements of the 1990 Act will be complied with and losses incurred on all lines will be reported net of salvage, once and only once, after Net Lines have been grossed-up. This is the very treatment that Liberty Companies sought by their 92-77 Election and have claimed in this case, but which defendant denies.

Defendant misreads this second requirement of section 4.01 as a condition precedent applicable only to Net Lines – that the gross-up applies only if a tax return already has been filed that double-counts salvage. As explained above, such a narrow reading cannot be right; it

---

Proc. 92-77, no company was actually covered by the Revenue Procedure because none actually double counted on its original return.

implements no rational policy and would narrow impermissibly the scope of the regulation. Had the IRS intended Rev. Proc. 92-77 to apply only to a limited class of taxpayers (despite the broad scope of the regulation), certainly it would have made that intent clear. Were this position correct, the IRS could simply have said: "This revenue procedure only applies to taxpayers that previously filed tax returns on which they double-counted salvage and now seek to file amended returns to claim a gross-up." Of course, the IRS did not say this because it had no intent administratively to overrule or narrow Treas. Reg. § 1.832-4(d). Thus, even if section 4.01 of Rev. Proc. 92-77 operates the way defendant says, Liberty Companies still are entitled to the gross-up in 1990, because Treas. Reg. § 1.832-4(d) allows the gross-up, not Rev. Proc. 92-77.

Furthermore, defendant has completely ignored the fact that Liberty Companies included a statement on their 1990 tax return that reserved the right to amend the return to conform with the expected IRS administrative guidance. The substance of Liberty Companies' 92-77 Election was to conform to the IRS' position by grossing up unpaid losses by the estimated salvage on Net Lines, as allowed by the regulations, and at the same time take that salvage into account as provided in 26 U.S.C. § 832(b)(5)(A)(iii).

Defendant attempts to support its position by citing examples in section 4.06 of Rev. Proc. 92-77 for the proposition that a taxpayer claiming the Special Deduction cannot also claim the gross-up. This is true; once Net Lines are converted to Gross Lines by the gross-up, the Special Deduction does not apply. But here, Liberty Companies have not claimed the Special Deduction. In making their 92-77 Election, Liberty Companies eliminated any Special Deduction. Instead, the IRS imposed the Special Deduction on Liberty Companies in an attempt to deny them the gross-up permitted by Treas. Reg. § 1.832-4(d) and Rev. Proc. 92-77.

*The gross-up allowed by Treas. Reg. § 1.832-4(d) did not require IRS consent.* Defendant relies on section 4.04 of Rev. Proc. 92-77 to suggest that claiming the gross-up

required IRS consent. Defendant makes this argument despite the fact that Treas. Reg. § 1.832-4(d) specifically provides that consent is not required. Nothing in the Revenue Procedure suggests that IRS consent is needed for a gross-up. As Liberty Companies pointed out in its original brief, the meaning of section 4.04 of Rev. Proc. 92-77 is clear – it merely reiterates that, where taxpayer used the cut-off method for Gross Lines (because it claimed the Special Deduction), it must obtain the consent of the IRS to depart from the cut-off method to remove salvage from unpaid losses. Pl. Br. 18-21. In this case section 4.04 has no application because Liberty Companies do not claim the Special Deduction and did not use the cut-off method for their Gross Lines. Indeed, by denying that the cut-off method applied, defendant necessarily concedes that the change for Gross Lines was proper. Answers ¶¶ 43, 50.

At the close of its brief, defendant makes several assertions, the essence of which is that the gross-up permitted by Treas. Reg. § 1.832-4(d) represents a change in method of accounting for which IRS consent is needed. But, as pointed out in our initial brief, claiming the gross-up for 1990 is not a change in method of accounting because it is a one-time event affecting only the taxable income for the year of the gross-up. A method of accounting is not involved unless the timing of a material item is in issue. Treas. Reg. § 1.446-1(e)(2)(ii)(a); *see* Pl. Br. 22-23. Recognizing this problem, defendant asserts that a method of accounting is involved when the Special Deduction and the gross-up are looked at together because the overall timing of taxable income may be changed. But, defendant ignores the fact that, under 26 U.S.C. § 446, each material item is looked at separately for purposes of analyzing whether there has been a change in method of accounting; the overall effect on taxable income of two separate items is not a single method of accounting. *See Leonhart v. Commissioner*, T.C. Memo. 1968-98 ("It is obvious that 'material item' should be read in context as 'material item of gross income or deductions' and should not be construed as meaning 'a material item of net income.'")

