UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE<br>COMPANY AND SUBSIDIARIES,<br><br>               Plaintiff,<br><br>     v.<br><br>UNITED STATES OF AMERICA,<br><br>              Defendant. | )<br>)<br>)<br>)<br>)<br>) Civil No. 1:05-cv-11048-RCL<br>)<br>)<br>)<br>) |
| LIBERTY MUTUAL FIRE INSURANCE<br>COMPANY AND SUBSIDIARIES,<br><br>               Plaintiff,<br><br>     v.<br><br>UNITED STATES OF AMERICA,<br><br>              Defendant. | )<br>)<br>)<br>)<br>)<br>) Civil No. 1:05-cv-11049-RCL<br>)<br>)<br>)<br>) |

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION TO COMPEL PRODUCTION OF DOCUMENTS

**Request for Oral Argument**

This motion is intended to narrow the issues and the relief requested in Plaintiffs' Memorandum in Support of Plaintiffs' Motion to Compel Production of Documents, filed October 27, 2006, Doc. No. 28, and scheduled for a hearing on June 20, 2007. Plaintiffs reassert their request for the currently scheduled oral argument.

**Introduction**

At the instruction of the Court, counsel for the parties met on March 21, 2007, and again on June 6, 2007, to attempt to resolve Plaintiffs' motion to compel production of the government's background files on the proposed and final Treasury Regulation and the Revenue Procedures concerning salvage and subrogation. At the meetings, counsel for Defendant made it clear that the government's primary objection to the requests is that the documents are not relevant. Ironically, Plaintiffs agree that the requested documents are not relevant, *but only if* the Court determines that *(1)* as to Gross Lines, the plain language of the statute governs the outcome and *(2)* as to Net Lines, the plain language of the regulation governs the outcome. If the Court determines that the statute and regulation are ambiguous, case law requires Defendant to produce the background files because the documents in those files could help to resolve the ambiguities in the regulations and revenue procedures. In this way, the documents sought are analogous to the legislative history that courts use to interpret an ambiguous statute. *See, e.g., Deluxe Check Printers, Inc. v. United States*, 5 Cl. Ct. 498 (1984).

More specifically, Plaintiffs agree that the requested documents are irrelevant and that their Motion to Compel is moot if the Court determines with respect to Plaintiffs' Gross Lines that the plain meaning of Section 11305(c) of the Revenue Reconciliation Act of 1990 requires an 87-percent forgiveness of the 26 U.S.C. § 481 adjustment *and*, with respect to Plaintiffs' Net Lines, that the plain language meaning of Treas. Reg. § 1.832-4(d) permits a gross-up of unpaid losses for Plaintiffs' taxable year 1990.

**Summary of Requested Relief**

For Gross Lines, Plaintiffs' discovery is needed only if the Court determines that the Section 11305(c) has no plain meaning or that it can be disregarded. In such event, Treas. Reg. § 1.832-4(f)(3)(iii) becomes relevant and its interpretation is disputed by the parties. In the event the Court determines that the regulation is susceptible of two interpretations, Plaintiffs request the Court to adopt as a discovery sanction an adverse inference that the documents Defendant has wrongfully withheld support an interpretation of the meaning of the regulation that is the most favorable to Plaintiffs – namely, that the regulation merely recognizes that an adjustment under 26 U.S.C. § 481 cannot apply if the cut-off method of the regulation is employed.

Similarly, for Net Lines, Plaintiffs' discovery is needed only if the Court determines that Treas. Reg. § 1.832-4(d) does not have a plain meaning that allows Plaintiffs a gross-up of their unpaid loss reserves for salvage. In such event, Rev. Proc. 92-77 becomes relevant and its interpretation is disputed by the parties. In the event the Court determines that the Revenue Procedure is subject to two interpretations, Plaintiffs request the Court to adopt as a discovery sanction an adverse inference that the documents Defendant has wrongfully withheld support an interpretation of the meaning of the Revenue Procedure most favorable to Plaintiffs – namely, that the requirement in section 4.01(2) that the taxpayer "separately take[] into account" estimated salvage recoverable merely means that the taxpayer cannot gross-up Net Lines unless it also takes into account the estimated salvage income that reduced Annual Statement unpaid losses in those lines to the net amount (i.e., that Plaintiffs have complied with the statute's requirement to reduce unpaid losses for tax purposes by estimated salvage).

