UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE<br>COMPANY AND SUBSIDIARIES, | )<br>)<br>) | Civil No. 1:05-11048-RCL |
| Plaintiff, | ) | |
| v. | )<br>) | |
| UNITED STATES OF AMERICA, | )<br>) | |
| Defendant. | ) | |

_____

| | | |
|---|---|---|
| LIBERTY MUTUAL FIRE INSURANCE<br>COMPANY AND SUBSIDIARIES, | )<br>)<br>) | Civil No. 1:05-11049-RCL |
| Plaintiff, | ) | |
| v. | )<br>) | |
| UNITED STATES OF AMERICA, | )<br>) | |
| Defendant. | ) | |

UNITED STATES' RESPONSE IN OPPOSITION TO THE PLAINTIFFS'
AMENDED MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Introduction

Plaintiffs' amended motion to compel production of documents should be denied. The documents at issue do not contain information that is admissible in evidence or reasonably calculated to lead to discovery of admissible evidence and are outside the scope of discovery which is intended to uncover facts. In addition, the documents at issue are irrelevant under First Circuit Law as well as under the non-binding relevance standard advocated by Plaintiffs. Given that the Plaintiffs themselves state that the requested documents "should not be relevant in this case" there is no basis for their making a motion to compel, let alone seeking discovery sanctions

against the government in the form of wholly unprecedented adverse legal inferences as to the meanings and applicability of a regulatory provision and revenue procedure at issue in this action.

Argument

I.  REQUESTED DOCUMENTS ARE BEYOND THE SCOPE OF DISCOVERY BECAUSE THEY DO NOT PERTAIN TO FACTS.

At issue in the Plaintiffs' amended motion to compel are Plaintiffs' requests for production of "all documents created by, considered by, or maintained by the Internal Revenue Service and the Department of the Treasury in the course of the consideration and issuance of" Revenue Procedure 92-77; Revenue Procedure 91-48; Treasury Decision 8390[1]; and Section 1.832-4 of the proposed Income Tax Regulations published on March 15, 1991, in the Federal Register.  Plaintiffs' First Request for Production of Documents, Requests 6-9, pp.4-5.  The documents sought, by their very nature, do not pertain to facts and Plaintiffs did not seek them to establish that a fact of consequence to the litigation is or is not true.  On the contrary, as the plaintiffs stated in their initial motion to compel "[t]he document production is necessary for Liberty Companies to explore defenses concerning the purpose and application of Rev. Proc. 92-77 and the application of Treas. Reg. § 1.832-4(d)."  Memorandum in Support of Plaintiffs' Motion to Compel Production of Documents (Docket #28) p.2.  As fully explained in the government's response in opposition to Plaintiffs' initial motion to compel documents (Docket #40), the requested documents do not contain information that is admissible in evidence or reasonably calculated to lead to discovery of admissible evidence and are outside the scope of

---

[1] Treasury Decision 8390 provides final regulations (26 C.F.R. § 1.832-4) relating to the treatment of salvage and reinsurance in computing the deduction for losses incurred of insurance companies other than life insurance companies.

discovery which is intended to uncover facts, not to explore legal arguments, interpretations, and defenses.  See Indiana Coal Council v. Hodel, 118 F.R.D. 264, 266 (D.D.C. 1988) ("the coercive power of discovery can be invoked to uncover facts, but the task of researching the law is left to the parties themselves"); Jackson v. Kroblin Refrigerated Xpress, Inc., 49 F.R.D. 134, 137 (N.D.W.Va. 1970) ("Free access *to facts* is an essential consideration when dealing with the discovery process.") (emphasis added); McNelley v. Perry, 18 F.R.D. 360, 361 (E.D.Tenn., 1955); ("The courts are in unanimous agreement that the Federal Rules of Civil Procedure should be liberally construed to enable the litigants to obtain all information necessary through the discovery rules, except privileged information, *that will disclose all facts* relating to the controverted issues.") (emphasis added).  Documents which are not reasonably calculated to lead to the discovery of admissible evidence are not discoverable.  See Fed.R.Civ.P. 26(b)(1).

