UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11048-RCL

LIBERTY MUTUAL INSURANCE COMPANY AND SUBSIDIARIES,

Plaintiffs

v.

UNITED STATES OF AMERICA,

Defendant.

**CONSOLIDATED REPORT AND RECOMMENDATION ON**

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**
*(Docket # 21)*

**and**

**UNITED STATES' MOTION FOR SUMMARY JUDGMENT**
*(Docket # 31)*

**and**

**ORDER ON**

**PLAINTIFFS' MOTION TO COMPEL**
*(Docket #27)*

ALEXANDER, M.J.

At its base, this is a federal tax refund case. As the parties agreed during oral

1

argument, however, this also happens to be a federal tax refund case of, essentially, first impression for the courts.[1] Both Liberty Mutual and the United States move for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons detailed below, the Court FINDS that (1) Liberty Mutual's pre-1990 Hybrid method of accounting was permissible; (2) Liberty Mutual is entitled to the Fresh Start on its Net Lines of business; (3) Liberty Mutual is not entitled to the Special Deduction; and (4) Liberty Mutual is entitled to the gross-up and, accordingly, RECOMMENDS that both Liberty Mutual's and the United States' Motions for Summary Judgment be DENIED IN PART AND ALLOWED IN PART in accordance with this Report and Recommendation. In light of this Court's decision, (5) Liberty Mutual's Motion to Compel is DENIED without prejudice, pending the District Judge's ruling on the instant Report and Recommendation.

**Procedural History**

Plaintiffs, Liberty Mutual Insurance Company and Subsidiaries and Liberty Mutual Fire Insurance (collectively "Liberty Mutual") filed suit separately against the United States of America ("United States") for the recovery of federal income taxes assessed and collected for the taxable year ending December 31, 1990. District Judge

---

[1] Counsel advises that similar actions have been brought, but that they have been resolved by the parties prior to judicial findings on the merits.

2

Lindsay ordered the cases consolidated due to the commonality of facts and issues.[2]

Liberty Mutual is a property and casualty company ("P&C") incorporated in

Massachusetts.[3]  After both Liberty Mutual and the United States filed their

respective motions for summary judgment, this Court held a hearing on said motions

April 20, 2007. The crux of the issues presented can broken down into the following

questions:

> 1.  Whether Congress intended the gross salvage transition rule to apply to a taxpayer that used a "Hybrid" method of accounting for computed losses on particular lines of business;
>
> 2.  Whether section 11305 of the Revenue Reconciliation Act of 1990 entitles Liberty Mutual and other companies, similarly situated, to a "Fresh Start," a "Special Deduction," or a combination of both the "Fresh Start" and "Special Deduction" on salvage recoverable; and
>
> 3.  Whether Treasury Regulation 1.832-4(d) and Revenue Procedure 92-77 entitle Liberty Mutual to "gross-up" the amount of salvage on its Net Lines so as to realize a greater tax deduction.

---

[2]The suit brought by Liberty Mutual Insurance Company and Subsidiaries was originally docketed as 05-cv-11048. The suit brought by Liberty Mutual Fire Insurance was originally docketed as 05-cv-11049. The consolidated case is docketed as 05-cv-11048-RCL.

[3]For the purpose of clarity through simplicity, any involved Liberty Mutual entity will be referred to collectively in the singular. For the purposes of this Report and Recommendation there is no need to distinguish between these entities.

## Factual Background

Liberty Mutual is an insurance company required to report salvage[4] on its Annual Statement filed with the state insurance department in its state of domicile. An insurance company is entitled to count claims paid out as a loss for tax purposes, but must reduce this loss by the amount which it actually recovers through salvage (hereinafter, "salvage recoverable").[5]

Prior to 1990, P&Cs were permitted to record salvage for tax purposes in the same manner in which they reported salvage on their Annual Statements. Liberty Mutual maintains that P&Cs had the freedom to choose between three methods of reporting for uncollected salvage: (1) the Cash/Gross method - companies that used

---

[4]Salvage, for purposes of this discussion, is property which an insurance company becomes entitled to when it pays a loss. An example of salvage is a "totaled" automobile. Salvage also includes subrogation, which is the right an insurer obtains, on paying a claimant's loss, to pursue a claimant's remedies against third-parties. An example would be an insurance company "stepping into the shoes" of a tort victim and suing the tortfeasor(s). Any money collected from that suit would become "salvage recoverable."

