UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE<br>COMPANY AND SUBSIDIARIES,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Cnsl. Cv. No. 1:05-cv-11048-RCL |

---

| | | |
|---|---|---|
| LIBERTY MUTUAL FIRE INSURANCE<br>COMPANY AND SUBSIDIARIES,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Former Cv. No. 1:05-cv-11049-RCL |

### PLAINTIFFS' PROTECTIVE OBJECTIONS TO CONSOLIDATED REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND UNITED STATES' MOTION FOR SUMMARY JUDGMENT

These Protective Objections are filed pursuant to Fed. R. Civ. P. 72(b) and Local Rule 3.

The Report and Recommendation of United States Magistrate Judge Joyce London Alexander dated July 27, 2007 ("Report") holds for Plaintiffs on the two core issues in this case, and the grounds for the holding are correct. First, the Report (pages 16-19) correctly holds that the plain language of section 11035(c)(2)(A) of the Revenue Reconciliation Act of 1990, Pub. L.

No. 101-508, 104 Stat. 1388, allows Plaintiffs a "Fresh Start" on their Gross Lines, including the

Gross Lines resulting from the gross-up of Net Lines permitted by Treas. Reg. § 1.832-4(d)(1).

In support of this finding, the Report also correctly holds (pages 12-14) that Plaintiffs' "hybrid"

method of accounting for salvage prior to 1990, whereby they reported loss reserves for some

lines of business gross of salvage and other lines net of salvage, was a permissible method of

accounting.  In oral argument, Defendant's counsel conceded that if the Court found Plaintiffs'

accounting method to be permissible, Defendant's position on the Fresh Start issue would fail.

Transcript of Hearing on Cross Motions for Summary Judgment before the Honorable Joyce

London Alexander United States Magistrate Judge, April 20, 2001, page 12, lines 1-10

(attached).

On the second issue, the Report (pages 19-23) correctly holds that the plain language of

Treas. Reg. § 1.832-4(d)(1) permits a gross-up of Plaintiffs' 1990 loss reserves for salvage on its

Net Lines, thereby converting these lines to Gross Lines for tax purposes and making them

eligible for the Fresh Start.

The Report holds for Plaintiffs on both core issues for the correct reasons, and Plaintiffs

have no objection to the Report as a whole.  However, if the Court were to alter the conclusion of

the Report on either of those two issues, it is important to Plaintiffs to preserve the right to object

to other subsidiary elements of the Report.  For example, the Report concludes that Plaintiffs are

entitled to gross-up their loss reserves on Net Lines and take a Fresh Start on those lines and that

Plaintiffs are not entitled to take the Special Deduction.  In the event the Court does not accept

the conclusion of the Report that Treas. Reg. § 1.832-4(d)(1) permits a gross-up of Plaintiffs'

1990 loss reserves, Plaintiffs object to the conclusion that they are not entitled to the Special

Deduction.  Further, the Report concludes that Plaintiffs are entitled to a Fresh Start on Gross

Lines.  In the event the Court does not accept the conclusion of the Report and holds that

Plaintiffs are not entitled to a Fresh Start on Gross Lines, Plaintiffs object to any interpretation of

the Court of Treas. Reg. § 1.832-4(f)(3), or any reliance thereon, for the conclusion that the Fresh

Start is limited to companies that do not claim the Special Deduction.[1]

In addition, Plaintiffs take this opportunity to point out certain typographical and other

apparently inadvertent errors in the Report and to suggest corrections.  Plaintiffs believe that it

would be useful to bring these minor errors to the Court's attention even though they do not

affect the substance of the Report's legal conclusions on the basic issues.  The errors and

suggested corrections are described generally hereafter, and the specific numbered corrections

suggested by Plaintiffs are reflected in the attached marked-up copy of the Report.

- Correction 1 – "Line of business" generally refers to a type of insurance risk, e.g.,

  workers' compensation, medical malpractice, special liability, etc.  Subrogation is not

  considered a line of business.


- Corrections 2, 3, 4 – The Report uses the term "double-counting" to refer to two different

  situations.  At page 6, the Report refers to the double-inclusion in income or omission

  that routinely occurs in the tax year a taxpayer changes its method of accounting for an

  item of income, which may give rise to a 26 U.S.C. § 481 adjustment.  (In this case, as in

---

[1]  That regulation merely states the consequences of the rule that if the cut-off method
was adopted for pre-1990 accident years for Gross Lines, no section 481 adjustment applies.  To
the extent the Court were to interpret the regulation to preclude a Special Deduction and a Fresh
Start, the regulation would contravene the plain language of the transition rule statute and
therefore be invalid and unenforceable.

*American Family Mutual Ins. Co. v. United States*, 376 F. Supp. 2d 909 (W.D. Wis. 2005), a Congressionally enacted transition rule supersedes the operation of 26 U.S.C. § 481.)  At pages 19-23, the Report deals with a different double-counting problem under amended 26 U.S.C. § 832(b)(5)(A) for a taxpayer with Net Lines that could result in estimated salvage income being counted twice.  To avoid confusion between these two different "double-counting" situations, Plaintiffs suggest that the first situation, pertaining to 26 U.S.C. § 481, be referred to as "income omission" rather than "double-counting." (Technically, the transition rule here involves a potential omission rather than double inclusion of income.)

• Corrections 5, 6, 7, 13, 17, 22 – Based upon year-end 1989 estimated salvage recoverable, the 1990 Act required nonlife insurance companies to begin to take either the Fresh Start or Special Deduction starting with the tax return filed for tax year 1990 (the 1990 tax return).  These suggested corrections are designed to avoid confusion between the roles of 1989 estimated salvage and the 1990 tax return.

• Corrections 8, 11, 15, 25, 26, 27, 30, 32 – In several places the Report refers to Treasury Regulations and IRS revenue procedures as though they were statutes authored by Congress rather than regulations or administrative pronouncements promulgated by Treasury or the IRS.

