UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY AND SUBSIDIARIES, | ) ) ) | |
| Plaintiff, | ) ) | Civil No. 1:05-11048-RCL |
| v. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

_____

| | | |
|---|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY AND SUBSIDIARIES, | ) ) ) | |
| Plaintiff, | ) ) | Civil No. 1:05-11049-RCL |
| v. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

## DEFENDANT UNITED STATES' OBJECTION TO
## THE CONSOLIDATED REPORT AND RECOMMENDATION ISSUED JULY 27, 2007

MICHAEL J. SULLIVAN
United States Attorney

KAREN WOZNIAK
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-1927
E-mail: karen.e.wozniak@usdoj.gov

## I. Introduction

Plaintiffs are property and casualty insurance companies.  Their consolidated refund actions, seeking income tax refunds totaling over $42 million with respect to the 1990 tax period, involve regulations and revenue procedures related to the 1990 amendment to § 832(b)(5)(A) of the Internal Revenue Code (26 U.S.C.) by the Revenue Reconciliation Act of 1990, 104 Stat. 1388 ("the 1990 Act").  The regulations and revenue procedures at issue deal with transitional provisions as well as with the operation of § 832(b)(5)(A), as amended.

Section 832(b)(5)(A) of the Internal Revenue Service sets forth the computation of "losses incurred" for insurance companies.  See 26 U.S.C. § 832(b)(5)(A).  Prior to 1990, insurance companies were to either take all or none of their salvage recoverable into account in the computation of losses incurred, depending on whether or not a company did business in any state which had a specific statutory provision, rule, or regulation which prohibited reporting salvage recoverable for state statutory accounting purposes.  See 26 U.S.C. § 832(b)(5)(A); 26 C.F.R. § 1.832-7T(c); Continental Ins. Co. v. United States, 474 F.2d 661, 667 (Ct.Cl. 1973).  The 1990 Act amended § 832(b)(5)(A) to require all companies to take salvage recoverable into account in the computation of losses incurred.  See 1990 Act, § 11305(a).

The 1990 Act treated the amendment to § 832(b)(5)(A) as a change in method of accounting.  See 1990 Act, § 11305(c)(2).  For a company which did not take any salvage recoverable into account in the computation of losses incurred prior to 1990, the 1990 Act provided a 87% forgiveness of income with respect to income adjustment which otherwise would have been required of it pursuant to § 481(a) of the Internal Revenue Code.  See 1990 Act, § 11305(c)(2)(B).  This provision is referred to as the "fresh start."  For a company which took all of their salvage recoverable into account in the computation of losses incurred prior to 1990, the 1990 Act provided a "special deduction" in an amount equal to 87% of its salvage

recoverable at the close of 1989.  See 1990 Act, § 11305(c)(3).  Treasury Regulation ("Treas. Reg.") § 1.832-4(f)(3)(iii) provides that a company which claims the special deduction is precluded from also claiming the fresh start.  See 26 C.F.R. § 1.832-4(f)(3)(iii).  Plaintiffs claim they are entitled to claim both the special deduction and the fresh start.  See Complaints, ¶ 49 (Docket #1, Case 1:05-v-11048-RCL; Docket #1, Case 1:05-cv-11049-RCL).

Plaintiffs, other claim for relief at issue in the parties' motions for summary judgment involves Treas. Reg. § 1.832-4(d) and Revenue Procedure 92-77 which provides administrative guidance on § 1.832-4(d).  In order to prevent a potential double counting of salvage recoverable in the computation of losses incurred under Code § 832(b)(5)(A), as amended by the 1990 Act, Treas. Reg. § 1.832-4(d) allows an insurance company which took salvage recoverable into account in determining the amount of its unpaid losses shown on its Annual Statement to, for purposes of computing "losses incurred", increase (gross-up) its unpaid losses by the amount of salvage recoverable taken into account if the salvage recoverable that reduced unpaid losses was separately taken into account under Code § 832(b)(5)(A)(iii) in the computation of losses incurred.  See 26 C.F.R. § 1.832-4(d); Rev. Proc. 92-77, Sec. 4.01, 1992-2 C.B. 454.  If an insurance company first increases unpaid losses pursuant to Treas. Reg. § 1.832-4(d) for a taxable year beginning on or before January 1, 1993, the company is to only gross-up the unpaid losses at the end of that year; no adjustment is made to the unpaid losses at the end of the prior tax year.  See Rev. Proc. 92-77, Sec. 4.02.  This provision is referred to as the year-end gross-up. If an insurance company which took salvage recoverable into account in determining the amount of its unpaid losses shown on its Annual Statement did not separately take salvage recoverable into account under Code § 832(b)(5)(A)(iii) in the computation of losses incurred, there was no double counting of salvage recoverable in the computation, and increasing unpaid losses, for tax purposes, is a change in method of accounting which requires the prospective approval of the

Commissioner. See Rev. Proc. 92-77, Sec. 4.04; Treas. Reg. § 1.446-1(c)(3)(i) (requiring submission of the application for a change in method of accounting "within 180 days after the beginning of the taxable year in which it is desired to make a change.")

Although Plaintiffs did not double count any salvage recoverable in the computation of losses incurred for 1990 tax period because they did not separately take into account any salvage recoverable which reduced their unpaid losses, and they did not seek approval for a change in method of accounting as required, they claim they are entitled to retroactively employ the year-end gross-up of unpaid losses provided for in Rev. Proc. 92-77 for the 1990 tax period. See Complaints, ¶ 48 (Docket #1, Case 1:05-v-11048-RCL; Docket #1, Case 1:05-cv-11049-RCL).

Plaintiffs and the United States have filed cross-motions for summary judgment on Plaintiffs' two alternative claims for relief outlined above. On July 27, 2007, the Magistrate Judge issued her Report and Recommendation on the parties' cross-motions for summary judgment ("Report). The Report also covers Plaintiffs' amended motion to compel production of documents (Docket #66).

The Report should have ruled that Plaintiffs were not entitled to the year-end gross-up for the 1990 tax period. The Report correctly ruled that Plaintiffs were not entitled to claim both the special deduction and the fresh start but then incorrectly ruled that Plaintiffs were entitled to the fresh start, not the special deduction. Report, p.2.

## II. Objection

The United States objects to the Magistrate Judge's recommendation for disallowance in part of the government's motion for summary judgment and the Magistrate Judge's recommendation for allowance in part of Plaintiffs' motion for summary judgment. See Report, p.2. The government objects to the following findings of the Magistrate Judge: "Liberty Mutual's pre-1990 Hybrid method of accounting was permissible;" "Liberty Mutual is not

entitled to the Special Deduction;" and "Liberty Mutual is entitled to the gross-up." Report, p.2.

The meaning of the Magistrate Judge's finding that "Liberty Mutual is entitled to the Fresh Start on its Net Lines of business" is unclear to the United States. Report, p.2. To the extent the finding means that if Plaintiffs are allowed the gross-up, the fresh start adjustment applies to all of their salvage recoverable at the end of the 1989 tax period, the United States does not object to the finding (the United States does, however, object to the finding that Plaintiffs are entitled to the gross-up). To the extent the finding means that if Plaintiffs are entitled to the fresh start but not the special deduction, the fresh start adjustment applies to all of their salvage recoverable at the end of the 1989 tax period, the United States does not object to the finding. The United States reserves the right to object, if necessary, to the Magistrate Judge's finding that "Liberty Mutual is entitled to the Fresh Start on its Net Lines of business" upon clarification of its meaning.

### III. Correction and Clarification to the Factual Background Presented in the Report and Recommendation

The Factual Background presented in the Report and Recommendation includes a number of statements requiring correction or clarification. The statements requiring correction or clarification are quoted below in italics with the responsive correction or clarification provided after each quotation.

