UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY AND SUBSIDIARIES, | ) ) | |
| | ) | Civil No. 1:05-11048-RCL |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

_____

| | | |
|---|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY AND SUBSIDIARIES, | ) ) | |
| | ) | Civil No. 1:05-11049-RCL |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

**DEFENDANT UNITED STATES' RESPONSE TO
PLAINTIFFS' PROTECTIVE OBJECTIONS TO THE
CONSOLIDATED REPORT AND RECOMMENDATION ISSUED JULY 27, 2007**

MICHAEL J. SULLIVAN
United States Attorney


KAREN WOZNIAK
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-1927
E-mail: karen.e.wozniak@usdoj.gov

# I. **Introduction**

At issue in the parties' cross-motions for summary judgment in this income tax refund action is: (1) whether for the 1990 tax year Plaintiffs are entitled to claim the "fresh start" income exclusion provided for in § 11305(c)(2)(B) of the Revenue Reconciliation Act of 1990, 104 Stat. 1388 ("the 1990 Act"), in addition to the "special deduction" provided for in § 11305(c)(3) of the 1990 Act; and (2) whether Plaintiffs are entitled to apply the year-end gross-up to the 1990 tax year under Treas. Reg. § 1.832-4(d) and Rev. Proc. 92-77 § 4.02, 1992-2 C.B. 454.

In the Report and Recommendation issued by the Magistrate Judge ("Report") on the parties' cross-motions for summary judgment, the Magistrate Judge determined, *inter alia*, that Plaintiffs "pre-1990 Hybrid method of accounting was permissible"; that Plaintiffs were not entitled to claim both the special deduction and the fresh start; and that Plaintiffs were entitled to claim the fresh start, but not the special deduction.  Report, pp.2, 14.  While the Report findings also state that Plaintiffs are "entitled to the gross-up," it appears that the Magistrate Judge's finding that Plaintiffs are entitled to the gross-up may be limited to the extent to which Plaintiffs double-counted salvage recoverable for the 1990 tax year.

In Plaintiffs' objection to the Report ("Plaintiffs' Objection"), they state that the Report "correctly holds that the plain language of section 11035(c)(2)(A) [of the 1990 Act] allows Plaintiffs a "Fresh Start" on their Gross Lines, including the Gross Lines resulting from the gross-up of Net Lines permitted by Treas. Reg. § 1.832-4(d)(1)."  As addressed in the United States' memorandum in support of its motion for summary judgment ("United States' summary judgment memorandum") (pp.3-13) and in the United States' objection to the Report ("United

States' Objection") (pp.23-24 ), it is clear from the language of the 1990 Act as well as the

legislative history of the 1990 Act that the transitional benefits provided for in the 1990 Act were

directed at companies following permissible methods of accounting, the fresh start for pure

grossers and the special deduction for pure netters, and were intended to be applied on a

company-wide basis.  As addressed in United States' Objection (pp.15-16, 34) and below,

application of the gross-up provided for in Treas. Reg. § 1.832-4(d)(1) does not change "net

lines" to "gross lines" and does not establish entitlement to the fresh start provided for in the

1990 Act.[1]  Plaintiffs' claim that "[i]n support of [the finding that Plaintiffs are entitled to the

fresh start], the Report also correctly holds (pages 12-14) that Plaintiffs' 'hybrid' method of

accounting for salvage recoverable prior to 1990, whereby the reported loss reserves for some

lines of business gross of salvage and other lines net of salvage, was a permissible method of

accounting."  Plaintiffs' Objection, p.2.  The Magistrate Judge's determination that Plaintiffs'

partial netting of salvage recoverable for tax purposes prior to 1990 was permissible is incorrect.

Regardless, contrary to Plaintiffs' claim, while the Magistrate Judge did find that Plaintiffs "pre-

1990 Hybrid method of accounting was permissible", she did not rely upon that finding for her

determination that Plaintiffs' were entitled to the fresh start.  See Report, p.14, n.9.  The

Magistrate Judge specifically stated that she considered the "permissibility of Liberty Mutual's

pre-1990 account methods" "irrelevant for purposes of the instant case."  Id.  Plaintiffs also

claim that government's counsel conceded that if the Court were to find the Plaintiffs' pre-1990

---

[1]A statement on this issue on page 15 of the United States' Objection includes a
typographical error, reading as follows "[a]pplication of the gross-up provision prevents a double
counting of salvage recoverable in the computation of "losses incurred" under § 832(b)(5)(A); it
does not convert *gross lines into net lines*." (italics added).  The statement should, of course,
instead read "it does not covert *net lines to gross lines*."

partial netting of salvage recoverable for tax purposes permissible, "Defendant's position on the Fresh Start issue would fail." Plaintiffs' Objection, p.2. As discussed below, any such "concession" would be based on a mistake of law and would not bind the government.

Ignoring the lack of clarity as to whether it is the Magistrate Judge's position that Plaintiffs are only entitled to the gross-up to the extent they double counted salvage recoverable for the 1990 tax year, Plaintiffs state that the Report "correctly holds that the plain language of Treas. Reg. § 1.832-4(d)(1) permits a gross-up of Plaintiffs' 1990 loss reserves for salvage on its Net Lines, thereby converting these lines to Gross Lines for tax purposes and making them eligible for the Fresh Start." Plaintiffs' Objection, p.2. If it is the Magistrate Judge's position that Plaintiffs are entitled to the gross-up to the extent they double counted salvage recoverable, Plaintiffs cannot prevail because they did not double count salvage recoverable. If it is the Magistrate Judge's position that Plaintiffs are entitled to retroactively apply the gross-up to the 1990 tax year even if they did not double count salvage recoverable in computing losses incurred for the 1990 tax year, *i.e.*, even if their computation of losses incurred did not include a duplication of salvage recoverable which requires correction, the Magistrate Judge's position, which is the position of Plaintiffs, contravenes Treas. Reg. § 1.832-4(d) and is incorrect. Furthermore, as just stated above, the gross-up does not "convert net lines to gross lines" and does not establish entitlement to the fresh start.

Plaintiffs object to the Magistrate Judge's correct determination that Treas. Reg. § 1.832-4(f)(3)(iii) precludes a company which claims the special deduction from also claiming the fresh start, stating "Plaintiffs object to any interpretation of . . . Treas. Reg. § 1.832-4(f)(3), or any reliance thereon, for the conclusion that the Fresh Start is limited to companies that do not claim

the Special Deduction."  Plaintiffs' Objection, p.3.

Plaintiffs point out "certain typographical and other apparently inadvertent errors in the Report and suggest corrections."  See Plaintiffs' Objection, pp.3-4.  While the government does not object to the majority of these corrections of what Plaintiffs refer to as "minor errors," the Report is still left after these corrections with major errors of law and fact as addressed throughout the United States' Objection.

## II.  Response

A.  PRIOR TO 1990 THERE WERE ONLY TWO PERMISSIBLE METHODS OF ACCOUNTING FOR SALVAGE RECOVERABLE IN THE COMPUTATION OF LOSSES INCURRED: A PURE NET METHOD AND A PURE GROSS METHOD.

In direct contradiction to 26 U.S.C. § 832(b)(5)(A), prior to its amendment by the 1990 Act, and the Treasury Regulations promulgated thereunder, which dictated the permissible methods of accounting for salvage recoverable for tax purposes prior to 1990, Plaintiffs declare that the Report "correctly holds . . . that Plaintiffs' 'hybrid' method of accounting for salvage recoverable prior to 1990, whereby the reported loss reserves for some lines of business gross of salvage and other lines net of salvage, was a permissible method of accounting."  Plaintiffs' Objection, p.2.

Setting aside the legal incorrectness of the Magistrate Judge's finding "that the plain reading of the Internal Revenue Code does not prohibit the use of a Hybrid method generally, nor does it prohibit said method from being split on a the basis of business lines" (Report p.14), it does not follow from that finding, that Plaintiffs' "pre-1990 Hybrid method of accounting was permissible" (Report, p.2).  Plaintiffs did not treat salvage recoverable differently on a line of business basis; they treated salvage recoverable differently within one line of business, the auto

physical damage line of business.  See United States' Statement of Undisputed Facts, ¶¶ 2-3.  It is unclear whether the Magistrate Judge would find Plaintiffs' partial netting of salvage recoverable to be a permissible "Hybrid method of accounting," or simply the improper treatment of an item, if she appreciated the fact that Plaintiffs treated salvage recoverable inconsistently within one line of business.

