UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY AND SUBSIDIARIES, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Cnsl. Cv. No. 1:05-cv-11048-RCL |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

_____

| | | |
|---|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY AND SUBSIDIARIES, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Frmr. Cv. No. 1:05-cv-11049 RCL |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

PLAINTIFFS' RESPONSE TO DEFENDANT UNITED STATES' OBJECTION
TO THE CONSOLIDATED REPORT AND RECOMMENDATION
ISSUED JULY 27, 2007

Plaintiffs hereby respond to Defendant's first objection, filed August 13, 2007, to

Magistrate Judge Joyce London Alexander's well-reasoned Report and

Recommendation.[1]

_____

[1] On August 27, 2007, Defendant improperly filed a second 35-page Objection to the magistrate judge's Report and Recommendation that falsely purports to be a response to Plaintiffs' five-page summary protective objections. To the extent Defendant has raised any new objections in its most recent filing, such objections are not timely and have been waived. *See* Local Magistrate Rule 3(b) and the Notice on page 27 of the Report and Recommendation, citing many cases. Plaintiffs respectfully suggest that the most appropriate action for the Court is to strike Defendant's August 27 objection as untimely. If the Court declines to do so, however, Plaintiffs reserve the right in the event of an

*Summary Argument*

There are two major issues in this case, and the magistrate judge reached the correct result on both of them.[2]  First, the magistrate judge correctly recognized that the plain language of section 11035(c)(2)(A) of the Revenue Reconciliation Act of 1990, Pub. L. No. 101-508, 104 Stat. 1388 ("1990 Act") allows Plaintiffs a Fresh Start on the estimated salvage and subrogation (collectively "salvage") on their Gross Lines, regardless of whether Plaintiffs' pre-1990 method of accounting for salvage was permissible.  This conclusion is correct and unassailable, given the plain language of the statute, which provides that: "**any taxpayer** who is required by reason of the amendments made in this section to change his method of computing losses incurred" is entitled to the Fresh Start.  1990 Act section 11035(c)(2)(A).

Undeterred by the plain language of the statute, Defendant makes a number of faulty arguments.  First, Defendant takes issue with the magistrate judge's interpretation of the consequences of the words "taxpayer" as used in the Fresh Start transition rule and "company" as used in the Net Lines transition rule.  By its objection, however, Defendant has reversed course.  In its summary judgment papers, Defendant pressed the same interpretation, based on use of the word "company," that the magistrate judge has adopted.  Defendant now seeks to avoid the consequences of its own argument.  Defendant also continues to press its argument that Plaintiffs' Hybrid Method was

---

appeal to contend that any new objections were waived.  For this reason, Plaintiffs are not responding to Defendant's August 27 filing.

[2]  The magistrate judge identifies three issues, the first being whether Plaintiffs' Hybrid Method of accounting in pre-1990 years for salvage and subrogation was permissible. After proper analysis and a correct determination that Plaintiffs' pre-1990 method was permissible, the magistrate judge correctly concluded that the issue, nevertheless, is irrelevant to the outcome of this case.

impermissible. Defendant attempts to support this argument with a reading of Treas. Reg. § 1.832-1(c) that is exactly the opposite of what the regulation actually says, and with a quotation from *Continental Ins. Co. v. United States*, 474 F.2d 661 (Ct. Cl. 1973), that omits the key word in the court's holding. In fact, the magistrate judge correctly interpreted these authorities and held that the Hybrid Method was permissible in pre-1990 years, albeit irrelevant to the outcome of this case. Finally, disregarding what the statute says, Defendant argues that the Court should apply Treas. Reg. § 1.832-4(f)(3)(iii) to impose the Special Deduction on Net Lines on Plaintiffs in order to deprive Plaintiffs of the Fresh Start. Treas. Reg. § 1.832-4(f)(3)(***iii***), however, does not even apply. The magistrate judge properly applied Treas. Reg. § 1.832-4(f)(3)(***ii***), which Defendant fails to discuss in its extensive objection.

On the second major issue, the magistrate judge correctly held that Treas. Reg. § 1.832-4(d) provides Plaintiffs with a gross-up on their Net Lines salvage, with the result that Plaintiffs receive a Fresh Start on those grossed-up lines. The regulation provides that taxpayers that reported salvage on a net basis may gross up their salvage beginning in 1990 in order to convert their Net Lines to Gross Lines. Defendant makes a number of arguments, all addressed below, to deny Plaintiffs the gross-up. All the arguments conveniently ignore Treas. Reg. § 1.832-4(d), which is the authority that the magistrate judge actually applied. The only condition in the regulation, as the magistrate judge recognized, is that taxpayers must show that they satisfied the requirements of Treas. Reg. § 1.832-4(d)(2). Plaintiffs' compliance with Treas. Reg. § 1.832-4(d)(2) is an undisputed fact. Perhaps recognizing this, Defendant speculates in its objection that the magistrate judge actually intended something else entirely unrelated to Treas. Reg.