More importantly, the purported accounting method change is not even relevant in this case. Consent to the gross-up treatment has been given expressly by Treas. Reg. § 1.832-4(d) and Rev. Proc. 92-77. Nowhere does the regulation or the Revenue Procedure require additional IRS approval or a Form 3115 (Application for Change in Accounting Method) filing.[3]

**III. Liberty Companies are entitled to negative inferences based on defendant's discovery abuses.**

As explained in pending motions, defendant refused to produce the background files regarding Treas. Reg. § 1.832-4, Rev. Proc. 91-48 and Rev. Proc. 92-77. Defendant, moreover, after having received contention interrogatories, concealed its position in this case until ***after*** Liberty Companies filed their motion for summary judgment. Defendant claimed that the documents are not relevant and not available for review because of an IRS building closure. These arguments turned out to be incorrect and untrue. Now, in support of its motion for summary judgment, defendant places a gloss on the salvage transition rule in order to try to convince the court that a purported limitation on the rule in a applicable regulation is the proper reading. Moreover, defendant argues that the sole purpose of Rev. Proc. 92-77 was to solve a double-counting problem that, it turns out, applies to few, if any, taxpayers. Further, in its brief, defendant shamelessly refers to documents that are contained in the background files it previously stated were not relevant. Defendant, in short, has committed abusive discovery violations designed to hide its positions and conceal relevant materials. In view of these violations, Liberty Companies request an adverse inference that documents in defendant's background files would demonstrate what Liberty Companies assert, namely that (1) Treas. Reg. § 1.832-4(f)(3)(iii) was intended to apply only to taxpayers that used the cut-off method for pre-1990 accident years, and (2) the gross-up allowed by Treas. Reg. § 1.832-4(d) and Rev. Proc. 92-

[3] Defendant notes that if Liberty Companies qualify for the gross-up in 1990, the Special Deduction that the IRS forced upon Liberty Companies must be reversed. Liberty Companies agree, and this is how they filed their amended returns for 1990 and 1991 and their original returns for 1992 and 1993. However, for 1991-1993, the reversal of the Special Deduction will depend upon procedural issues of the IRS' own making that involve the statutes of limitations.

77 was not intended to be limited to taxpayers that double counted salvage on their original tax returns.

**IV. Conclusion.**

For the reasons stated above, and in their initial brief, Liberty Companies are entitled to the Fresh Start for salvage on their Gross Lines and the gross-up in 1990 for salvage on their Net Lines.

Date: November 15, 2006

/s/ *Peter H. Winslow*

Peter H. Winslow
Admitted Pro Hac Vice
1875 Eye Street, NW, Ste. 1050
Washington, D.C. 20006
Tel: (202) 434-9162
Fax: (202) 331-2032
Attorney for Plaintiffs

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing *Plaintiffs' 13-Page Reply Memorandum to Defendant's Motion For Summary Judgment and its Opposition to Plaintiff's Motion for Summary Judgment, Motion to Accept for Filing Plaintiffs' Extended Reply Memorandum to Defendant's Motion for Summary Judgment and its Opposition to Plaintiffs' Motion for Summary Judgment, Plaintiffs' Extended Reply Memorandum to Defendant's Motion for Summary Judgment and its Opposition to Plaintiff's Motion for Summary Judgment, Declaration of Dennis P. Van Mieghem,* and *Plaintiffs' Responses to United States' Statement of Undisputed Material Facts* filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to the following address via overnight mail on this 15th day of November, 2006:

Karen Wozniak
Trial Attorney, Tax Division
U.S. Department of Justice
555 Fourth Street, N.W.
Room 7816
Washington, D.C. 20044

Peter H. Winslow
Scribner, Hall & Thompson LLP
1875 Eye Street, N.W., Ste. 1050
Washington, D.C. 20006
Telephone: (202) 331-8585
E-mail: pwinslow@scribnerhall.com
Counsel for the plaintiff
Admitted pro hac vice