Plaintiffs requested the same adverse inferences in their Motion for Summary Judgment and reassert such a request here. *See* Plainiffs' Extended Reply Memorandum, Doc. No. 43 at 22-23, citing *Knightsbridge Mktng. Serv., Inc. v. Promociones y Projectos, S.A.*, 728 F.2d 572, 575 (1st Cir. 1984). In the alternative, if the Court does not order the adverse inferences sanction, Plaintiffs request an Order compelling production of the documents and an opportunity to supplement their brief in support of their motion for summary judgment to address the delinquent discovery responses.

### Rule 37.1 Statements Regarding Requests and Conferences

*August 25, 2006 Discovery Requests* – On August 25, 2006, Plaintiffs served requests for admissions, interrogatories and documents. The four document requests at issue in this motion are numbered six through nine. Doc. No. 29-1, App. A at 4-5. The four requests are for the background files concerning Rev. Proc. 91-48, Rev. Proc. 92-77, Treasury Decision 8390 (i.e., final revised Treas. Reg. § 1.832-4), and earlier proposed revisions to Treas. Reg. § 1.832-4.[1]

*Defendant's September 25, 2006 Responses* – On September 25, 2006, Defendant served responses to the document requests asserting, among other defenses addressed in Plaintiffs' pending Motion to Compel, that the background documents that explain the revenue procedures and regulations are not relevant. Doc. No. 29-1, App. A at 21-23.

*Plaintiffs' October 27, 2006 Motion to Compel* – On October 27, 2006, Plaintiffs filed their Motion to Compel Production of Documents for the background files at issue here. Doc. No. 27.

---

[1] Plaintiffs' Memorandum in Support of Plaintiffs' Motion to Compel Production of Documents, filed October 27, 2006 (Doc. No. 28), contains a more complete description of the discovery requests Plaintiffs served and Defendant's inadequate responses.

*Defendant's November 13, 2006 Response* – On November 13, 2006, Defendant filed a response to Plaintiffs' motion to compel in which it argued primarily that Plaintiffs waived their right to seek an order compelling discovery on September 29, 2006, when they filed their motion for summary judgment. *See* United States Response in Opposition to the Plaintiffs' Motion to Compel Production of Documents, Doc. No. 40. Defendant apparently is no longer asserting this waiver defense because it produced other discovery documents not related to the background files on January 12, 2007, and has recently promised to review the administrative files for more requested documents that are not related to the background files. It should be noted that Defendant asserted the waiver defense selectively, in that it responded – albeit late and under threat of a motion to compel and sanctions – to other interrogatory, admission and document requests in the month of October 2006, after Plaintiffs filed their Motion for Summary Judgment.

*March 21, 2007 Discovery Conference Required by Court Order* – On March 21, 2007, Plaintiffs' counsel Peter Winslow and Samuel Mitchell and Defendant's counsel Karen Wozniak and Barry Reiferson held an in-person conference at a Department of Justice office in Washington, D.C., to discuss the Motion to Compel, as required by the Court's March 16, 2007 Electronic Order. At the conference, Defendant's counsel asserted that the background file documents are not relevant. In approximately two hours of discussion, the parties were not able to narrow the requests or the issues.