II.     REQUESTED DOCUMENTS ARE NOT RELEVANT TO A CLAIM OR DEFENSE OF A PARTY.

A.     Requested documents are irrelevant under First Circuit law.

At the heart of the background files which Plaintiffs' seek are internal government memoranda, within the Internal Revenue Service, within the U.S. Department of Treasury, and between IRS and Treasury, as well as drafts of the revenue procedures and regulations.[2]  In the First Circuit, internal government memoranda are absolutely irrelevant.  In Sidell v. Commissioner, the First Circuit refused to consider a number of internal IRS memoranda relied upon by the taxpayers to support their position regarding proposed regulations, explaining:

> The tax code is an intricate web and demands clear rules so that it may be

---

[2] Other documents in the background files include copies of various published documents to which Plaintiffs have access and copies of letters on behalf of the insurance industry to the government, many of which have been published and to which Plaintiffs have access.

> administered with as little uncertainty as possible. To achieve this goal, the IRS must speak with a single voice, that is, through formal statements of policy such as regulations or revenue rulings. *See Connecticut Gen. Life Ins. Co. v. Commissioner*, 177 F.3d 136, 145 (3d Cir.1999). Accordingly, statements by individual IRS employees cannot bind the Secretary. *See Armco, Inc. v. Commissioner*, 87 T.C. 865, 867, 1986 WL 22040 (1986); *see generally Irving v. United States*, 162 F.3d 154, 166 (1st Cir.1998) (en banc) ("[C]ourts customarily defer to the statements of the official policymaker, not others, even though the others may occupy important agency positions."). Because these internal memoranda represent the personal views of the authors, not the official position of the agency, they do not figure in our decisional calculus. *See Honeywell Inc. v. United States*, 228 Ct.Cl. 591, 661 F.2d 182, 185-86 (1981).

Sidell v. Commissioner of Internal Revenue, 225 F.3d 103, 111 (1st Cir. 2000). The same analysis applies to drafts of regulations and revenue procedures. The official position of the Internal Revenue Service and Treasury is contained in the final published versions of regulations and revenue procedures, not in preliminary drafts prepared by government personnel. Accord Evergreen Trading, LLC v. Nussdorf, 75 Fed.Cl. 730 (2007) (granting protective order to bar plaintiffs from taking the depositions of three individuals who were involved in the drafting of certain Treasury regulations at issue in the action, holding that the requested depositions would not lead to the discovery of information relevant to the claim or defense of any party and that the personal views, intentions, *etc.* of drafters of regulations are not relevant to challenge of regulations).

B.  Requested documents are irrelevant under more liberal non-binding standards of the Court of Federal Claims.

Citing Deluxe Check Printers, Inc. v. United States, 5 Cl.Ct. 498, Plaintiffs claim in their amended motion to compel that the background files to the regulations and revenue procedures are relevant if the Court finds the regulations or revenue procedures ambiguous. See

Memorandum in Support of Plaintiffs' Amended Motion to Compel, Docket #67, pp.2, 6.[3]  At issue in the motion to compel in <u>Deluxe Check</u> were "memoranda, private letter rulings, and other documents prepared by the Treasury Department or Internal Revenue Service (I.R.S.) which explain the meaning and purpose of [a particular statute and regulation]." <u>Deluxe Check Printers, Inc. v. United States</u>, 5 Cl.Ct. 498, 502 (1984).  The party moving to compel production of the documents argued that the Treasury and IRS documents it sought "may shed light on the 'proper focus' of [the statute and regulation]" which it believed the IRS had erroneously interpreted and applied. <u>Id.</u> at 500.  The court held that all of the documents sought were irrelevant to any matter at issue in the case because they would not contain admissible evidence nor were they reasonably calculated to lead to admissible evidence. <u>Id.</u> at 502.  Specifically, the court held that materials contained in the administrative files of the Treasury Department and Internal Revenue Service relating to the meaning, purpose, and intent of the regulation, were irrelevant to the purpose and intent of Congress in promulgating the statutory provision pertinent to the action and that there was no ambiguity in the regulation which the requested background materials might serve to clarify, noting "[w]here there is no ambiguity in the words, there is no room for construction." <u>Id.</u> at 501-02.