[5]For example, if an insurance company paid $100 to its insured to cover claims stemming from an automobile accident; it would be entitled to count that $100 as a loss for tax purposes. However, if as a result of paying its insured, the insurance company takes possession of the damaged vehicle, the amount the insurance company receives upon resale of the vehicle, say $25, would be deducted from the claimed $100 loss. Thus, the insurance company's loss for tax purposes is reduced to $75.

4

this method (hereinafter referred to as "Grosser(s)") took salvage into account <u>only</u> when it was actually recovered and reduced to cash by the P&C [i.e. after having paid the insured's claim and taking possession of a wrecked vehicle, the vehicle is sold and the P&C receives the proceeds]; (2) the Estimated/Net method - companies that used this method (hereinafter referred to as "Netter(s)") took <u>estimated salvage recoverable</u> into account in determining the amount of incurred unpaid losses [i.e. estimating the dollar amount the salvaged vehicle will be sold for, and accounting for it to reduce the amount of unpaid losses for tax purposes]; and (3) the "Cash/Net" or "Hybrid" method - some companies, including Liberty Mutual, reported losses using either the Gross or Net method, depending upon the line of business involved [i.e. a P&C could use the Gross method for its automobile line and the Net method for its subrogation line].[6]  In the instant case, Liberty Mutual reported the amount of estimated salvage (Net method) on its 1989 and 1990 Annual Statements for some lines of business, but not others – a Hybrid method – a method the Government contends was impermissible.

In part to address the different accounting methods employed by P&Cs, Congress passed the Revenue Reconciliation Act of 1990, Pub. L. No. 101-508, 104

---

[6]Throughout, the terms "Net Lines" and "Gross Lines" will be used to describe a P&C's line of business that uses either the Net method or the Gross method of accounting.

5

Stat. 1338 (hereinafter, the "1990 Act"), requiring that P&Cs follow a uniform method of accounting for salvage. Section 11305(c)(2)(A) of the 1990 Act specifies that the amendment is to be treated as a change in method of accounting for tax purposes. 1990 Act § 11305(c)(2)(A). In so doing, the 1990 Act effectively created a potential for double-counting in certain aspects of a P&C's accounting methods, namely for use of the Gross method. The Internal Revenue Code's procedure for dealing with double-counting issues arising as a result of change in accounting methods is generally found at 26 U.S.C. § 481. As such, section 481 requires P&Cs effected by the 1990 Act to adjust their Gross Lines to avoid said double-counting.

To minimize the impact of its imposition of a new accounting method, Congress authorized taxpayers using the Gross method to reduce the required adjustment under 26 U.S.C. § 481 to thirteen percent of what it otherwise would have been and to spread the thirteen percent ratably over a four year tax period beginning in 1990 (hereinafter, "Fresh Start") . 1990 Act, § 11305(c)(2)(B) ("In applying section 481 of the Internal Revenue Code of 1986 with respect to the change [required by the 1990 Act] only 13 percent of the net amount of adjustments . . . shall be taken into account").

Taxpayers that previously reduced their losses by estimated salvage through the Net method were not required by section 481 to make adjustments to their

accounting. As such, these Netters did not receive the same benefit as Grossers by being able to reduce their tax liability. To equitably compensate those taxpayers not required to made adjustments in accordance with section 481, Congress also granted a deduction equal to eighty-seven percent of the discounted amount of estimated salvage to be spread ratably over a four year tax period beginning in 1990 (hereinafter, the "Special Deduction"). 1990 Act § 11305(c)(3) ("87 percent of the discounted amount of the estimated salvage recoverable as of the close of such last taxable year shall be allowed as a deduction"). Congress created the Fresh Start and Special Deduction as part of the 1990 Act to provide an equal benefit to all P&Cs, compensating them for the 1990 Act's change in accounting method. P&Cs were to begin to take either the Fresh Start or Special Deduction starting with the 1990 tax return filed for the 1989 tax year.

The statutory language is clear that pure Grossers (those who exclusively use the Gross method) are entitled to the Fresh Start and that pure Netters (those who exclusively use the Net method) are entitled to the Special Deduction. The Fresh Start allows pure Grosser P&Cs to report only thirteen percent of the otherwise required adjustment while the Special Deduction allows pure Netter P&Cs to deduct eighty-seven percent of the estimated salvage that would otherwise be recorded. The United States contends that, despite the obviously equitable nature of the two

7

deductions, Congress did not intend for P&Cs that employed a Hybrid method to receive the benefit of <u>either</u> the Fresh Start or Special Deduction.