• Corrections 9, 10, 12, 14, 16, 18, 21, 23, 24, 28, 29, 31 – In referring frequently to Treas. Reg. § 1.832-4, the Report sometimes transposes the characters of the regulation section.

• Correction 19 – As the Report states on page 22, line 15, the gross-up applies to Net Lines, and the reference in line 14 of that page should also be to Net Lines, not Gross

-4-

Lines.

•    Correction 20 – Footnote 11 refers to the requirement of Treas. Reg. § 1.832-4(d)(2) that, in order to take the gross-up to avoid the double counting problem, the company must disclose, on its annual statement or on a statement filed with the appropriate state regulatory authority, "the extent to which estimated salvage recoverable is taken into account in computing the unpaid losses shown on the annual statement." This aspect of the case is not in dispute. See Plaintiffs' Statement of Undisputed Material Facts, document no. 24, paragraph 36, pertaining to the annual statement disclosures and Defendant's admission of the undisputed facts at United States' Response to Plaintiffs' Statement of Undisputed Material Facts of Record, document no. 31, at paragraph 36. Accordingly, footnote 11 is unnecessary and should be deleted.

Respectfully submitted:

Dated: <u>August 10, 2007</u>                              <u>/s/ Peter H. Winslow</u>
                                                    PETER H. WINSLOW
                                                    Scribner, Hall & Thompson, LLP
                                                    1875 Eye Street, N.W., Suite 1050
                                                    Washington, D.C. 20006
                                                    Telephone: (202) 331-8585
                                                    E-mail: pwinslow@scribnerhall.com
                                                    Counsel for Plaintiffs
                                                    Admitted pro hac vice

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the foregoing *Plaintiffs' Protective Objections to Consolidated Report and Recommendation on Plaintiffs' Motion for Summary Judgment and United States' Motion for Summary Judgment* filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this the 10th day of August 2007:

Karen Wozniak
Trial Attorney, Tax Division
U.S. Department of Justice
555 Fourth Street, N.W.
Room 7816
Washington, D.C. 20044

*/s/ Peter H. Winslow*
Peter H. Winslow
Scribner, Hall & Thompson LLP
1875 Eye Street, N.W., Ste. 1050
Washington, D.C.  20006
Telephone: (202) 331-8585
E-mail: pwinslow@scribnerhall.com
Counsel for the plaintiff
Admitted pro hac vice

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11048-RCL

LIBERTY MUTUAL INSURANCE COMPANY AND SUBSIDIARIES,

Plaintiffs

v.

UNITED STATES OF AMERICA,

Defendant.

**CONSOLIDATED REPORT AND RECOMMENDATION ON**

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**
*(Docket # 21)*

**and**

**UNITED STATES' MOTION FOR SUMMARY JUDGMENT**
*(Docket # 31)*

**and**

**ORDER ON**

**PLAINTIFFS' MOTION TO COMPEL**
*(Docket #27)*

ALEXANDER, M.J.

At its base, this is a federal tax refund case. As the parties agreed during oral

1

argument, however, this also happens to be a federal tax refund case of, essentially, first impression for the courts.[1]  Both Liberty Mutual and the United States move for summary judgment pursuant to Fed. R. Civ. P. 56.  For the reasons detailed below, the Court FINDS that (1) Liberty Mutual's pre-1990 Hybrid method of accounting was permissible; (2) Liberty Mutual is entitled to the Fresh Start on its Net Lines of business; (3) Liberty Mutual is not entitled to the Special Deduction; and (4) Liberty Mutual is entitled to the gross-up and, accordingly, RECOMMENDS that both Liberty Mutual's and the United States' Motions for Summary Judgment be DENIED IN PART AND ALLOWED IN PART in accordance with this Report and Recommendation.  In light of this Court's decision, (5) Liberty Mutual's Motion to Compel is DENIED without prejudice, pending the District Judge's ruling on the instant Report and Recommendation.

**Procedural History**

Plaintiffs, Liberty Mutual Insurance Company and Subsidiaries and Liberty Mutual Fire Insurance (collectively "Liberty Mutual") filed suit separately against the United States of America ("United States") for the recovery of federal income taxes assessed and collected for the taxable year ending December 31, 1990. District Judge

---

[1]Counsel advises that similar actions have been brought, but that they have been resolved by the parties prior to judicial findings on the merits.

Lindsay ordered the cases consolidated due to the commonality of facts and issues.[2]

Liberty Mutual is a property and casualty company ("P&C") incorporated in

Massachusetts.[3]  After both Liberty Mutual and the United States filed their

respective motions for summary judgment, this Court held a hearing on said motions

April 20, 2007. The crux of the issues presented can broken down into the following

questions:

1.    Whether Congress intended the gross salvage transition rule to apply to a taxpayer that used a "Hybrid" method of accounting for computed losses on particular lines of business;

2.    Whether section 11305 of the Revenue Reconciliation Act of 1990 entitles Liberty Mutual and other companies, similarly situated, to a "Fresh Start," a "Special Deduction," or a combination of both the "Fresh Start" and "Special Deduction" on salvage recoverable; and

3.    Whether Treasury Regulation 1.832-4(d) and Revenue Procedure 92-77 entitle Liberty Mutual to "gross-up" the amount of salvage on its Net Lines so as to realize a greater tax deduction.

---

[2]The suit brought by Liberty Mutual Insurance Company and Subsidiaries was originally docketed as 05-cv-11048.  The suit brought by Liberty Mutual Fire Insurance was originally docketed as 05-cv-11049.  The consolidated case is docketed as 05-cv-11048-RCL.

[3]For the purpose of clarity through simplicity, any involved Liberty Mutual entity will be referred to collectively in the singular.  For the purposes of this Report and Recommendation there is no need to distinguish between these entities.