• *Liberty Mutual is an insurance company required to report salvage on its Annual Statement filed with the state insurance department in its state of domicile. An insurance company is entitled to count claims paid out as a loss for tax purposes, but must reduce this loss by the amount which it actually recovers through salvage (hereinafter, "salvage recoverable").* (p.4)

Response: This statement appears to confuse salvage *recovered* and salvage *recoverable*. At issue in this action is the federal income tax treatment of salvage recoverable. Prior to 1990, pursuant to Code § 832(b)(5)(A) and the Treasury Regulations issued thereunder, an insurance

company was to either take all or none of its salvage recoverable into account in the computation

of losses incurred, depending on whether or not it did business in any state which had a specific

statutory provision, rule, or regulation which prohibited reporting salvage recoverable for state

statutory accounting purposes.  See 26 C.F.R. § 832(b)(5)(A); 26 C.F.R. § 1.832-7T(c);

Continental Ins. Co. v. United States, 474 F.2d 661, 667 (Ct.Cl. 1973).  The 1990 Act amended

§ 832(b)(5)(A) to require all companies to take salvage recoverable into account in the

computation of losses incurred.  See 26 U.S.C. § 832(b)(5)(A).  Prior to 1990, insurance

companies were prohibited from reporting salvage recoverable on the Annual Statement which

was standardized by the National Association of Insurance Commissioners [hereinafter "NAIC"]

and adopted by all states.[1]  See NAIC Annual Statement Instructions Property and Casualty, (pp.

9-1, 10-1, 57-1) ("Salvage and subrogation should be recognized in the Annual Statement only

after such salvage and subrogation has been reduced to cash or its equivalent); Central Nat. Life

Ins. Co. of Omaha v. U. S., 574 2d 1067, 1071 (Ct.Cl. 1978) (all states have adopted the Annual

Statement standardized by the National Association of Insurance Commissioners).  In addition to

all states adopting the NAIC's annual statement form which prohibited reporting salvage

recoverable, as of 1989, a number of states where Plaintiffs operated, had issued insurance

regulations which specifically prohibited taking any credit for salvage recoverable on the Annual

Statement.  See, e.g., ALA. ADMIN. CODE r. 61 (effective 1977, repealed 2005); Cal. Code Regs. tit.

10, § 2302 (effective 1976); FLA. ADMIN. CODE. r. 4-42-002 (filed 1977, transferred to r. 4.138.030, r.

4.138.030 repealed 1994); ILL. ADMIN. CODE tit. 50, § 927.30 (effective 1981, amended 1993); IND.

---

[1]While all states adopted the NAIC Annual Statement form which prohibited reporting salvage recoverable, the provision in the Treasury Regulation for excluding salvage recoverable in the computation of "losses incurred" for tax purposes was only triggered by a specific state statute, rule, or regulation which prohibited reporting salvage recoverable, as opposed to the general adoption of the Annual Statement form.

ADMIN. CODE tit. 760, r.1-22-3 (filed 1977, repealed 1993); 4 MO. CODE OF STATE REGULATIONS 190-11.020 (effective 1976, moved to 20 CSR 200-1.080, 20 CSR 200-1.080 rescinded effective 1993); OHIO ADMIN. CODE § 3901-1-17 (effective 1973, repealed 1997); 28 TEX. ADMIN. CODE § 7.17 (effective 1976, amended 1983, further amendments after 2000); Vermont Department of Banking and Insurance Regulation 76-2; WASH. ADMIN. CODE. § 284-16-050 (filed 1976, repealed 1992).[2] Plaintiffs were, thus, prohibited both by the Annual Statement form adopted by all states and by state regulations from reporting salvage recoverable on their Annual Statement. Salvage recoverable should never have been reported on Plaintiffs' Annual Statement. (The year-end gross-up recognized that, despite state law and the Annual Statement instructions, some companies took salvage recoverable into accounting in determining unpaid losses and that, by requiring salvage recoverable to be separately stated from unpaid losses, a potential for double counting was created unless companies adjusted unpaid losses.)

- *Prior to 1990, P&Cs were permitted to record salvage for tax purposes in the same manner in which they reported salvage on their Annual Statements.* (p.4)

Response: Prior to 1990, property and casualty companies were required to take salvage recoverable into account in the computation of "losses incurred" in accordance with Code § 832(b)(5)(A) and the Treasury Regulations issued thereunder. As just explained, property and

---

[2]Copies of these regulations were previously submitted to the Court as Exhibits 6-15 on April 20, 2007, at the hearing on the parties' motions for summary judgment (Docket 64. The original exhibits are available at the Clerk's Office for viewing. The government has scanned the documents and will file them electronically for the convenience of the Court.) As of 1989 Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance company did business in all fifty states and were thus subject to all of the state regulations just cited. Liberty Insurance Company and Liberty Northwest Insurance, two of Liberty Mutual Insurance Company's property and casualty subsidiaries, did business in at least one state for which a regulation has been cited, Vermont and Oregon, respectively. Liberty Mutual Insurance Company's two remaining property and casualty subsidiaries had a 100% quota share reinsurance agreement with their parent whereby they seeded all of their premiums, losses, and underwriting expenses to their parent and retained nothing. Despite the case caption, Liberty Mutual Fire Insurance Company does not have any subsidiaries.

casualty companies were prohibited from reporting or taking credit for salvage recoverable on the Annual Statement, but were required for federal tax purposes to take salvage recoverable into account in the computation of "losses incurred" under § 832(b)(5)(A) unless they did business in a state which had a specific statutory provision, rule, or regulation which prohibited reporting salvage recoverable for state statutory accounting purposes.

- *In the instant case, Liberty Mutual reported the amount of estimated salvage (Net method) on its 1989 and 1990 Annual Statements for some lines of business, but not others - a Hybrid method - a method the Government contends was impermissible.* (p.5)

Response: On their 1989 and 1990 Annual Statements Plaintiffs took salvage recoverable into account because they, although prohibited, reported unpaid losses net of all salvage recoverable except salvage recoverable associated with a portion of the auto physical damage line of the business. Reporting unpaid losses net of any salvage recoverable on the Annual Statement was prohibited at that time. See NAIC Annual Statement Instructions Property and Casualty, Part 3A - Unpaid Losses and Loss Adjustment Expenses, (pp. 10-1) ("Salvage and subrogation should be recognized in the annual statement only after such salvage and subrogation has been reduced to cash or its equivalent); ALA. ADMIN. CODE r. 61; Cal. Code Regs. tit. 10, § 2302; FLA. ADMIN. CODE. r. 4-42-002; ILL. ADMIN. CODE tit. 50, § 927.30; 4 MO. CODE OF STATE REGULATIONS 190-11.020; OHIO ADMIN. CODE § 3901-1-17; 28 TEX. ADMIN. CODE § 7.17; Vermont Department of Banking and Insurance Regulation 76-2; WASH. ADMIN. CODE. § 284-16-050 (prohibiting taking any credit for salvage recoverable). Regardless of whether Plaintiffs correctly or incorrectly reported unpaid losses net of salvage recoverable on the Annual Statement, Annual Statement reporting does not determine the treatment of salvage recoverable in the computation of "losses incurred" for federal tax purposes. The treatment of salvage

recoverable is dictated by Code § 832(b)(5)(A) and the regulations issued thereunder.[3]

• *Section 11305(c)(2)(A) of the 1990 Act specifies that the amendment is to be treated as a change in method of accounting for tax purposes. 1990 Act § 11305(c)(2)(A). In so doing, the 1999 Act effectively created a potential for double-counting in certain aspects of a P&C's accounting methods, namely for use of the Gross method. The Internal Revenue Code's procedure for dealing with double-counting issues arising as a result of change in accounting methods is generally found at 26 U.S.C. § 481. As such, section 481 requires P&Cs effected by the 1990 Act to adjust their Gross Lines to avoid said double-counting.* (p.6)

Response: Under Code § 481, a taxpayer that changes its method of accounting must take into account those adjustments that are necessary to prevent amounts from being duplicated or omitted as a result of the change. See 26 U.S.C. § 481(a). For "grossers," the change in method of accounting for salvage recoverable required by the 1990 Act necessitated a § 481 adjustment to prevent the *omission* of income, not the duplication of income. (The double-counting issue pertains to the operation of Code § 832(b)(5)(A) in 1990 and subsequent tax years and is addressed by Treas. Reg. § 1.832-4(d), which provides an accounting correction to prevent double counting which can be used each year, not a § 481 adjustment. The double counting issue does not pertain to "grossers," but to insurance companies which took salvage recoverable into account in determining the amount of their unpaid losses shown on its Annual Statement, "netters".)

• *To equitably compensate those taxpayers not required to made adjustments in accordance with section 481, Congress also granted a deduction equal to eighty-seven percent of the discounted amount of estimated salvage . . . . Congress created the Fresh Start and Special Deduction as part of the 1990 Act to provide an equal benefit to all P&Cs, compensating them for the 1990 Act's change in accounting method.* (p.7)

Response: The characterization of the fresh start and the special deduction as compensation is incorrect. Deductions under the tax code are a matter of legislative grace. See Deputy v.