As fully addressed in the United States' Objection (pp.16-19), prior to 1990, 26 U.S.C. § 832(b)(5)(A) and the Treasury Regulations promulgated thereunder mandated that an insurance company include or exclude *all* of its salvage recoverable in the computation of losses incurred for tax purposes depending on whether or not the company did business in any state which specifically prohibited through statute, regulation, or rule taking salvage recoverable into account for state accounting purposes; a company did not have the option of choosing to include some but not all of its salvage recoverable in the computation of losses incurred.  See 26 U.S.C. § 832(b)(5)(A); 26 C.F.R. § 1.832-1(c); 26 C.F.R. § 1.832-7T(c); Continental Ins. Co. v. United States, 474 F.2d 661, 671 (Ct.Cl. 1973).

Accordingly, contrary to Plaintiffs' declaration, the Magistrate Judge's conclusion that a "Hybrid method" of accounting for salvage recoverable for tax purposes was permissible prior to 1990 is incorrect.  As detailed in the United States' Objection (pp.16-21), the Magistrate Judge's erroneous conclusion is based: (1) on a total disregard for 26 U.S.C. § 832(b)(5)(A) and the Treasury Regulations promulgated thereunder, which prescribed the permissible methods of accounting for salvage recoverable for tax purposes prior to 1990, but which astonishingly are not mentioned even once in the section of the Report addressing the permissible methods of accounting for salvage recoverable prior to 1990 (see Report, pp.12-14); (2) on an inappropriate

reliance upon 26 U.S.C. § 446 and the Treasury Regulations promulgated thereunder which provide general rules on methods of accounting and which are irrelevant here where 26 U.S.C. § 832(b)(5)(A) and the Treasury Regulations promulgated thereunder specifically dictated the permissible methods of accounting for salvage recoverable for tax purposes prior to 1990; and (3) within that misreliance upon 26 U.S.C. § 446, on a failure to understand that treating a particular item of income with respect to a business, here salvage recoverable with respect to Plaintiffs' insurance business, inconsistently, as Plaintiffs did, is prohibited and does not constitute a hybrid method of accounting.  See 26 C.F.R. § 1.446-1(c)(1)(iv).

Further, it appears that the Magistrate Judge inappropriately supports her erroneous conclusion regarding the permissible methods of accounting for salvage recoverable prior to 1990 with her misperception that the United States' position on this issue is contradicted by the Internal Revenue Service treatment of the Plaintiffs on audit:

> [t]he United States' position is, however, contradicted by the IRS itself.  In 1993, the Commissioner of the IRS conducted an audit of Liberty Mutual.  United States' Response to Plaintiff's Statement of Undisputed Material Facts on Record at ¶ 12 . . . .  The record before this Court indicates no evidence that the Commissioner found anything impermissible about Liberty Mutual's Hybrid accounting practice.  See Pl.'s Undisputed Facts at ¶ 40-46.

Report, p.13.  By way of clarification, although not stated in the Report, the examination referenced here by the Magistrate Judge is the examination of the Plaintiffs' returns with respect to the 1990 tax year.  See Plaintiffs' Statement of Undisputed Facts, ¶¶ 12, 40.  Plaintiffs computation of losses incurred for the 1990 tax year took into account *all* of their salvage recoverable; Plaintiffs did not partially account for salvage recoverable on their 1990 returns. See United States' Statement of Undisputed Facts, ¶ 4; Plaintiffs' Statement of Undisputed Facts, ¶ 28.  The 1990 Act required that beginning with the 1990 tax year all salvage recoverable

be taken into account in the computation of losses incurred.  It was on Plaintiffs' pre-1990 tax returns that they partially net salvage recoverable in the computation of losses incurred.  See United States' Statement of Undisputed Facts, ¶ ¶ 1-3.

Contrary to the Magistrate Judge's belief, the Internal Revenue Service's determination on examination does not contradict the United States' position in this action.  Treas. Reg. § 1.832-4(f)(3)(iii) precludes Plaintiffs from claiming both the special deduction and the fresh start.  As addressed in the United States' summary judgment memorandum (pp.3-10), it is the United States' position: (1) that the transitional benefits provided for in the 1990 Act were accordingly directed at companies following the two permissible methods of accounting for salvage recoverable prior to 1990: the fresh start for pure grossers and the special deduction for pure netters; (2) that, given that the transitional benefits in the 1990 Act were directed at companies which were either pure grossers or pure netters, it follows that Congress never intended both the fresh start and the special deduction to be claimed by one company; and (3) that by precluding a company which claims the special deduction from also claiming the fresh start, Treas. Reg. § 1.832-4(f)(3)(iii) appropriately sought to limit the fresh start and special deduction in accordance with Congress' intent.  On Plaintiffs' 1990 tax returns they claimed the special deduction with respect to salvage recoverable which they had previously taken into account as well as claiming the fresh start with respect to salvage recoverable they had not previously taken into account.  In accordance with Treas. Reg. § 1.832-4(f)(3)(iii), on examination, the Internal Revenue Service properly disallowed the fresh start and allowed the special deduction.  There is no discrepancy between what the Internal Revenue Service did on examination and the United States' position in this action.

Finally, it appears that the Magistrate Judge's conclusion that Plaintiffs' pre-1990 partial netting of salvage recoverable for tax purposes was permissible inappropriately defers to the Declaration of Dennis P. Van Mieghem ("Van Mieghem Declaration"), which Plaintiffs submitted along with their summary judgment reply and opposition memorandum. The footnote to the last sentence in the section of the Report concerning the permissibility of Plaintiffs' pre-1990 partial netting of salvage recoverable for tax purposes states, "[i]n sworn declaration, Dennis P. Van Mieghem, former Director for the National Insurance Tax Practice, stated that many of his clients used a Hybrid method of accounting, using both Gross Lines and Net Lines." Report, p.14, n.9. By way of clarification, to the extent that there is any confusion that Van Mieghem is associated with the National Association of Insurance Commissioners, he is not; the declaration identifies Van Meighem as a retired Partner and Director of *KPMG, LLP's* "National Insurance Tax Practice." See Van Mieghem Declaration, ¶ 1. Also by way of clarification, the Van Mieghem Declaration never refers to the partial netting of salvage recoverable as a "hybrid method of accounting." See Van Mieghem Declaration. Appropriately so, given that, as explained in the United States' Objection (pp.20-21), the partial netting of salvage recoverable does not constitute a hybrid method of accounting. The Van Mieghem Declaration does state, "[a]ll of my clients that had both Gross and Net lines on their Annual Statement followed that Annual Statement treatment of salvage on their tax returns for 1989 and 1990, among other years, so that they reported some Net Lines and some Gross Lines for tax purposes." Van Mieghem Declaration, ¶ 6. The disregard of the internal revenue laws concerning the tax treatment of salvage recoverable by Van Mieghem's clients is obviously irrelevant here. The permissible methods of accounting for salvage recoverable for tax purposes prior to 1990 can

-8-

only be determined by looking at the applicable provisions of the Internal Revenue Code and the Treasury Regulations then in effect; insurance companies' actual tax treatment of salvage recoverable is irrelevant to a determination of what the law permitted.

In sum, the Report's conclusion that a partial netting of salvage recoverable was permissible for tax purposes prior to 1990 directly contradicts the applicable provisions of the Internal Revenue Code and the Treasury Regulations; is inappropriately based upon a misunderstanding of irrelevant Code and regulatory provisions; is inappropriately supported by an incorrect finding of a contradiction between the United States' position in this action and the Internal Revenue Service's position on audit; and inappropriately defers to irrelevant statements of fact. In accordance with the applicable law, 26 U.S.C. § 832(b)(5)(A) and the Treasury Regulations promulgated thereunder, the Magistrate Judge should have concluded that the only two permissible methods of accounting of salvage recoverable for tax purposes prior to 1990 were a pure net method and a pure gross method.