§ 1.832-4(d)(2).  Defendant United States' objection to the Consolidated Report and Recommendations issued July 27, 2007, Doc. No. 72 ("Df. Obj.") at 25-27.  The statement of the magistrate judge, however, could not have been more clear: "Any damages that Liberty Mutual may be entitled to are dependant upon Liberty Mutual's compliance with § 1.832-4(d)(2)."  Report and Recommendation, Doc. No. 69 ("Report"), at 22, n. 11.  Defendant's interpretation of this clear language of the Report in this case is as unreasonable as its interpretation of the plain language of the relevant statutes.[3]

Defendant's objection also includes approximately twelve pages of confusing argumentation concerning specific statements in the Report.  Def. Obj. at 5-16.  The matters discussed in this lengthy portion of the objection are impenetrable to Plaintiffs and do not appear to be pertinent to the outcome of the case.  Plaintiffs, therefore, are not responding in detail to each point.

I.    **The Magistrate Judge Correctly Held That Plaintiffs Are Entitled To The Fresh Start.**

a.    <u>**Background**</u>

**Salvage before 1990.**  Insurance companies are entitled to deductions for claims on a reserve basis when the claims are incurred.  Before amendments made by the 1990 Act, salvage and subrogation (collectively "salvage") was taken into account under 26 U.S.C. § 832(b)(5)(A)(ii) as a reduction of paid losses in determining the deduction for

---

[3]  Defendant takes language in the Report out of context to suggest that the magistrate judge could have intended to condition Plaintiffs' entitlement to the gross-up on proof that Plaintiffs double-counted salvage on their 1990 tax returns.  But, there is little doubt that the magistrate judge's reference to double-counting merely recognizes that the gross-up in Treas. Reg. § 1.832-4(d) is conditioned on notification to state regulators of the amount of salvage netted in the Annual Statement – the amount of salvage that, absent the gross-up, was potentially subject to double-counting.  *See* Report at 22, n. 11.

losses incurred.  Since 1947, Treasury regulations had contained an exception that

salvage recoverable did not include any amount which was not permitted to be treated as

an asset for Annual Statement reporting purposes in any state in which the company-

transacted business.  Treas. Reg. § 1.832-4(c), as promulgated by T.D. 6681 (Oct. 16,

1963).  Appendix A to Plaintiffs' Memorandum in support of Motion for Summary

Judgment, Doc. No. 23 ("App.") at A-27.  *See* Omnibus Budget Reconciliation Act of

1990, Conf. Rep. to accompany H.R. 5835, H. Rep. 101-964, 101st Cong., 2d Sess. 1070-

1071, Oct. 27, 1990 ("Conference Report").  App. at A-2.  As a result of this provision of

the pre-1990 regulations, insurance companies were permitted to treat salvage in losses

incurred under 26 U.S.C. § 832 in the same manner in which they reported the salvage on

their Annual Statements.  *See* 26 U.S.C. § 832(b)(1) and 846(b) and (f)(2).

Annual Statement reporting practices for uncollected salvage varied.  Some

companies took estimated salvage into account in estimating the amount of unpaid losses,

and as a result they reported losses incurred reduced by, or net of, estimated salvage.

Other companies did not take estimated salvage into account and reported losses incurred

gross, unreduced by estimated salvage.  Still others, such as Plaintiffs, reported losses in a

combination of net or gross of salvage (the government refers to this as a "Hybrid

Method"), depending on the line of business involved (Net Lines and Gross Lines).  *See*

Van Mieghem decl. ¶¶ 4-7, Doc. No. 45; Plaintiffs' ltr. to Magistrate Judge Joyce London

Alexander, April 25, 2007, Doc. No. 63, and its attachment Proceedings of the National

Association of Insurance Commissioners, 1992-2 NAIC Proc. 226, showing many

companies with anticipated salvage on their Annual Statements, Doc. No. 63-1, at 8-13.

**1990 Act required estimated method.**  In section 11305(c) of the Revenue Reconciliation Act of 1990, *supra*, Congress amended the definition of losses incurred under 26 U.S.C. § 832(b)(5) to require ***estimated*** salvage to be taken into account as a reduction to losses incurred, effective for tax years beginning after December 31, 1989. Thus, the 1990 Act effectively required all lines of business to be Net Lines for tax purposes, regardless of the taxpayer's Annual Statement treatment.

**Fresh Start.**  Section 11305(c)(2) of the 1990 Act specifies that the amendment is to be treated as a change in method of accounting for tax purposes for which the IRS has consented.  For taxpayers that previously reported gross loss reserves without reduction for estimated salvage (Gross Lines), the amendment resulted in a change in accounting for salvage from a cash method (report when received) to a reserve method (report estimates of amounts to which the company has a current right but has not yet collected). Ordinarily, such a change in method of accounting would require an adjustment to taxable income under 26 U.S.C. § 481 (App. at A-4) to prevent a permanent omission from income of the estimated salvage as of the end of the preceding year.  However, Congress recognized that the application of 26 U.S.C. § 481 to a legislatively-imposed change in accounting would result in a burdensome one-time increase in taxable income for taxpayers previously on a cash method for salvage (Gross Lines).  To provide relief, Congress adopted in section 11305(c)(2) of the 1990 Act a special transition rule to reduce the 26 U.S.C. § 481 adjustment to 13 percent of what it otherwise would have been and to allow the 13 percent to be spread ratably over four tax years beginning in 1990.  As explained by the Conference Report: "The conference agreement provides that 87 percent of the amount of the adjustment that otherwise is included in income over a

period not to exceed 4 years is forgiven under the bill" (a partial "Fresh Start").
Conference Report at 1071.