*June 6, 2007 Discovery Conference Required by Court Order* – On June 6, 2007, Plaintiffs' counsel Peter Winslow and Gregory Oyler and Defendant's counsel Karen Wozniak and Barry Reiferson held another in-person conference at a Department of Justice office in Washington, D.C., as required by the Court's April 18, 2007 Electronic

Order. At this conference, Defendant's counsel agreed to review administrative files not pertinent to this motion and produce non-privileged documents from the files that are responsive to Plaintiffs' August 25, 2006 discovery request. Plaintiffs' counsel agreed that the background files and requested documents at issue in this motion are not relevant if the language of the Treasury Regulation and Revenue Procedures is determined to be clear and unambiguous. Plaintiffs' counsel also informed Defendant's counsel of Plaintiffs' intent to reassert the request in their motion for summary judgment for an adverse inference sanction in lieu thereof and as an alternative to production of the documents. The portion of the conference that pertained to discovery lasted approximately 15 to 30 minutes.

*June 8, 2007 Telephone Conference* – On June 8, 2007, at 3:00 p.m., undersigned counsel and Gregory Oyler had a telephone conference with Defendant's counsel Karen Wozniak regarding this amendment to the Motion to Compel. Counsel were not able to narrow the dispute.

### Standard for Discovery

As Plaintiffs understand it, Defendant's current refusal to respond to Plaintiffs' discovery is based primarily, if not exclusively, on its contention that the requested background files are not relevant. Because a taxpayer request for discovery of IRS background files is relatively routine in tax litigation when the meaning of regulations or IRS rulings is in dispute, the standard for relevance has been fairly well established by the caselaw. Such background files are relevant in resolving ambiguity in the regulation or procedure, similar to legislative history that courts use to resolve ambiguities in a statute. *See Deluxe Check Printers, Inc. v. United States, supra* ("Material of this type

[background files to a regulation] has been held discoverable or relevant in circumstances where a party wished to ventilate background material serving to clarify the scope of an ambiguous regulation"), citing *Jewett v. Commissioner,* 455 U.S. 305, 312-15 (1982), *Rowan Cos., Inc. v. United States,* 452 U.S. 247, 261-62 (1981) and *Bank of America v. United States,* 78-2 U.S.T.C. ¶ 9493 (N.D. Cal. 1978); *see also Jade Trading v. United States,* 65 Fed. Cl. 487 (2005) (holding that taxpayer was entitled to know how the IRS interpreted a term in a Notice and whether that interpretation was consistent over time).

Ironically, Plaintiffs agree that the background files they have requested should not be relevant in this case. The above cited cases, and others, establish that regulation background files are not relevant if the language of the statute or regulation in question is all that is in issue and if that language is not ambiguous. *See, e.g., Furman v. United States,* 83-2 U.S.T.C. ¶ 9739 (D.S.C. 1983). For Gross Lines, the plain language of the statute requires the 87% fresh start Plaintiffs have requested. There is no need to look at Treas. Reg. § 1.832-4(f)(3)(iii), much less examine its background file to determine its intended meaning. The same is true for Net Lines. Treas. Reg. § 1.832-4(d) unambiguously grants Plaintiffs the right to gross-up their unpaid losses for salvage for tax year 1990 and there is no need to examine Rev. Proc. 92-77 or its administrative history to determine the meaning of the regulation. Moreover, even if the Court disagrees with these conclusions, the discovery also is not needed, and is not relevant, if the Court determines that the meaning of Treas. Reg. § 1.832-4(f)(3)(iii) and Section 4.01(2) of Rev. Proc. 92-77 is clear and unambiguous. Again, there is an irony here because Plaintiffs believe that the meaning of these provisions is clear, but it is not the meaning asserted by Defendants.