    Although Plaintiffs rely on the relevance standard set forth in <u>Deluxe Check</u>, the court which decided that case subsequently provided a revised more narrow relevance standard in addressing a motion to compel documents relating to the issuance or consideration of a revenue

---

[3] Plaintiffs state "Plaintiffs' counsel agreed that the background files and requested documents at issue in this motion are not relevant if the language of the Treasury Regulation and Revenue Procedures is determined to be clear and unambiguous." Memo in Support of Amended Motion to Compel, p.6. It is Plaintiffs' position, not the government's, that the documents at issue are relevant if the Treasury regulation or revenue procedures are determined to be ambiguous.  It is the government's position that the documents are not relevant under any circumstance.

ruling in Vons Companies, Inc. v. United States, 51 Fed.Cl. 1 (2001):

> . . . the prepublication package for the ruling would be relevant only if the IRS pressed an interpretation thereof that seemed inconsistent with the terminology of the ruling and plaintiff could then use the background material to demonstrate that the IRS position was not long-standing and, indeed, was inconsistent with the agency's original interpretation of the ruling.
>
> Accordingly, the files requested by plaintiff will be relevant in this action only in very limited circumstances. And, even in those limited circumstances, various materials in those files undoubtedly will shed no light whatsoever on what the IRS, as an agency, felt the ruling meant or means. Thus, for example, the files could contain memoranda from individual IRS line attorneys setting forth positions that do not represent the agency's formal view of the law, including positions that were rejected by the IRS or the Treasury Department in choosing the final terminology and scope of the ruling. In this regard, plaintiff's attempt to analogize the ruling's background file to a statute's legislative history, in fact, proves informative, but only in sounding a note of caution. Seemingly, just as courts often refuse to attribute to Congress views expressed by a staffer or an individual member of Congress, particularly where such statements are made after the passage of a law so too should this court be extraordinarily hesitant to attribute to the IRS or the Treasury Department interpretations of a revenue ruling made by individual IRS employees that represent their personal views, rather than the official position of the agency.

Vons Companies, 51 Fed.Cl. at 21.

Not only are the views of the trial court in Deluxe Check and Vons Companies not binding on this Court, they conflict with the First Circuit's decision in Sidell. However, even under the relevance standard set forth in Deluxe Check and advocated by Plaintiffs and the revised relevance standard set forth in Vons Companies the background files sought by Plaintiffs are not relevant because, respectively, the regulations and Revenue Procedure 92-77 are not ambiguous and the government's positions with respect to the regulations and Revenue Procedure 92-77 are not "inconsistent with the terminology of" the regulations or the revenue procedure.

- 6 -

1. <u>Section 1.832-4(f)(3)(iii) is unambiguous and the government's position with respect to it is not inconsistent with the terminology of the provision.</u>

Section 1.832-4(f)(3)(iii) of the Treasury regulations clearly provides that a company that claims the special deduction under section 11305(c)(3) of the 1990 Act is precluded from also claiming the fresh start under section 11305(c)(2)(B) of the Act. See 26 C.F.R.§ 1.832-4(f)(3)(iii). The text of section 1.832-4(f)(3)(iii) reads, "A company that claims the special deduction is precluded from also claiming the section 481 adjustment provided in paragraph (e)(2)(ii) of this section for pre-1990 accident years." Section 1.832-4(f) labels the deduction provided in section 11305(c)(3) of the 1990 Act as the "special deduction." Section 1.832-4(e)(2)(ii) provides that "[i]f a company does not claim the deduction under section 11305(c)(3) of the 1990 Act, the company must take into account 13 percent of the adjustment that would otherwise be required under section 481 for pre-1990 accident years as a result of the change in accounting method." This tracks the fresh start provision in section 11305(c)(2)(B) of the 1990 Act. The preamble to the final regulations published in the Federal Register states in the explanation of the provisions regarding the transitional rules:

> . . . section 11305(c)(3) of the 1990 Act allows the insurance company to deduct 87 percent of the discounted amount of estimated salvage recoverable that the company took into account under its method of account for the last taxable year beginning before January 1, 1990 ("special deduction"). In response to comments requesting clarification of the proposed regulations, the final regulations make clear that a company that claims the special deduction may not also claim the benefit of section 11305(c)(2)(B) of the 1990 Act.