Liberty Mutual admits that prior to 1990 it used a Hybrid accounting method. More specifically, its Annual Statements for both 1989 and 1990 reflected a split in accounting practices whereby Liberty Mutual used a Gross method on some lines of business and a Net method on others. In light of its Hybrid accounting practices, on its 1990 federal income tax returns for the taxable year 1989, Liberty Mutual claimed the Special Deduction with respect to its Net Lines and the Fresh Start with respect to its Gross Lines. Similarly, in its 1991 federal income tax return for the taxable year 1990, Liberty Mutual used the same accounting practice, claiming the Special Deduction with respect to Net Lines and the Fresh Start with respect to Gross Lines.

Subsequently, in 1992 Congress amended Treas. Reg. § 1.832-4(f)(iii). The purpose of this regulation was to clarify the applicability of the 1990 Act. Section 1.832-4 clearly states that P&Cs claiming the Special Deduction could not also claim the Fresh Start. Treas. Reg. § 1.832-4(f)(iii) (1992). The regulation further provided for its retroactive application to the 1990 tax year and the 1990 Act. The retroactive applicability required Liberty Mutual to reevaluate its federal income tax returns to the extent they were impacted by the 1990 Act. After section 1.823-4 was amended, Liberty Mutual requested affirmative adjustments regarding its tax returns for the

previous two years on which it had claimed both the Fresh Start and Special Deduction. To comply with the rules, as newly clarified by section 1.832-4, Liberty Mutual did not claim the Special Deduction on any subsequent tax returns.

In compliance with section 1.823-4(d), Liberty Mutual adjusted its Net Lines to reflect gross salvage recoverable.[7] This adjustment, called a gross-up, allowed Liberty Mutual to adjust its salvage recoverable on all Net Lines in order to retroactively calculate salvage as a Pure Grosser for tax purposes. Liberty Mutual applied the Fresh Start to all of its lines (both Gross Lines and grossed-up Net Lines) on its 1992 tax return. Liberty Mutual used the same method on its 1992 tax return, reporting one-quarter of thirteen percent of the salvage recoverable from 1989 on all lines. This accounting practice allowed Liberty Mutual to claim a deduction equivalent to the Fresh Start on all lines and receive the same benefit as a Pure Grosser.

In September 1993, Liberty Mutual filed with the Internal Revenue Service

---

[7]The statute reads, in relevant part, "[a]n insurance company that takes estimated salvage recoverable into account in determining the amount of its unpaid losses shown on its annual statement is allowed to increase its unpaid losses by the amount of estimated salvage recoverable taken into account if the company complies with the disclosure requirement of paragraph (d)(2) of this section." Treas. Reg. § 1.823-4(d) (2000). There is no requirement in the statute that the company must take estimated salvage into account on its annual statement for all areas of the company.

(hereinafter "IRS"), a request to convert its Net Lines into Gross Lines effective for the 1990 tax year. United States Statement of Undisputed Material Facts at ¶ 12; Plaintiff's Statement of Undisputed Material Facts of Record at ¶37 (hereinafter Pl.'s Undisputed Facts at ¶ __"). In support of its request, Liberty Mutual averred that as a result of the 1990 Act it no longer maintained any Net Lines for tax purposes. Pl.'s Undisputed Facts at ¶ 38. Accordingly, Liberty Mutual asked to be allowed to gross-up the estimated salvage for those business areas formerly calculated as Net Lines. Pl.'s Undisputed Facts at ¶ 38. In response, the IRS conducted an audit of Liberty Mutual. As a result of that audit, the IRS adjusted the reported amount of Liberty Mutual's income to reflect the entire amount of salvage under the adjustment required by 26 U.S.C. § 481. Pl.'s Undisputed Facts at ¶ 42. The IRS did not permit Liberty Mutual to claim either the Fresh Start or to gross-up its Net Lines. Pl.'s Undisputed Facts at ¶ 42-43. The IRS did allow a Special Deduction for the Net Lines equal to a discount of eighty-seven percent spread rateably over four years beginning in 1990. Pl.'s Undisputed Facts at ¶ 44. On October 6, 2004 Liberty Mutual filed a claim for taxable year 1990 seeking the refund at issue in this litigation. Pl.'s Undisputed Facts at ¶ 19.