**Factual Background**

Liberty Mutual is an insurance company required to report salvage[4] on its Annual Statement filed with the state insurance department in its state of domicile. An insurance company is entitled to count claims paid out as a loss for tax purposes, but must reduce this loss by the amount which it actually recovers through salvage (hereinafter, "salvage recoverable").[5]

Prior to 1990, P&Cs were permitted to record salvage for tax purposes in the same manner in which they reported salvage on their Annual Statements. Liberty Mutual maintains that P&Cs had the freedom to choose between three methods of reporting for uncollected salvage: (1) the Cash/Gross method - companies that used

---

[4]Salvage, for purposes of this discussion, is property which an insurance company becomes entitled to when it pays a loss. An example of salvage is a "totaled" automobile. Salvage also includes subrogation, which is the right an insurer obtains, on paying a claimant's loss, to pursue a claimant's remedies against third-parties. An example would be an insurance company "stepping into the shoes" of a tort victim and suing the tortfeasor(s). Any money collected from that suit would become "salvage recoverable."

[5]For example, if an insurance company paid $100 to its insured to cover claims stemming from an automobile accident; it would be entitled to count that $100 as a loss for tax purposes. However, if as a result of paying its insured, the insurance company takes possession of the damaged vehicle, the amount the insurance company receives upon resale of the vehicle, say $25, would be deducted from the claimed $100 loss. Thus, the insurance company's loss for tax purposes is reduced to $75.

4

this method (hereinafter referred to as "Grosser(s)") took salvage into account <u>only when it was actually recovered and reduced to cash</u> by the P&C [i.e. after having paid the insured's claim and taking possession of a wrecked vehicle, the vehicle is sold and the P&C receives the proceeds]; (2) the Estimated/Net method - companies that used this method (hereinafter referred to as "Netter(s)") took <u>estimated salvage recoverable</u> into account in determining the amount of incurred unpaid losses [i.e. estimating the dollar amount the salvaged vehicle will be sold for, and accounting for it to reduce the amount of unpaid losses for tax purposes]; and (3) the "Cash/Net" or "Hybrid" method - some companies, including Liberty Mutual, reported losses using either the Gross or Net method, depending upon the line of business involved [i.e. a P&C could use the Gross method for its automobile line and the Net method for its ~~subrogation~~ workers' compensation line].[6]   In the instant case, Liberty Mutual reported the amount of estimated salvage (Net method) on its 1989 and 1990 Annual Statements for some lines of business, but not others – a Hybrid method – a method the Government contends was impermissible.

Correction #1

In part to address the different accounting methods employed by P&Cs, Congress passed the Revenue Reconciliation Act of 1990, Pub. L. No. 101-508, 104

---

[6]Throughout, the terms "Net Lines" and "Gross Lines" will be used to describe a P&C's line of business that uses either the Net method or the Gross method of accounting.

Stat. 1338 (hereinafter, the "1990 Act"), requiring that P&Cs follow a uniform

method of accounting for salvage. Section 11305(c)(2)(A) of the 1990 Act specifies

that the amendment is to be treated as a change in method of accounting for tax

purposes. 1990 Act § 11305(c)(2)(A). In so doing, the 1990 Act effectively created

a potential for ~~double counting~~ in certain aspects of a P&C's accounting methods,

Correction #2  income omission

namely for use of the Gross method. The Internal Revenue Code's procedure for

dealing with ~~double counting~~ issues arising as a result of change in accounting

Correction #3  income omission

methods is generally found at 26 U.S.C. § 481. As such, section 481 requires P&Cs

effected by the 1990 Act to adjust their Gross Lines to avoid said ~~double counting~~.

Correction #4  income omission

To minimize the impact of its imposition of a new accounting method,

Congress authorized taxpayers using the Gross method to reduce the required

adjustment under 26 U.S.C. § 481 to thirteen percent of what it otherwise would have

been and to spread the thirteen percent ratably over a four year tax period beginning

in 1990 (hereinafter, "Fresh Start") . 1990 Act, § 11305(c)(2)(B) ("In applying

section 481 of the Internal Revenue Code of 1986 with respect to the change

[required by the 1990 Act] only 13 percent of the net amount of adjustments . . . shall

be taken into account").

Taxpayers that previously reduced their losses by estimated salvage through

the Net method were not required by section 481 to make adjustments to their

accounting. As such, these Netters did not receive the same benefit as Grossers by being able to reduce their tax liability. To equitably compensate those taxpayers not required to made adjustments in accordance with section 481, Congress also granted a deduction equal to eighty-seven percent of the discounted amount of estimated salvage to be spread ratably over a four year tax period beginning in 1990 (hereinafter, the "Special Deduction"). 1990 Act § 11305(c)(3) ("87 percent of the discounted amount of the estimated salvage recoverable as of the close of such last taxable year shall be allowed as a deduction"). Congress created the Fresh Start and Special Deduction as part of the 1990 Act to provide an equal benefit to all P&Cs, compensating them for the 1990 Act's change in accounting method. P&Cs were to

Correction #5  (based upon year-end 1989 estimated salvage recoverable)

begin to take either the Fresh Start or Special Deduction starting with the ~~1990~~ tax

1990

return filed for the ~~1989~~ tax year.

The statutory language is clear that pure Grossers (those who exclusively use the Gross method) are entitled to the Fresh Start and that pure Netters (those who exclusively use the Net method) are entitled to the Special Deduction. The Fresh Start allows pure Grosser P&Cs to report only thirteen percent of the otherwise required adjustment while the Special Deduction allows pure Netter P&Cs to deduct eighty-seven percent of the estimated salvage that would otherwise be recorded. The United States contends that, despite the obviously equitable nature of the two

7

deductions, Congress did not intend for P&Cs that employed a Hybrid method to receive the benefit of either the Fresh Start or Special Deduction.

Liberty Mutual admits that prior to 1990 it used a Hybrid accounting method. More specifically, its Annual Statements for both 1989 and 1990 reflected a split in accounting practices whereby Liberty Mutual used a Gross method on some lines of business and a Net method on others. In light of its Hybrid accounting practices, on its ~~1990~~ **1990** federal income tax returns for the taxable year ~~1989~~, Liberty Mutual claimed the Special Deduction with respect to its Net Lines and the Fresh Start with respect to its Gross Lines. Similarly, in its ~~1991~~ federal income tax return for the taxable year ~~1990~~ **1991**, Liberty Mutual used the same accounting practice, claiming the Special Deduction with respect to Net Lines and the Fresh Start with respect to Gross Lines.