---

[3]Where the Code and Annual Statement accounting conflict, the Code prevails. See *Western Cas. & Sur. Co. v. C. I. R.*, 571 F.2d 514, 517 (10th Cir. 1978); *Commissioner v. General Reinsurance Corp.*, 190 F.2d 148, 151 (2d Cir. 1951).

Dupont, 308 U.S. 488, 493 (1940); New Colonial Ice v. Helvering, 292 U.S. 435, 440 (1934).

An exclusion from income is a matter of legislative grace as well. See Kirk v. C.I.R., 425 F.2d

492, 494 (C.A.D.C. 1970). Under Code § 481, in order to prevent the omission of income, an

insurance company which did not take salvage recoverable into account in computing losses

incurred prior to 1990 (a "grosser"), would ordinarily have taken into income in 1990 an amount

equal to the amount of its salvage recoverable at the end of 1989, as that salvage recoverable was

previously unreported. Under the fresh start provided by the 1990 Act, a grosser only had to

take into income 13% of that amount over a period of four years. The fresh start provided an

87% exclusion from income. The special deduction under the 1990 Act provided a netter with a

tax deduction, taken ratably over four years, in an amount equal to 87% of the amount of its

salvage recoverable at the end of 1989. The fresh start is an extraordinary form of relief for

companies that did not previously take salvage recoverable into account and the special

deduction is, likewise, an extraordinary deduction. Plaintiffs have the burden of demonstrating

their entitlement to the fresh start or the special deduction. See Kirk v. C.I.R., 425 F.2d at 494.

- *P&Cs were to begin to take either the Fresh Start or Special Deduction starting with the 1990 return filed for the 1989 tax year.* (p.7)

Response:   Under the 1990 Act, insurance companies were to claim the fresh start adjustment or

the special deduction beginning on the income tax return filed for the 1990 tax year, commonly

referred to as the "1990 income tax return," "1990 tax return," or "1990 return." See 1990 Act,

§§ 11305(c)(2)(B) and 11305(c)(3). The fresh start and special deduction do not adjust taxable

years prior to 1990. Id.

- *The Fresh Start allows pure Grosser P&Cs to report only thirteen percent of the otherwise required adjustment while the Special Deduction allows pure Netter P&Cs to deduct eighty-seven percent of the estimated salvage that would otherwise be recorded.* (p.7)

Response: The special deduction was provided for taxable years after 1989 to insurance

companies which had taken salvage recoverable into account prior to 1990 (netters). The amount of the special deduction provided to a netter was equal to 87% of the amount of its salvage recoverable at the end of 1989 and was, thus, based on salvage recoverable which the netter had already taken into account in the computation of "losses incurred" for the 1989 tax year. The amount of the special deduction has nothing to do with the amount of the salvage recoverable for the taxable year in which the deduction was claimed.

- *The United States contends that, despite the obviously equitable nature of the two deductions, Congress did not intend for P&Cs that employed a Hybrid method to receive the benefit of either the Fresh Start or Special Deduction.* (pp.7-8)

Response: It is the United States position that, given that the transitional relief set forth in the 1990 Act was directed at pure grossers and pure netters, it follows that Congress never intended both the fresh start and special deduction to be claimed by one company. By precluding a company which claims the special deduction from also claiming the fresh start, Treas. Reg. § 1.832-4(f)(3)(iii) appropriately sought to limit the fresh start and special deduction in accordance with Congress' intent. The United States does not contended that any insurance company should be precluded from receiving the benefit of one of the two forms of transitional relief.

- *Liberty Mutual admits that prior to 1990 it used a Hybrid accounting method. More specifically, its Annual Statements for both 1989 and 1990 reflected a split in accounting practices whereby Liberty Mutual used a Gross method on some lines of business and a Net method on others.* (p.8)

Response: On their 1989 and 1990 Annual Statements Plaintiffs took salvage recoverable into account because they, although prohibited, reported unpaid losses net of all salvage recoverable except salvage recoverable associated with a portion of the auto physical damage line of the business. As insurance companies, Plaintiffs' "business" was the issuing of insurance or annuity contracts and there were not more than one trade or business. See 26 U.S.C. § 816(a) and

831(c).  "Line of business" is a simply a term of art.

- *In light of its Hybrid accounting practices, on its 1990 federal income tax returns for the taxable year 1989, Liberty Mutual claimed the Special Deduction with respect to its Net Lines and the Fresh Start with respect to its Gross Lines. Similarly, in its 1991 federal income tax return for the taxable year 1990, Liberty Mutual used the same accounting practice, claim the Special Deduction with respect to Net Lines and the Fresh Start with respect to Gross Lines.* (p.8)

<u>Response</u>: Plaintiffs claimed the fresh start and the special deduction on their income tax returns for the 1990 and 1991 tax years, commonly referred to as the 1990 and 1991 income tax returns, *etc.*  <u>See</u> United States' Statement of Undisputed Material Facts, ¶ ¶ 5-6 (Docket #38).  The 1990 Act's amendment to § 832(b)(5)(A) and provision of transitional relief became effective for the 1990 tax year (not any earlier year).  <u>See</u> 1990 Act, § 11305(c).  At issue in this action is the 1990 tax year.

- *Subsequently, in 1992 Congress amended Treas. Reg. § 1.832-4(f)(iii).  The purpose of this regulation was to clarify the applicability of the 1990 Act.  Section 1.832-4 clearly states that P&Cs claiming the Special Deduction could not also claim the Fresh Start. Treas. Reg. §  1.832-4(f)(iii) (1992).  The regulation further provided for its retroactive application to the 1990 tax year and the 1990 Act.  The retroactive applicability required Liberty Mutual to reevaluate its federal income tax returns to the extent they were impacted by the 1990 Act.  After section 1.832-4 was amended, Liberty Mutual requested affirmative adjustments regarding its tax returns for the previous two years on which it had claimed both the Fresh Start and Special Deduction.  To comply with the rules, as new clarified by section 1.832-4, Liberty Mutual did not claim the Special Deduction on any subsequent returns.*  (pp.8-9)

<u>Response</u>: In January 1992 the Department of Treasury issued its final regulations relating to the treatment of salvage recoverable under § 832(b)(5)(A) as amended by the 1990 Act.  <u>See</u> T.D. 8390, 57 FR 3130-01.  The final regulations included § 1.832-4(f)(iii), which provides that a company which claims the special deduction is precluded from also claiming the fresh start.  <u>See</u> 26 C.F.R. § 1.832-4(f)(iii).  While this provision had not been included in the proposed regulations, Revenue Procedure 91-48 issued in August 1991 had precluded a company from claiming both the special deduction and the fresh start. <u>See</u> 56 FR 11127-01; Rev. Proc. 91-48,

Sec. 8 & 9. Plaintiffs were aware of this preclusion when they filed their income tax returns for the 1990 tax period claiming both the special deduction and the fresh start, including a statement with the returns that they were not following the preclusion contained in Rev. Proc. 91-48: "The taxpayer is not following the provision of Revenue Procedure 91-48 in this tax return with respect to the mutually exclusive rule[4] contained in Sections 8 and 9 of the Revenue Procedure." See Declaration of James W. Kress ¶ 18, Attachment Kress-5 (Docket #25).

In September 1993, Plaintiffs submitted to the Internal Revenue Service a request for "Affirmative Adjustment under Rev. Proc. 92-77." See Kress Declaration, ¶ 20, Attachment Kress-6. While the "Affirmative Adjustment under Rev-Proc. 92-77" states, "[b]y eliminating the special deduction that was taken in 1990 and 1991, Liberty Mutual Insurance Group will be in compliance with the mutually exclusive rule," in contradiction to § 1.832-4(f)(iii), Plaintiff are in this action claiming, in the alternative, that they are entitled to claim both the fresh start and special deduction. See Kress Declaration, ¶ 20, Attachment Kress-6. The intent of Plaintiffs' affirmative adjustment request, as stated therein, was to obtain the special deduction in one year rather than over four years as Congress provided in the 1990 Act: "Rev. Proc. 92-77 allows taxpayers a choice between effectively taking the special deduction for salvage and subrogation in one year or spreading it over four years. . . . In order to implement the one year deduction option allowed under Rev-Proc 92-77, we request an affirmative issue on audit." As addressed in the United States' summary judgment memorandum (p.19), Plaintiffs mischaracterize the revenue procedure in a manner which contravenes the 1990 Act. Rev. Proc. 92-77 pertains to the correction of double counting, not to the timing of the special deduction. While the IRS has

---

[4]The term "mutually exclusive rule" refers to the preclusion from claiming both the special deduction and the fresh start. Plaintiffs' "Affirmative Adjustment under Rev-Proc. 92-77" states, "[t]he mutually exclusive rule says that taxpayers claiming the fresh start cannot also claim the special deduction." See Kress Declaration, Attachment Kress-6.

the authority to provide a corrective measure which eliminates the effects of double counting, it

would have no authority to give taxpayers the special deduction in one year when Congress

mandated that the special deduction be taken ratably over four years.  See 1990 Act,

§ 11305(c)(3).