## B.  TREAS. REG. § 1.832-4(f)(3)(iii) PRECLUDES PLAINTIFFS CLAIMING BOTH THE SPECIAL DEDUCTION AND THE FRESH START UNDER THE 1990 ACT.

Citing Treas. Reg. § 1.832-4(f)(3)(iii), the Magistrate Judge correctly concluded that no insurance company is allowed to claim both the special deduction and the fresh start.  See Report, p.14-15.  Plaintiffs, however, object to "any interpretation of . . . Treas. Reg. § 1.832-4(f)(3), or any reliance thereon, for the conclusion that the Fresh Start is limited to companies that do not claim the Special Deduction."  Plaintiffs' Objection, p.3.  Plaintiffs' objection lacks merit given that the plain language of Treas. Reg. § 1.832-4(f)(3)(iii), as noted in the Report,

precludes a company which claimed the special deduction from also claiming the fresh start.[2]

See Report, pp.14-15; 26 C.F.R. § 1.832-4(f)(3)(iii).  In addition, the preamble to the final

regulations published in the Federal Register clearly states in the explanation of the provisions

regarding the transitional rules that the final regulations contain a provision which precludes a

company which claims the special deduction from also claiming the fresh start:

> . . . section 11305(c)(3) of the 1990 Act allows the insurance company to deduct
> 87 percent of the discounted amount of estimated salvage recoverable that the
> company took into account under its method of account for the last taxable year
> beginning before January 1, 1990 ("special deduction").  In response to comments
> requesting clarification of the proposed regulations, the final regulations make
> clear that a company that claims the special deduction may not also claim the
> benefit of section 11305(c)(2)(B) of the 1990 Act.

T.D. 8390. (Section 11305(c)(2)(B) of the 1990 Act provides the fresh start benefit.)  The

Plaintiffs' objection is frivolous given that the plain language of Treas. Reg. § 1.832-4(f)(3)(iii)

is not in dispute.  Insurance tax advisors understand that Treas. Reg. § 1.832-4(f)(3)(iii) provides

that an insurance company cannot claim both the special deduction and the fresh start.  See

Partners of KPMG Peat Marwick, FEDERAL TAXATION OF INSURANCE COMPANIES, ¶ 14.19,

P.1436A [6-27-95] (1991)  (". . . the final regulations contain the 'mutually exclusive rule'

created in Revenue Procedure 91-48.  This rule prohibits a company that claims the special

deduction from also claiming the fresh-start benefit on unanticipated salvage recoverable. "

---

[2]The text of Treas. Reg. § 1.832-4(f)(3)(iii) reads, "A company that claims the special
deduction is precluded from also claiming the section 481 adjustment provided in paragraph
(e)(2)(ii) of this section for pre-1990 accident years."  Treas. Reg. § 1.832-4(f) labels the
deduction provided in § 11305(c)(3) of the 1990 Act as the "special deduction."  Treas. Reg.
§ 1.832-4(e)(2)(ii) provides that "[i]f a company does not claim the deduction under section
11305(c)(3) of the 1990 Act, the company must take into account 13 percent of the adjustment
that would otherwise be required under section 481 for pre-1990 accident years as a result of the
change in accounting method."  This tracks the fresh start provision in § 11305(c)(2)(B) of the
1990 Act.

citing "Reg. § 1.832-4(f)(3)(iii)"), submitted to the Court as Exhibit 18 at the April 20, 2007

hearing on the parties' cross-motions for summary judgment.  Further, the Joint Committee on

Taxation in Congress recognizes that Treas. Reg. 1.832-4(f)(3) provides that "a company that

claims the special deduction may not claim the benefit of the 'fresh start.'"  JCS-19-95, p.183,

submitted to the Court as Exhibit 23 at the April 20, 2007 hearing.

     Citing to page 12 of the transcript of the April 20, 2007 hearing on the parties' cross-

motions for summary judgment, Plaintiffs claim, "[i]n oral argument, Defendant's counsel

conceded that if the Court found Plaintiffs' accounting method to be permissible, Defendant's

position on the Fresh Start issue would fail."  Plaintiffs' Objection, p.2.  What counsel for the

government was addressing here was whether Plaintiffs could take the fresh start *in addition to*

the special deduction.  See Hearing Transcript, p.1, line18-p.12, line10.  Thus, Plaintiffs'

argument implicates Treas. Reg. § 1.832-4(f)(3)(iii).  In response to the Court's question as to

whether Plaintiffs would prevail on the issue of whether it could take the fresh start if the Court

found Plaintiffs' pre-1990 partial netting of salvage recoverable in the computation of losses

incurred permissible, counsel for the government stated, "Only if the Court finds the regulatory

provision prohibiting them from taking both invalid."  Hearing Transcript, p.10, line 25-p.11,

line 25.  When the question was repeated, counsel for the government stated, "With respect to

this issue of whether they can take this fresh start --" . . . "--fresher deduction, yes."  Hearing

Transcript, p.12, 1ines 1-10.  Setting aside the gibberishness of "fresher deduction," any

statement or indication by counsel for the government that Plaintiffs could take the fresh start in

addition to the special deduction if the Court found the Plaintiffs' pre-1990 partial netting of

salvage recoverable for tax purposes permissible would clearly be an erroneous statement of law.

Treas. Reg. § 1.832-4(f)(3)(iii), which is based on the 1990 Act, unequivocally prohibits

Plaintiffs from claiming both the fresh start and the special deduction.  Accordingly, any alleged

"concession" by counsel for the government would be based on a mistake of law and cannot bind

the government.  See Young v. Commissioner, 926 F. 2d 1083, 1089-1090 (11th Cir. 1991)

(rejecting, inter alia, Appellants' argument that a concession in the government's reply brief

filed with the Tax Court with respect to an Internal Revenue Code provision precluded the Tax

Court from basing its decision on that provision on the grounds that "the asserted concession . . .,

if considered a mistake of law by the government in its pretrial submission, may be corrected.");

See also Heckler v. Community Health Services of Crawford County, Inc. 467 U.S. 51, 63

(1984) (the general rule is that "those who deal with the Government are expected to know the

law and may not rely on the conduct of Government agents contrary to law.").

     Setting aside the issue of whether or not Plaintiffs' partial netting of salvage recoverable

for tax purposes prior to 1990 was permissible, deductions and exclusions from gross income,

such as the special deduction and the fresh start, are a matter of legislative grace and are to be

narrowly construed.  See  Deputy v. Dupont, 308 U.S. 488, 493 (1940); New Colonial Ice v.

Helvering, 292 U.S. 435, 440 (1934); Kirk v. C.I.R., 425 F.2d 492, 494 (D.C. Cir. 1970);  Butka

v. Commissioner, 91 T.C. 110, 117 (1988), aff'd without published opinion, 886 F.2d 442 (D.C.

Cir. 1989).  Furthermore, transitional rules are to be construed strictly in accordance with

Congress' intent.  See Helvering v. Northwest Steel Mills, 311 U.S. 46, 49 (1949) (provisions of

tax statutes granting exemptions are to be strictly construed).  Courts will generally not impute to

Congress an unstated intention.  See  United States v. Hemme, 476 U.S. 558, 566 (1986).

Accordingly, it should not be inferred that Congress intended the special deduction and fresh

start to apply by separate lines of business within a company or, more extraordinarily, as

applicable to Plaintiffs' situation, that Congress intended both the special deduction and fresh

start to apply within a single line of business, when there is no language in the statute or the legislative history that supports such application.

It is the government's position that the preclusion from taking both the special deduction and the fresh start in Treas. Reg. § 1.832-4(f)(3)(iii) is consistent with the language of § 11305(c) of 1990 Act and that the 1990 Act, and the regulations thereunder, would need to be amended in order for Plaintiffs to be permitted to take both the special deduction and the fresh start. There was a formal legislative proposal to amend the 1990 Act by the Joint Committee on Taxation. The July 10, 1995 Joint Committee Print describing miscellaneous tax proposals included a proposal to eliminate the mutual exclusivity of the transitional benefits in Treas. Reg. § 1.832-4(f)(3)(iii), but the change was never made into the law. See JCS-19-95, p.183-84. The Joint Committee had suggested that, "[t]he proposal would be effective *as if enacted* with the provisions of the 1990 Act regarding salvage and subrogation." (italics added) JCS-19-95, p.184. This legislative proposal, which was never enacted, strongly supports the government's argument that § 11305(c) of the 1990 Act would need to be amended to permit the same company to claim both the special deduction and the fresh start.