      **Special Deduction.**  Taxpayers that reduced their losses incurred by estimated salvage before the 1990 Act (i.e., those with Net Lines) were not required to change their method of accounting for salvage on those Net Lines because they already complied with the requirements of the 1990 Act.  However, in view of the 87-percent Fresh Start forgiveness for taxpayers with Gross Lines, Congress decided to level the playing field and permit taxpayers with Net Lines to obtain the same economic benefit – a permanent omission from income of 87 percent of estimated salvage at year-end 1989.  Congress allowed in section 11305(c)(3) of the 1990 Act a "Special Deduction," to be spread ratably over the four-year period starting in tax year 1990, equal to 87 percent of the discounted amount of estimated salvage at year-end 1989 that already had been taken into account under such taxpayers' estimated method for salvage.

      **b.**      **The Plain Language of the Statute Provides the Fresh Start**

      Section 11305(c)(2)(B) of the 1990 Act specifically provides that in implementing the change for Plaintiffs' salvage on Gross Lines, "only 13 percent of the net amount of adjustments (otherwise required by such section 481 to be taken into account by the taxpayer) shall be taken into account," and that 13 percent "shall be taken into account over a period not to exceed 4 taxable years."  There is no authority that would permit the Government to ignore these clear statutory requirements and instead impose a 100-percent section 481 adjustment included in taxable income entirely in 1990, as Defendant has contended in this case.  In fact, Defendant itself successfully argued to the contrary in a recent case in which the court held that, where a statute provides a specific transition

rule for a change in method of accounting for insurance companies, the general provisions of 26 U.S.C. § 481 do not apply. *American Family Mut. Ins. Co. v. United States*, 376 F. Supp. 2d 909 (W.D. Wis. 2005). Therefore, the magistrate judge correctly held that the plain language of the statute provides that Plaintiffs are entitled to the Fresh Start. *See* Report at 19.

The magistrate judge noted that 1990 Act section 11305(c)(2)(A) provides, without restriction, that "***any taxpayer*** who is required by reason of the amendments made by this section to change his method of computing losses incurred" is entitled to a Fresh Start equal to 87 percent of the 26 U.S.C. § 481 adjustment that otherwise would apply to a change in method of accounting (emphasis added). Report at 14, n. 9. The magistrate judge correctly held that Plaintiffs qualify as "***any taxpayer***," that they were required by the terms of the 1990 Act to convert their gross salvage to net salvage for tax purposes, and that they were required to include only one-fourth of 13 percent of the 26 U.S.C. § 481 adjustment in 1990 taxable income. *Id.*

## II.    Defendant's Objection to the Report to Deny the Fresh Start  is Meritless.

As it did in its Motion for Summary Judgment, Defendant argues that, despite the plain language of the statute, Congress did not intend to provide any transition rule at all for taxpayers, such as Plaintiffs, that had been on a Hybrid Method for salvage (i.e., part Net Lines and part Gross Lines) prior to 1990. In support of its position, Defendant contends that such a Hybrid Method of accounting was not a permissible method of accounting and that Congress should be presumed to have desired to punish these taxpayers by denying them the Fresh Start transition relief allowed to other taxpayers by the 1990 Act. Thus, according to Defendant's theory, Congress intended to delegate to

the IRS the authority to fashion a punitive transition rule for these taxpayers and declined to provide any guidance as to an appropriate transition rule. Df. Obj. at 23, n. 9. Defendant then cites Treas. Reg. § 1.832-4(f)(3)(iii) as the special transition rule the IRS adopted for taxpayers on the Hybrid Method, and Defendant interprets the regulation as providing that a taxpayer cannot claim the Fresh Start where it has claimed the Special Deduction. *Id.* Next, Defendant argues that the magistrate judge should have held that Plaintiffs are ***required*** to receive the benefit of the Special Deduction. *Id.* at 22. Defendant makes this argument notwithstanding that Treas. Reg. §§ 1.832-4(d) and -4(f)(3)(ii) clearly allow a taxpayer to forego the Special Deduction and that Plaintiffs have followed the regulations and have affirmatively disavowed any Special Deduction. Mere recitation of Defendant's tortured logic demonstrates that its objections to the magistrate judge's Report are meritless.

### a.     The Magistrate Judge Adopted Defendant's Own Interpretation of the Special Deduction Statute, but Defendant Nevertheless Objects.