### Treas. Reg. § 1.832-4(f)(3)(iii)

Treas. Reg. § 1.832-4(f)(3)(iii) simply states: "A company that claims the special deduction is precluded from also claiming the section 481 adjustment provided in paragraph (e)(2)(ii) of this section for pre-1990 accident years." Defendant argues that this section of the regulation really means that a company that claims the special deduction *on its original tax return* is not entitled to the fresh start in Section 11305(c) of the 1990 Act and must report the entire 26 U.S.C. § 481 adjustment that otherwise would be required from a change in method of accounting in Gross Lines. Defendant's interpretation is wrong for several reasons, not the least of which is that it directly contradicts the plain language of the statute. First of all, Plaintiffs have not claimed the special deduction. Treas. Reg. § 1.832-4(d) permits an amended tax return to be filed for 1990 to gross-up Net Lines. The effect of the gross-up on the amended return is to reverse any special deduction claim and to treat all unpaid losses as if they were Gross Lines. Therefore, the reference in Treas. Reg. § 1.832-4(f)(3)(iii) cannot refer to taxpayers such as Plaintiffs that have elected to gross-up unpaid losses under Treas. Reg. § 1.832-4(d).

Second, the regulation *precludes* the taxpayer from claiming a 26 U.S.C. § 481 adjustment; it does not mandate a 100% 26 U.S.C. § 481 adjustment as asserted by Defendant. Defendant misreads the regulation because it ignores other related sections. Treas. Reg. § 1.832-4(e)(1) provides the general rule that "except as provided in paragraph (e)(2)(iii)," all unpaid losses must be reduced by salvage as required by the 1990 Act. Paragraph (e)(2)(iii) provides a special rule that says that, if the special deduction is claimed, the statute should be ignored for pre-1990 unpaid losses and

estimated salvage should not be taken into account – a so-called "cut-off method" of changing accounting should be applied. In the case of a cut-off method, there is no 26 U.S.C. § 481 adjustment because there is no change in method of accounting with respect to pre-1990 amounts. Treas. Reg. § 1.832-4(f)(3)(iii) merely makes that clear by pointing out that, if the special deduction is claimed, no 26 U.S.C. § 481 adjustment comes into play because a cut-off method is required.

This has no application to this case because Defendant has affirmatively disavowed its own regulation that requires the use of the cut-off method, presumably because it correctly has concluded that the cut-off method is contrary to the statute. (*See* Answer to Liberty Fire Complt., Doc. No. 12 ¶¶ 43 and 50, and Answer to Liberty Mutual Complt., Doc. No. 12, ¶¶ 43 and 50, in which the Defendant denies that the cut-off method applies.) Therefore, Plaintiffs believe that the meaning of Treas. Reg. § 1.832-4(f)(3)(iii) is clear and it has no application to this case. If the Court is uncertain, however, the discovery requested by Plaintiffs is necessary to shed light on any perceived ambiguity.

### Rev. Proc. 92-77

Rev. Proc. 92-77 section 4.01(2) states the following condition on claiming a gross-up of salvage on Net Lines: "The estimated salvage recoverable that reduced unpaid losses is separately taken into account in accordance with section 832(b)(5)(A)(iii) of the Code." Defendant interprets this condition to mean that the gross-up only applies selectively. Defendant admits that the gross-up applies to new unpaid losses arising in 1990. It argues inconsistently, however, that the gross-up does not apply to pre-1990 unpaid losses unless the taxpayer seeks to file an amended return,

after first having filed an original return on which it double-counted salvage by reducing unpaid losses reported on the Annual Statement net of salvage by the same salvage a second time. Plaintiffs believe that the language Defendant relies on merely means that once the gross-up is claimed, unpaid losses must be reduced by salvage as required by 26 U.S.C. § 832(b)(5)(A)(iii). Defendant's misreading stems from its failure to appreciate the significance of the cross-reference to Rev. Proc. 91-48, 1991-2 C.B. 760 in Section 4.01(2). Section 4 of Rev. Proc. 91-48 sets forth the IRS position as to the accounting for salvage for taxpayers with Net Lines. In general, the IRS concluded that a double-counting was required – Annual Statement reserves that were net of salvage were required to be reduced by salvage a second time. Importantly, however, the IRS took the position that, if the taxpayer claimed a special deduction because it had Net Lines, a cut-off method was to be used for pre-1990 unpaid losses. Under the cut-off method, there would be no taking estimated salvage into account for either Gross or Net Lines (and therefore, no double-counting). This means that Defendant's interpretation of Section 4.01(2) cannot be correct. The gross-up for pre-1990 unpaid losses cannot be limited solely to taxpayers that double-counted salvage on their original return for 1990 because Rev. Proc. 91-48 precluded such double-counting.