T.D. 8390. [Section 11305(c)(2)(B) of the 1990 Act provides the fresh start benefit.] The Joint Committee on Taxation discussed the rule of mutual exclusivity contained in section 1.832-4(f)(3)(iii):

> Treasury regulations implementing the salvage and subrogation provision of the

> 1990 Act provide a rule of mutual exclusivity for the two types of transition relief. The regulations provide that an insurance company that claims the benefit of the "fresh start" with respect to estimated salvage recoverable may not claim the special deduction, and a company that claims the special deduction may not claim the benefit of the "fresh start" (Treas. Reg. 1.932-4(f)(3)). The regulations effectively prevent a company from claim both a special deduction for some lines of business and a "fresh start' for other lines of business.

JCS-19-95, p.184. Insurance tax advisors recognize that section 1.832-4(f)(3)(iii) provides that an insurance company cannot claim both the special deduction and the fresh start. See Partners of KPMG Peat Marwick, FEDERAL TAXATION OF INSURANCE COMPANIES, ¶ 14.19, P.1436A [6-27-95] (1991) ("the final regulations contain the "mutually exclusive rule" created in Revenue Procedure 91-48. This rule prohibits a company that claims the special deduction from also claim the fresh-start benefit on unanticipated salvage recoverable." [The footnote to this sentence cites "Reg. § 1.832-4(f)(3)(iii)."])

    2.    <u>Revenue Procedure 92-77 is unambiguous and the government's position with respect to it is not inconsistent with the terminology of the revenue procedure.</u>

The sole purpose of Revenue Procedure 92-77 is to provide administrative guidance on the gross-up provision in the final regulations, section 1.832-4(d), which permits an insurance company which was a netter to, in certain circumstances, increase its unpaid losses for tax purposes by the amount of salvage recoverable taken into account in determining the amount of unpaid losses shown on its annual statement. As explicitly indicated in the announcement of the regulatory provision, in the notice issued with the final regulations, and in Rev. Proc. 92-77, the purpose of the gross-up provision is to address a potential double counting of salvage recoverable in computing losses incurred under section 832(b)(5)(A), as amended by the 1990 Act. See Notice 92-1; T.D. 8390; Rev. Proc. 92-77, § 2. In Notice 92-1, the IRS acknowledged property and casualty companies' concern that computing losses incurred under section

832(b)(5)(A), as amended by the 1990 Act, could result in a double counting of salvage recoverable and announced that in response to this concern, the final regulations under section 832 would provide that, in certain circumstances, a company that reports on its annual statement unpaid losses reduced by an amount of salvage recoverable (a netter) would be allowed for federal tax purposes to increase those unpaid losses to the extent they had been reduced by salvage recoverable.  See Notice 92-1.  The explanation issued with the final regulations containing the gross-up provision, section 1.832-4(d), explained that it was a response to comments that the requirement that salvage recoverable be taken into account separately in computing losses incurred may result in a double counting of salvage for companies that had taken salvage recoverable into account in determining the unpaid losses on their annual statements.  See T.D. 8390.  Rev. Proc. 92-77 explained for a third time that the gross-up provision in the regulations was intended to address a potential double counting of salvage recoverable in computing losses incurred under section 832(b)(5)(A).  See Rev.Proc. 92-77, §2.[4]  Accordingly, a company which did not double count any salvage recoverable in computing losses incurred for the 1990 tax period does not qualify for, or need, the corrective year end gross-up adjustment provided for in Rev. Proc. 92-77, section 4.02.

---

[4] The insurance industry and insurance tax advisors recognized that the purpose of the year end adjustment provided for in section 4.02 is to eliminate the effect of double counting in one year.  Upon publication of the final regulations, the American Insurance Association complained that the gross-up provision contained in the regulations, section 1.832-4(d), did not expressly state that only the ending unpaid loss reserves are to be grossed-up in the first year the provision is applied and indicated that "such a statement would ensure that the double counting can be fully eliminated by a gross-up of tax loss reserves."  See Letter from AIA to Assistant Secretary of the Treasury of 3/25/92 in THE INSURANCE TAX REVIEW, 625 (May 1992).  Describing the operation of the year-end gross-up in section 4.02, one insurance tax advisor explained, "[a]s a result, the entire effect of the double-counting of salvage was eliminated in one year."  Ernst & Young LLP, FEDERAL INCOME TAXATION OF PROPERTY AND CASUALTY INSURANCE COMPANIES § 6.7 (1996).