Now, this federal income tax odyssey finds its way here. Both parties have moved for summary judgment. Liberty Mutual is seeking a significant tax refund and

the United States is seeking judicial approval of its interpretation of the involved

statutes and regulations. With the detailed dissertation of the facts complete, this

Court delves into the even murkier realms of the law.

## Summary Judgment

The standard for summary judgment is well established in this jurisdiction.

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file . . . show that there is no genuine issue of

material fact and that the moving part is entitled to . . . judgment as a matter of law."

Fed. R. Civ. P. 56(c); Buchannan v. Maine, 469 F.3d 158, 166 (1st Cir. 2006). A fact

is material only if it could affect the outcome of the suit under the governing and

applicable law. Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52

(1st Cir. 2000) (quoting Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). An

issue is genuine when it presents an issue that is "sufficiently open-ended to permit

a rational factfinder to resolve the issue in favor of either side" when considering all

the evidence in the light most favorable to the non-moving party. Nat'l Amusements,

Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995) (citing Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 250 (1986)).

**Issues**

*I. Whether Liberty Mutual's pre-1990 accounting method of calculating Gross salvage recoverable for some business lines and Net salvage recoverable for others was a permissible method of accounting?*

An accounting method is permissible so long as it clearly reflects income. Treas. Reg. § 1.446-1(a)(1); Treas. Reg. § 1.446-1(c)(1)(iv); <u>Burnet v. Sanford & Brooks Co.</u>, 282 U.S. 359, 365 (1931); <u>Hallmark Cards, Inc. v. Comm'r</u>, 90 T.C. 26, 35-36 (1988). "Taxable income for a particular accounting period is determined using the method of accounting used by the taxpayer in regularly maintaining his books." <u>Hallmark,</u> 90 T.C. at 30-31. Section 446 of the Internal Revenue Code lists permissible methods of accounting: "(1) the cash receipts and disbursements method; (2) an accrual method; (3) any other method permitted by this chapter; or (4) <u>any</u> <u>combination of the foregoing methods</u> permitted under regulations prescribed by the Secretary." 26 U.S.C. § 446(c) (2006) (emphasis added). Hybrid methods of accounting are permitted under tax law so long as the hybrid approach clearly reflects income. <u>Loftin v. Woodard,</u> 577 F.2d 1206, 1229 (5th Cir. 1965).

In its Motion for Summary Judgment, the United States contends that Liberty Mutual's use of a Hybrid method was not permissible under the Internal Revenue Code. Defendant's Motion for Summary Judgment at 6 (hereinafter, "US Summ. J. at __"). As such, the United States further avers that allowing Liberty Mutual to

claim either the Fresh Start or the Special Deduction, depending on the treatment of a particular line of business, would amount to a Congressional endorsement of an impermissible method of accounting. US Summ. J. at 6. The United States supports its position by arguing that Liberty Mutual's Hybrid method is impermissible in part because Liberty Mutual did not have any Gross Lines, but only "the auto physical damage line, for which some of the salvage recoverable was netted against the unpaid losses shown in their annual statements and some was not." US Summ. J. at 9. However, the United States does not cite any case law or statute in support of its position.

The United States' position is, however, contradicted by the IRS itself. In 1993, the Commissioner of the IRS conducted an audit of Liberty Mutual. United States' Response to Plaintiff's Statement of Undisputed Material Facts on Record at ¶ 12 (hereinafter "US Response at ¶ __"). The record before this Court indicates no evidence that the Commissioner found anything impermissible about Liberty Mutual's Hybrid accounting practice. See Pl.'s Undisputed Facts at ¶ 40-46. Further, the United States does not suggest that Liberty Mutual's Hybrid method of accounting fails to clearly reflect income. See Burnet, 282 U.S. at 365. In fact,

13

credible evidence before this Court suggests quite the opposite.[8]

This Court finds that the plain reading of the Internal Revenue Code does not prohibit the use of a Hybrid method generally, nor does it prohibit said method from being split on the basis of business lines. Accordingly, Liberty Mutual's accounting method constituted a permissible method of accounting prior to 1989.[9]

*II. Whether Congress has explicitly authorized either the "Fresh Start" or the "Special Deduction" for P&Cs who are neither pure Netters nor pure Grossers but instead employ a Hybrid method?*

    *a.    Whether Liberty Mutual is entitled to both the Fresh Start for those areas it acted as a Grosser and the Special Deduction for those areas it acted as a Netter?*

No company is allowed to claim both the Fresh Start and the Special Deduction. Treas. Reg. § 1.832-4(f)(3)(iii) (1992) ("A company that claims the special deduction is precluded from also claiming the section 481 adjustment

---

[8]In a sworn declaration, Dennis P. Van Mieghem, former Director for the National Insurance Tax Practice, stated that many of his clients used a Hybrid method of accounting, using both Gross Lines and Net Lines. Plaintiff's Reply Memorandum to Defendant's Motion for Summary Judgment at 4.