*Correction #6* / *Correction #7* / *Correction #8* **Treasury**

Subsequently, in 1992 ~~Congress~~ **Treasury** amended Treas. Reg. § 1.832-4(f)(iii). The purpose of this regulation was to clarify the applicability of the 1990 Act. Section 1.832-4 clearly states that P&Cs claiming the Special Deduction could not also claim the Fresh Start. Treas. Reg. § 1.832-4(f)(iii) (1992). The regulation further provided for its retroactive application to the 1990 tax year and the 1990 Act. The retroactive applicability required Liberty Mutual to reevaluate its federal income tax returns to the extent they were impacted by the 1990 Act. After section ~~1.823-4~~ **1.832-4** was amended, Liberty Mutual requested affirmative adjustments regarding its tax returns for the

*Correction #9* **1.832-4**

8

previous two years on which it had claimed both the Fresh Start and Special

Deduction. To comply with the rules, as newly clarified by section 1.832-4, Liberty

Mutual did not claim the Special Deduction on any subsequent tax returns.

Correction #10    1.832-4(d)

In compliance with section ~~1.823-4(d)~~, Liberty Mutual adjusted its Net Lines

to reflect gross salvage recoverable.[7] This adjustment, called a gross-up, allowed

Liberty Mutual to adjust its salvage recoverable on all Net Lines in order to

retroactively calculate salvage as a Pure Grosser for tax purposes. Liberty Mutual

applied the Fresh Start to all of its lines (both Gross Lines and grossed-up Net Lines)

on its 1992 tax return. Liberty Mutual used the same method on its 1992 tax return,

reporting one-quarter of thirteen percent of the salvage recoverable from 1989 on all

lines. This accounting practice allowed Liberty Mutual to claim a deduction

equivalent to the Fresh Start on all lines and receive the same benefit as a Pure

Grosser.

In September 1993, Liberty Mutual filed with the Internal Revenue Service

Correction #11   regulation  _____

[7]The ~~statute~~ reads, in relevant part, "[a]n insurance company that takes
estimated salvage recoverable into account in determining the amount of its
unpaid losses shown on its annual statement is allowed to increase its unpaid
losses by the amount of estimated salvage recoverable taken into account if the
company complies with the disclosure requirement of paragraph (d)(2) of this
section." Treas. Reg. § ~~1.823-4(d)~~(2000). There is no requirement in the statute
that the company must take estimated salvage into account on its annual statement
for <u>all</u> areas of the company.           1.832-4(d)

Correction #12

(hereinafter "IRS"), a request to convert its Net Lines into Gross Lines effective for the 1990 tax year. United States Statement of Undisputed Material Facts at ¶ 12; Plaintiff's Statement of Undisputed Material Facts of Record at ¶37 (hereinafter Pl.'s Undisputed Facts at ¶ __"). In support of its request, Liberty Mutual averred that as a result of the 1990 Act it no longer maintained any Net Lines for tax purposes. Pl.'s Undisputed Facts at ¶ 38. Accordingly, Liberty Mutual asked to be allowed to gross-up the estimated salvage for those business areas formerly calculated as Net Lines. Pl.'s Undisputed Facts at ¶ 38. In response, the IRS conducted an audit of Liberty Mutual. As a result of that audit, the IRS adjusted the reported amount of Liberty Mutual's income to reflect the entire amount of salvage under the adjustment required by 26 U.S.C. § 481. Pl.'s Undisputed Facts at ¶ 42. The IRS did not permit Liberty Mutual to claim either the Fresh Start or to gross-up its Net Lines. Pl.'s Undisputed Facts at ¶ 42-43. The IRS did allow a Special Deduction for the Net Lines equal to a discount of eighty-seven percent spread rateably over four years beginning in 1990. Pl.'s Undisputed Facts at ¶ 44. On October 6, 2004 Liberty Mutual filed a claim for taxable year 1990 seeking the refund at issue in this litigation. Pl.'s Undisputed Facts at ¶ 19.

Now, this federal income tax odyssey finds its way here. Both parties have moved for summary judgment. Liberty Mutual is seeking a significant tax refund and

10

the United States is seeking judicial approval of its interpretation of the involved statutes and regulations. With the detailed dissertation of the facts complete, this Court delves into the even murkier realms of the law.

## Summary Judgment

The standard for summary judgment is well established in this jurisdiction. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file . . . show that there is no genuine issue of material fact and that the moving part is entitled to . . . judgment as a matter of law." Fed. R. Civ. P. 56(c); Buchannan v. Maine, 469 F.3d 158, 166 (1st Cir. 2006). A fact is material only if it could affect the outcome of the suit under the governing and applicable law. Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). An issue is genuine when it presents an issue that is "sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side" when considering all the evidence in the light most favorable to the non-moving party. Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

**Issues**

*I. Whether Liberty Mutual's pre-1990 accounting method of calculating Gross salvage recoverable for some business lines and Net salvage recoverable for others was a permissible method of accounting?*

An accounting method is permissible so long as it clearly reflects income. Treas. Reg. § 1.446-1(a)(1); Treas. Reg. § 1.446-1(c)(1)(iv); <u>Burnet v. Sanford & Brooks Co.</u>, 282 U.S. 359, 365 (1931); <u>Hallmark Cards, Inc. v. Comm'r</u>, 90 T.C. 26, 35-36 (1988). "Taxable income for a particular accounting period is determined using the method of accounting used by the taxpayer in regularly maintaining his books." <u>Hallmark,</u> 90 T.C. at 30-31. Section 446 of the Internal Revenue Code lists permissible methods of accounting: "(1) the cash receipts and disbursements method; (2) an accrual method; (3) any other method permitted by this chapter; or (4) <u>any</u> <u>combination of the foregoing methods</u> permitted under regulations prescribed by the Secretary." 26 U.S.C. § 446(c) (2006) (emphasis added). Hybrid methods of accounting are permitted under tax law so long as the hybrid approach clearly reflects income. <u>Loftin v. Woodard</u>, 577 F.2d 1206, 1229 (5th Cir. 1965).