•         *In compliance with section 1.832-4(d), Liberty Mutual adjusted its Net Lines to reflect gross salvage recoverable.  This adjustment, called the gross-up, allowed Liberty Mutual to adjust its salvage recoverable on all Net Lines in order to retroactively calculate salvage as a Pure Grosser for tax purposes.  Liberty Mutual applied the Fresh Start to all of its lines (both Gross Lines and gross-up Net Lines) on its 1992 tax return. Liberty Mutual used the same method on its 1992 tax return, reporting one-quarter of thirteen percent of the salvage recoverable from 1989 on all lines.  This accounting practice allowed Liberty Mutual to claim a deduction equivalent to the Fresh Start on all lines and receive the same benefit as a Pure Grosser.*

        *In September 1993, Liberty Mutual filed with the Internal Revenue Service (hereinafter "IRS"), a request to convert its Net Lines into Gross Lines effective for the 1990 tax year. . . . In support of its request, Liberty Mutual averred that as a result of the 1990 Act it no longer maintained any Net Lines for tax purposes.  Accordingly, Liberty Mutual asked to be allowed to gross-up the estimated salvage for those business areas formerly calculated as Net Lines.  In response, the IRS conducted an audit of Liberty Mutual.* (pp.9-10)

Response: In order to prevent a double counting of salvage recoverable in the computation of

"losses incurred" under Code § 832(b)(5)(A) for 1990 and subsequent tax years, Treas. Reg.

§ 1.832-4(d) allows an insurance company which took salvage recoverable into account in

determining the amount of its unpaid losses shown on its Annual Statement to, for purposes of

computing "losses incurred", increase (gross-up) its unpaid losses by the amount of salvage

recoverable taken into account if the salvage recoverable that reduced unpaid losses was

separately taken into account under Code § 832(b)(5)(A)(iii) in the computation of losses

incurred.  See 26 C.F.R. § 1.832-4(d); Rev. Proc. 92-77, Sec. 4.01.  Under Rev. Proc. 92-77, if

an insurance company first increases unpaid losses pursuant to § 1.832-4(d) for a tax year

beginning on or before January 1, 1993, the company is to only gross-up the unpaid losses at the

end of that year; no adjustment is made to the unpaid losses at the end of the prior tax year.  See

-14-

Rev. Proc. 92-77, Sec. 4.02.  This provision is referred to as the year-end gross-up.  Plaintiffs did not gross-up their unpaid losses with respect to the 1990 tax period but did in September 1993, while its 1990 return was on audit, submit a request seeking a retroactive year-end gross-up of unpaid losses for the 1990 tax year.  The request was denied because as outlined below and more fully detailed in the United States' summary judgment memorandum (pp. 14-22), Plaintiffs are not entitled to the gross-up.

Code § 832(b)(5)(A), as amended by the 1990 Act, required all companies to take salvage recoverable into account in the computation of losses incurred for tax purposes, *i.e.*, it required all companies to be netters.  Application of the gross-up provision prevents a double counting of salvage recoverable in the computation of "losses incurred" under § 832(b)(5)(A); it does not convert gross lines into net lines.  A company grossing-up its unpaid losses under Treas. Reg. § 1.832-4(d) still has to, under § 832(b)(5)(A)(iii), separately take into account all of its salvage recoverable in the computation of losses incurred for tax purposes, *i.e.*, the company still has to follow a net method of accounting for salvage recoverable in the computation of losses incurred.[5]

The gross-up provision promulgated by the Treasury in Treas. Reg. § 1.832-4(d) is a corrective measure to prevent the double counting of salvage recoverable in the computation of losses incurred under § 832(b)(5) in 1990 and subsequent years.  In contrast, the fresh start and special deduction provisions enacted by Congress along with its amendment to § 832(b)(5)(A) are transitional benefits.  See 26 C.F.R. § 1.832-4(d); 1990 Act, §§ 11305(c)(2)(B) and

---

[5]Whereas the gross-up pertains to a company's treatment of salvage recoverable in the computation of losses incurred in 1990 or subsequent years, the fresh start and special deduction are determined by a company's treatment of salvage recoverable in the computation of "losses incurred", prior to 1990.  The gross-up provides a corrective measure for the 1990 or subsequent tax year for which it is taken; it does not effect the company's pre-1990 method of computing losses incurred.

11305(c)(3). Accordingly, the gross-up should not be considered in conjunction with the fresh

start or the special deduction in analyzing, determining, or creating a company's transitional

benefit or in comparing transitional benefits.

### IV.  Specific Legal Objections to the Report and Recommendation

A.  PRIOR TO 1990 THERE WERE ONLY TWO PERMISSIBLE METHODS OF
ACCOUNTING FOR SALVAGE RECOVERABLE IN THE COMPUTATION OF LOSSES
INCURRED: A PURE NET METHOD AND A PURE GROSS METHOD.

Prior to the 1990 Act, there were only two permissible methods of accounting for salvage

recoverable for tax purposes: (1) a gross method (a cash method) and (2) a net method (an

accrual method).[6]  Under the gross method, no salvage recoverable was not taken into account in

the computation of losses incurred; salvage was only taken into account when it was reduced to

cash.  Under the net method, all salvage recoverable was taken into account in the computation

of losses incurred.  A partial net (or partial gross) "method" of treating salvage recoverable

whereby some, but not all, salvage recoverable was taken into account in the computation losses

incurred was not permissible.  The Magistrate Judge's conclusion that a "Hybrid method" of

accounting for salvage recoverable was permissible prior to 1990 is incorrect. The Magistrate

Judge's characterization of Plaintiffs' pre-1990 practice of taking most but not all of its salvage

recoverable into account in the computation of losses incurred as a "Hybrid method" is also

incorrect.

Prior to the 1990 Act, the Internal Revenue Code required salvage recoverable to be

taken into account in computing losses incurred.  Prior to 1990, § 832(b)(5)(A) of the Internal

Revenue Code provided:

_____

[6]For tax purposes, the term "method of accounting" includes not only a taxpayer's overall
method of accounting but also the accounting treatment of any item, such as salvage recoverable.
See 26 C.F.R. § 1.446-1(a).

(A) In General. --The term "losses incurred" means losses incurred during the taxable year on insurance contracts computed as follows:

(i) To losses paid during the taxable year, <u>add salvage and reinsurance recoverable outstanding at the end of the preceding taxable year and deduct salvage and reinsurance recoverable outstanding at the end of the taxable year</u>.

(ii) To the result so obtained, add all unpaid losses on life insurance contracts plus all discounted unpaid losses (as defined in section 846) outstanding at the end of the taxable year and deduct unpaid losses on life insurance contracts plus all discounted unpaid losses outstanding at the end of the preceding taxable year.