After correctly determining that Treas. Reg. § 1.832-4(f)(3)(iii) precluded Plaintiffs from claiming both the special deduction and the fresh start, the Magistrate Judge nevertheless erroneously determined that Plaintiffs were entitled to the fresh start rather than the special deduction. See Report, p.2. Like the United States, Plaintiffs object to the conclusion that they are not entitled to the special deduction. See Plaintiffs' Objection, pp.2-3. For the reasons set forth in the United States' Objection (pp.22-23), the Report should have determined that Plaintiffs were entitled to the special deduction rather than the fresh start because (1) Plaintiffs' claimed both the special deduction and the fresh start and Treas. Reg. 1.832-4(f)(3)(iii) provides

-13-

that if a company claims the special deduction, it is precluded from claiming the fresh start and because (2) Plaintiffs were essentially pure netters who improperly failed to take into account the salvage recoverable attributable to one portion of one line of busines.

## C. PLAINTIFFS ARE NOT ENTITLED TO THE YEAR-END GROSS-UP.

Plaintiffs claim the Report "correctly holds that the plain language of Treas. Reg. § 1.832-4(d)(1) permits a gross-up of Plaintiffs' 1990 loss reserves for salvage on its Net Lines, thereby converting these lines to Gross Lines of tax purposes and making them eligible for the Fresh Start."  Plaintiffs' Objection, p.2.

The Magistrate Judge did determine that "Liberty Mutual is entitled to the gross-up." Report, p.2.  However, as discussed in the United States' Objection (pp.25-27), it is unclear from the Report whether the Magistrate Judge's determination that Plaintiffs are entitled to retroactively apply the gross-up with respect to the 1990 tax year is limited to the extent to which Plaintiffs had double counted salvage recoverable in the computation of losses incurred on their original 1990 return.  If it is the Magistrate Judge's position that Plaintiffs are entitled to the gross-up with respect to the 1990 tax year only to the extent that they had double counted salvage recoverable in computing losses incurred for the 1990 tax year, her position is correct, but it follows that Plaintiffs are not entitled to retroactively apply the gross-up to the 1990 tax year because it is uncontroverted that Plaintiffs did not double count any salvage recoverable in computing losses incurred for the 1990 tax year.  See United States' Statement of Undisputed Material Facts, ¶ 4.  The Report should have taken the extra step of finding that no double counting existed since Plaintiffs do not contend otherwise and the facts are undisputed.  Given that the gross-up is repeatedly acknowledged as a corrective measure throughout the Report, it seems unlikely that it is the Magistrate Judge's position that the gross-up could be used when no

duplication of salvage recoverable, *i.e.*, when no accounting inaccuracy, is present and, thus, no correction is necessary.  See Report, pp.19-21 (the gross-up is an "accounting practice intended to prevent accounting inaccuracies" (p.19); "purpose of the gross-up is to avoid potential duplication in the calculation of salvage recoverable" (p.19); gross-up is intended to "correct" an "accounting inaccuracy" (p.20); "Section 1.832-4(d) allows a taxpayer who has taken salvage recoverable into account separately to increase its unpaid losses for tax purposes by the amount of salvage recoverable already taken into account in order to provide an accurate accounting" (p.21); the gross-up is "a method to provide accurate accounting information" (p.21); "[t]o the extent that salvage recoverable had already been calculated in the Annual Statement on Liberty Mutual's Net Lines, *and an accounting inaccuracy would otherwise result*, Liberty Mutual is entitled to gross-up for that amount" (italics added) (p.22). )  However, if it is the Magistrate Judge's position that Plaintiffs are entitled to retroactively apply the gross-up with respect to the 1990 tax year even if they did not double count salvage recoverable in computing losses incurred for the 1990 tax year, *i.e.*, even if their computation of losses incurred did not include a duplication of salvage recoverable which requires correction, her position contravenes Treas. Reg. § 1.832-4(d) and is incorrect, as described more fully below.

As more fully detailed in the United States' Objection (p.28), as clearly expressed by the Department of Treasury Internal Revenue Service in the announcement of the regulatory provision, in the preamble issued with the final regulations, and in Rev. Proc. 92-77, the purpose of the gross-up provision is to address a potential double counting of salvage recoverable in computing losses incurred under 26 U.S.C. § 832(b)(5)(A), as amended by the 1990 Act.  See Notice 92-1; T.D. 8390, 57 FR 3130-01; Rev. Proc. 92-77, § 2.  In order to correct or prevent double counting of salvage recoverable in the computation of losses incurred under 26

-15-

U.S.C. § 832(b)(5)(A) for 1990 and subsequent tax years, Treas. Reg. § 1.832-4(d) allows an

insurance company which took salvage recoverable into account in determining the amount of its

unpaid losses shown on its Annual Statement to, for purposes of computing losses incurred,

increase (gross-up) its unpaid losses by the amount of salvage recoverable taken into account.

See 26 C.F.R. § 1.832-4(d); Notice 92-1; T.D. 8390; Rev. Proc. 92-77, § 2.[3]  (26 U.S.C. § 832

itself does not contain any gross-up provision.)

     To the extent there is any doubt that Treas. Reg. § 1.832-4(d) is intended to correct or

prevent a double counting of salvage recoverable, the Court must necessarily look to the

administrative construction of the regulation for an interpretation of it.  See Bowles v. Seminole

Rock & Sand Co., 325 U.S. 410, 414 (1945).  The administrative interpretation of Treas.

Reg. § 1.832-4(d) must be given controlling weight unless it is plainly erroneous or inconsistent

with the regulation.  Id.  The Department of Treasury Internal Revenue Service's explanation, in

the announcement of the regulatory provision, in the preamble to the final regulations, and in

Rev. Proc. 92-77, that Treas. Reg. § 1.832-4(d) addresses the potential double-counting of

salvage recoverable in the computation of losses incurred, compels the conclusion that § 1.832-

4(d) is intended to correct or prevent the double counting of salvage recoverable.  Accordingly,

---

[3]Treas. Reg. § 1.832-4(d), which was first included in the final regulations relating to the treatment of salvage recoverable issued in January of 1992, is effective for taxable years *beginning after December 31, 1989*. See T.D. 8390; 26 C.F.R. § 1.832-4(g) (italics added). However, an insurance corporation's tax return for the 1990 tax year, the first year to which § 1.832-4(d) applies, had been due prior to the January 1992 issuance of the final regulations. See 26 U.S.C. § 6072(b).  An insurance corporation's tax returns for the 1991 and subsequent tax years were not due until after the January 1992 issuance of the final regulations.  Id. Consequently, Treas. Reg. § 1.832-4(d) could be applied *retroactively* to the 1990 tax year *to correct* a double counting of salvage recoverable in the computation of losses incurred for the 1990 tax year or *prospectively* to the 1991 or a subsequent tax year *to prevent* a double counting of salvage recoverable in the computation of losses incurred for the 1991 or subsequent year.

the regulation cannot be applied retroactively to the 1990 tax year where, as Plaintiffs do not dispute, there was no double counting of salvage recoverable in the computation of losses incurred on the original return filed by the Plaintiffs for the 1990 tax year.  Id. at 418.

Revenue Procedure 92-77, issued in September of 1992, provides administrative guidance on the gross-up provision in Treas. Reg. § 1.832-4(d).  Accordingly, the revenue procedure, like Treas. Reg. § 1.832-4(d), "applies to taxable years beginning *after* December 31, 1989."  Rev. Proc. 92-77, § 6 (italics added).  Under Rev. Proc. 92-77, § 4.02, if an insurance company first increases unpaid losses pursuant to Treas. Reg. § 1.832-4(d) for a tax year beginning on or before January 1, 1993, the company is to only gross-up the unpaid losses at the end of that year; no adjustment is made to the unpaid losses at the end of the prior tax year.  See Rev. Proc. 92-77, § 4.02.  This provision is referred to as the "year-end gross-up."  By only increasing the unpaid losses at the end of the tax year, the entire effect of double counting for the tax year and future years with respect to the salvage recoverable which reduced the unpaid losses at the end of the tax year is eliminated in one year.[4]  The Appendix to the United States' summary judgment memorandum provides an illustration of how the year-end gross-up in Rev. Proc. 92-77, § 4.02 eliminates the double-counting problem with respect to the salvage recoverable which reduced the unpaid losses at the end of the tax year.[5]

---

[4]As indicated in the United States' summary judgment memorandum (p.15, n.10), the insurance industry and insurance tax advisors recognized that the purpose of the year-end gross-up provided for in Rev. Proc. 92-77 § 4.02 was to eliminate the effect of double counting in one year.