When a statute is clear on its face, courts require unequivocal evidence of legislative purpose before overriding the plain meaning of the words Congress chose. *See, e.g.*, *United States v. Charles George Trucking Co.,* 823 F.2d 685, 688 (1st Cir. 1987). Defendant has never pointed to any language in the statutory provisions relating to the Fresh Start that is ambiguous, nor has Defendant cited any evidence of a legislative purpose to deny the Fresh Start for taxpayers on a Hybrid Method. Rather, in its Motion for Summary Judgment (Memorandum of Law in Support of United States' Motion for Summary Judgment, Doc. No. 54 ("Df. Sm. Jdg. Mem."), Defendant found ambiguity in the statute only in the transition rule granting the Special Deduction to taxpayers with Net Lines. Defendant contended that a literal reading of 1990 Act section 11305(c)(3) would

- 9 -

result in a windfall if applied to a Hybrid Method company because the rule would allow

a Special Deduction for 87 percent of the entire 1989 year-end salvage recoverable

balance, including any amount attributable to Gross Lines.  Df. Sm. Jdg. Mem. at 6.  The

purported windfall would occur because a taxpayer with both Gross and Net Lines would

get a double benefit on Gross Lines (under Defendant's interpretation) from both the

Special Deduction and the Fresh Start forgiveness.  *Id.*  Reasoning that Congress could

not have intended such a windfall, Defendant veered to the opposite extreme and argued

that Congress decided to deny any benefit to Hybrid Method taxpayers by providing no

transition rule at all and instead wanted the IRS to fashion its own transition rule to apply

to these taxpayers.  *Id.* at 7, 9-11.  Defendant then turned to legislative history, pointing

out that Congress referred to a "company" that is entitled to the Special Deduction

transition relief and implying that the Special Deduction must be limited to a company

that had only Net Lines on a company-wide basis.[4]  *Id.* at 7-9.  From this statutory

interpretation and legislative history, Defendant argued that the Special Deduction is

limited to "pure netters" and thus would not apply to Hybrid Method taxpayers.  *Id.* at 7,

9.

> **Defendant now objects because the magistrate judge accepted Defendant's**
>
> **summary judgment argument, but only as it relates to the Special Deduction.**  That is,

the magistrate judge held that, under the statute and legislative history relied upon by

Defendant, the Special Deduction cannot apply to a Hybrid Method taxpayer.  Report at

16.  The magistrate judge read both the Special Deduction statute and its legislative

---

[4]  Similarly, relying on use of the word "company" in a portion of the legislative history relating to the Fresh Start, Defendant argued that the Fresh Start should be limited to a company that had only Gross Lines on a company-wide basis.  Df. Sm. Jdg. Mem. at 7-9.

history in exactly the manner Defendant urged.  Unfortunately for Defendant, however, based on a difference in the Fresh Start statutory language, the magistrate judge concluded that Defendant's argument applies exclusively to the Special Deduction.  By contrast, the plain language of the Fresh Start statute applies to "any taxpayer," including one on a so-called Hybrid Method.  In short, before the magistrate judge on summary judgment, Defendant made an argument based on use of the word "company" that led to a conclusion that Plaintiffs are not entitled to the Special Deduction.  Now, Defendant has reversed course and argues that the magistrate judge was incorrect by adopting Defendant's own argument.  This is not a proper objection.

      **b.**      <u>**The Magistrate Judge Correctly Held that the Hybrid Method was a Permissible Method of Accounting.**</u>

Defendant's argument that Congress did not intend the gross salvage transition rule to apply to a taxpayer with both Gross and Net salvage is based solely on the false premise that it was improper prior to 1990 for insurance companies to be on a Hybrid Method for salvage for tax purposes.  However, the magistrate judge correctly held that prior to 1990 the Hybrid Method had always been a permissible method of accounting. Report at 14.

Since 1921, the Internal Revenue Code has required insurance companies to compute their underwriting income on the basis of Annual Statement accounting approved by the National Association of Insurance Commissioners.  26 U.S.C. § 832(b)(1)(A).  *See also* Treas. Reg. § 1.832-4(a)(2).  Many cases have confirmed that the Annual Statement method of accounting governs for tax purposes.  *See, e.g., Bituminous Cas. Corp. v. Commissioner*, 57 T.C. 58 (1971), *acq.* 1973-1 C.B. 1.  The use of Annual Statement accounting for tax purposes was specifically required for salvage

under pre-1990 law.  *Continental Ins. Co. v. United States*, 474 F.2d 661 (Ct. Cl. 1973);

*Allstate Fire Ins. Co. v. United States,* 44 A.F.T.R. 2d 79-5132 (1979).  The Supreme

Court in *Commissioner v. Standard Life & Accident Ins. Co.,* confirmed this fundamental

principle of insurance taxation:

> In defining "gross income" and "expenses incurred" for purposes of taxing
> certain other insurance companies, Congress expressly required
> computations to follow the Annual Statement approved by the National
> Convention of Insurance Commissioners.  [433 U.S. 148, 162 (1977).]

And, Treas. Reg. § 1.832-4(c), as in effect prior to 1990, specifically deferred to Annual

Statement treatment of salvage.  Defendant does not cite a single authority for the

proposition that Hybrid Method taxpayers were required to depart from Annual

Statement treatment mandated by 26 U.S.C. § 832(b).

The magistrate judge also correctly noted that a Hybrid Method is permissible as

long as it clearly reflects income.  Report at 13.  Section 446(c)(4) (26 U.S.C.)

specifically provides that taxpayers may use any combination of methods permitted under

the regulations, and Treas. Reg. § 1.446-1(c)(1)(iv) provides that "any combination of …

methods of accounting will be permitted … if such combination clearly reflects income

and is consistently used."  Courts recognize that this consistency rule does not require a

uniform accounting method for factually distinct items.  *See, e.g., Hallmark Cards, Inc. v.