A second reason Defendant's interpretation cannot be correct is that Defendant, in fact, has allowed the gross-up for the new unpaid losses arising in 1990 despite the fact that there was no double-counting of salvage for these losses on Plaintiffs' original tax return. To repeat, it is the position of the IRS, as expressed in Rev. Proc. 91-48, that double-counting of Net Lines is required by the statute unless the unpaid losses are grossed-up under Treas. Reg. § 1.832-4(d) and Rev. Proc. 92-77. Because the IRS in this

case has not required double-counting of salvage, it necessarily has allowed the gross-up. Therefore, the IRS has effectively already decided that the condition of Section 4.01(2) of Rev. Proc. 92-77 has been satisfied.[2]

Plaintiffs therefore believe that the meaning of Section 4.01(2) is clear and the condition has been satisfied. If the Court is uncertain, however, the discovery requested by Plaintiffs is necessary to shed light on any perceived ambiguity.

### An Adverse Inference Sanction is Appropriate

In their Extended Reply, Doc. No. 43 at 20-23, Plaintiffs described a pattern of discovery abuse in which Defendant has engaged during the course of this case. In essence, Defendant effectively concealed its positions in this case until after the Plaintiffs filed their Motion for Summary Judgment. Plaintiffs believe that adverse inferences are appropriate and would be more efficient than actual production at this stage in the process, after the parties have argued and briefed the pending summary judgment motions. Where a party engages in dilatory tactics, the First Circuit has held that an adverse inference against that party is appropriate. *See Marquis Theatre Corp. v. Condado Mini Cinema*, 846 F.2d 86, 89-90 (1st Cir. 1988) (Striking an answer because of a defendant's dilatory tactics and equating this to an adverse inference); *Knightsbridge Marketing, supra* (imposing adverse inference against a party because of dilatory tactics). Therefore, if the Court finds ambiguity, Plaintiffs are requesting adverse inferences. Plaintiffs seek actual production of the documents that may help resolve that ambiguity only as an alternative remedy in the event the Court does not grant adverse inferences.

---

[2] There are other reasons why Defendant's positions on both the Net Lines and Gross Lines are incorrect, as explained in Plaintiffs Motion for Summary Judgment.

**Requested Adverse Inference Sanctions**

Plaintiffs reassert the requests for adverse inferences in their pending Motion for Summary Judgment. Namely that

1. Treas. Reg. § 1.832-4(f)(3)(iii) was intended to apply only to taxpayers that used the cut-off method for pre-1990 accident years; and

2. The gross-up allowed by Treas. Reg. § 1.832-4(d) and Rev. Proc. 92-77 was not intended to be limited to taxpayers that double counted salvage on their original tax returns.

**Conclusion**

Based on the grounds stated above, Plaintiffs respectfully request the Court, in the event it finds ambiguity in the Statute, Treasury Regulation or Revenue Procedures, to enter an order granting adverse inferences against Defendant, or, in the alternative, to enter an Order requiring production of the requested background documents and allowing Plaintiff an opportunity to file another brief to address the documents.

**Local Rule 37.1 Certification**

I hereby certify that I complied with the requirements of Local Rule 37.1 before filing this motion.

Respectfully submitted,

Date: June 8, 2007

/s/ *Samuel A. Mitchell*
Samuel A. Mitchell
Scribner, Hall & Thompson, LLP
1875 Eye Street, NW, Ste.1050
Washington, D.C. 20006
Tel: (202) 434-9162
Fax: (202) 331-2032
Counsel for Plaintiffs
Admitted Pro Hac Vice