      3.    <u>Plaintiffs' misstatements regarding Revenue Procedure 92-77, Revenue Procedure 91-48, and the government's position unsuccessfully attempt to render the government's position inconsistent with the terminology of Revenue Procedure 92-77.</u>

Plaintiffs incorrectly claim that "the gross-up for pre-1990 unpaid losses cannot be limited solely to taxpayers that double-counted salvage on their original return for 1990 because Rev. Proc. 91-48 precluded such double-counting." Memo in Support of Amended Motion to Compel, p.10. Although it is true that the cut-off method provided for in section 9.01 of Rev. Proc. 91-48 and section 1.832-4(e)(2)(iii) of the Treasury regulations prevented a company which claimed the special deduction from double counting salvage recoverable attributable to pre-1990 accident periods, for a company that did not claim the special deduction there was a potential for double counting of salvage recoverable attributable to pre-1990 accident years as well as the 1990 and succeeding accident years. For a company which claimed the special deduction, the change in method of accounting to separately account for salvage recoverable was, with respect to salvage recoverable attributable to net lines, to be implemented pursuant to a cut-off method under which only such salvage recoverable attributable to the 1990 and succeeding accident years is taken into account separately under section 832(b)(5)(A)(iii). <u>See</u> Rev. Proc. 91-48, § 9.01; 26 C.F.R. § 1.832-4(e)(2)(iii). This cut-off method prevented salvage recoverable attributable to pre-1990 accident years, that has already reduced the unpaid losses attributable to those years, from being double-counted. However, a company which did not claim the special deduction had to separately account for salvage recoverable attributable to all accident years under 832(b)(5)(A)(iii). <u>See</u> Rev. Proc. 91-48 § 8.01. Consequently, for a company which did not claim the special deduction, there was a potential for double counting salvage recoverable attributable to the pre-1990 accident years as well as salvage recoverable

attributable to the 1990 and succeeding accident years. Specifically, a company which did not claim the special deduction, which reduced its unpaid losses on its annual statement by some salvage recoverable, and which separately accounted for that salvage recoverable under section 832(b)(5)(A)(iii) as required, would have double counted the salvage recoverable which reduced its unpaid losses.

Accordingly, the examples provided in section 4.06 of Rev. Proc. 92-77 to illustrate the principles of the revenue procedure distinguish between the application of the year-end gross-up for a company which did not claim the special deduction and a company which did claim the special deduction. At the end of the 1990 tax period, a property and casualty company will have unpaid losses and salvage recoverable attributable to the 1990 accident year as well as unpaid losses and salvage recoverable attributable to pre-1990 accident years. As demonstrated by the first example in § 4.06, in applying the year-end gross-up, a company which did not claim the special deduction will increase its 1990 year-end unpaid losses attributable to all accident years. See Rev. Proc. 92-77, § 4.06, Ex. 1. In contrast, as demonstrated by the second example, a company which claimed the special deduction will only increase its 1990 year-end unpaid losses attributable to the 1990 accident year. See Rev. Proc. 92-77, § 4.06, Ex. 2. As explained in Rev. Proc. 92-77, under Rev. Proc. 91-48, for a company that claimed the special deduction, the requirement under section 832(b)(5)(A)(iii) that salvage recoverable be separately taken into account does not apply to salvage recoverable attributable to pre-1990 accident years. Because the salvage recoverable attributable to pre-1990 accident years was not taken into account separately, there was no double-counting of this salvage recoverable and no need for the gross-up of unpaid losses attributable to pre-1990 accident years to correct double-counting.

Plaintiffs claim that the government "has allowed the gross-up for the new unpaid losses arising in 1990 despite the fact that there was no double-counting of salvage for these losses on Plaintiffs' original return." Memo in Support of Amended Motion to Compel, p.10. The government did not allow such a gross-up.