[9]This Court addresses the permissibility of Liberty Mutual's accounting practices in order to fully respond to the extensive briefing on the issue by the United States. That said, the permissibility of Liberty Mutual's pre-1990 accounting methods is, actually, irrelevant for purposes of the instant case. The 1990 Act applies to <u>any P&C required to change its method of accounting by reason of the Act</u>. Therefore, regardless of Liberty Mutual's accounting method prior to the Act, so long as Liberty Mutual was required to change its method of computing losses incurred, the 1990 Act applies.

14

provided in paragraph (e)(2)(ii) of this section [the Fresh Start,] for pre-1990 accident years."). "[A] company [that] does not claim the deduction under section 11305(c)(3) of the 1990 Act, [the Special Deduction], . . . must take into account 13 percent of the adjustment that would otherwise be required under section 481 for pre-1990 accident years as a result of the change in accounting method." Treas. Reg. § 1.832-4(e)(2)(ii) (1992) (emphasis added). The plain language of the regulation, thus, is perspicuous in that no company can claim both deductions. The regulation makes no mention of the type of accounting practices used by a company. Section (e)(2)(ii) further requires that a company that does not claim the Fresh Start must take the Special Deduction. Treas. Reg. § 1.832-4(e)(2)(ii)(1992). Congress intended for some off-set to be available to all companies required to change their accounting practices. See Treas. Reg. § 1-832.4(e)(2)(ii) (1992). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron v. Natural Res. Def. Council, 467 U.S. 837, 842-43 (1984).

Congress enacted sections (b) through (f) of Treas. Reg. § in January of 1992, and made the regulation retroactively effective beginning in taxable year 1990. Until the passage of the regulation there was no affirmative statement clarifying that a P&C could not claim both the Fresh Start and Special Deduction. Prior to the amended

15

regulation, Liberty Mutual claimed, split between its different lines, both the Fresh

Start and the Special Deduction. After the amendment, Liberty Mutual converted its

Net Lines to Gross Lines using the gross-up (the applicability of which is discussed

below) and claimed the Fresh Start for all salvage recoverable from tax year 1989.

The 1992 amendment to Treas. Reg. § 1.823-4 clarified, but did not change, the

earlier regulation. Liberty Mutual is entitled to either the Special Deduction or the

Fresh Start, but not both.

> b.    *Whether Liberty Mutual is entitled to claim the Fresh Start or the*
> *Special Deduction?*

All deductions, including both the Fresh Start and the Special Deduction, are

a matter of legislative grace. See Deputy v. Dupont, 308 U.S. 488, 493 (1940); New

Colonial Ice v. Helvering, 292 U.S. 435, 440 (1934). "Where Congress includes

particular language in one section of a statute but omits it in another section of the

same Act, it is generally presumed that Congress acts intentionally and purposefully

in the disparate inclusion or exclusion." Russello v. United States, 464 U.S. 16, 23

(1983) (quoting United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir. 1972);

In re Cynthia Clark v. Chi. Mun. Employee Credit Union, 119 F.3d 540, 547 (7th Cir.

1997) ("The use of certain words in one instance by the legislature and different

words in another, indicate that different results were intended.") (quoting Ill. State

Toll Highway Authority v. Karn, 293 N.E.2d 162, 165 (Ill. App. Ct. 973)); Lopez-Suto v. Hawayek, 173 F.3d 170, 173 (11th Cir. 1999) (emphasizing the difference in Congressional word choice between "emergency department" in one section of the statute and "hospital" in another section of the same statute was intentional and intended to apply to different groups).