In its Motion for Summary Judgment, the United States contends that Liberty Mutual's use of a Hybrid method was not permissible under the Internal Revenue Code. Defendant's Motion for Summary Judgment at 6 (hereinafter, "US Summ. J. at __"). As such, the United States further avers that allowing Liberty Mutual to

claim either the Fresh Start or the Special Deduction, depending on the treatment of a particular line of business, would amount to a Congressional endorsement of an impermissible method of accounting. US Summ. J. at 6. The United States supports its position by arguing that Liberty Mutual's Hybrid method is impermissible in part because Liberty Mutual did not have any Gross Lines, but only "the auto physical damage line, for which some of the salvage recoverable was netted against the unpaid losses shown in their annual statements and some was not." US Summ. J. at 9. However, the United States does not cite any case law or statute in support of its position.

The United States' position is, however, contradicted by the IRS itself. In 1993, the Commissioner of the IRS conducted an audit of Liberty Mutual. United States' Response to Plaintiff's Statement of Undisputed Material Facts on Record at ¶ 12 (hereinafter "US Response at ¶ __"). The record before this Court indicates no evidence that the Commissioner found anything impermissible about Liberty Mutual's Hybrid accounting practice. See Pl.'s Undisputed Facts at ¶ 40-46. Further, the United States does not suggest that Liberty Mutual's Hybrid method of accounting fails to clearly reflect income. See Burnet, 282 U.S. at 365. In fact,

credible evidence before this Court suggests quite the opposite.[8]

This Court finds that the plain reading of the Internal Revenue Code does not prohibit the use of a Hybrid method generally, nor does it prohibit said method from being split on the basis of business lines. Accordingly, Liberty Mutual's accounting method constituted a permissible method of accounting prior to ~~1989~~.[9]

Correction #13  1990

*II. Whether Congress has explicitly authorized either the "Fresh Start" or the "Special Deduction" for P&Cs who are neither pure Netters nor pure Grossers but instead employ a Hybrid method?*

    *a.    Whether Liberty Mutual is entitled to both the Fresh Start for those areas it acted as a Grosser and the Special Deduction for those areas it acted as a Netter?*

No company is allowed to claim both the Fresh Start and the Special Deduction. Treas. Reg. § 1.832-4(f)(3)(iii) (1992) ("A company that claims the special deduction is precluded from also claiming the section 481 adjustment

---

[8]In a sworn declaration, Dennis P. Van Mieghem, former Director for the National Insurance Tax Practice, stated that many of his clients used a Hybrid method of accounting, using both Gross Lines and Net Lines. Plaintiff's Reply Memorandum to Defendant's Motion for Summary Judgment at 4.

[9]This Court addresses the permissibility of Liberty Mutual's accounting practices in order to fully respond to the extensive briefing on the issue by the United States. That said, the permissibility of Liberty Mutual's pre-1990 accounting methods is, actually, irrelevant for purposes of the instant case. The 1990 Act applies to <u>any P&C required to change its method of accounting by reason of the Act</u>. Therefore, regardless of Liberty Mutual's accounting method prior to the Act, so long as Liberty Mutual was required to change its method of computing losses incurred, the 1990 Act applies.

provided in paragraph (e)(2)(ii) of this section [the Fresh Start,] for pre-1990 accident

years."). "[A] company [that] does not claim the deduction under section 11305(c)(3)

of the 1990 Act, [the Special Deduction], . . . <u>must</u> take into account 13 percent of the

adjustment that would otherwise be required under section 481 for pre-1990 accident

years as a result of the change in accounting method." Treas. Reg. § 1.832-4(e)(2)(ii)

(1992) (emphasis added). The plain language of the regulation, thus, is perspicuous

in that no company can claim both deductions. The regulation makes no mention of

the type of accounting practices used by a company. Section (e)(2)(ii) further

requires that a company that does not claim the Fresh Start <u>must</u> take the Special

Deduction. Treas. Reg. § 1.832-4(e)(2)(ii)(1992). Congress intended for some off-

set to be available to all companies required to change their accounting practices. <u>See</u>

Correction #14   1.832-4(e)(2)(ii)

Treas. Reg. § <s>1-832.4(e)(2)(ii)</s> (1992). "If the intent of Congress is clear, that is the

end of the matter; for the court, as well as the agency, must give effect to the

unambiguously expressed intent of Congress." <u>Chevron v. Natural Res. Def. Council,</u>

467 U.S. 837, 842-43 (1984).

Correction #15   Treasury promulgated                          Correction #16   1.832-4

<s>Congress enacted</s> sections (b) through (f) of Treas. Reg. § in January of 1992,

and made the regulation retroactively effective beginning in taxable year 1990. Until

the passage of the regulation there was no affirmative statement clarifying that a P&C

could not claim both the Fresh Start and Special Deduction. Prior to the amended

15

regulation, Liberty Mutual claimed, split between its different lines, both the Fresh

Start and the Special Deduction.  After the amendment, Liberty Mutual converted its

Net Lines to Gross Lines using the gross-up (the applicability of which is discussed

below) and claimed the Fresh Start for all salvage recoverable ~~from tax year~~ [Correction #17 at year-end] 1989.