26 U.S.C. § 832(b)(5)(A) prior to its amendment by the 1990 Act (underlining added).

The pre-1990 Treasury Regulation associated with § 832(b)(5)(A), defined "salvage and reinsurance recoverable" to include "all salvage in course of liquidation, and all reinsurance in process of collection" and, in turn, defined "salvage in course of liquidation" to include "all property (other than cash), real or personal, tangible or intangible, <u>except that which may not be included by reason of express statutory provisions (or rules and regulations of an insurance department) of any State or Territory or the District of Columbia in which the company transacts business</u>:" 26 C.F.R. § 1.832-1(c); 26 C.F.R. § 1.832-7T(c) (underlining added).  The Treasury Regulation provided in full:

That part of the deduction for "losses incurred" which represents an adjustment to losses paid for salvage and reinsurance recoverable shall, except as hereinafter provided, include all salvage in course of liquidation, and all reinsurance in process of collection not otherwise taken into account as a reduction of losses paid, outstanding at the end of the taxable year.  Salvage in course of liquidation includes all property (other than cash), real or personal, tangible or intangible, except that which may not be included by reason of express statutory provisions (or rules and regulations of an insurance department) of any State or Territory or the District of Columbia in which the company transacts business.  Such salvage in course of liquidation shall be taken into account to the extent of the value thereof at the end of the taxable year as determined from a fair and reasonable estimate based upon either the facts in each case or the company's experience with similar cases.  Cash received during the taxable year with respect to items of salvage or reinsurance shall be taken into account in computing losses paid during such taxable year.

-17-

26 C.F.R. § 1.832-1(c); 26 C.F.R. § 1.832-7T(c).

In <u>Continental Insurance Company v. United States</u>, the Court of Claims held that, under Treas. Reg. § 1.832-1(c), an insurance company was "to exclude from its salvage recoverable adjustment [under § 832(b)(5)(A)] *all* salvage not yet reduced to cash or cash equivalents where the rule of any state in which it does business bars the reporting of such salvage."[7] <u>Continental Ins. Co. v. United States</u>, 474 F.2d 661, 671 (Ct.Cl. 1973) (emphasis in the original). As otherwise stated in <u>Continental</u>, "[s]ection 1.832-1(c) of the Treasury Regulations must be construed to mean that where the exception based on the salvage rule of any state comes into play, the exception applies to salvage property of the insurer wherever located." <u>Continental</u>, 474 F.2d 667. In 1976, in Revenue Ruling 76-487, the Internal Revenue Service announced that it would follow the decision in <u>Continental</u>.

Thus, prior to 1990, under § 832(b)(5)(A) and the Treasury Regulations promulgated thereunder: (1) an insurance company which did not do business in any state which had a statutory provision, rule, or regulation which prohibited reporting salvage recoverable for state accounting purposes was required to take into account all of its salvage recoverable in its computation of losses incurred and (2) an insurance company which did business in any state which had a statutory provision, rule, or regulation which prohibited reporting salvage recoverable for state accounting purposes was to exclude all of its salvage recoverable in its computation of losses incurred. <u>See</u> 26 C.F.R. § 832(b)(5)(A); 26 C.F.R. § 1.832-7T(c); <u>Continental</u>, 474 F.2d 661. Given that the Code and Treasury Regulations specifically dictated that a company include or exclude *all* of its salvage recoverable in its computation of losses

---

[7]The regulatory provision at issue in <u>Continental</u> was § 1.832-1(c) which is identical to § 1.832-7T(c) which was in effect in 1989. <u>See</u> 26 C.F.R. § 1.832-7T(d) (providing that § 1.832-7T was "effective for taxable years beginning before January 1, 1990.")

incurred depending on whether a company did business in any state which prohibited taking salvage recoverable into account, a company did not have an option of choosing to include some but not all of its salvage recoverable in its computation of losses incurred.

Relying upon § 446 of the Internal Revenue Code, the Magistrate Judge concludes that prior to 1990 a "Hybrid method" of accounting for salvage recoverable, whereby some but not all of a company's salvage recoverable was taken into account, was permissible. See Report, pp.12-14. Section 446 provides a general rule for methods of accounting. See 26 U.S.C. § 446 (entitled "General Rule for Methods of Accounting"). Section 446(c) which is quoted in the Report lists generally permissible methods of accounting:

> (c) Permissible methods.--Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting--
>> (1) the cash receipts and disbursements method;
>> (2) an accrual method;
>> (3) any other method permitted by this chapter; or
>> (4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary.

The list of generally permissible methods of accounting in § 446(c) is irrelevant here where the Code and Treasury Regulations specifically dictated the required method of accounting for salvage recoverable prior to 1990.

Even if, absurdly, § 446(c) governed here, rather than § 832(b)(5)(A) and the regulatory provisions thereunder which specifically dictated the method of accounting for salvage recoverable prior 1990, taking some salvage recoverable into account, but not all, for the same insurance business would not qualify as a permissible method of accounting.

Prior to 1990, in computing losses incurred, Plaintiffs took into account salvage recoverable with respect to a portion of the auto physical damage line of business and also took into account salvage recoverable with respect to all other lines of business. See United States'

-19-

Statement of Undisputed Material Facts, ¶¶ 2 and 3.  Salvage recoverable with respect to the remaining portion of the auto physical damage line of business was not taken into account (hereinafter referred to as "the gross portion of the auto physical damage line").  Id.  Despite the fact that Plaintiffs only had a partial gross line, they repeatedly refer throughout their opening and reply memorandums in support of their motion for summary judgment, to their "gross lines." The Report likewise, repeatedly refers to Plaintiffs' "gross lines."  The reference to Plaintiffs' "gross lines" is incorrect.  Plaintiffs did not have gross lines, or even a single gross line; they only had a line which was partially gross, the auto physical damage line.

The Treasury Regulations under § 446(c) elaborate on the permissible methods of accounting listed in that section.  See 26 C.F.R. § 1.446-1(c)(1)(iv).  The regulations provide that "[i]n accordance with the following rules, any combination of the foregoing methods of accounting will be permitted in connection with a trade or business if such combination clearly reflects income and is consistently used."  While a combination or hybrid method of accounting is permissible, nothing in 446 or the regulations support the proposition that a taxpayer can inconsistently treat a particular item of income with respect to it business, here salvage recoverable with respect to a taxpayer's insurance losses, or even more particularly, in Plaintiffs' situation, salvage recoverable with respect to its insurances losses associated with its auto physical damage line of business.  The examples of permissible hybrid methods presented in the regulations demonstrate the impermissibility of a taxpayer treating salvage recoverable on both a net and gross basis.  The regulations permit a taxpayer to use an accrual method of accounting with respect to purchases and sales and a cash method of accounting with respect to all other items of income and expense, but do not provide for the use of an accrual method with respect to some purchases and sales and a cash method with respect to other purchases and sales.  See 26 C.F.R. 1.446-1(c)(1)(iv)(a).  The regulations permit a taxpayer to use one method of accounting

in computing items of income and deductions of his trade or business may compute other items

of income and deductions not connected with his trade or business under a different method of

accounting, but do not allow an inconsistent method of accounting for a particular item of

income within the business.  See 26 C.F.R. 1.446-1(c)(1)(iv)(a).  It follows that an insurance

company's treating some salvage recoverable with respect to its insurance losses on a net basis

and some on a gross basis would not be permissible, let alone treating some salvage recoverable

with respect to its insurances losses associated with its auto physical damage line of business on

a net basis and some salvage recoverable with respect to its insurances losses associated with its

auto physical damage line of business on a gross basis.

The Magistrate Judge incorrectly states that "[p]rior to 1990, P&Cs were permitted to

record salvage for tax purposes in the same manner in which they reported salvage on their

Annual Statements."  See Report, p.4.  Prior to 1990, property and casualty companies were

required to account for salvage recoverable as dictated by § 832(b)(5)(A) and the regulations

promulgated thereunder.  See 26 C.F.R. § 832(b)(5)(A); 26 C.F.R. § 1.832-7T(c).  Where the

annual statement form (previously referred to as the "convention form") conflicts with the

requirements of the code, the code prevails.  See  Western Cas. & Sur. Co. v. C. I. R., 571 F.2d

514, 517 (10th Cir. 1978); Commissioner v. General Reinsurance Corp., 190 F.2d 148, 151 (2d

Cir. 1959).

As outlined above, there no basis for the Magistrate Judge's conclusion that prior to 1990

it was permissible to account for some but all salvage recoverable in the computation of losses

incurred.

B.  PLAINTIFFS ARE ENTITLED TO THE SPECIAL DEDUCTION.

In its motion for summary judgment the United States argued that under Treas.

Reg. § 1.832-4(f)(3)(iii), Plaintiffs are precluded from claiming both the fresh start and the

special deduction provided for in the 1990 Act.  The Magistrate Judge agreed with the government and citing Treas. Reg. § 1.832-4(f)(3)(iii), recommended that Plaintiffs not be allowed to claim both the fresh start and the special deduction.  See Report, pp.14-15.