[5]While the year-end gross-up eliminates the double-counting problem with respect to the salvage recoverable which reduced the unpaid losses at the end of the tax year, it does not address the potential double counting of salvage recoverable attributable to subsequent accident years.  For example, as illustrated in the Appendix to the United States' summary judgment brief, if the year-end gross-up is taken with respect to the 1990 tax year, it would eliminate the

At issue in the parties' motions for summary judgment is whether Plaintiffs are entitled to *retroactively* apply the corrective year-end gross-up provided for in Rev. Proc. 92-77 § 4.02 to the *1990* tax year when Plaintiffs did not double count any salvage recoverable on their original 1990 return.[6]  See Plaintiffs' Summary Judgment Memorandum, p.1, Issue #2; United States'

---

double-counting problem with respect to the salvage recoverable which reduced the unpaid losses at the end of 1990 – even the double counting of that salvage recoverable which would occur in later years.  However, the year-end gross-up in 1990 would obviously not address the potential double counting of salvage recoverable attributable to the 1991 or subsequent accident years which could occur in the 1991 or subsequent tax years.

[6]It unclear from the Report whether the Magistrate Judge understood that Plaintiffs are seeking application of the gross-up to the *1990* tax year.  The Report never references the year for which the gross-up is sought and incorrectly states that Treas. Reg. § 1.832-4(d) is "effective for taxable years beginning 1989." Report, p.23.  As indicated above, Treas. Reg. § 1.832-4(d) is effective for, and Rev. Proc. 92-77 applies to, "taxable years beginning *after* December 31, 1989." 26 C.F.R. § 1.832-4(g); Rev. Proc. 92-77, § 6 (italics added).  (Plaintiffs have suggested that the Report's statement that Tres. Reg. § 1.832-4(d) is "effective for taxable years beginning 1989" be corrected to read "effective for taxable years beginning after 1989."  Plaintiffs' Suggested Corrections to the Report, p.23, #22.)  The correction would be consistent with the regulation but the Magistrate Judge's erroneous reasoning may have been affected by her erroneous view that the regulation applied to the 1989 tax year.  It is also unclear from the Report whether the Magistrate Judge understood that at  issue is the year-end gross-up provided for in Rev. Proc. 92-77 § 4.02.  The Report repeatedly references the "gross-up" and Treas. Reg. § 1.832-4(d) but never references the "year-end gross-up" or § 4.02 of Rev. Proc. 92-77.  However, as noted above, under Rev. Proc. 92-77 § 4.02, if an insurance company first increases unpaid losses pursuant to Treas. Reg. § 1.832-4(d) for a tax year beginning on or before January 1, 1993, the company is to only gross-up the unpaid losses at the end of that year; no adjustment is made to the unpaid losses at the end of the prior tax year, which are used as the beginning balance for the tax year.  See Rev. Proc. 92-77, § 4.02.  As Plaintiffs are seeking to increase unpaid losses under Treas. Reg. § 1.832-4(d) for the 1990 tax year, they are seeking to only gross-up the unpaid losses at the end of 1990.  See Complaints, ¶¶ 48 (claiming "Plaintiff is entitled to recovery of the taxes . . . because it is entitled to the treatment provided by Rev. Proc. 92-77.  Plaintiff is permitted to a gross-up of its undiscounted loss reserves at the end of 1990 for an amount that includes the amount of Booked Salvage, resulting in an increase to its deduction for losses incurred."); Plaintiffs' Summary Judgment Memorandum, p.17 (arguing "Liberty Companies are entitled to increase their 1990 loss reserves by the amounts of estimated salvage. Under section 4.02 of the Revenue Procedure, because the 1990 year is involved, only year-end 1990 loss reserves are adjusted and no adjustment is required for loss reserves at the end of 1989.")

Summary Judgment Memorandum, p.15.  As Plaintiffs did not double count any salvage recoverable in the computation of losses incurred for the 1990 tax year, retroactive application of the corrective gross-up to the 1990 year is inapplicable and Plaintiffs are simply trying to impermissibly change their method of accounting for salvage recoverable without approval of the Commissioner.  See Rev. Proc. 92-77, § 4.04; 26 U.S.C. § 446(e).

For the 1990 and subsequent tax years, the computation of losses incurred under 26 U.S.C. § 832(b)(5)(A) includes: (1) taking into account the change in "discounted unpaid losses" over the tax year under § 832(b)(5)(A)(ii); and (2) taking into account the change in "estimated salvage and reinsurance recoverable" over the tax year under § 832(b)(5)(A)(iii).  See 26 U.S.C. § 832(b)(5)(A).  Under 26 U.S.C. § 846(b)(1), the starting point for determining "discounted unpaid losses" for federal tax purposes is the amount of unpaid losses reported on an insurance company's Annual Statement.  See 26 U.S.C. § 846(b)(1).  If salvage recoverable is taken into account in determining the unpaid losses reported on the Annual Statement, which are used as the basis for determining "discounted unpaid losses" for federal tax purposes, and the same salvage recoverable which reduced the Annual Statement unpaid losses is separately taken into account under § 832(b)(5)(A)(iii), that salvage recoverable is double counted in the computation of losses incurred.  See 26 U.S.C. § 832(b)(5)(A); Rev. Proc. 92-77, § 2.  According to the Plaintiffs, the unpaid losses reported on their Annual Statements took into account salvage recoverable with respect to all lines of business *except* the gross portion of the auto physical damage line of business.  See U.S. Fact Statement, ¶3; Morell Deposition, p. 15, line 13 - p.18, line 3 and p.41, lines 12-21.  In Plaintiffs' computation of losses incurred for the 1990 tax year, however, the salvage recoverable which reduced their Annual Statement unpaid losses was not separately taken into account under § 832(b)(5)(A)(iii) and, thus, was not double counted.  See

-19-

United States' Statement of Undisputed Material Facts, ¶ 4. (The salvage recoverable which reduced Plaintiffs 1990 unpaid losses was not separately taken into account under § 832(b)(5)(A)(iii) because Plaintiffs' employed the cut-off method under Treas. Reg. § 1.832-4(e)(2)(iii) with respect to salvage recoverable attributable to pre-1990 accident years which reduced the 1990 unpaid losses and self-helped with respect salvage recoverable attributable to the 1990 accident year which reduced the 1990 unpaid losses by not taking that salvage recoverable into account separately as required.)  The only salvage recoverable separately taken into account under § 832(b)(5)(A)(iii) in Plaintiffs' computation of losses incurred for the 1990 tax year was the salvage recoverable with respect to the gross portion of the auto physical damage line of business – salvage recoverable which was *not* taken into account in determining Plaintiffs' unpaid losses.  See United States' Statement of Undisputed Material Facts, ¶ 4.