Commissioner,* 90 T.C. 26 (1988); *Hospital Corp. of Am. v. Commissioner,* T.C. Memo.

1996-105.

Defendant does not allege that the Hybrid Method fails to clearly reflect income.[5] It cannot do so.  Although an insurance company's overall method of accounting for tax purposes must conform to its Annual Statement treatment, within the overall accounting method there are many "material items" for which more individualized accounting methods, even within a single line of business, can be adopted.  For example, it would be surprising if an insurance company were to use exactly the same method to estimate its liability for unpaid losses on long-term workers compensation claims as it uses for short-term auto physical damage claims.  Similarly, prior to 1990, it was permissible, and common, for salvage to be treated differently depending on the nature and type of the claim and the type of reserve.  For example, for short-term lines like auto physical damage, it may be appropriate to report claims gross of salvage because salvage recoveries shortly follow payment of claims, but for other lines or sub-lines the same netting may not be appropriate because salvage may not be collected until much later and current recognition of such long-deferred income could distort earnings.  Moreover, it was standard industry practice to treat case reserves (reserves set by claims adjustors rather than actuaries) on a gross basis because it was difficult to estimate salvage on such reserves.  Morell dep. 24-26, Doc. Nos. 32-3 and 32-4.  (Govt. Ex. B, pts. 1 and 2). Further, the magistrate judge correctly noted that many taxpayers were on a Hybrid

---

[5]  The magistrate judge correctly noted that on audit the IRS has never found anything impermissible about Plaintiff's Hybrid Method and has never determined that the method failed to clearly reflect income.  In fact, in circumstances not relevant here, the current regulations, as well as Rev. Proc. 91-48, 1991-2 C.B. 749, continue to require taxpayers to adopt a Hybrid Method for salvage.  *See* Plaintiffs' Reply Brief, Doc. No. 41 at 4.

Method prior to 1990, and the IRS has never suggested that this was improper.[6]  Report at
13-14.

In its objection, Defendant relies upon Treas. Reg. § 1.832-1(c) and Treas. Reg.
§ 1.832-7T(c) as support for its argument that *all* salvage recoverable was required to be
excluded from losses paid if such treatment were mandated in any state in which the
taxpayer conducted business.  Df. Obj. at 17-19.  However, the actual language of the
regulation states just the opposite.  Rather than provide an all-or-nothing rule, the
regulation generally requires losses paid to be reflected net of salvage "except that which
may not be included by reason of [state law, regulations, etc.]"  Treas. Reg. § 1.832-1(c)
(T.D. 6201, Sep. 4, 1956).  This regulation specifically looks to the salvage the taxpayer
"may" have included in its Annual Statement.  Moreover, Defendant's apparent argument
in its objection that prior to 1990 a taxpayer was required by the regulations to be on a
gross method for all lines regardless of its Annual Statement treatment is inconsistent
with Defendant's own position that it was permissible for Hybrid Method taxpayers to be
on a net basis for tax purposes for all lines.  Df. Obj. at 22-23.  That is, Defendant itself
does not read pre-1990 law as requiring *all* salvage to be excluded for tax purposes, even
if this accounting treatment had been mandated by state law.  Similarly, contrary to
Defendant's assertion, the *Continental Insurance Company* case cited by Defendant (Df.
Obj. at 18) does not say that a taxpayer is *required* to exclude salvage on all lines.  The

---

[6] Defendant cites state law and regulations that required salvage recoverable to be
excluded from losses incurred (Df. Obj. at 5-8), but fails to mention that many companies
were permitted by insurance regulators to take salvage into account on certain types of
business.  *See* Van Mieghem decl. ¶¶ 4-7, Doc. No. 45; Plaintiffs' ltr. to Magistrate Judge
Joyce London Alexander, April 25, 2007, Doc. No. 63 and its attachment Proceedings of
the National Association of Insurance Commissioners, 1992-2 NAIC Proc. 226, showing
many companies with salvage on their Annual Statements, Doc. No. 63-1, pp. 8-13.

court merely stated that such treatment of salvage was permitted for a taxpayer that filed Annual Statements in a number of states, after first noting that it is the Annual Statement accounting for salvage that governs. *Continental Ins. Co. v. United States,* 474 F.2d at 670 ("We hold that section 1.832-1(c) of the Treasury Regulations ***permits*** plaintiff to exclude from its salvage recoverable adjustment all salvage not yet reduced to cash or cash equivalents where the rule of any state in which it does business bars the reporting of such salvage.")  (emphasis added).[7]

In any event, the magistrate judge correctly held that it is irrelevant whether the Hybrid Method was permissible prior to 1990.  Report at 14, n. 9.  The statute still governs and Plaintiffs are entitled to the Fresh Start under the plain language of 1990 Act section 11305(c), regardless of the permissibility of Plaintiffs' prior method.