The section on Rev. Proc. 92-77 in Plaintiffs' memorandum in support of its amended motion to compel contains additional misstatements regarding the provisions of the revenue procedure, the government's position with respect to the revenue procedure, and Revenue Procedure 91-48. See Memo in Support of Amended Motion to Compel, 9-11. The government refers the Court to its memorandum of law in support of the United States' motion for summary judgment and in opposition to the plaintiffs' motion for summary judgment (Docket #54) for an accurate description of Rev. Proc. 92-77 and the government's position with respect to the revenue procedure, as well as an explanation of how the relationship between section 832(b)(5)(A), as amended by the 1990 Act, and the section 846 definition of unpaid losses creates a potential for salvage recoverable to be "double counted" in the computation of losses incurred for a company that netted salvage recoverable in determining unpaid losses in its annual statement.[5]

Given that neither the regulations nor Rev. Proc. 92-77 is ambiguous, that the

---

[5] In Plaintiffs' memorandum in support of their motion for summary judgment they claimed that the requirement in section 4.01 of Rev. Proc. 92-77 that "[t]he estimate salvage recoverable that reduced unpaid losses is separately taken into account in accordance with section 832(b)(5)(A)(iii)" relates to gross lines. See Memorandum in Support of Plaintiffs' Motion for Summary Judgment (Docket #22), pp.15-17. The position that the requirement pertains to gross lines is in complete contradiction of the explicit language of the requirement because salvage recoverable attributable to gross lines would have never reduced the unpaid losses. It is of note that Plaintiffs appear to have abandoned that position in their memorandum in support of their motion to compel. See Memo in Support of Amended Motion to Compel, pp.9-10.

government's position with respect to the regulations is not inconsistent with the terminology of the regulations, and that the government's position with respect to Rev. Proc. 92-77 is not inconsistent with the terminology of the revenue procedure, the background files sought by Plaintiffs are not relevant under the relevance standard in <u>Deluxe Check</u> advocated by Plaintiffs or the revised relevance standard in <u>Vons Companies</u>.  More importantly, the documents sought are not relevant in the First Circuit under <u>Sidell</u>.

III.   REFUSAL TO PRODUCE ADMITTEDLY IRRELEVANT DOCUMENTS WHICH ARE OUTSIDE THE SCOPE OF DISCOVERY DOES NOT PROVIDE A BASIS FOR DISCOVERY SANCTIONS AND, IN ANY EVENT, THERE IS NO AUTHORITY FOR THE COURT TO DRAW ADVERSE LEGAL INFERENCES.

Plaintiffs state that they believe that the meaning of section 1.832-4(f)(3)(iii) and section 4.01 of the Rev. Proc. 92-77 is "clear" and also state that "the background files they have requested should not be relevant in this case."  Memo in Support of Amended Motion to Compel, p.7.  Despite this, in their amended motion to compel, Plaintiffs seek as a discovery sanction against the government the following "adverse inferences":[6]

> 1.  Treas. Reg. § 1.832-4(f)(3)(iii) was intended to apply only to taxpayers that used the cut-off method for pre-1990 accident years; and
> 2.  The gross-up allowed by Treas. Reg. § 1.832-4(d) and Rev. Proc. 92-77 was not intended to be limited to taxpayers that double counted salvage on their original returns.

---

[6] Plaintiffs state they requested the same adverse inferences in their extended reply memorandum with respect to their motion for summary judgment.  <u>See</u> Memo in Support of Amended Motion to Compel, p.4.  Plaintiffs were never granted leave to file the extended reply memorandum.  On November 15, 2006, Plaintiffs filed a motion requesting that the Court accept for filing an extended reply memorandum to Defendant's motion for summary judgment and opposition to Plaintiffs' motion for summary judgment (Docket #42) and separately filed a copy of the extended reply memorandum (Docket #43).  On November 16, 2006, the Court entered an order finding as moot Plaintiffs' motion for leave to file excess pages (Docket #42) in light of the Court's order striking the government's original memorandum in support of its motion for summary judgment.  <u>See</u> Docket Entry dated 11/16/2006.  Plaintiffs' extended reply memorandum was never accepted for filing.