At the outset, the 1990 Act makes the changes within applicable to "any taxpayer who is required by reason of the amendments made by this section to change his method of computing losses incurred." 1990 Act § 11035 (c)(2)(A) (1989) (emphasis added). The 1990 Act then defines two separate sub-groups differentiated by Congressional classification, each of which is entitled to a different type of relief. Section (c)(2)(B), the Fresh Start, is available to "any taxpayer who is required by reason of the amendments made by [the Act] to change his method of computing losses." 1990 Act § 11305(c)(2)(A) (1989) (emphasis added). The 1990 Act changed the method of computing losses previously required by 26 U.S.C. § 832(a), mandating that P&Cs now report three separate calculations in a manner not previously employed. Section (c)(2)(B) does not require any particular type of accounting practice, and therefore it is irrelevant for the purposes of the Fresh Start whether Liberty Mutual used a single, company-wide accounting practice or a Hybrid method.

Section (c)(3), the Special Deduction, is available only to those companies that

took into account salvage recoverable in determining losses. See 1990 Act § 11305 (c)(3) (1989) (emphasis added). The difference in Congressional word choice between taxpayer in section (c)(2) and company in section (c)(3) is far from semantic. The use of the word companies in section (c)(3) indicates a requirement of a single, company-wide accounting practice of taking into account salvage recoverable, *i.e.* those companies that were pure Netters. See Senate Report, 136 Cong. Rec. S15695. The Senate Finance Committee Report puts great weight on the use of the word "company" as indicative of Congressional intent that the Special Deduction apply only where a single company-wide, accounting practice was utilized. Senate Report, 136 Cong. Rec. S15695. The Special Deduction is available only to those companies that used a uniform, company-wide accounting practice of calculating Net salvage recoverable. In contrast, the Fresh Start is available to any taxpayer required to change its accounting practice.

Liberty Mutual was not a pure Netter, and consequently is not entitled to the Special Deduction. The Fresh Start does not require that companies use a single accounting method in computing loss. To the extent that a company computes any of its loss through Gross calculation of salvage recoverable, it is entitled to the Fresh Start for the accounts required to be adjusted in accordance with section 481. This includes any adjustments required as a result of the gross-up, the applicability of

18

which is discussed below. Liberty Mutual is entitled to the Fresh Start on any accounts in which it computed salvage recoverable as a Grosser.

III. *Whether Liberty Mutual is entitled to the gross-up?*

"No item should be omitted and no item should be duplicated as a result of a change in a method of accounting or reporting income for taxation." Grogan v. United States, 475 F.2d 15, 17 (5th Cir. 1973) (quoting Comm'r v. Welch 345 F.2d 926, 945 (5th Cir. 1965)). This applies "in situations in which a taxpayer changes its method of accounting voluntarily or by direction of the IRS and the change results in a duplication or omission of income." Am. Family Mut. Ins. Co. v. United States, 376 F. Supp. 2d 909, 910 (W.D. Wis. 2005). "An insurance company that takes estimated salvage recoverable into account in determining the amount of its unpaid losses shown on its annual statement is allowed to increase its unpaid losses by the amount of estimated salvage recoverable taken into account if the company complies with the disclosure requirements" set out below. Treas. Reg. § 1.832-4(d)(1)(1992). The gross-up is  a one time accounting practice intended to prevent accounting inaccuracies caused by the mandated change in accounting practices. The purpose of the gross-up is to avoid potential duplication in the calculation of salvage recoverable. US Summ. J. at 14.

The Fresh Start and the Special Deduction are one time deductions granted by

Congress to off-set the transition to a new accounting method required by the 1990 Act. The purpose of the gross-up is different; it is intended to correct an otherwise unavoidable accounting inaccuracy. See Rev. Proc. 92-77 § 2 (1992). The revised accounting method in 26 U.S.C. § 832(b)(5)(A) requires companies calculate "losses incurred" using three separate calculations. The first of these calculations, § 832(b)(5)(A)(i), requires that, "to losses paid during the taxable year, [companies] deduct salvage and reinsurance recovered during the taxable year." 26 U.S.C. § 832(b)(5)(A)(i) (2006) (emphasis added).

Complication occurs in the calculation of losses paid. Pure Netters define losses paid as the estimated final amount of loss expected. Pure Grossers define losses paid as the actual current losses paid out. Those companies that employ a Hybrid method define losses paid as the estimated loss in those areas that calculate Net loss, and as the actual loss in those areas that calculate Gross loss. The revised accounting method under the 1990 Act requires all companies to deduct salvage and reinsurance actually recovered during the tax year from the losses paid. As such, during the transition year of 1990, pure and partial Netters already accounted for at least some of this deduction in their calculation of losses paid.

"Some taxpayers [*i.e.* pure and partial Netters,] have taken estimated salvage recoverable into account in determining the unpaid losses on their annual statement.