The 1992 amendment to Treas. Reg. § ~~1.823-4~~ [Correction #18 1.832-4] clarified, but did not change, the

earlier regulation.  Liberty Mutual is entitled to either the Special Deduction or the

Fresh Start, but not both.

   b.    *Whether Liberty Mutual is entitled to claim the Fresh Start or the
          Special Deduction?*

   All deductions, including both the Fresh Start and the Special Deduction, are

a matter of legislative grace.  See <u>Deputy v. Dupont</u>, 308 U.S. 488, 493 (1940); <u>New

Colonial Ice v. Helvering</u>, 292 U.S. 435, 440 (1934).  "Where Congress includes

particular language in one section of a statute but omits it in another section of the

same Act, it is generally presumed that Congress acts intentionally and purposefully

in the disparate inclusion or exclusion."  <u>Russello v. United States</u>, 464 U.S. 16, 23

(1983) (quoting <u>United States v. Wong Kim Bo</u>, 472 F.2d 720, 722 (5th Cir. 1972);

<u>In re Cynthia Clark v. Chi. Mun. Employee Credit Union</u>, 119 F.3d 540, 547 (7th Cir.

1997) ("The use of certain words in one instance by the legislature and different

words in another, indicate that different results were intended.") (quoting <u>Ill. State</u>

Toll Highway Authority v. Karn, 293 N.E.2d 162, 165 (Ill. App. Ct. 973)); Lopez-Suto v. Hawayek, 173 F.3d 170, 173 (11th Cir. 1999) (emphasizing the difference in Congressional word choice between "emergency department" in one section of the statute and "hospital" in another section of the same statute was intentional and intended to apply to different groups).

At the outset, the 1990 Act makes the changes within applicable to "any taxpayer who is required by reason of the amendments made by this section to change his method of computing losses incurred." 1990 Act § 11035 (c)(2)(A) (1989) (emphasis added). The 1990 Act then defines two separate sub-groups differentiated by Congressional classification, each of which is entitled to a different type of relief. Section (c)(2)(B), the Fresh Start, is available to "any taxpayer who is required by reason of the amendments made by [the Act] to change his method of computing losses." 1990 Act § 11305(c)(2)(A) (1989) (emphasis added). The 1990 Act changed the method of computing losses previously required by 26 U.S.C. § 832(a), mandating that P&Cs now report three separate calculations in a manner not previously employed. Section (c)(2)(B) does not require any particular type of accounting practice, and therefore it is irrelevant for the purposes of the Fresh Start whether Liberty Mutual used a single, company-wide accounting practice or a Hybrid method.

Section (c)(3), the Special Deduction, is available only to those companies that

took into account salvage recoverable in determining losses.  <u>See</u> 1990 Act § 11305

(c)(3) (1989) (emphasis added).  The difference in Congressional word choice

between <u>taxpayer</u> in section (c)(2) and <u>company</u> in section (c)(3) is far from semantic.

The use of the word companies in section (c)(3) indicates a requirement of a single,

company-wide accounting practice of taking into account salvage recoverable, *i.e.*

those companies that were pure Netters.  <u>See</u> Senate Report, 136 Cong. Rec. S15695.

The Senate Finance Committee Report puts great weight on the use of the word

"company" as indicative of Congressional intent that the Special Deduction apply

only where a single company-wide, accounting practice was utilized.  Senate Report,

136 Cong. Rec. S15695.  The Special Deduction is available only to those companies

that used a uniform, company-wide accounting practice of calculating Net salvage

recoverable.  In contrast, the Fresh Start is available to any taxpayer required to

change its accounting practice.

Liberty Mutual was not a pure Netter, and consequently is not entitled to the

Special Deduction.  The Fresh Start does not require that companies use a single

accounting method in computing loss.  To the extent that a company computes any

of its loss through Gross calculation of salvage recoverable, it is entitled to the Fresh

Start for the accounts required to be adjusted in accordance with section 481.  This

includes any adjustments required as a result of the gross-up, the applicability of

which is discussed below. Liberty Mutual is entitled to the Fresh Start on any accounts in which it computed salvage recoverable as a Grosser.

### III. Whether Liberty Mutual is entitled to the gross-up?

"No item should be omitted and no item should be duplicated as a result of a change in a method of accounting or reporting income for taxation." <u>Grogan v. United States</u>, 475 F.2d 15, 17 (5th Cir. 1973) (quoting <u>Comm'r v. Welch</u> 345 F.2d 926, 945 (5th Cir. 1965)). This applies "in situations in which a taxpayer changes its method of accounting voluntarily or by direction of the IRS and the change results in a duplication or omission of income." <u>Am. Family Mut. Ins. Co. v. United States</u>, 376 F. Supp. 2d 909, 910 (W.D. Wis. 2005). "An insurance company that takes estimated salvage recoverable into account in determining the amount of its unpaid losses shown on its annual statement is allowed to increase its unpaid losses by the amount of estimated salvage recoverable taken into account if the company complies with the disclosure requirements" set out below. Treas. Reg. § 1.832-4(d)(1)(1992). The gross-up is a one time accounting practice intended to prevent accounting inaccuracies caused by the mandated change in accounting practices. The purpose of the gross-up is to avoid potential duplication in the calculation of salvage recoverable. US Summ. J. at 14.

The Fresh Start and the Special Deduction are one time deductions granted by

Congress to off-set the transition to a new accounting method required by the 1990 Act. The purpose of the gross-up is different; it is intended to correct an otherwise unavoidable accounting inaccuracy. See Rev. Proc. 92-77 § 2 (1992). The revised accounting method in 26 U.S.C. § 832(b)(5)(A) requires companies calculate "losses incurred" using three separate calculations. The first of these calculations, § 832(b)(5)(A)(i), requires that, "to losses paid during the taxable year, [companies] deduct salvage and reinsurance recovered during the taxable year." 26 U.S.C. § 832(b)(5)(A)(i) (2006) (emphasis added).

Complication occurs in the calculation of losses paid. Pure Netters define losses paid as the estimated final amount of loss expected. Pure Grossers define losses paid as the actual current losses paid out. Those companies that employ a Hybrid method define losses paid as the estimated loss in those areas that calculate Net loss, and as the actual loss in those areas that calculate Gross loss. The revised accounting method under the 1990 Act requires all companies to deduct salvage and reinsurance actually recovered during the tax year from the losses paid. As such, during the transition year of 1990, pure and partial Netters already accounted for at least some of this deduction in their calculation of losses paid.