However, the Magistrate Judge went on to erroneously recommend that Plaintiffs were entitled to the fresh start rather than the special deduction. See Report, p.2.[8]

The Magistrate Judge's determination that Plaintiffs are not entitled to the special deduction is incorrect.  The 1990 Act provides a special deduction for netters.  Prior to 1990, in computing losses incurred, Plaintiffs took all of their salvage recoverable into account with the exception of a portion of the salvage associated with the auto physical damage line of business, which constituted a small portion of their overall salvage recoverable.  As discussed above, Plaintiffs should have treated salvage recoverable consistently as a pure netter.  Plaintiffs, therefore, are essentially pure netters who improperly left out a small portion of their salvage recoverable in their computation of losses incurred.  Given that they are essentially pure netters, they are entitled to take the special deduction, with the limitation, of course, that it only apply to the salvage recoverable which they actually took into account.  There is nothing in the regulations which would have precluded the Plaintiffs from just claiming the special deduction.  Plaintiffs, however, improperly claimed both the special deduction and the fresh start.  Treas. Reg. § 1.832-4(f)(3)(iii) provides that a company that claims the special deduction is precluded from also claiming the fresh start.  The Internal Revenue Service, therefore, properly disallowed the fresh start and did not adjust the special deduction and that determination has not been shown

---

[8]It should be noted that, with respect to Plaintiffs' first alternative claim for relief -- the issue of whether Plaintiffs are entitled to claim both the special deduction and the fresh start -- neither Plaintiffs nor the government ever argued that if Plaintiffs were only entitled to special deduction or the fresh start but not both, the Plaintiffs were entitled to the fresh start rather than the special deduction.

to be incorrect. Plaintiffs were permitted to retain the special deduction which, it should be noted, provided them with a much more substantial benefit than the fresh start would have.

The Magistrate Judge based her recommendation that Plaintiffs were entitled to the fresh start but not the special deduction on her determination that the 1990 Act provided the fresh start for both pure and partial grossers and the special deduction for only pure netters. See Report, pp.16-18. The Magistrate Judge based her interpretation of the 1990 Act on the use of the term "taxpayer" in § 11305(c)(2) of the Act and the use of the term "any insurance company" in § 11305(c)(3) of the Act. See id. The Magistrate Judge explains that "any insurance company" implies a consistent company-wide accounting practice, while "any taxpayer" is broad enough to include a company that uses both netting and grossing methods. See Report, p.18.

The Magistrate Judge's determination that the 1990 Act provided a fresh start for both pure and partial grossers is incorrect. As detailed above, there were only two permissible methods of accounting for salvage recoverable prior to 1990: a pure net method and a pure gross method. As fully detailed in the United States' summary judgment memorandum (see pp. 4-10) both forms of transitional relief set forth in the 1990 Act, the fresh start for grossers and the special deduction for netters, are directed to taxpayers that were following permissible methods of accounting prior to 1990, that is, pure grossers and pure netters.[9]

The distinction drawn by the report on the basis of the use of the word "taxpayer" in § 11305(c)(2) and the use of the word "any insurance company" in § 11305(c)(3) is illusionary. In describing their respective forms of transitional relief, the Senate and Conference Bills each

---

[9]Given that the transitional relief in the 1990 Act was directed at companies which were pure grossers or pure netters, it follows that Congress never intended both the fresh start provision and the special deduction to be claimed by one company. By precluding a company which claims the special deduction from also claiming the fresh start, Treas. Reg. § 1.832-4(f)(3)(iii) appropriately sought to limit the fresh start and special deduction provisions in accordance with Congress' intent.

speak in terms of "companies."  Further, in describing the purpose of the transitional relief, they

speak in terms of  "companies."  For example, the Senate Finance Committee Report indicated

that its version of the special deduction was intended "to treat <u>companies</u> that have been taking

estimated salvage recoverable into account in determining losses incurred in the same manner as

<u>companies</u> that have not been taking estimated salvage recoverable into account."  Senate

Report, 136 CONG. REC. S15695 (emphasis added).  Also § 11305(c)(2) emphasizes that any

change in method of computing losses incurred required by the Act is "a change in method of

accounting."  This emphasis on a "change in method of accounting" indicates that Congress is

addressing a company-wide issue.  An accounting method for a particular item is to be applied

consistently on a company-wide basis, not on a pick-and-choose basis.

If Congress intended the fresh start to apply to pure and partial grossers and the special

deduction to only apply to pure netters, it would have expressed the distinction more clearly than

by using the word "taxpayer" versus "insurance company."  A "taxpayer" means a "person"

subject to any internal revenue tax and includes a "company."  <u>See</u> 26 U.S.C. §§ 7701(a)(1) and

(14).  Section 831 of the Internal Revenue Code subjects every "insurance company" to an

income tax.  <u>See</u> 26 U.S.C. § 831.  An "insurance company" means "any company more than

half of the business of which during the taxable year is the issuing of insurance or annuity

contracts or the reinsuring of risks underwritten by insurance companies."  <u>See</u> 26 U.S.C. §§

816(a) and 831(c).  As such, references to a "company" or a "taxpayer" are references to the

entire business, not some part thereof.

Alternatively, in light of the Magistrate Judge's ruling regarding the Special Deduction,

the Magistrate Judge erred by not similarly ruling that the Fresh Start to limited to pure Grossers.

Both the terms "company" and "taxpayer" refer to the same overall business.  Just at the Special

Deduction is limited to "insurance companies" that took into account salvage recoverable in

determining losses, the Fresh Start is limited to taxpayers that did not take into account salvage recoverable in determining losses, *i.e.*, those taxpayers that were pure Grossers.  This is true because the Fresh Start is available to "any taxpayer who is required by reason of the amendments made by this section to change his method of computing losses incurred," *i.e.*, taxpayers those taxpayers who used the Cash/Gross method of accounting for the entire business. This conclusion that the Special Deduction is limited to pure Netters and that the Fresh Start is limited to pure Grossers would then dovetail with the Magistrate Judge's ruling that the plaintiffs are entitled to "either the Special Deduction or the Fresh Start, but not both."  See Report, p.16.

## C.  PLAINTIFFS ARE NOT ENTITLED TO THE YEAR-END GROSS-UP

The Magistrate Judge determined that Plaintiffs are entitled to the year-end gross-up.  See Report, pp. 2, 26.  It is unclear whether the Magistrate Judge's conclusion that Plaintiffs are entitled to the gross-up with respect to the 1990 tax period is limited to the extent to which Plaintiffs originally double counted salvage recoverable in computing losses incurred for the 1990 tax period.  The Report acknowledges that the purpose of the gross-up provision is to avoid a potential double counting of salvage recoverable.  See Report, p.19 ("The purpose of the gross-up is to avoid potential duplication in the calculation of salvage recoverable.").  This acknowledgment suggests that it may be the Magistrate Judge's position that Plaintiffs are only entitled to the gross-up with respect to the 1990 tax period to the extent to which Plaintiffs double counted salvage recoverable in computing losses incurred for the 1990 tax period.  In addition, the Report states, "Section 1.832-4(d) allows a taxpayer who has taken salvage recoverable into account separately to increase its unpaid losses for tax purposes by the amount of salvage recoverable already taken into account in order to provide an accurate accounting." Report, p., 21.  As detailed in the United States' summary judgment memorandum, in their computation of losses incurred for the 1990 tax period, Plaintiffs did not separately account for

-25-

any salvage recoverable that reduced their unpaid losses and, therefore, did not have any double-counting (p.16). The Report also provides in footnote 11 that:

> The United States avers Liberty Mutual did not double count any salvage recoverable. Section 1.832-4(d)(2) requires that Liberty Mutual must indicate, either to the IRS or to the appropriate state agency, where double accounting occurred. Any damages that Liberty Mutual may be entitled to are dependant upon Liberty Mutual's compliance with § 1.832-4(d)(2).