The fact that Plaintiffs did not double count any salvage recoverable in the computation of losses incurred for the 1990 tax year is uncontroverted and, thus, deemed admitted for the purposes of the United States' motion for summary judgment.  Paragraph 4 of the United States' Statement of Undisputed Material Facts outlines the manner in which Plaintiffs' computed losses incurred for the 1990 tax year.  See United States' Statement of Undisputed Material Facts, ¶ 4. The facts presented in paragraph 4 of the United States' Statement of Undisputed Material Facts are taken from the Federal Rule of Civil Procedure 30(b)(6) deposition testimony of James Kress on behalf of Plaintiffs.  Id.  Summarizing the relevant portions of paragraph 4 of the United States' Statement of Undisputed Material Facts, for the 1990 tax year, Plaintiffs' computation of losses incurred included: (1) taking into account the change in "discounted unpaid losses" net of salvage recoverable with respect to all lines of  business *except the gross portion of the auto physical damage line of business* under § 832(b)(5)(A)(ii); and (2) taking into account the

-20-

change in salvage recoverable *with respect to the gross portion of the auto physical damage line of business* under § 832(b)(5)(A)(iii).  Id.  Thus, as the salvage recoverable taken into account under § 832(b)(5)(A)(ii) (as part of the change in unpaid losses) was not also separately taken into account under § 832(b)(5)(A)(iii), Plaintiffs did not double count salvage recoverable in the computation of losses incurred for 1990.  Plaintiffs do not dispute that the salvage recoverable taken into account under 26 U.S.C. § 832(b)(5)(A)(ii) --the salvage recoverable with respect to all lines of business except the gross portion of the auto physical damage line of business -- was not also taken into account under § 832(b)(5)(A)(iii).  Under Local Rule 56.1 of the Local Rules of the United States District Court for the District of Massachusetts, "[o]pposition to motions for summary judgment shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried" and "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties."  In Plaintiffs' Responses to United States' Statement of Undisputed Material Facts (Docket # ), filed along with Plaintiffs' reply to the United States' motion for summary judgment, paragraph 4 of the United States' Statement of Undisputed Material Facts is not controverted and, thus, deemed admitted for purposes of the United States' motion for summary judgment.  See Plaintiffs' Responses to United States' Statement of Undisputed Material Facts.

Plaintiffs argue instead that not having double counted salvage recoverable in the computation of losses incurred for the 1990 tax year does not prevent them from retroactively applying the corrective gross-up to the 1990 tax year.  See Plaintiffs' 13-Page Reply Memorandum to Defendant's Motion for Summary Judgment and Its Opposition to Plaintiffs'

Motion for Summary Judgment, pp.7-9.

Once again, as discussed herein, the purpose of the gross-up provision in Treas. Reg. § 1.832-4(d) is to address a potential double counting of salvage recoverable in computing losses incurred under 26 U.S.C. § 832(b)(5)(A).  See Notice 92-1; T.D. 8390, 57 FR 3130-01; Rev. Proc. 92-77, § 2.  As noted above, given the 1990 effective date of Treas. Reg. § 1.832-4(d) which was issued in January of 1992, the gross-up could be applied *retroactively* to the 1990 tax year *to correct* a double counting of salvage recoverable in the computation of losses incurred for the 1990 tax year or *prospectively* to the 1991 or a subsequent tax year *to prevent* a double counting of salvage recoverable in the computation of losses incurred for the 1991 or subsequent year.  Rev. Proc. 92-77, which provides administrative guidance on the gross-up provision, explicitly requires the existence of double counting in order to increase unpaid losses for tax purposes under the gross-up provision in Treas. Reg. § 1.832-4(d).  Section 4.01 of Rev. Proc. 92-77 provides that a company may increase unpaid losses for tax purposes by the amount of salvage recoverable taken into account as a reduction to unpaid losses shown on its Annual Statement only if the following two conditions are met: (1) the taxpayer complies with the disclosure requirement set forth in Treas. Reg. § 1.832-4(d)(2); and (2) "[t]he estimated salvage recoverable *that reduced* unpaid losses is separately taken into account in accordance with section 832(b)(5)(A)(iii) of the Internal Revenue Code"  (italics added).  Under the second condition, a company may not increase unpaid losses for tax purposes by the amount of salvage recoverable taken into account as a reduction to unpaid losses shown on its Annual Statement unless that salvage recoverable was separately taken into account in accordance with 26 U.S.C. § 832(b)(5)(A)(iii).  Obviously, if the salvage recoverable that reduced the unpaid losses was not separately taken into account, there would be no double counting and no need for the corrective

-22-

increase of the unpaid losses. As detailed above, for the 1990 tax year, Plaintiffs did not separately take into account under 26 U.S.C. § 832(b)(5)(A)(iii) the salvage recoverable *that reduced* their unpaid losses. The only salvage recoverable separately taken into account under § 832(b)(5)(A)(iii) by Plaintiffs was the salvage recoverable *that did not reduce* their unpaid losses, the salvage recoverable with respect to the gross portion of the auto physical damage line of business. See U.S. Fact Statement, ¶4. Plaintiffs, therefore, do not meet a prerequisite condition for making the gross-up adjustment.

Moreover, section 4.04 of Rev. Proc. 92-77 specifically prohibits Plaintiffs from increasing unpaid losses by the amount of salvage recoverable taken into account in determining the unpaid losses, but not separately taken into account in the computation of losses incurred, without approval of the Commissioner. See Rev. Proc. 92-77, § 4.04. Section 4.04 of Rev. Proc. 92-77 provides that if a company claimed the special deduction, any change in method of computing "undiscounted unpaid losses" to "remove"[7] salvage recoverable for accident years in which salvage recoverable was not separately taken into a account is a change in method of accounting for which the taxpayer must receive approval by the Commissioner. As explained in Rev. Proc. 92-77, under the cut-off method in Rev. Proc. 91-48, for a company that claimed the special deduction, the requirement under 26 U.S.C. § 832(b)(5)(A)(iii) that salvage recoverable be separately taken into account does not apply to salvage recoverable attributable to pre-1990

_____

[7]"Remove" as used in § 4.04 is equivalent to "increase" as used in Treas. Reg. § 1.832-4(d). Removing the salvage recoverable taken into account in determining unpaid losses has the same effect as increasing the unpaid losses by the amount of salvage recoverable taken into account in determining the unpaid losses.

accident years which was already taken into account in determining unpaid losses.[8]  See Rev. Proc. 92-77, § 4.06, Example 2.  Because the salvage recoverable attributable to pre-1990 accident years was not taken into account separately in addition to being taken into account in determining unpaid losses, there was no double-counting of this salvage recoverable and no need for the gross-up of unpaid losses by the amount of this salvage recoverable to correct double-counting.

On their 1990 and 1991 income tax returns, Plaintiffs claimed the special deduction.  See United States' Statement of Undisputed Material Facts, ¶¶ 5-6.  Subsequently, in September of 1993, they sought through their request for "Affirmative Adjustment under Rev.-Proc. 92-77" to increase their unpaid losses at the end of 1990 by the amount of salvage recoverable which was taken into account in determining the unpaid losses but which was not separately taken into account in the computation of losses incurred for the 1990 tax year.  As such, their situation falls squarely within § 4.04 of Rev. Proc. 92-77.  Plaintiffs have not presented any evidence that they filed a Form 3115, Application for Change in Accounting Method, in connection with their affirmative adjustment request.  "[I]n order to secure the Commissioner's consent to a change of a taxpayer's method of accounting, the taxpayer must file an application on Form 3115 with the Commissioner."  26 C.F.R. § 1.446-1(c)(3)(i).  Even if Plaintiffs had submitted a Form 3115 in connection with their request for adjustment, the application would have been untimely; Form

---

[8]For a company which claimed the special deduction, the change in method of accounting to separately account for salvage recoverable was to be implemented pursuant to a cut-off method under which, with respect to salvage recoverable that reduced unpaid losses, only the salvage recoverable attributable to the 1990 and succeeding accident years is taken into account separately.  See Rev. Proc. 91-48, § 9.01; 26 C.F.R. § 1.832-4(e)(2)(iii).  This cut-off method prevents salvage recoverable attributable to pre-1990 accident years, that has already reduced the unpaid losses attributable to those years, from being double-counted.

3115 must be filed "within 180 days after the beginning of the taxable year in which it is desired to make a change." Id. Thus, a taxpayer that seeks to change its method of accounting may only request to change the method of accounting prospectively (before the due date of the original return). Plaintiffs' request for adjustment was submitted in 1993, long after the they filed their 1990 tax return, and contemplated a change of method in accounting with respect to the 1990 tax year. See Kress Declaration, ¶20.