### c.    The Regulations Do Not Require Plaintiffs to Claim the Special Deduction.

Defendant objects to the Report on the basis that Treas. Reg. § 1.832-4(f)(3)(iii) purportedly precludes a taxpayer from claiming both the Fresh Start and the Special Deduction.  But, Defendant has overlooked that the magistrate judge relied upon Treas. Reg. § 1.832-4(f)(3)(***ii***), which provides that a taxpayer that claims the benefit of the Fresh Start may not also claim the Special Deduction.  Report at 15.  After the regulation was issued, Plaintiffs complied with Treas. Reg. § 1.832-4(f)(3)(ii) and properly

---

[7] Defendant omitted the word "permits" from its quotation of the *Continental Insurance Co.* holding.  Df. Obj. at 18.  The language of the regulation itself and a complete quotation from the case dispels Defendant's notion that the regulation required taxpayers to exclude salvage.  Defendant apparently is arguing that Plaintiffs improperly paid too much tax in years before 1990 by failing to treat all salvage on a gross basis.  This is an absurd interpretation of the regulation and the *Continental* case.

disavowed the Special Deduction.[8]  Thus, the magistrate judge appropriately held that

Defendant cannot impose the Special Deduction on Plaintiffs in order to deny the Fresh

Start.

### III.    The Magistrate Judge Correctly Held that Plaintiffs Are Entitled to the Gross-Up.

Treas. Reg. § 1.832-4(d) provides that a taxpayer that has reported its unpaid

losses net of salvage on its Annual Statement (i.e., a taxpayer with Net Lines) is

permitted to gross-up its unpaid losses for tax purposes and thereby convert Net Lines to

Gross Lines for tax purposes.  The gross-up applies to all years beginning in 1990 if the

required disclosure is made.  Treas. Reg. § 1.832-4(d)(3) specifically provides that the

gross-up requires IRS consent only where the taxpayer, after first qualifying for the

gross-up, fails to satisfy the disclosure requirement in a subsequent year.  Except for this

---

[8]  Because Plaintiffs do not claim the Special Deduction, authorities that stand for the proposition that deductions from income should be construed narrowly are irrelevant in this case.  Instead, the remedial Fresh Start transition rule is at issue.  Federal tax legislation that is intended to be remedial is to be construed broadly in favor of a taxpayer.  *See, e.g., Bonwit Teller & Co. v. United States,* 283 U.S. 258, 263 (1931); *Kelly-Springfield Tire Co. v. United States,* 81 F.2d 533, 535 (3d Cir. 1935); *Lykes Bros. S.S. Co., Inc. v. United States*, 513 F.2d 1342, 1353 (Ct. Cl. 1975); *Wing v. Commissioner,* 278 F.2d 656, 661 (8th Cir. 1960); *Hollander v. United States,* 248 F.2d 247, 251 (2d Cir. 1957); *Helvering v. Wardman,* 68 F.2d 418, 419 (D.C. Cir. 1933); *Estate of Morris v. Commissioner,* 55 T.C. 636, 642 (1971), *aff'd,* 454 F.2d 208 (4th Cir. 1972); *Johnston v. Commissioner*, 33 B.T.A. 551, 553 (1935); *Howard v. United States,* 161 F. Supp. 527, 529 (E.D. Ky. 1958).  Transition rules, such as the Fresh Start rule, must be interpreted liberally and in favor of the taxpayer.  *See, e.g., Samonds v. Commissioner,* T.C. Memo. 1993-329, 66 T.C.M. (CCH) 235, 238 (1993) ("In so holding [in favor of taxpayer], we recognize that we are dealing with a transitional provision of limited applicability and with a relief provision which should be liberally construed"); *Merritt v. Commissioner,* T.C. Memo. 1992-443, 64 T.C.M. (CCH) 397, 400 (1992) ("We also emphasize that the transitional rule at issue is a relief provision of limited applicability, which should be liberally construed . . . ."); *Younger v. Commissioner,* T.C. Memo. 1992-387, 64 T.C.M. (CCH) 90, 92-93 (1992) ("We think it important to emphasize that we are dealing with a transitional provision of limited applicability and with a relief provision which should be liberally construed").

limited situation, no IRS consent is required. Rev. Proc. 92-77, 1992-2 C.B. 454,

describes the procedure for the gross-up permitted by the regulation. It merely

implements the regulation – it does not, and cannot, narrow the scope of the regulation.

Like the regulation, it permits a gross-up of all Net Lines for tax purposes for 1990 and

all subsequent years without the IRS' prior consent as long as the disclosure rule is

satisfied. In this case, there is no dispute that Plaintiffs made the proper disclosure by

reporting the closing 1990 estimated salvage on Net Lines on their 1991 Annual

Statements.[9] Plaintiffs' Statement of Undisputed Material Facts, Doc. No. 24, ¶ 36, and

Defendant's Response to Plaintiffs' Statement of Undisputed Material Facts, Doc. No.

39, ¶ 36. Therefore, the magistrate judge correctly held that Plaintiffs are entitled to the

gross-up treatment provided by Treas. Reg. § 1.832-4(d)(3). Report at 22-23.

**IV.    Defendant Ignores Treas. Reg. § 1.832-4(d) and Misreads Rev. Proc. 92-77.**

Defendant correctly points out that one of the purposes of the gross-up provided

in Treas. Reg. § 1.832-4(d) and Rev. Proc. 92-77 is to avoid potential double-counting of

salvage for Net Lines. Having identified this purpose (but ignoring the other reasons for

the regulation and Revenue Procedures),[10] Defendant leapt to the conclusion in its

Motion for Summary Judgment that the Revenue Procedure cannot apply unless the

taxpayer filed an original tax return on which it double-counted estimated salvage and

now seeks to file an amended return to claim the gross-up. Thus, even though there is no

---

[9]  It is for this reason that Plaintiffs requested the court in their protective objection, Doc. No. 70, at 5, to strike footnote 11 from the report as an inadvertent oversight. The Court, however, could just as well recognize the undisputed facts as stated above.