Memo in Support of Amended Motion to Compel, p.12.  In the alternative, Plaintiffs seek an order compelling production of the documents.  Id.

There is no basis for discovery sanctions against the government for not producing documents which are irrelevant and beyond the scope of discovery allowed by Rule 26 of the Federal Rules of Civil Procedure.[7]  Furthermore, even if the Court were to determine the documents withheld are relevant, there is no precedent for drawing adverse *legal* inferences.  The Court has no authority to rewrite section 1.832-4(f)(iii) of the Treasury Regulations or Revenue Procedure 92-77 as a discovery sanction or under any other circumstance, for that matter.

---

[7] Plaintiffs note that in their extended reply with respect to their motion for summary they "described a pattern of discovery abuse" by the government and wrongfully claim that "[i]n essence, Defendant effectively concealed its positions in this case until after the Plaintiffs filed their Motion for Summary Judgment."  Memo in Support of Amended Motion to Compel, p.11.  (As noted above, Plaintiffs extended reply was never accepted by the Court.)  The government did not engage in a pattern of discovery abuse or conceal its position until after Plaintiffs filed their motion for summary judgment and will address these allegations at the request of the Court.  These allegations are, however, unrelated to the government's nonproduction of the background files at issue and, thus, seem irrelevant to Plaintiffs' amended motion to compel.  Discovery abuses unrelated to the documents at issue would not provide a basis for drawing adverse inferences with respect to the documents.

Conclusion

For the reasons presented above as well as the reasons presented in the government's response in opposition to Plaintiffs' initial motion to compel production of documents (Docket #40), the Plaintiffs' amended motion to compel should be denied.[8,9]

        Respectfully submitted,

        MICHAEL J. SULLIVAN
        United States Attorney

        /s/ *Karen Wozniak*
        KAREN WOZNIAK
        Trial Attorney, Tax Division
        U.S. Department of Justice
        Post Office Box 55
        Ben Franklin Station
        Washington, D.C. 20044
        Telephone: (202) 307-1927
        E-mail: karen.e.wozniak@usdoj.gov

---

[8] The government has not abandoned any of the defenses asserted in its opposition to Plaintiffs' initial motion to compel production of documents. The government's decision not to assert a defense with respect to one set of documents does not retract the defense with respect to another set of documents.

[9] In the event that the Court determines not to deny Plaintiffs' amended motion to compel on the basis that the production requests at issue seek material that is irrelevant and not properly discoverable under Rule 26 or on the basis that the motion to compel was untimely, the United States will address privilege issues. See CACI Field Servs., Inc. v. United States, 12 Cl.Ct. 680, 684 (1987) ("before examining the executive privilege claim, the court must inquire whether the information sought is relevant since matters of privilege can appropriately be deferred for definitive ruling until after the production demand has been adequately bolstered by a general showing of relevancy") (internal quotations omitted); Shipkovitz v. United States, 1 Cl.Ct. 400, 401 (1983) ( "By virtue of [the language in Rule 26(b)(1), Fed.R.Civ.P.] the single initial hurdle that must be cleared by the proponent of discovery is a demonstration of the relevance of the information sought to the issues involved in the case. Relevant material may subsequently be protected from discovery by proper claims of privilege, but the initial question is that of relevance."); Freedman v. Seligson, 405 F.2d 1326, 1338-39 (D.C.Cir. 1968) (holding "matters of privilege can appropriately be deferred for definitive ruling until after the production demand has been adequately bolstered by a general showing of relevance" and noting that with this technique the laborious page-by-page examination which assertions of privilege would require of the Secretary of Agriculture may be avoided or curtailed).

CERTIFICATE OF SERVICE

    I hereby certify that the United States' Response in Opposition to the Plaintiffs' Motion to Compel Production of Documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). There are no non-registered case participants.

        /s/ *Karen Wozniak*
        KAREN WOZNIAK
        Trial Attorney, Tax Division
        U.S. Department of Justice
        Post Office Box 55
        Ben Franklin Station
        Washington, D.C. 20044
        Telephone: (202) 307-1927
        E-mail: karen.e.wozniak@usdoj.gov