20

For these taxpayers, the requirement that estimated salvage recoverable be taken into

account separately in computing losses incurred may result in a double counting of

estimated salvage recoverable." Rev. Proc. 92-77 § 2. Section 1.832-4(d)[10] allows

a taxpayer who has taken salvage recoverable into account separately to increase its

unpaid losses for tax purposes by the amount of salvage recoverable already taken

into account in order to provide an accurate accounting. Rev. Proc. 92-77§ 2. The

literal requirements of section 823(b)(5)(A) result in a one-time accounting error

requiring Netting companies to count recovered salvage twice. The gross-up is

intended to correct this inaccuracy. The gross-up is not intended as a deduction or

benefit, but as a method to provide accurate accounting information. See Rev. Proc.

92-77 § 2 (1992).

Liberty Mutual employed Hybrid accounting practices, whereby it calculated

the Net amount of loss for some business lines and the Gross amount of loss for other

---

[10]Section 1.832-4(d) states that "[a]n insurance company that takes estimated
salvage recoverable into account in determining the amount of its unpaid losses
shown in its annual statement is allowed to increase its unpaid losses by the
amount of estimated salvage recoverable taken into account if the company
complies with disclosure requirement of paragraph (d)(2) of this section." Sub-
section (d)(2) requires that a company either disclose the extent to which estimated
salvage recoverable was taken into account in computing the unpaid losses to the
IRS or files a statement with the appropriate state agency disclosing the extent to
which estimated salvage recoverable was taken into account in computing unpaid
losses filed in that calendar year.

21

business lines. "At year-end 1989 and 1990, Liberty Companies had certain estimated salvage which had reduced its unpaid loss reserves and losses incurred on Net Lines on their Annual Statements." US Response at ¶25 (citing Declaration of Roy K. Morell at ¶ 5). "At year-end 1989 and 1990, Liberty Companies had additional estimated salvage on Gross lines which had not reduced losses incurred or otherwise been taken into account on their Annual Statements." US Response at ¶26 (citing Declaration of Roy K. Morell at ¶6) (emphasis added). The estimated salvage on Liberty Mutual's Net Lines was included in the Annual Statement. The estimated salvage on Liberty Mutual's Gross Lines was not included in the Annual Statement. The amount of salvage recoverable on the Net Lines was subject to double counting.[11] To the extent that salvage recoverable had already been calculated in the Annual Statement on Liberty Mutual's Net Lines, and that an accounting inaccuracy would otherwise result, Liberty Mutual is entitled to a gross-up for that amount.

To the extent that Liberty Mutual calculated salvage recoverable for its Gross Lines on the Annual Statement in 1989, it is entitled to gross-up its Net Lines and apply the Fresh Start to the new adjusted amount. Sub-section (g) of Treas. Reg. §

---

[11]The United States avers Liberty Mutual did not double count any salvage recoverable. Section 1.832-4(d)(2) requires that Liberty Mutual must indicate, either to the IRS or to the appropriate state agency, where double accounting occurred. Any damages that Liberty Mutual may be entitled to are dependant upon Liberty Mutual's compliance with § 1.832-4(d)(2).

1.823-4 makes sub-section (d) effective for taxable years beginning 1989, for the beginning of the 1990 Act. The Special Deduction applies to pure Netters whereas the Fresh Start may be claimed by companies that are either pure Grossers or that employ a Hybrid method and have some Gross Lines. This tax scheme is saturated by an attempt at equitable treatment of all P&Cs required to make a change in their accounting practices, regardless of their former practices. This notion of fairness is supported by both the statutory language and Congressional intent. See 136 Cong. Rec. 141 S15695 (stating that the Fresh Start is intended to treat companies in the same manner regardless of whether they previously took into account salvage recoverable). The amendment to Treas. Reg. § 1.823-4 clarifies the transition procedure for companies that employed a Hybrid method. Treas. Reg. § 1.823-4(d) authorizes a one-time gross-up for any companies that were pure or partial Netters. Any company that employs a Hybrid method of accounting must gross-up the amount of salvage on its Net Lines in order to provide accurate accounting information in accord with section 481. Companies employing a Hybrid method are allowed to gross-up Net Lines and claim the Fresh Start on all lines. There is nothing in Treas. Reg. § 1.832-4(d) that makes the gross-up applicable only to pure Netters. Once Net Lines are adjusted to reflect gross salvage the Fresh Start is applicable to the entire amount of Gross salvage recovered.