"Some taxpayers [*i.e.* pure and partial Netters,] have taken estimated salvage recoverable into account in determining the unpaid losses on their annual statement.

For these taxpayers, the requirement that estimated salvage recoverable be taken into account separately in computing losses incurred may result in a double counting of estimated salvage recoverable." Rev. Proc. 92-77 § 2. Section 1.832-4(d)[10] allows a taxpayer who has taken salvage recoverable into account separately to increase its unpaid losses for tax purposes by the amount of salvage recoverable already taken into account in order to provide an accurate accounting. Rev. Proc. 92-77§ 2. The literal requirements of section 823(b)(5)(A) result in a one-time accounting error requiring Netting companies to count recovered salvage twice. The gross-up is intended to correct this inaccuracy. The gross-up is not intended as a deduction or benefit, but as a method to provide accurate accounting information. See Rev. Proc. 92-77 § 2 (1992).

Liberty Mutual employed Hybrid accounting practices, whereby it calculated the Net amount of loss for some business lines and the Gross amount of loss for other

---

[10]Section 1.832-4(d) states that "[a]n insurance company that takes estimated salvage recoverable into account in determining the amount of its unpaid losses shown in its annual statement is allowed to increase its unpaid losses by the amount of estimated salvage recoverable taken into account if the company complies with disclosure requirement of paragraph (d)(2) of this section." Sub-section (d)(2) requires that a company either disclose the extent to which estimated salvage recoverable was taken into account in computing the unpaid losses to the IRS or files a statement with the appropriate state agency disclosing the extent to which estimated salvage recoverable was taken into account in computing unpaid losses filed in that calendar year.

business lines. "At year-end 1989 and 1990, Liberty Companies had certain estimated salvage which had reduced its unpaid loss reserves and losses incurred on Net Lines on their Annual Statements." US Response at ¶25 (citing Declaration of Roy K. Morell at ¶ 5). "At year-end 1989 and 1990, Liberty Companies had additional estimated salvage on Gross lines which had <u>not</u> reduced losses incurred or otherwise been taken into account on their Annual Statements." US Response at ¶26 (citing Declaration of Roy K. Morell at ¶6) (emphasis added). The estimated salvage on Liberty Mutual's Net Lines was included in the Annual Statement. The estimated salvage on Liberty Mutual's Gross Lines was not included in the Annual Statement. The amount of salvage recoverable on the Net Lines was subject to double counting.[11] To the extent that salvage recoverable had already been calculated in the Annual Statement on Liberty Mutual's Net Lines, and that an accounting inaccuracy would otherwise result, Liberty Mutual is entitled to a gross-up for that amount.

Correction #19   Net

To the extent that Liberty Mutual calculated salvage recoverable for its ~~Gross~~ Lines on the Annual Statement in 1989, it is entitled to gross-up its Net Lines and apply the Fresh Start to the new adjusted amount. Sub-section (g) of Treas. Reg. §

Correction #20

---

[11] ~~The United States avers Liberty Mutual did not double count any salvage recoverable. Section 1.832-4(d)(2) requires that Liberty Mutual must indicate, either to the IRS or to the appropriate state agency, where double accounting occurred. Any damages that Liberty Mutual may be entitled to are dependant upon Liberty Mutual's compliance with § 1.832-4(d)(2).~~

Correction #21 1.832-4                                   Correction #22 after

1.823-4 makes sub-section (d) effective for taxable years beginning 1989, for the

beginning of the 1990 Act. The Special Deduction applies to pure Netters whereas

the Fresh Start may be claimed by companies that are either pure Grossers or that

employ a Hybrid method and have some Gross Lines. This tax scheme is saturated

by an attempt at equitable treatment of all P&Cs required to make a change in their

accounting practices, regardless of their former practices. This notion of fairness is

supported by both the statutory language and Congressional intent. <u>See</u> 136 Cong.

Rec. 141 S15695 (stating that the Fresh Start is intended to treat companies in the

same manner regardless of whether they previously took into account salvage

Correction #23 1.832-4

recoverable). The amendment to Treas. Reg. § 1.823-4 clarifies the transition

Correction #24 1.832-4(d)

procedure for companies that employed a Hybrid method. Treas. Reg. § 1.823-4(d)

authorizes a one-time gross-up for any companies that were pure or partial Netters.

Any company that employs a Hybrid method of accounting must gross-up the amount

of salvage on its Net Lines in order to provide accurate accounting information in

accord with section 481. Companies employing a Hybrid method are allowed to

gross-up Net Lines and claim the Fresh Start on all lines. There is nothing in Treas.

Reg. § 1.832-4(d) that makes the gross-up applicable only to pure Netters. Once Net

Lines are adjusted to reflect gross salvage the Fresh Start is applicable to the entire

amount of Gross salvage recovered.

*IV. Whether this Court should grant Liberty Mutual's Motion to Compel background documents about the passage and possible interpretations of Treas. Reg. § 1.832-4 and Rev. Proc. 92-77?*[12]

Correction #25  Treasury and IRS

Liberty Mutual seeks background information regarding ~~Congressional~~ intent

and discussion of the passage of Rev. Proc. 92-77 and Treas. Reg. § 1.832-4(d).  In

that Liberty Mutual avers that the production of the requested documents are only

Correction #26  , regulation and revenue procedure

necessary if the Court finds that the plain language of the statute is unclear the Court

will briefly address the issue.  However, to the extent that this is a case of first

impression, resting in large part on statutory analysis of the 1990 Act, this Court does

find this background information to be relevant and subject to discovery.  See Fed.

R. Civ. P. 26(b)(1).  The Court leaves the decision to Liberty Mutual whether to seek

the production of the requested information in light of this Court's findings.  The

Correction #27  operative

~~statutory~~ language, although complicated, is not susceptible to multiple

interpretations.  See 1990 Act § 11305(c) (1989); Rev. Proc. 92-77 (1992); Treas.