Report, p.22, n 11. This suggests that it is the Magistrate Judge's position that Plaintiffs are only entitled to the gross-up to the extent that they double counted salvage recoverable in the computation of losses incurred for the 1990 tax period. However, Treas. Reg. § 1.832-4(d)(2) only requires companies to disclose to state regulatory authority the "the extent to which estimated salvage recoverable is taken into account in computing the unpaid losses shown on the annual statement."[10] It does not require companies to disclose the extent to which they double counted salvage recoverable in the computation of losses incurred under Code § 832(b)(5)(A). Whether Plaintiffs double counted salvage recoverable in the computation of losses incurred for the 1990 tax periods is determined by reviewing Plaintiffs' computation of losses incurred. The Plaintiffs' computation of losses incurred reveals that they did not double count any salvage recoverable. The statement that "[t]he United States avers Liberty Mutual did not double count any salvage recoverable" suggests that it is merely an unestablished "position" of the United States that Plaintiffs did not double count salvage recoverable for the 1990 tax period. Report, p. 22, n.11. On the contrary, it is an undisputed fact, that Plaintiffs did not double count any salvage recoverable in computing losses incurred for the 1990 tax period. See U.S. Fact

---

[10]The disclosure must be made to the state agency, not to the IRS or the state agency as the Report states.

-26-

Statement, ¶4[11] The Report also provides that, "To the extent that salvage recoverable had already been calculated in the Annual Statement on Liberty Mutual's Net Lines, and that an accounting inaccuracy would otherwise result, Liberty Mutual is entitled to the a gross-up for that amount." Report, p.22. Here, although the unpaid loss figures used on Plaintiffs annual statement were partially net of salvage recoverable, no accounting inaccuracy occurred because Plaintiffs did not separately account for the salvage recoverable with respect to their net lines when they computed "losses incurred" under § 832(b)(5)(A).

If it is the Magistrate Judge's position that Plaintiffs are only entitled to the gross-up with respect to the 1990 tax period to the extent that they double counted salvage recoverable in computing losses incurred for the 1990 tax period, the government does not object to the determination but requests that the Court find that, based upon the record, it was uncontroverted that Plaintiffs did not double count salvage recoverable and, therefore, Plaintiffs are not entitled to the gross-up.

If it is not the Magistrate Judge's position that Plaintiffs are only entitled to the gross-up with respect to the 1990 tax year to the extent they double counted salvage recoverable, the government objects to the Magistrate Judge's finding that Plaintiffs are entitled to the gross-up

---

[11]As explained in the United States' motion for summary judgment (p.16): The unpaid losses shown on Plaintiffs' 1989 and 1990 annual statements and used as the basis for determining the discounted unpaid losses taken into account in computing losses incurred for tax purposes was net of salvage recoverable with respect to a portion of Plaintiffs' auto physical damage line of the business and net of salvage recoverable with respect to all other lines of the business.  See U.S. Fact Statement, ¶3; Morell Deposition, p. 15, l.13 - p.18, l.3 and p.41, ll.12-21 (Exh. B.).  In computing the deduction for losses incurred for the 1990 tax period, the only salvage recoverable separately taken into account by Plaintiffs under Code § 832(5)(A)(iii) was salvage recoverable that did not reduce Plaintiffs' unpaid losses--the salvage recoverable with respect to the portion of the auto physical damage line which did not reduce the unpaid losses.  See U.S. Fact Statement, ¶4.  Because none of the salvage recoverable that reduced the unpaid losses was separately taken into account under § 832(5)(A)(iii), there was no double counting of salvage recoverable.

on the basis that Plaintiffs do not qualify for the gross-up because they did not double count any salvage recoverable in computing "losses incurred" for the 1990 tax period.

As explicitly indicated in the announcement of the regulatory provision, in the preamble issued with the final regulations, and in Rev. Proc. 92-77, the purpose of the gross-up provision is to address a potential double counting of salvage recoverable in computing losses incurred under section 832(b)(5)(A), as amended by the 1990 Act. See Notice 92-1; T.D. 8390; Rev. Proc. 92-77, § 2. In Notice 92-1, the IRS acknowledged property and casualty companies' concern that computing losses incurred under section 832(b)(5)(A), as amended by the 1990 Act, could result in a double counting of salvage recoverable and announced that in response to this concern, the final regulations under section 832 would provide that, in certain circumstances, a company that reports on its annual statement unpaid losses reduced by an amount of salvage recoverable (a netter) would be allowed for federal tax purposes to increase those unpaid losses to the extent they had been reduced by salvage recoverable. See Notice 92-1. The preamble issued with the final regulations containing the gross-up provision, section 1.832-4(d), explained that the gross-up provision was a response to comments that for companies that had taken salvage recoverable into account in determining the unpaid losses on their annual statements the requirement that salvage recoverable be taken into account separately in computing losses incurred may result in a double counting of salvage recoverable . See T.D. 8390. Rev. Proc. 92-77 explained for a third time that the gross-up provision in the regulations was intended to address a potential double counting of salvage recoverable in computing losses incurred under section 832(b)(5)(A). See Rev. Proc. 92-77, §2.

The United States argument that Plaintiffs do not qualify for the year-end gross-up for the 1990 tax year because they did not double count any salvage recoverable in computing losses incurred for the 1990 tax year is fully addressed in the United States' summary judgment motion,

(pp.14-19).

If it is not the Magistrate Judge's position that Plaintiffs are only entitled to the gross-up with respect to the 1990 to extent they double counted salvage recoverable, the government also objects to the Magistrate Judge's finding that Plaintiffs are entitled to the gross-up on the basis that increasing (grossing-up) Plaintiffs' unpaid losses at the close of the 1990 tax year by salvage recoverable which reduced their unpaid losses but which was not separately taken into account under § 832(b)(5)(A)(iii) in the computation of "losses incurred" for the 1990 tax year is a change in method of accounting requiring approval of the Commissioner which Plaintiffs did not seek and which, regardless, cannot be sought retroactively in 1993. The government further objects on the basis that the Plaintiffs' 1993 request to gross-up unpaid losses for the 1990 tax year implicated further changes in method of accounting which require the approval of the Commissioner and which cannot be sought retroactively. These issues which was not addressed in the Report is addressed in the United States' memorandum in support of its motion for summary judgment (pp. 19-22).

The Report incorrectly explains that the potential for double counting arises in the computation of losses paid under § 832(b)(5)(A)(i).[12] See Report, p. 20. Section 832(b)(5)(A)(i), which provides "[t]o losses paid during the taxable year, deduct salvage and reinsurance recovered during the taxable year", does not create any potential for double counting

_____

[12]Similarly, the Report notes in its explanation of the potential for double counting that "[t]he revised accounting method under the 1990 Act requires all companies to deduct salvage and reinsurance actually recovered during the tax year from the losses paid." A requirement with respect to salvage recovered does not create a potential for double counting with respect to salvage recoverable. (It appears that the Magistrate Judge believes that the requirement to deduct salvage and reinsurance recovered from losses paid is new requirement under the 1990 Act. Insurance companies were, however, required to deduct salvage and reinsurance recovered from losses paid prior to 1990 as well. See 26 C.F.R. § 1.832-7T(c) ("[c]ash received during the taxable year with respect to items of salvage or reinsurance shall be taken into account in computing losses paid during such taxable year.")

salvage recoverable; paid losses and salvage *recovered* have nothing to do with double counting salvage *recoverable*. The potential for double accounting arises under § 832(b)(5)(A), as amended, as follows:

Under § 832(b)(5)(A), as amended, the computation of "losses incurred" is made in three steps:

(A) In General. --The term "losses incurred" means losses incurred during the taxable year on insurance contracts computed as follows:

(i)     To losses paid during the taxable year, deduct salvage and reinsurance recovered during the taxable year.

(ii)    To the result so obtained, add all unpaid losses on life insurance contracts plus all discounted unpaid losses (as defined in section 846) outstanding at the end of the taxable year and deduct all unpaid losses on life insurance contracts plus all discounted unpaid losses outstanding at the end of the preceding taxable year.

(iii)   To the results so obtained, add estimated salvage and reinsurance recoverable as of the end of the preceding taxable year and deduct estimated salvage and reinsurance recoverable as of the end of the taxable year.