The Magistrate Judge found that Plaintiffs were not entitled to the special deduction. See Report, p.2. The finding is incorrect because Plaintiffs were entitled to the special deduction, but, even if it were correct, the finding does not change the fact that Plaintiffs did claim the special deduction here and are, therefore, subject to the provision in Rev. Proc. 92-77 § 4.04, which applies to taxpayers which "claimed" the special deduction. In Plaintiffs' 1993 request for adjustment under Rev. Proc. 92-77, they state that they "hereby elect to eliminate the special deduction." Plaintiffs' argue that they did not "claim" the special deduction because they "eliminated" it in their 1993 request for adjustment under Rev. Proc. 92-77. See Plaintiffs' 13-Page Reply, p.10. Plaintiffs' statement in 1993 that they "elect to eliminate the special deduction" does not change the fact that they claimed the special deduction on their 1990 and 1991 income tax returns and are, therefore, subject to the provision in Rev. Proc. 92-77, § 4.04, which applies to taxpayers which "claimed" the special deduction. Regardless, the corrective gross-up provision cannot be retroactively applied to their 1990 tax year because they did not double count salvage recoverable in the computation of losses incurred for the 1990 tax year.

The Report states that "Liberty Mutual converted its Net Lines to Gross Lines using the gross-up" (p.16); that Liberty Mutual "is entitled to gross-up its Net Lines and apply the Fresh Start to the new adjusted amount" (p.22); that "[c]ompanies employing a Hybrid method are

allowed to gross-up Net Lines and claim the Fresh Start on all lines" (p.23); that "[o]nce Net Lines are adjusted to reflect gross salvage the Fresh Start is applicable to the entire amount of Gross salvage recovered" (p.23); that "[o]nce a company has complied with Rev. Proc. 92-77 and gross-up its Net Lines, the Fresh Start is applicable to the new and final amount of salvage recoverable" (p.25). As described below, these statements are incorrect and clearly based on a misunderstanding of the operation and purpose of the gross-up.

The fresh start and special deduction provisions enacted by Congress are transitional benefits and are determined by an insurance company's treatment of salvage recoverable in the tax computation of losses incurred for the 1989 tax year. See 26 C.F.R. § 1.832-4(d); 1990 Act, §§ 11305(c)(2)(B) and 11305(c)(3). Under 26 U.S.C. § 481, in order to prevent the omission of income, an insurance company which did not take any salvage recoverable into account in the computation of losses incurred prior to the 1990 tax year (a "grosser"), would ordinarily have taken into income for 1990 tax year an amount equal to the amount of its salvage recoverable at the end of 1989, as that salvage recoverable was previously unreported. Under the fresh start provided by the 1990 Act, a grosser only had to take into income 13% of that amount over a period of four years. See 1990 Act, § 11305(c)(2)(B). For a company which took all of its salvage recoverable into account in the computation of losses incurred prior to the 1990 tax year (a netter), the 1990 Act provided a "special deduction" in an amount equal to 87% of its salvage recoverable at the close of 1989. See 1990 Act, § 11305(c)(3).

In contrast to the fresh start and the special deduction which are transitional benefits determined by a company's tax treatment of salvage recoverable prior to the 1990 tax year, the gross-up provision promulgated by the Department of the Treasury in Treas. Reg. § 1.832-4(d) is a corrective measure to correct or prevent the double counting of salvage recoverable in the

computation of losses incurred under 26 U.S.C. § 832(b)(5)(A) in 1990 and subsequent tax years. The gross-up provides a corrective measure in the 1990 or subsequent tax year for which it was taken. The gross-up, thus, does not affect a company's tax treatment of salvage recoverable prior to the 1990 tax year and, accordingly, does not determine a company's transitional benefit. Here, Plaintiffs seek to apply the year-end gross-up to the 1990 tax year. Under Rev. Proc. 92-77, § 4.02, if a company first increases its unpaid losses pursuant to Treas. Reg. § 1.832-4(d) for the 1990 tax year, the company only increases its unpaid losses at the end of the 1990 tax year. Rev. Proc. 92-77, § 4.02. Accordingly, the year-end gross-up for 1990 does not affect the treatment of salvage recoverable with respect to the 1989 tax year, which is the treatment which determines a company's transitional benefit.

Furthermore, the gross-up does not convert "Net Lines to Gross Lines" rather, it simply insures that salvage recoverable is not *double counted* in the computation of losses incurred in 1990 and subsequent tax years. The 1990 Act amended 26 U.S.C. § 832(b)(5)(A) to require all insurance companies to take all salvage recoverable into account in the computation of losses incurred for tax purposes and the amendment to § 832(b)(5)(A) applies to all taxable years beginning *after* December 31, 1989. See 1990 Act, § 11305(c)(1). Accordingly, all companies are required to *net* salvage recoverable for tax purposes in the 1990 and subsequent tax years. The corrective gross-up measure which is applied in the 1990 and subsequent tax years insures that salvage recoverable is only taken into account *once* in the computation of losses incurred. It does not eliminate salvage recoverable in the computation of losses incurred and turn netters into grossers for tax purposes.

There is absolutely no support in Treas. Reg. § 1.832-4(d) or Rev. Proc. 92-77 for Plaintiffs' statements, which are adopted by the Magistrate Judge, that net lines are converted to

-27-

gross lines using the gross-up; that "[o]nce a company has complied with Rev. Proc. 92-77 and gross-up its Net Lines, the Fresh Start is applicable to the new and final amount of salvage recoverable"; and the like. Indeed, given the operation and effect of the gross-up provision, the statements make no sense whatsoever.

The Report fails to understand that Plaintiffs are inappropriately attempting to use the year-end gross-up adjustment intended to correct the potential for double counting under 26 U.S.C. § 832(b)(5)(A) in 1990 and subsequent years to create a transitional "benefit" greater than the benefit provided to them by the 1990 Act itself. As previously stated, the sole purpose of the year-end gross-up is the ameliorate the potential for double counting of salvage recoverable in the computation of losses incurred for the 1990 and subsequent tax years when a company which has reduced its unpaid losses by salvage recoverable must take that same salvage recoverable into account separately. See Notice 92-1; T.D. 8390, 57 FR 3130-01; Rev. Proc. 92-77, § 2. Nothing in Treas. Reg. § 1.832-4(d), in Rev. Proc. 92-77, or in the Internal Revenue Service announcement or explanation of the gross-up provision provides for its use in any manner other than to correct or prevent the potential for double counting of salvage recoverable in the computation of losses incurred under 26 U.S.C. § 832(b)(5)(A), as amended.

As noted in the United States' objection (pp.12-13), in blatant violation of the preclusion from taking both the special deduction and the fresh start contained in Rev. Proc. 91-48, Plaintiffs claimed on their original returns for the 1990 tax year, the special deduction with respect to salvage recoverable which they had taken into account in the computation of losses incurred for the 1989 tax year *and* the fresh start with respect to salvage recoverable which they had not taken into account in the computation of losses incurred for the 1989 tax year. The special deduction gives Plaintiffs a deduction equal to 87% of the discounted amount of salvage

recoverable at the end of 1989 which had been taken into account in the computation of losses incurred for the 1989 tax year, spread out ratably over 4 years. According to Plaintiffs, the discounted amount of salvage recoverable at the end of 1989 which had been taken into account in the computation of losses incurred was $200,469,186. <u>See</u> Plaintiffs' Statement of Undisputed Material Facts of Record, ¶¶ 24-26, 39. So, assuming that figure is correct, Plaintiffs' special deduction totals $174,408,192 ($200,469,186 × .87), with a $43,602,048 deduction ($174,408,192 ÷ 4) to be taken each year in the 1990 through 1993 tax years. According to Plaintiffs, the discounted amount of salvage recoverable at the end of 1989 which had not been taken into account was $68,763,074. <u>See</u> Plaintiffs' Statement of Undisputed Material Facts of Record, ¶¶ 24-26, 39. Accordingly, applying the fresh start adjustment just with respect to this amount would only require taking $8,939,200 ($68,763,074 × .13) into income ratably over 4 years, from 1990 to 1993. This yields a "net" deduction of $165,468,992 ($174,408,192 − $8,939,200) spread out over 4 years and an exclusion of income equal to $59,823,874 ($68,763,074 × .87).