[10]  The magistrate judge correctly pointed out that another purpose of the gross-up was to place taxpayers who were on a Hybrid Method on an equal footing with other taxpayers. Report at 23. Defendant disagrees with the magistrate judge's conclusion that tax equity is paramount in the tax scheme, but does not explain the basis of its disagreement. Df. Obj. at 33-34.

dispute that Plaintiffs satisfied all the prerequisites for the gross-up in the regulation, Defendant asserted that Plaintiffs do not qualify for the gross-up because they failed to satisfy an additional, but unstated, requirement of Rev. Proc. 92-77 – namely, to have double-counted salvage for Net Lines on their original tax returns for 1990.

To find support for its position in its motion for summary judgment, Defendant completely ignored the regulation and focused on the second condition in section 4.01 of the Revenue Procedure, which provides that "the estimated salvage recoverable that reduced unpaid losses is separately taken into account in accordance with section 832(b)(5)(A)(iii)." This condition merely means that a taxpayer cannot gross-up its Net Lines unless it also takes into account the estimated salvage income that reduces unpaid losses in those lines to the net amount. That is, the second condition of section 4.01 merely ensures that the requirements of the 1990 Act will be complied with and losses incurred on all lines will be reported net of salvage, once and only once, after Net Lines have been grossed-up. This is the treatment that Plaintiffs seek in this case.

In its summary judgment motion Defendant misread this second requirement of section 4.01 as a condition precedent applicable only to Net Lines – that the gross-up applies only if a tax return already has been filed that double-counts salvage. But, such a narrow reading cannot be right; it implements no rational policy and would narrow impermissibly the scope of the regulation. Had the IRS intended the Revenue Procedure to apply only to a limited class of taxpayers (despite the broad scope of the regulation), certainly it would have made that intent clear. Were this position correct, the IRS could simply have said: "This revenue procedure only applies to taxpayers that previously filed tax returns on which they double-counted salvage and now seek to file amended returns

to claim a gross-up."  Of course, the IRS did not say this because it had no intent administratively to overrule or narrow Treas. Reg. § 1.832-4(d).  Thus, even if section 4.01 of Rev. Proc. 92-77 operates the way Defendant contended in its summary judgment motion, Plaintiffs still are entitled to the gross-up in 1990, because Treas. Reg. § 1.832-4(d) allows the gross-up, not Rev. Proc. 92-77.

Furthermore, Defendant continues to ignore the fact that Plaintiffs included a statement on their 1990 tax return that reserved the right to amend the return to conform with the IRS administrative guidance.  Thus, after Treas. Reg. § 1.832-4(d) was promulgated, Plaintiffs conformed to the IRS' position by grossing-up unpaid losses by the estimated salvage on Net Lines, as allowed by the regulations for tax year 1990, and at the same time taking that salvage into account as provided in 26 U.S.C. § 832(b)(5)(A)(iii).

In its summary judgment motion, Defendant also attempted to support its position by citing examples in section 4.06 of the Revenue Procedure for the proposition that a taxpayer which claims the Special Deduction cannot also claim the gross-up.  This is true; once Net Lines are converted to Gross Lines by the gross-up, the Special Deduction does not apply.  But here, Plaintiffs do not claim the Special Deduction.  Plaintiffs properly disavowed any Special Deduction after the regulations were issued.  Instead, it is Defendant that seeks to impose the Special Deduction on Plaintiffs in an attempt to deny Plaintiffs the gross-up permitted by Treas. Reg. § 1.832-4(d) and Rev. Proc. 92-77.

Thus, Defendant's assertion that Plaintiffs claim they are entitled to both the Special

Deduction and the Fresh Start is fiction.[11]

Regardless of the language in Rev. Proc. 92-77, Defendant's position was

properly rejected by the magistrate judge.  Report at 22-23.  It is Treas. Reg. § 1.832-

4(d), and not the administrative Revenue Procedure, that gives Plaintiffs the right to

gross-up their losses incurred on Net Lines for 1990, without the consent of the IRS.