*IV. Whether this Court should grant Liberty Mutual's Motion to Compel background documents about the passage and possible interpretations of Treas. Reg. § 1.832-4 and Rev. Proc. 92-77?*[12]

Liberty Mutual seeks background information regarding Congressional intent and discussion of the passage of Rev. Proc. 92-77 and Treas. Reg. § 1.832-4(d). In that Liberty Mutual avers that the production of the requested documents are only necessary if the Court finds that the plain language of the statute is unclear the Court will briefly address the issue. However, to the extent that this is a case of first impression, resting in large part on statutory analysis of the 1990 Act, this Court does find this background information to be relevant and subject to discovery. See Fed. R. Civ. P. 26(b)(1). The Court leaves the decision to Liberty Mutual whether to seek the production of the requested information in light of this Court's findings. The statutory language, although complicated, is not susceptible to multiple interpretations. See 1990 Act § 11305(c) (1989); Rev. Proc. 92-77 (1992); Treas. Reg. § 1.832-4 (2000). Treas. Reg. § 1.823-4(f)(iii) could hardly be more straight forward. "A company that claims the special deduction is precluded from also claiming the section 481 adjustments provided in paragraph (e)(2)(ii)." Treas. Reg.

_____

[12]In that this Court recommends that this action be resolved in full on the parties' motions for summary judgment, the Court issues the following Order on Liberty Mutual's Motion to Compel, yet stays its application pending the District Judge's ruling on the instant Report and Recommendation.

§ 1.823.4(f)(iii) (1992). The only interpretation of this statute is that a company is precluded from claiming both the Fresh Start and the Special Deduction. The retroactive applicability of Treas. Reg § 1.823-4 may make its application confusing, but does not open itself up to multiple interpretations.

The application of Rev. Proc. 92-77 is similarly confusing as it requires a retroactive change in accounting practices on the part of P&Cs. However, the statutory language is transpicuous. "A taxpayer that has taken estimated salvage recoverable into account in determining the amount of unpaid losses reported on the annual statement may increase its unpaid losses for tax purposes by the amount of estimated salvage recoverable taken into account in determining those unpaid losses." Rev. Proc. 92-77 (1992) (emphasis added). The procedure set out in this section is applicable to any taxpayer who has reported estimated salvage. No particular type of accounting practice is required, nor is there a requirement of a single company-wide accounting practice. Rather, any taxpayer that has calculated and reported some amount of estimated salvage on its Annual Statement may take advantage of the gross-up. Liberty Mutual reported estimated salvage on its Annual Statement for its Net Lines and, therefore, is entitled to the gross-up for those lines. Once a company has complied with Rev. Proc. 92-77 and grossed-up its Net Lines, the Fresh Start is applicable to the new and final amount of salvage recoverable. See 1990 Act §

25

11305(c)(2)(B) (1989).

In sum, this Court FINDS that (1) Liberty Mutual's pre-1990 Hybrid method of accounting was permissible; (2) Liberty Mutual is entitled to the Fresh Start on its Net Lines of business; (3) Liberty Mutual is not entitled to the Special Deduction; and (4) Liberty Mutual is entitled to the gross-up.    This Court, therefore, RECOMMENDS that both Liberty Mutual's and the United States' Motions for Summary Judgement be DENIED IN PART AND ALLOWED IN PART in accordance with this Report and Recommendation. In light of this Court's instant decision, (5) Liberty Mutual's motion to Compel is DENIED without prejudice, pending the District Judge's ruling on the instant Report and Recommendation. SO ORDERED.

*7/27/07*
Date

*/s/ Joyce London Alexander*
United States Magistrate Judge

## **NOTICE TO THE PARTIES**

The parties are hereby advised that under the provisions of Rule 3(b) of the

Rules for United States Magistrate Judges in the United States District Court the

District Court of Massachusetts, any party who objects to this proposed Report and

Recommendation must file a written objection thereto with the Clerk of this Court

within ten (10) days of the party's receipt of the Report and Recommendation. The

written objections must specifically identify the proportions of the proposed findings,

recommendations or report to which objection is made and the basis for such

objection. The parties are further advised that the United States Court of Appeals for

this Circuit has indicated that failure to comply with this rule shall preclude further

appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 273

(1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Scott

v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 687 F.2d 376,

378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604

(1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474

U.S. 1111 (1986).

27