Correction #28  1.832-4(f)(iii)

Reg. § 1.832-4 (2000).  Treas. Reg. § ~~1.823-4(f)(iii)~~ could hardly be more straight

forward.  "A company that claims the special deduction is precluded from also

claiming the section 481 adjustments provided in paragraph (e)(2)(ii)."  Treas. Reg.

---

[12]In that this Court recommends that this action be resolved in full on the parties' motions for summary judgment, the Court issues the following Order on Liberty Mutual's Motion to Compel, yet stays its application pending the District Judge's ruling on the instant Report and Recommendation.

Correction #29  1.832-4(f)(iii)                    Correction #30  provision

§ ~~1.823.4(f)(iii)~~ (1992).  The only interpretation of this ~~statute~~ is that a company is

precluded from claiming both the Fresh Start and the Special Deduction.  The

Correction #31  1.832-4

retroactive applicability of Treas. Reg § ~~1.823-4~~ may make its application confusing,

but does not open itself up to multiple interpretations.

The application of Rev. Proc. 92-77 is similarly confusing as it requires a

retroactive change in accounting practices on the part of P&Cs.  However, the

Correction #32  of the procedure

~~statutory~~ language is transpicuous.  "A <u>taxpayer</u> that has taken estimated salvage

recoverable into account in determining the amount of unpaid losses reported on the

annual statement may increase its unpaid losses for tax purposes by the amount of

estimated salvage recoverable taken into account in determining those unpaid losses."

Rev. Proc. 92-77 (1992) (emphasis added).  The procedure set out in this section is

applicable to any taxpayer who has reported estimated salvage.  No particular type

of accounting practice is required, nor is there a requirement of a single company-

wide accounting practice.  Rather, any taxpayer that has calculated and reported some

amount of estimated salvage on its Annual Statement may take advantage of the

gross-up.  Liberty Mutual reported estimated salvage on its Annual Statement for its

Net Lines and, therefore, is entitled to the gross-up for those lines.  Once a company

has complied with Rev. Proc. 92-77 and grossed-up its Net Lines, the Fresh Start is

applicable to the new and final amount of salvage recoverable.  See 1990 Act §

11305(c)(2)(B) (1989).

In sum, this Court FINDS that (1) Liberty Mutual's pre-1990 Hybrid method of accounting was permissible; (2) Liberty Mutual is entitled to the Fresh Start on its Net Lines of business; (3) Liberty Mutual is not entitled to the Special Deduction; and (4) Liberty Mutual is entitled to the gross-up.    This Court, therefore, RECOMMENDS that both Liberty Mutual's and the United States' Motions for Summary Judgement be DENIED IN PART AND ALLOWED IN PART in accordance with this Report and Recommendation. In light of this Court's instant decision, (5) Liberty Mutual's motion to Compel is DENIED without prejudice, pending the District Judge's ruling on the instant Report and Recommendation.

SO ORDERED.


 *7/27/07*                                  */s/ Joyce London Alexander*
Date                                         United States Magistrate Judge

## NOTICE TO THE PARTIES

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrate Judges in the United States District Court the District Court of Massachusetts, any party who objects to this proposed Report and Recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of the Report and Recommendation. The written objections must specifically identify the proportions of the proposed findings, recommendations or report to which objection is made and the basis for such objection. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 273 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 687 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111 (1986).

MAY ⁻ 9 ...

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LIBERTY MUTUAL INSURANCE, et al .   CIVIL ACTION NO. 05-11048-RCL
      Plaintiffs       .

                   .

       V.           .   BOSTON, MASSACHUSETTS
                   .   APRIL 20, 2007

UNITED STATES OF AMERICA    .
      Defendant        .

. . . . . . . . . . . . . . .

TRANSCRIPT OF HEARING ON
CROSS MOTIONS FOR SUMMARY JUDGMENT
BEFORE THE HONORABLE JOYCE LONDON ALEXANDER
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the plaintiff:      Peter H. Winslow, Esquire
                      Scribner, Hall & Thompson, LLP
                      1875 Eye Street, N.W.
                      Suite 1050
                      Washington, DC 20006

For the defendant:      Karen Wozniak
                      U.S. Department of Justice
                      555 4th Street NW
                      Washington, DC 20001

Court Reporter:

Proceedings recorded by digital sound recording, transcript
produced by transcription service.

MARYANN V. YOUNG
Certified Court Transcriber
240 Chestnut Street
Wrentham, Massachusetts 02093
(508) 384-2003

1          THE COURT:  Well, they – just asking the bottom line

2    question.  I know what goes into the analysis.  I'm just

3    asking, if the Court finds it permissible and that is looking

4    at the statute, looking at the reg and all other issues that

5    are implicated, Court finds it's permissible, does Liberty

6    Mutual prevail, that's all?

7          MS. WOZNIAK:  With respect to this issue of whether

8    they can take this fresh start--

9          THE COURT:  Right.

10          MS. WOZNIAK:  --fresher deduction, yes.

11          THE COURT:  Okay.  Now, I'll hear from you.

12          MS. WOZNIAK:  Okay.

13          THE COURT:  Don't get – I'll hear from you.

14          MS. WOZNIAK:  Thank you.  I'd like to address what

15    Mr. Winslow was saying about the annual statement.  First, just

16    to reiterate that it is the code and the regulations that

17    dictate the proper method for taking salvage recoverable into

18    account for federal tax purposes, when there's a difference

19    between the code and the annual statement the code prevails.  A

20    case cite for you *Western Casualty Insurity Company v. The*

21    *Commissioner of Internal Revenue,* 571 F.2d 514 at 517, that's

22    the 10th Circuit 1978.  Also, *Commissioner v. General*

23    *Reinsurance Corp.* 190 F.2d 148 at 151, 2nd Circuit.  That aside,

24    the annual statements instruction prior to 1990 did not permit

25    taking salvage recoverable into account.  Salvage could only be