26 U.S.C. § 832(b)(5)(A).

As indicated in § 832(b)(5)(A)(ii), "discounted unpaid losses" taken into account in computing "losses incurred" are defined in § 846. Under § 846(b), "discounted unpaid losses" are based on the unpaid losses shown in the Annual Statement filed by the insurance company. The relationship between § 832(b)(5)(A), as amended by the 1990 Act, and the § 846 definition of unpaid losses creates a potential for salvage recoverable to be "double counted" in the computation of losses incurred for a company that net salvage recoverable in determining the unpaid losses it reported on its Annual Statement. Under § 832(b)(5)(A)(ii) the change in discounted unpaid losses over the year is determined using the annual statement numbers. If the unpaid losses on the Annual Statement are net of salvage recoverable, the change in the

"discounted unpaid losses" over the year also reflects the change in salvage recoverable over the year. Because under § 832(b)(5)(A)(iii) the change in salvage recoverable over the year must be determined separately from the change in "discounted unpaid losses" over the year in computing losses incurred, salvage recoverable would be taken into account a second time in computing losses incurred if unpaid losses are net of salvage recoverable.[13] See also Rev.Proc. 92-77, § 2 for an explanation of the potential for double counting salvage recoverable under § 832(b)(5)(A), as amended by the 1990 Act.

The Report introduces the discussion on the gross-up by stating that, "[n]o item should be omitted and no item should be duplicated as a result of a change in method of accounting" and that "[t]his applies 'in situations in which a taxpayer changes its method of accounting voluntarily or by direction of the IRS and the change results in a duplication or omission of income." Report, p.19. The Report further states that "[t]he gross-up is a one time accounting practice intended to prevent accounting inaccuracies caused by the mandated change in accounting practices," that "Treas. Reg. § 1.823-4(d) [sic] authorizes a one-time gross-up for any companies that were pure or partial Netters" and that "[a]ny company that employs a hybrid method of accounting must gross-up the amount of its salvage on its Net Lines in order to provide accurate accounting information in accord with § 481."[14,15] Id. at pp. 19 and 23. Thus,

---

[13]An illustration of the double-counting problem is provided in the Appendix to the United States' summary judgment memorandum.

[14]Similarly, the Report states that "[t]he literal requirements of section 823(b)(5)(A) [sic] result in a one-time accounting error requiring Netting companies to count recovered salvage twice. The gross-up is intended to correct this inaccuracy." Report, p.21. The potential for double counting pertains to salvage recoverable not salvage recovered. Also as explained above, the potential for double counting can arise more than once.

[15]As explained above, Code § 481 addresses the adjustments that must be made when a taxpayer changes its method of accounting.

-31-

the Magistrate Judge failed to understand that the potential for double-counting salvage

recoverable, does not arise so much from the change in method of accounting for "losses

incurred", but, as explained above, is embedded within the new method of computing for unpaid

losses itself.  The potential for double counting is present, not just in 1990, but in each year,

1991, 1992, 1993, etc., that an insurance company uses unpaid loss figures that are net of salvage

recoverable in 832(b)(5)(A)(ii) and under 832(b)(5)(iii) separately takes into account  the

salvage recoverable which reduced its unpaid loss figures.  Accordingly, while the year-end

gross-up provided for in Sec. 4.02 of the Rev. Proc. 92-77 is only employed the first time a

company grosses-up unpaid losses pursuant to Treas. Reg. § 1.832-4(d) and can only be

employed if a company first grosses-up unpaid pursuant to § 1.832-4(d) for a tax year beginning

on or before January 1, 1993, a company that meets the requirements for grossing-up under

§ 1.832-4(d) is permitted to gross-up in more than one year if it follows applicable procedures

and has a double counting problem.  After the first year, a company grossing-up its unpaid losses

pursuant to § 1.832-4(d) is required to gross-up unpaid losses at both the beginning and the close

of the tax year in which the gross-up is taken.  See Rev. Proc. 92-77, Sec. 4.

       The Report states, "[t]o the extent Liberty Mutual calculated salvage recoverable for its

Gross Lines on the Annual Statement in 1989, it is entitled to gross-up its Net Lines and apply

the Fresh Start to the new adjusted amount."  Report, p.22.  This statement does not make sense.

By definition, Plaintiffs did not include salvage recoverable "for its Gross Lines" on their 1989

Annual Statement.  Furthermore, what Plaintiffs did with the salvage recoverable associated with

its "gross lines" has no bearing on whether or not they are entitled to the gross-up.

       The Report's discussion of the equitable intent of the fresh start and the special deduction

in the section on whether Plaintiffs are entitled to the gross-up (P.23) is misplaced.  The purpose

of the gross-up is not to create equity between grossers and netters.  The Report incorrectly cites

legislative history as "stating that the Fresh Start is intended to treat companies in the same manner regardless of whether they previously took into account salvage recoverable."  Report, p. 23.  It is not the provision of the fresh start alone that was intended to create parity between grossers and netters (the fresh start provides a benefit only to grossers), it is the provision of both the fresh start and the special deduction that is intend to create parity between grossers and netters.[16]  The Report states that, "[a]ny company which employs a hybrid method of accounting must gross-up the amount of salvage on its Net Lines in order to provide accurate accounting information in accord with § 481.  Companies employing a Hybrid method are allowed to gross-up Net Liens and claim the Fresh Start on all lines."  The gross-up provision is permissive not mandatory; a company which qualifies for the gross-up "is allowed" not required to gross-up.  See 26 C.F.R. § 1.832-4(d).  Also a company which claimed the special deduction can employ the gross-up, with respect to salvage recoverable which it took into account separately under § 832(b)(5)(A)(iii), and still retain its special deduction.  See Rev. Proc. 92-77, Sec. 4.06, Example 2.  Finally, not every company which took salvage recoverable into account, whether all or some, will require the gross-up in order to avoid double counting.  As already explained, Plaintiffs do not require a gross-up to avoid double counting because in computing losses incurred they did not separately taken into account any of the salvage recoverable on its net lines which reduced their unpaid loss figures.

The Report includes further misstatements about the gross-up in the section on Plaintiffs' motion to compel.  The Report states "[t]he application of Rev. Proc. 92-77 is similarly

---

[16]The House Bill only contained a fresh start provision where as the Senate Bill contained both a fresh start and a special deduction.  The Senate Finance Committee Report indicated that its version was intended "to treat companies that have been taking estimated salvage recoverable into account in determining losses incurred in the same manner as companies that have not been taking estimated salvage recoverable into account."  Senate Report, 136 CONG. REC. S15695 (emphasis added).

-33-

confusing as it requires a retroactive change in accounting practices on the part of P&Cs."
Report, p.25. The gross-up provided for in Rev. Proc. 92-77 does not require a change in
method of accounting; it is, rather, an accounting correction. In addition, it can be applied other
than retroactively. In contrast, if a company claimed the special deduction, increasing unpaid
losses to "remove" salvage recoverable which was not separately taken into a account is a
change in method of accounting for which the taxpayer must receive approval. See Rev. Proc.
92-77, Sec. 4.04. Increasing unpaid losses to remove salvage recoverable for accident years in
which salvage recoverable was not separately taken into account is not provided for in the gross-
up provision because the gross-up provision only applies when the salvage recoverable which
reduced unpaid losses has been separately taken into account. Regardless, as fully briefed in the
United States motion for summary judgment, this change in method of accounting cannot be
made retroactively. The Report also states "[o]nce a company has complied with Rev. Proc. 92-
77 and grossed-up its Net Lines, the Fresh Start is applicable to the new and final amount of
salvage recoverable." Report, p.25. As explained above, the gross-up does not trigger
application of the fresh start. Whereas the gross-up pertains to a company's treatment of salvage
recoverable in the computation of losses incurred in 1990 or subsequent years, the fresh start and
special deduction are determined by a company's treatment of salvage recoverable in the
computation of "losses incurred", prior to 1990. The gross-up provides a corrective measure for
the 1990 or subsequent tax year for which it is taken; it does not effect the company's pre-1990
method of computing losses incurred.

D.  NOTE REGARDING DENIAL OF PLAINTIFFS' MOTION TO COMPEL

       The Magistrate Judge recommends denial of the Plaintiffs' motion to compel background
information regarding the regulations and revenue procedures at issue in the action without
prejudice. Given the recommendation, there is no basis for the government to object. Despite its

denial, the Report states "to extent that this is a case of first impression, resting in large part on statutory analysis of the 1990 Act, this Court does find this background information to be relevant and subject to discovery."  The finding of relevancy is incorrect.  Given that the finding was not necessary to the recommended denial of the motion, it is dicta.  The government's position with respect to Plaintiffs' motion to compel is addressed in its response to the motion.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the Defendant United States' Objection to the Consolidated Report and Recommendation issued on July 27, 2007 – filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).  There are no non-registered case participants.

/s/ Karen Wozniak
KAREN WOZNIAK
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-1927
E-mail: karen.e.wozniak@usdoj.gov