As illustrated in the Appendix to the United States' summary judgment memorandum, the year-end gross-up under Rev. Proc. 92-77 § 4.02 creates an increased tax deduction for losses incurred equal to the amount of salvage recoverable by which the unpaid losses at the end of the tax year were increased. According to Plaintiffs, they took into account $271,803,226 in salvage recoverable in determining the amount of unpaid losses shown on their 1990 Annual Statements. <u>See</u> Plaintiffs' Statement of Undisputed Material Facts of Record, ¶¶ 24-27. Also according to Plaintiffs, after being discounted for tax purposes, the salvage recoverable taken into account in determining the amount of unpaid losses shown on their 1990 Annual Statements is $211,669,316. <u>Id.</u> at ¶¶ 24-26, 39. Consequently, assuming their numbers are correct and

-29-

ignoring the double-counting issue, if for the 1990 tax year Plaintiffs were permitted to increase

their 1990 year-end unpaid losses by the amount of salvage recoverable taken into account in

determining the amount of their 1990 Annual Statement unpaid losses, their deduction for losses

incurred for the 1990 year would be increased by $211,669,316.

Setting aside that Plaintiffs do not qualify for the year-end gross-up because they did not

double count salvage recoverable on their original 1990 return, in order to increase their 1990

year-end unpaid losses, Plaintiffs would need to not claim the special deduction and claim a

fresh start income adjustment with respect to all of its salvage recoverable at the end of 1989.

While Plaintiffs claimed the special deduction on their 1990 tax return, the need to take salvage

recoverable into account separately if unpaid losses are increased by the amount of salvage

recoverable taken into account in determining them conflicts with the prohibition under the cut-

off method from taking certain salvage recoverable into account separately for a company that

claimed the special deduction.[9]  Plaintiffs would need to eliminate the special deduction in order

---

[9]Under Treas. Reg. § 1.832-4(e)(2)(iii), a company which claims the special deduction must implement the change in method of accounting for salvage recoverable mandated by the 1990 Act pursuant to a "cut-off" method.  See Treas. Reg. § 1.832-4(e)(2)(iii).  Under 26 U.S.C. § 832(b)(5)(A), as amended by the 1990 Act, salvage recoverable must be taken into account separately under § 832(b)(5)(A)(iii) in the computation of losses incurred.  For tax years prior to 1990, if a company used unpaid losses which were reduced by salvage recoverable in its computation of losses incurred, the computation of losses incurred took salvage recoverable into account as a part of the change in the unpaid losses during the tax year.  If such a company claimed the special deduction, the change to separately account for salvage recoverable (as opposed to taking salvage recoverable into account as a part of the change in unpaid losses during the tax year) had to be made pursuant to a cut-off method whereby, as explained in Rev. Proc. 91-48 § 9, the salvage recoverable attributable to the pre-1990 accidents years which had previously been taken into account in the computation of losses incurred as a part of the change in unpaid losses continued to only be taken into account as a part of the change in unpaid losses under § 832(b)(5)(ii) and only salvage recoverable not previously taken into account as a part of the change in unpaid losses was to be taken into account separately under § 832(b)(5)(iii) – all salvage recoverable attributable to the 1990 and succeeding accident years as well as any salvage recoverable attributable to the pre-1990 accidents that had not been taken into account as a

to take the year-end gross-up because the $211,669,316 in salvage recoverable which reduced

their unpaid losses at the end of 1990 includes salvage recoverable attributable to pre-1990

accident years which Plaintiffs are prohibited from separately stating because they took the

special deduction and the cut-off method applies.  <u>See</u> Treas. Reg. 1.832-4(e)(2)(iii); Rev. Proc.

91-48, § 9.  Under Treas. Reg. § 1.832-4(e)(2)(ii), if a company does not claim the special

deduction, it has to apply the fresh start income adjustment and under Rev. Proc. 91-48, § 8, the

fresh start income adjustment "is not reduced by the amount of salvage recoverable that the

taxpayer may have considered in the estimation of undiscounted unpaid losses under section

846(b)(1) of the Code."[10]  Accordingly, if Plaintiffs could properly "disclaim" the special

deduction, under the fresh start adjustment they would have to take into income ratably over 4

years an amount equal to 13% of the amount of all of their discounted salvage recoverable at the

end of 1989, including the salvage recoverable that had already been taken into account.  <u>See</u>

1990 Act, § 11305(c)(2)(B); Treas. Reg. § 1.832-4(e)(2)(ii); Rev. Proc. 91-48 § 8.  According to

Plaintiffs statement of facts, their total discounted salvage recoverable at the end of 1989 was

$269,232,260 ($200,469,186 + $68,763,074).  <u>See</u> Plaintiffs' Statement of Undisputed Material

Facts of Record, ¶ ¶ 24-26, 39.  Assuming Plaintiffs' figures are accurate, with the fresh start

adjustment, Plaintiffs would need to take into income $35,000,194 ($269,232,260 × .13) ratably

---

reduction to unpaid losses in pre-1990 tax years (salvage treated on a gross basis).

[10]The requirement in Rev. Proc. 91-48 that the fresh start income adjustment be based on all of a company's salvage recoverable at the end of 1989, including that which was previously taken into account, is appropriate given that the fresh start provided for in the 1990 Act was directed at companies following a pure gross method of accounting for salvage recoverable for tax purposes.  An insurance company which should have been a pure grosser prior to 1990, but which took into account some salvage recoverable in the computation of losses incurred for the 1989 tax year, could have amended the 1989 return to correct its computation of losses incurred to exclude salvage recoverable.

over four years, that is $8,750,049 ($35,000,194 ÷ 4) taken into income each year in the 1990 through 1993 tax years.  So, according to the figures presented by Plaintiffs, with the $211,669,316 year-end gross-up deduction and the $35,000,194 fresh start income adjustment, Plaintiffs would get a "net" deduction of $176,669,122 ($211,669,316 (gross-up deduction) – $35,000,194 (fresh start income inclusion)) and would still get an exclusion of income for their salvage recoverable equal to $59,823,874 ($68,763,074 × .87) with respect to the salvage recoverable which was not taken into account for the 1989 tax year.  [Plaintiffs' actually get a $202,919,267 deduction ($211,669,316 – $8,750,049) for the 1990 tax year with the remaining $26,250,147 related to the fresh start taken into income ratably over the 1991 through 1993 tax years ($8,750,049 × 3)].  The $176,669,122 "net" one year deduction with the year-end gross-up and a fresh start income adjustment applied to all of Plaintiffs' salvage recoverable at the end of 1989 is better than the $165,468,992 "net" deduction spread out over 4 years with the special deduction and a fresh start income adjustment applied just to the salvage recoverable at the end of the 1989 which had not been taken into account for tax purposes.  Given both the larger deduction and the benefits of the time value of money involved with getting the entire deduction in 1990 versus a deduction spread over 4 years, 1990 through 1993, the year-end gross-up combined with the fresh start adjustment applied to all salvage recoverable yields a much greater "benefit" for Plaintiffs than claiming both the special deduction on salvage recoverable previously taken into account and the fresh start on salvage recoverable not previously taken into account.

Under Treas. Reg. § 1.832-4(f)(3)(iii), which is based on the 1990 Act, an insurance company is prohibited from claiming both the special deduction and the fresh start.  It is Plaintiffs' position, however, that the plain language of the 1990 Act provides them with both

the special deduction with respect to salvage recoverable previously taken into account and the fresh start with respect to salvage recoverable not previously taken into account. However, as just demonstrated, Plaintiffs are seeking to employ the year-end gross-up to get a "benefit" which is much greater than the benefit which according to them the 1990 Act provides. Not only does nothing in the regulations or in the revenue procedures involved provide for this employment of the year-end gross-up, neither the Department of the Treasury nor the Internal Revenue Service would have the authority to provide a transitional benefit that is greater, whether in size, timing or both, than the benefit provided by Congress in the 1990 Act.

Conclusion

To the extent the United States' objection to the Report is rejected, the Magistrate Judge's determination that Plaintiffs are not entitled to both special deduction and the fresh start should be affirmed and the determination that Plaintiffs are entitled to the gross-up should be denied.

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that the foregoing document – filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).  There are no non-registered case participants.

                         /s/ Karen Wozniak

KAREN WOZNIAK
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-1927
E-mail: karen.e.wozniak@usdoj.gov

-34-