Rev. Proc. 92-77 merely describes how the gross-up is to be accomplished.  There is no

provision in the regulation that suggests that the gross-up is limited to taxpayers that

---

[11] In its motion for summary judgment, Defendant also shifted its position on the
meaning of Rev. Proc. 92-77.  When discovery closed in this case, Defendant was in
agreement with Plaintiffs' reading of section 4.04 of Rev. Proc. 92-77 – that it referred to
a change from a so-called "cut-off method" for Gross Lines to a net salvage method.  The
cut-off method is not at issue in this case.  In response to discovery, United States'
Revised Response to Request to Admit #7 of Plaintiffs' First Set of Requests for
Admissions, provided to Plaintiffs on September 28, 2006 (App. A. to Pl. Mtn. to
Compel, 35 (Doc. No. 29 pt. 1, page 37 of 45)), Defendant contended that Plaintiffs did
not separately account for salvage recoverable for pre-1990 accident years and that to
modify that treatment would be a change in accounting requiring the Commissioner's
consent.  A few days later Defendant's counsel advised Plaintiffs' counsel in a telephone
conversation that Defendant would again revise this Revised Response because this
contention had been based on Defendant's erroneous understanding that Plaintiffs had
employed the cut-off method for Gross Lines and thus had not taken that salvage
recoverable for pre-1990 accident years into account.  Thus, Defendant's initial discovery
response agreed with Plaintiffs' position that section 4.04 refers to a taxpayer that used
the cut-off method for pre-1990 accident years.  In the meantime, Plaintiffs filed their
motion for summary judgment which made clear that Defendant's original interpretation
actually supports the tax refunds Plaintiffs claim.  Recognizing that its prior interpretation
of section 4.04 was the same as Plaintiffs', and supports Plaintiffs' position, Defendant
adopted a new position on the meaning of section 4.04, exactly opposite of its prior
reading, that the change referred to in section 4.04 is a change with respect to Net Lines
rather than Gross Lines.  *See* United States' Revised Response to Plaintiffs' First Set of
Requests for Admissions, provided to Plaintiffs on October 18, 2006 (App. A. to Pl. Mtn.
to Compel, 47 (Doc. No. 29 pt. 2, page 4 of 48)).  Defendant ignored the fact that section
4.04 simply reiterates section 9.03 of Rev. Proc. 91-48 with respect to the cut-off method
for Gross Lines.  Simply stated, Defendant got it right the first time – section 4.04 of Rev.
Proc. 92-77 is irrelevant on Plaintiffs' facts.

previously filed returns on which they double-counted salvage for Net Lines.  In fact,

Defendant has never referred to any language in the regulation to support its position.

Defendant's position is irrational.  In essence, Defendant is saying that the

regulation applies only to taxpayers who file an amended return claiming a refund from

the gross-up after previously filing a return for that year reporting a double-counting of

salvage.  Defendant's reading logically would mean that the regulation does not apply on

a prospective basis to any taxpayer which has yet to file a return reporting double-

counting, or which seeks the gross-up to avoid the risk that the IRS on audit will require a

double-counting of salvage for Net Lines.  But, Defendant at the same time admits, as it

must, that its own double-counting requirement is **not** a prerequisite for the gross-up for

any subsequent year.  Df. Obj. at 32.  Not surprisingly, Defendant has made no attempt to

reconcile its inconsistent position with the actual language in the regulation.

Defendant's assertion that the gross-up permitted by the regulation is a change in

method of accounting requiring the IRS' prior consent is even more bizarre.  *Id.* at 29.

Defendant again admits, as it must, that the gross-up does not involve a change in method

of accounting and can be applied both retroactively and prospectively.  *Id.* at 34.  Yet,

Defendant appears to contend that the gross-up becomes a change in method of

accounting if the taxpayer has not first double-counted salvage on its original return.  *Id.*

at 29.  Defendant does not offer any coherent rationale for its inconsistent positions.  In

any event, the magistrate judge correctly held that the gross-up is a one-time event and is

not a change in method of accounting.  Report at 23; *see* Treas. Reg. § 1.446-

1(e)(2)(ii)(a).  Moreover, even if IRS consent were required for the gross-up, such

consent has been expressly granted in Treas. Reg. § 1.832-4(d).  Therefore, Defendant's

change-in-method-of-accounting argument is entirely beside the point.

### Conclusion

Plaintiffs respectfully request the Court to adopt the Magistrate Judge's Report

and Recommendation, with the few typographical corrections identified in Plaintiffs'

Protective Objection, and, there being no material disputed facts, enter summary

judgment in favor of Plaintiffs.

Respectfully submitted:

Dated: <u>August 29, 2007</u>                          <u>/s/ Peter H. Winslow</u>
                                                                    PETER H. WINSLOW
                                                                    Scribner, Hall & Thompson, LLP
                                                                    1875 Eye Street, N.W., Suite 1050
                                                                    Washington, D.C. 20006
                                                                    Telephone: (202) 331-8585
                                                                    E-mail: pwinslow@scribnerhall.com
                                                                    Counsel for Plaintiffs
                                                                    Admitted pro hac vice

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the foregoing *Plaintiffs' Response to Defendant United States'*

*Objection to the Consolidated Report and Recommendation Issued July 27, 2007* filed through

the ECF system will be sent electronically to the registered participants as identified on the

Notice of Electronic Filing (NEF) and paper copies will be sent to the following address via

overnight mail on this 29th day of August, 2007:

> Karen Wozniak
> Trial Attorney, Tax Division
> U.S. Department of Justice
> 555 Fourth Street, N.W.
> Room 7816
> Washington, D.C. 20044

> _/s/ Peter H. Winslow_
> Peter H. Winslow
> Scribner, Hall & Thompson LLP
> 1875 Eye Street, N.W., Ste. 1050
> Washington, D.C.  20006
> Telephone: (202) 331-8585
> E-mail: pwinslow@scribnerhall.com
> Counsel for the plaintiff
> Admitted pro hac vice